**SHER EDLING LLP**
PROTECTING PEOPLE AND THE PLANET

February 14, 2018

<u>Via ECF</u>

Honorable Joseph F. Bianco
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

   Re: *Suffolk County Water Authority vs. The Dow Chemical Company, et al.*
      **No. 17-cv-6980; Response to Request for Pre-Motion Conference**

Dear Judge Bianco:

  Plaintiff Suffolk County Water Authority ("SCWA") submits this letter in response to The Dow Chemical Company's request on behalf of all defendants for a pre-motion conference regarding its contemplated motion to dismiss.

  **Statute of Limitations.** Contrary to Defendants' assertion, the three-year statute of limitations in CPLR 214-c does not bar this action. That section provides that the statute runs from "the date of discovery of the injury," or the date such injury should have been discovered "through the exercise of reasonable diligence," whichever is earlier. Critically, knowledge of the mere presence of a contaminant is not sufficient to trigger the statute.

  Rather, courts have explained that "injury" in this context occurs when "a reasonable water provider . . . would treat the water to reduce the levels or minimize the effects" of the contaminant. *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.* (hereinafter, "*MTBE*"), 725 F.3d 65, 107 (2d Cir. 2013). Discovery of the injury is "based upon an objective level of awareness of the dangers and consequences of the particular substance." *Atkins v. Exxon Mobil Corp.*, 9 A.D.3d 758, 760 (3d Dept. 2004). In other words, "a plaintiff's claims accrue when it first knows of both: (1) the presence of [a contaminant] at a level sufficient to constitute an injury and (2) the harmful impact of [that contaminant] on drinking water." *MTBE*, No. 04 CV 2389 SAS, 2007 WL 1601491, at *6 (S.D.N.Y. June 4, 2007), *on recons.*, No. 1:00-1989, 2007 WL 2936214 (S.D.N.Y. Oct. 4, 2007). Regardless of when SCWA first learned that 1,4-dioxane was present in certain wells, it did not have an "objective level of awareness of the dangers and consequences" of 1,4-dioxane until recently.

  There is no federal or New York maximum contaminant level ("MCL") for 1,4-dioxane. Compl. ¶ 19. Instead, it is regulated as an "unspecified organic contaminant" under the default state MCL of 50 parts per billion ("ppb"). Compl. ¶ 20. SCWA has never detected 1,4-dioxane in its wells at levels that exceed that standard, and therefore the statute of limitations has not been triggered as a matter of law. *See MTBE*, 2007 WL 1601491, at *7 (once concentrations exceed the MCL, the limitations period begins to run as a matter of law). In the absence of an MCL, a reasonable water provider would not be expected to act to remediate 1,4-dioxane, nor was there a proven treatment technology available at the time of SCWA's first detections (Compl. ¶ 16). *See, e.g.*, *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1052 (9th Cir. 2014) (nonbinding "action level" did not trigger the statute of limitations).

Judge Bianco
February 14, 2018
Page 2

Further, SCWA's 1,4-dioxane monitoring does not demonstrate knowledge that the levels detected were sufficient to cause injury. "The mere detection [of a contaminant] in wells at very low levels would not make a reasonable person aware of a legally-cognizable injury sufficient to trigger the statute of limitations." *MTBE*, 2007 WL 1601491, at \*6. Anticipating a future need to remediate a contaminant "does not prove that the City knew" at that point "that the contamination was significant enough to justify an immediate or specific remediation effort." *MTBE*, 725 F.3d at 112. Here, too, the discovery of 1,4-dioxane in SCWA's wells merely suggested a potential future need to remediate; thus, SCWA, as a reasonable water provider, did not have an objective basis to anticipate an imminent need to treat the 1,4-dioxane in its wells until 2017, when New York announced it would develop a mandatory MCL. Compl. ¶ 25. Given the imminence of a legally binding regulation specific to 1,4-dioxane and increased public concern (Compl. ¶ 24), it was reasonable at that point for a water provider to take action to remediate the harm.[1] Therefore, SCWA has pled adequate facts to establish injury within the statute of limitations period.[2]

**Plausibility.** Defendants mischaracterize SCWA's allegations against *each* defendant as "group pleading," when in fact it is alleged that *each* defendant carried out its own individual acts of tortious conduct that were of a similar nature and harmed the plaintiff in a similar way. *See* Compl. ¶¶ 6, 11–17, 26–32, 34–37 (alleging each defendant knowingly manufactured and distributed a toxic compound it knew or should have known would migrate through groundwater, resist degradation, and be costly to remove from the public drinking water supply); *Fisher v. APP Pharm. LLC*, 783 F. Supp. 2d 424, 429 (S.D.N.Y. 2011) (finding product defect claims asserted against *all* manufacturer defendants without individualized distinctions sufficient).

Defendants' arguments regarding causation are both incomplete and out-of-context.[3] Under New York law, if, as alleged here, "defendants breached a duty to avoid an unreasonable risk of harm resulting from the use of their products," courts have found that "innocent water providers—and ultimately innocent water users—should not be *denied relief* from the

---

[1] In every important respect, therefore, this case is different from *Suffolk County Water Authority v. Dow Chemical Co.*, 121 A.D.3d 50 (3d Dept. 2014). That case involved a different contaminant *regulated under a chemical-specific MCL* of 5 ppb and an MCLG ("maximum contaminant level goal") of 0. *SCWA v. Dow Chem. Co.*, 35 Misc. 3d 307, 309 (Sup. Ct. Suffolk Cnty. 2012). The MCL and MCLG defined the appropriate thresholds for action, and thus SCWA did not challenge that discovery of the contamination also constituted discovery of the injury. *See SCWA*, 121 A.D.3d at 59–61 (rejecting SCWA's argument that the "two injury rule" enabled the statute of limitations to run anew upon discovery of a second injury). In contrast, there are currently no such regulatory guideposts for 1,4-dioxane, and knowledge of the presence of a contaminant alone is not dispositive.

[2] Because the issue of when SCWA knew or should have known to take action raises a factual dispute, it is not appropriate for resolution at the motion to dismiss stage. *See, e.g.*, *Pompa v. Burroughs Wellcome Co.*, 259 A.D.2d 18, 23–25 (3d Dept. 1999) (when plaintiff discovered or should have discovered primary condition on which claim is based under CPLR 214-c is a fact question for the jury, precluding court's decision on this issue as a matter of law); *Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401–02 (E.D.N.Y. 2010).

[3] Defendants rely on two cases with no application here: a copyright infringement case limited to the intellectual property context, *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12-CV-2837 (KBF), 2012 WL 6082387, at \*6 (S.D.N.Y. Dec. 3, 2012), *aff'd*, 530 F. App'x 19 (2d Cir. 2013); and a two-paragraph opinion emphasizing that the subject complaint failed to identify "any factual basis" for plaintiff's constitutional claims, where the plaintiff was allegedly given multiple opportunities to cure the deficiencies and still failed to provide fair notice to defendants, *Atuahene v. City of Hartford*, 10 F. App'x 33 (2d Cir. 2001). Here, Defendants cannot credibly argue that SCWA has failed to provide required notice of its claims.



Judge Bianco
February 14, 2018
Page 3

contamination of their water supply because they cannot identify the producer, refiner, or supplier of the [contaminant]." *MTBE*, 447 F. Supp. 2d 289, 302 (S.D.N.Y. 2006). Accordingly, Defendants' bald assertion that SCWA's complaint must particularize each Defendant's conduct beyond what is already alleged is erroneous—and when Dow raised a virtually identical argument against SCWA in 2014, the court rejected it.[4]

Indeed, there are several bases on which SCWA's complaint is sufficient to establish causation in the water contamination context. First, a water provider may show that it is more likely than not that each defendant substantially contributed to the contamination. *See MTBE*, 725 F.3d at 116. "Substantial," in this context, simply means "the act or omission had such an effect in producing the injury that reasonable people would regard it as a cause of the injury." *Id.* at 116 (internal quotation omitted); *see, e.g.*, Compl. ¶¶ 6, 13–15, 32, 35.

Additionally, New York's "[m]arket share liability provides an exception to the general rule that in common-law negligence actions, a plaintiff must prove that the defendant's conduct was a cause-in-fact of the injury." *MTBE*, 725 F.3d at 115.[5] Here, if SCWA (1) establishes a prima facie case on every element of the claim other than identifying the actual tortfeasors, and (2) has joined manufacturers representing a "substantial share" of the relevant market, then the burden of identification shifts to the defendants. *MTBE*, 447 F. Supp. 2d at 299; *see, e.g.*, Compl. ¶¶ 6, 13–15, 27, 30, 31, 34–36.

Finally, under a commingled product theory of liability, SCWA can establish causation "by showing that each defendant's product was part of the commingled mass that injured the plaintiff," *MTBE*, 739 F. Supp. 2d at 598, relieving "the plaintiff of the duty to prove that each individual defendant's contribution to that product, *taken by itself*, was sufficient to have caused an injury." *Id.*; *see, e.g.*, Compl. ¶¶ 6, 12–16, 30, 31, 35–37.

Here, SCWA's complaint details a comprehensive causal chain linking SCWA's injuries to each defendant.[6] SCWA respectfully submits that Defendants' talismanic invocation of *Twombly* and *Iqbal* serves no purpose but delay.

---

[4] *See SCWA v. Dow Chem. Co.*, 44 Misc. 3d 569, 570, 581 (Sup. Ct. Suffolk Cnty. 2014) (denying motion to dismiss SCWA's allegations for failure to "identify each precise defendant whose allegedly defective product injured the plaintiff and how the conduct of such party was the 'cause-in-fact' of such injury"). The court's summary of relevant allegations apply equally to the complaint here: "[Plaintiff has] alleged that the product was not only dangerous from the point of manufacture, but, also, that it was reasonably foreseeable that it would cause harm to the groundwater system." *Id.* at 581.

[5] *See also MTBE*, 739 F. Supp. 2d 576, 597–98 (S.D.N.Y. 2010); *Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487, 511–12, 516–17 (1989) (holding that plaintiffs injured by DES drug were not required to prove which defendant injured them: DES was a fungible product and identifying the actual manufacturer causing each injury was impossible).

[6] For example, SCWA has alleged that each defendant: "designed, manufactured, formulated, marketed, promoted, distributed, sold and/or otherwise supplied (directly or indirectly) 1,4-dioxane products and/or products containing 1,4-dioxane"; "1,4-dioxane is a synthetic industrial chemical that does not occur in nature [and] … poses a risk to human health"; "technology for 1,4-dioxane stabilization of TCA was owned, and licensed, by Defendant Dow Chemical," which licensed this process to Defendant Vulcan Materials Co. to produce TCA; "[t]he most voluminous and widespread use of surfactants containing 1,4-dioxane is in the form of household and commercial laundry detergents," and Defendant Proctor & Gamble has been the producer of the leading brand of laundry detergent, Tide, since 1945; "1,4-dioxane has unique characteristics that cause extensive and persistent environmental contamination," such as mobility and persistency, and "it is readily transported through soil and into groundwater." Compl. ¶¶ 6, 10, 11, , 13, 14, 15, 16, 17.



SHER EDLING LLP
PROTECTING PEOPLE AND THE PLANET

Judge Bianco
February 14, 2018
Page 4

                Respectfully submitted,

                _____/s/ Victor M. Sher_____

Victor M. Sher (admitted *pro hac vice*)
Matthew K. Edling (admitted *pro hac vice*)
Katie H. Jones (admitted *pro hac vice*)
**SHER EDLING LLP**
100 Montgomery Street, Suite 1410
San Francisco, CA 94104
(628) 231-2500

Scott Martin
Jeanette Bayoumi (admitted *pro hac vice*)
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
(646) 357-1100

Richard S. Lewis (admitted *pro hac vice*)
**HAUSFELD LLP**
1700 K Street, NW, Suite 650
Washington, DC 20006
(202) 540-7200

Katie R. Beran  (admitted *pro hac vice*)
**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
(215) 985-3270

*Attorneys for Plaintiff*
*Suffolk County Water Authority*

cc:    Counsel of record (via ECF)

