UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUFFOLK COUNTY WATER AUTHORITY, | No. 17-CV-6980 |
| Plaintiff, | Hon. Joseph F. Bianco |
| v. | |
| THE DOW CHEMICAL COMPANY, *et al.*, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Background ................................................................................................................. 2

Argument .................................................................................................................... 4

I.    The complaint should be dismissed because the three-year statute of limitations expired long ago ........................................................................................ 4

II.    The complaint should be dismissed because SCWA did not adequately plead any of the claims ................................................................................................... 10

    A.    The complaint does not adequately plead causation because it does not allege that defendants engaged in any of the activities that allegedly caused SCWA's injury ...................................................................................... 10

    B.    The complaint engages in improper group pleading ............................................ 13

III.    Counts III–VI fail to plead additional required elements. ................................. 15

    A.    Count III, alleging negligence, does not adequately plead that defendants owed a duty to SCWA. ............................................................................... 15

    B.    Count IV, alleging public nuisance, does not adequately plead causation or duty. ................................................................................................... 18

    C.    Count V, alleging private nuisance, does not adequately plead an injury to one or relatively few people .................................................................... 19

    D.    Count VI, alleging trespass, does not adequately plead that defendants intended to invade SCWA's property. ............................................................ 20

Conclusion ............................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Abbatiello v. Monsanto Co.*,
  522 F. Supp. 2d 524 (S.D.N.Y. 2007)..............................................................20-21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................................15

*Atuahene v. City of Hartford*,
  10 Fed. Appx. 33 (2d Cir. 2001) ................................................................. 12-13

*Bee v. Novartis Pharm. Corp.*,
  18 F. Supp. 3d 268 (E.D.N.Y. 2014) .................................................................10

*Benjamin v. Keyspan Corp.*,
  963 N.Y.S.2d 128 (App. Div. 2013) ....................................................................6

*Bethpage Water Dist. v. Northrop Grumman Corp.*,
  __ F.3d __, 2018 WL 1122317 (2d Cir. Mar. 2, 2018).........................5, 7-8, 10, 12

*Carter v. United States*,
  494 Fed. Appx. 148 (2d Cir. 2012) ....................................................................16

*City of Bloomington, Indiana v. Westinghouse Electric Corp.*,
  891 F.2d 611 (7th Cir. 1989) .......................................................................12, 18

*Copart Industries, Inc. v. Consol. Edison Co. of New York, Inc.*,
  362 N.E.2d 968 (N.Y. 1977).....................................................................10, 17-19

*Cortec Industries, Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991)..................................................................................9

*Ellul v. Congregation of Christian Bros.*,
  774 F.3d 791 (2d Cir. 2014).................................................................................5

*Hamilton v. Beretta U.S.A. Corp.*,
  750 N.E.2d 1055 (N.Y. 2001) .....................................................................10, 14-17

*Intl. Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*,
  62 F.3d 69 (2d Cir. 1995) ...............................................................................2, 5

*Janki Bai Sahu v. Union Carbide Corp.*,
  528 Fed. Appx. 96 (2d Cir. 2013).......................................................................18

*Koch v. Christie's Intl. PLC*,
  785 F. Supp. 2d 105 (S.D.N.Y. 2011), *aff'd*, 699 F.3d 141 (2d Cir. 2012) ..............9

*Kunda v. Caremark PhC, L.L.C.*,
119 F. Supp. 3d 56 (E.D.N.Y. 2015) ........................................................................ 2

*Laborers Loc. 17 Health and Benefit Fund v. Philip Morris, Inc.*,
191 F.3d 229 (2d Cir. 1999) ............................................................................. 10-11

*Lauer v. City of New York*,
733 N.E.2d 184 (N.Y. 2000) ................................................................................. 16

*McCarthy v. Olin Corp.*,
119 F.3d 148 (2d Cir. 1997) ................................................................................. 17

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*,
2007 WL 1601491 (S.D.N.Y. June 4, 2007) ............................................................ 6

*In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*,
2015 WL 4092326 (S.D.N.Y. July 2, 2015) ............................................................ 18

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig.*,
447 F. Supp. 2d 289 (S.D.N.Y. 2006) .................................................................... 14

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*,
2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012), *aff'd*, 530 Fed. Appx. 19 (2d Cir.
2013) .................................................................................................................. 13

*Phillips v. Sun Oil Co.*,
121 N.E.2d 249 (N.Y. 1954) ......................................................................... 10, 20

*S.F. v. Archer-Daniels-Midland Co.*,
2014 WL 1600414 (W.D.N.Y. Apr. 21, 2014), *aff'd*, 594 Fed. Appx. 11 (2d
Cir. 2014) ............................................................................................................ 13

*Schwartzco Enterprises LLC v. TMH Mgt., LLC*,
60 F. Supp. 3d 331 (E.D.N.Y. 2014) ..................................................................... 13

*Scribner v. Summers*,
84 F.3d 554 (2d Cir. 1996) ................................................................................... 20

*Suffolk County Water Auth. v. Dow Chem. Co.*,
991 N.Y.S.2d 613 (App. Div. 2014) .................................................................. 5, 7-8

*Town of Hempstead v. United States*,
No. 16-cv-3652 (E.D.N.Y. Sept. 18, 2017) ....................................................... 12, 19-21

*Town of Islip v. Datre*,
245 F. Supp. 3d 397 (E.D.N.Y. 2017) .................................................................... 21

*Town of New Windsor v. Avery Dennison Corp.*,
  2012 WL 677971 (S.D.N.Y. Mar. 1, 2012) ...........................................................19

*Volpe v. Am. Lang. Commun. Ctr., Inc.*,
  200 F. Supp. 3d 428 (S.D.N.Y. 2016), *aff'd*, 692 Fed. Appx. 51 (2d Cir. 2017) .....................9

*Voss v. Black & Decker Mfg. Co.*,
  450 N.E.2d 204 (N.Y. 1983)...........................................................................10

*Wheeler v. Lebanon Valley Auto Racing Corp.*,
  755 N.Y.S.2d 763 (App. Div. 2003) ...................................................................19

**Statutes**

CPLR §214(4)...........................................................................................4

CPLR §214-c ........................................................................................4-8

CPLR §214-c(2).......................................................................................5-7

N.Y. Pub. Auth. Law §1077(3)....................................................................7, 19

N.Y. Pub. Auth. Law §1078(4)(c) ...................................................................7

## INTRODUCTION

This lawsuit is the latest attempt by the Suffolk County Water Authority (SCWA) to shift the costs of its operations to the manufacturers and distributors of various products—here, 1,4-dioxane and products allegedly containing dioxane.  SCWA has been testing its drinking-water wells for dioxane for at least 15 years.  Although dioxane levels have never exceeded the applicable New York maximum contaminant level, SCWA has known for more than a decade that dioxane, which EPA has classified as a "probable human carcinogen," is present in roughly half of its wells, and that the peak concentration has been above the guidance and action levels in several other States.  In 2010, as its ongoing testing continued to detect dioxane in its wells, SCWA launched a program to develop a treatment system to remove dioxane from the water it supplied.  And in October 2014, EPA released data reconfirming what SCWA had already known for years:  Dioxane was in nearly half of its wells and at peak concentrations above guidance and action levels.  Yet SCWA waited to file this suit until November 30, 2017.

The complaint should be dismissed as time-barred.  The three-year statute of limitations began to run when SCWA discovered or, through the reasonable exercise of diligence, should have discovered its injury.  That happened in 2003, when SCWA began testing its wells for dioxane; or in 2006, when dioxane showed up in half of the wells it tested; or in 2010, when it actively pursued treatment systems; or at the very latest in October 2014, when EPA released its data.  No matter which accrual date applies, more than three years elapsed before SCWA filed suit, making the lawsuit untimely under binding New York law.

Even if the suit were timely, it should still be dismissed.  SCWA does not allege that any defendant actually contaminated Suffolk County's groundwater and wells with dioxane.  Rather, SCWA alleges only that defendants manufactured and sold products containing dioxane that found their way to unnamed third parties in Suffolk County—and that these third parties either

improperly disposed of the products or used them in ways that Suffolk County's wastewater infrastructure failed to contain. Those independent acts break any causal link between defendants' conduct and SCWA's alleged injury. For these and other reasons in this brief, the complaint should be dismissed.

## BACKGROUND

The following summary—assumed true only for this motion to dismiss—relies on the factual allegations in the complaint and "any statements or documents incorporated in it by reference," which are also considered part of the complaint on a motion to dismiss. *Intl. Audiotext Network, Inc. v. Am. Tel. and Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995); *accord Kunda v. Caremark PhC, L.L.C.*, 119 F. Supp. 3d 56, 58 n.2 (E.D.N.Y. 2015). These include two documents: Suffolk County's 2015 Comprehensive Water Resources Management Plan, referenced in Compl. ¶21, *available at* www.suffolkcountyny.gov/Departments/HealthServices/ EnvironmentalQuality/WaterResources/ComprehensiveWaterResourcesManagementPlan.aspx; and Task 7.1 ("Drinking Water Standards") of Suffolk County's 2009 Comprehensive Water Resources Management Plan, which the 2015 plan relies on and cites, *available at* liaquifercommission.com/images/7.1_drinking_water_standards.pdf. For the Court's convenience, excerpts from these plans are attached as Exhibits A and B, respectively.

Plaintiff Suffolk County Water Authority is a public drinking-water provider. Compl. ¶1. SCWA provides drinking water to 1.2 million Suffolk County residents and businesses "exclusively from municipal supply wells." Compl. ¶33. SCWA filed this lawsuit because of the presence of the dioxane in its wells. Compl. ¶¶1, 10. EPA classifies dioxane, an organic solvent, as a "probable human carcinogen." Ex. A at 3-97.

Dioxane was "most widely used in industrial settings as a stabilizer for chlorinated solvents, primarily" one called TCA. Compl. ¶12; Ex. A at 3-97; Ex. B at 62-63. TCA, which

has been banned worldwide since 1996, "was used to dissolve greasy and oily substances from machined metal products."  Compl. ¶12; Ex. A at 3-97.  Industrial TCA users, however, "often mishandled and/or improperly disposed of" TCA containing dioxane "onto land, where [it] migrated into groundwater."  Compl. ¶30.  And their degreasing equipment "routinely leaked or otherwise released TCA … into the environment."  Compl. ¶29.  Because dioxane "does not adsorb (stick) to soil particles, it is readily transported through the soil and into groundwater." Compl. ¶16.

Dioxane is also a byproduct of the "production of ethoxylated surfactants and thus occurs as an impurity in certain consumer products," including "soaps, … cosmetics, shampoos, automotive antifreezes, aircraft de-icing fluids," and, most "voluminous[ly]," "household and commercial laundry detergents."  Compl. ¶¶14, 15.  By using these products, residential and commercial users introduce dioxane "into the wastewater stream."  Compl. ¶37.  And because Suffolk County's sewer lines and septic systems "commonly lose some of the wastewater they carry," dioxane in wastewater eventually reaches groundwater.  *Ibid.*

The mechanisms by which dioxane can contaminate groundwater have been described in published literature "since at least the 1940s."  Compl. ¶28.  And SCWA has been testing its wells for dioxane since 2003.  Ex. A at 3-98; Ex. B at 63.  Testing conducted between 2004 and 2006 revealed that 46% of Suffolk County wells "showed detectable concentrations of dioxane," with readings reaching 3.5 ppb (parts per billion).  Ex. B at 63.  The 2009 plan resolved to continue sampling and reviewing data.  Ex. B at 63, 67.  An October 2014 EPA report, based on testing from 2013 to 2014, reported a top reading of 15.2 ppb.  Ex. A at ES-29, 3-98.  Under New York law, the maximum contaminant level (MCL) applicable to dioxane is 50 ppb. Compl. ¶20.  None of SCWA's wells has ever exceeded this MCL.  *Ibid.*  But several SCWA

wells did exceed the action or guidance levels in many other States.  Ex. B at 63.  Based on the

October 2014 data, the County resolved to "continue to monitor" dioxane.  Ex. A at ES-28.

SCWA filed this lawsuit on November 30, 2017, seeking damages for the costs of

"designing, constructing, installing, operating, and maintaining the treatment facilities and

equipment required to remove the 1,4-dioxane from its drinking water wells."  Compl. ¶4.  But

SCWA did not sue the users of TCA who "mishandled and/or improperly disposed of" TCA.

Nor did it sue whoever was responsible for maintaining Suffolk County's leaky sewage lines and

septic systems.   Instead, it sued certain manufacturers of dioxane and products allegedly

containing dioxane: The Dow Chemical Company, Ferro Corporation, and Vulcan Materials

Company, which produced dioxane or dioxane-stabilized TCA; Procter & Gamble Company,

which produces Tide®, a leading detergent brand; and Shell Oil Company, doing business as

Shell Chemical LP, the primary supplier of surfactants allegedly containing dioxane to Procter &

Gamble.   Compl. ¶¶11, 13, 15.   The complaint alleges six causes of action: strict products

liability for defective design (Count I), strict products liability for failure to warn (Count II),

negligence (Count III), public nuisance (Count IV), private nuisance (Count V), and trespass

(Count VI).  None of the defendants is alleged to have manufactured its products or to have used

dioxane in or near Suffolk County.  *See* Compl. ¶6.  Rather, all of the claims are based on the use

and disposal of dioxane-containing products by unnamed third parties.  *See* Compl. ¶¶29, 30, 36,

37, 41, 53.

## ARGUMENT

**I.      The complaint should be dismissed because the three-year statute of limitations
         expired long ago.**

All of SCWA's claims are barred by the statute of limitations and should therefore be

dismissed.  *See* CPLR §214(4); CPLR §214-c.  This is the most straightforward path to resolving

this lawsuit.  Dismissal on timeliness grounds is appropriate "if the defense appears on the face of the complaint."  *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014).  Here, the complaint (including the documents "incorporated in it by reference," *Intl. Audiotext Network*, 62 F.3d at 72, *e.g.*, the 2015 and 2009 plans) shows that SCWA either discovered or "through the exercise of reasonable diligence" should have discovered its alleged injury long before November 30, 2014.  CPLR §214-c(2).

The three-year limitations period in "CPLR 214-c has been uniformly applied to actions to recover damages caused by contamination by any substance, including volatile organic compounds."  *Suffolk County Water Auth. v. Dow Chem. Co.*, 991 N.Y.S.2d 613, 619 (App. Div. 2014); *accord Bethpage Water Dist. v. Northrop Grumman Corp.*, __ F.3d __, 2018 WL 1122317, at *6 (2d Cir. Mar. 2, 2018).  The three-year clock starts running "from the date of discovery of the injury by the plaintiff or from the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, *whichever is earlier*."  CPLR §214-c(2) (emphasis added).  "The New York Court of Appeals has held that, for purposes of CPLR 214-c, discovery occurs when, based upon an objective level of awareness of the dangers and consequences of the particular substance, the injured party discovers the primary condition on which the claim is based."  *Bethpage Water Dist.*, 2018 WL 1122317, at *6 (cleaned up).

The "primary condition" on which SCWA's claims are based is the presence of dioxane in its wells in concentrations "sufficiently significant to justify immediate or specific remediation."  *Id.* at *8.  Indeed SCWA is adamant that it is *not* suing because the level of dioxane exceeds some threshold: to the contrary, it concedes that the dioxane in its wells has *never* exceeded the applicable New York MCL.  Compl. ¶20.  Moreover, under an "objective"

standard, the "dangers and consequences of" the presence of dioxane were known long before November 30, 2014.

SCWA itself alleges that "Suffolk County identified 1,4-dioxane as a contaminant of emerging concern in its 2015" plan, "based on sampling data from the EPA." Compl. ¶21. Yet the 2015 plan makes clear that EPA released this sampling data in October 2014—three years *and one month* before SCWA filed this complaint. Ex. A at ES-29. Under §214-c, a plaintiff who "obtain[s] knowledge that would place 'a reasonable person on notice of the need *to undertake further investigation* to ascertain the scope of the contamination'" has at most three years in which to conduct that investigation. *Benjamin v. Keyspan Corp.*, 963 N.Y.S.2d 128, 129 (App. Div. 2013) (emphasis added). Armed with a decade's worth of its own test results and EPA sampling data, SCWA was obligated to "exercise … reasonable diligence," CPLR §214-c(2); conduct a "further investigation" to determine if it had an actionable injury, *Benjamin*, 963 N.Y.S.2d at 129; and ultimately decide whether to file suit no later than October 2017. SCWA missed that deadline. This alone dooms the complaint; there is no need to go further.

And in fact the limitations period expired even before October 2017 because SCWA should have discovered—and actually did discover—its injury much earlier than October 2014. SCWA has been testing its wells for dioxane since 2003. By 2009, SCWA knew that dioxane had been found in 46% of the wells it tested between 2004 and 2006. Ex. B at 63. SCWA also knew that EPA had classified dioxane as a "probable human carcinogen" years earlier, and that the maximum level found in Suffolk County—3.5 ppb—exceeded the action or guidance levels set in at least three States (California, Massachusetts, and Michigan). *Ibid.* So contrary to SCWA's assertion in its pre-motion letter, Dkt. 56 at 2, this is *not* a case of a contaminant's appearing "at very low levels [that] would not make a reasonable person aware of a legally-

cognizable injury," *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab. Litig.*, 2007 WL 1601491, at *6 (S.D.N.Y. June 4, 2007).  Rather, SCWA knew that "the water source was sufficiently contaminated or the threat of contamination was sufficiently significant to justify immediate or specific remediation," *Bethpage Water Dist.*, 2018 WL 1122317, at *8—after all, at least three other States had already determined that even lower levels were "sufficiently significant to justify" action.  And that was in 2009; by October 2014, the highest dioxane level in SCWA's wells (15.2 ppb) exceeded the guidance levels in at least three more States.  *See* Ex. A at ES-29; Ex. B at 63.  At a minimum, SCWA—a public benefit corporation whose sole reason for existence is to provide safe drinking water to its customers, *see* N.Y. Pub. Auth. Law §§1077(3), 1078(4)(c)—reasonably should have known that the dioxane levels were potentially actionable by that time (if ever), which is all that is needed to start the limitations clock.  CPLR §214-c(2).

Applying New York law, the Second Circuit recently held as much in a case involving alleged trichloroethylene (TCE) and radium contamination:  Because the plaintiff had detected "sufficiently significant" concentrations in the groundwater more than three years before filing suit, the claims were time-barred under §214-c.  *See Bethpage Water Dist.*, 2018 WL 1122317, at *9-11.  Indeed the limitations clock began to run even *before* the plaintiff had detected contamination in its wells.  *Id.* at *9.  This case is all the more straightforward, as SCWA has known of dioxane's presence in its wells for more than a decade.

This is not the first time that SCWA, an experienced and sophisticated litigant, has belatedly tried to sue for latent water contamination.  In an action involving many of the same defendants and types of claims, SCWA sued manufacturers and distributers of the chemical perchloroethylene (PCE) after it detected PCE in its wells.  *Suffolk County Water Auth. v. Dow*

*Chem. Co.*, 991 N.Y.S.2d 613, 616 (App. Div. 2014).  As in this case, the measured levels were below the applicable MCL.  *Id.* at 616.  Also as in this case, SCWA had detected the contaminant more than three years before filing suit.  *Id.* at 620.  The Appellate Division thus held that SCWA's claims were time-barred under §214-c.  *Id.* at 619-620.

In its pre-motion letter, SCWA attempts to distinguish the holding in the PCE case on the ground that it "involved a different contaminant *regulated under a chemical-specific MCL* of 5 ppb."  Dkt. 56 at 2 n.1 (emphasis in original).  That is a distinction without a difference. SCWA's discovery of its injury does not depend on whether the applicable MCL is the global one for all organic compounds (as it is for dioxane) or a chemical-specific one (as it is for PCE) because SCWA's alleged injury is *not* based on the contaminant's exceeding the MCL at all. According to the complaint, the MCL is irrelevant to SCWA's injury.  *See* Compl. ¶20.  Indeed New York law makes clear that "the MCL does not define whether an injury has occurred." *Suffolk County Water Auth.*, 991 N.Y.S.2d at 618.  All that matters is if "the water source was sufficiently contaminated or the threat of contamination was sufficiently significant to justify immediate or specific remediation."  *Bethpage Water Dist.*, 2018 WL 1122317, at *8.  SCWA *knew*, no later than 2009, that the dioxane contamination exceeded the action levels in at least three States, and thus knew of its injury—of the same kind and to the same degree as it now alleges—at least nine years ago.  "[S]tatutes of limitations are designed to encourage plaintiffs to pursue diligent prosecution of known claims."  *Id.* at *9 (internal quotation marks omitted).  The complaint shows that SCWA has been anything but diligent.

SCWA protests that it "did not have an objective basis to anticipate an imminent need to treat the 1,4-dioxane in its wells until 2017, when New York announced it would develop a mandatory MCL."  Dkt. 56 at 2.  But whether New York has timely acted, as other States have,

8

to set a stricter dioxane-specific MCL is irrelevant to SCWA's claimed injury.  SCWA knew as much about the presence and effects of dioxane in its wells in October 2014 as it did when it filed this lawsuit.  Even setting aside the MCL, the argument that SCWA only recently discovered its injury belies its own public statements and actions over the years, which show that SCWA *actually* began to remediate dioxane contamination long before November 30, 2014.  Although these statements do not appear on the face of the complaint, courts may consider or take judicial notice of "documents used by a defendant in a 12(b)(6) motion … [w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint."  *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *Koch v. Christie's Intl. PLC*, 785 F. Supp. 2d 105, 112 (S.D.N.Y. 2011) ("courts can consider court documents or matters of public record at the motion to dismiss stage where both parties had notice of their contents and the documents are integral to the complaint"), *aff'd*, 699 F.3d 141 (2d Cir. 2012); *see also Volpe v. Am. Lang. Commun. Ctr., Inc.*, 200 F. Supp. 3d 428, 430 (S.D.N.Y. 2016) (on "a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website"), *aff'd*, 692 Fed. Appx. 51 (2d Cir. 2017).

Here, SCWA's own statements show that it launched a pilot program to remediate dioxane contamination using an advanced oxidation process (AOP) in 2010, a full seven years before filing suit.  *See* 10/26/2010 SCWA Meeting Minutes, at 13,504, *available at* www.scwa.com/assets/1/7/2010_BRDMinutes.pdf (attached for the Court's convenience as Exhibit C) (approving funding for the pilot program); *see also* J. Roccaro, SCWA Water Quality Engineer, "Construction of an AOP System at SCWA" (Apr. 26, 2017), *available at* nysawwa.org/docs/presentations/2017/Saratoga%20AOP%20Talk%202017%20-%20Final.pdf

(attached for the Court's convenience as Exhibit D) (describing the program).  And in March 2013, SCWA followed up with "a proposal for a full-scale advanced oxidation process." 3/18/2013 SCWA Meeting Minutes, at 13,897, *available at* www.scwa.com/assets/1/7/ March182013.pdf (attached for the Court's convenience as Exhibit E).  SCWA also agreed to "participat[e] in a project with North Carolina State University entitled, 'Treatment Strategies for the Combined Removal of VOCs and 1,4 Dioxane from Suffolk County Groundwater.'" *Id.* at 13,908.  SCWA thus had much more than "mere knowledge of a future need" to remediate. *Bethpage Water Dist.*, 2018 WL 1122317, at *7.  Like the plaintiff in *Bethpage Water District*, SCWA actually "took a myriad of substantial and specific steps to address the contamination" long before November 30, 2014—squarely barring its belated claims now.  *Id.* at *9.

## II.    The complaint should be dismissed because SCWA did not adequately plead any of the claims.

Even if SCWA's claims were timely, they should be dismissed for failure to state a claim. The complaint does not adequately plead causation, which is a required element of each of the claims.  And it is replete with improper group pleading, lumping together all of the defendants without specifying who did what—or when, where, or how they did it.  Each is an independent reason to dismiss the complaint in its entirety.

### A.    The complaint does not adequately plead causation because it does not allege that defendants engaged in any of the activities that allegedly caused SCWA's injury.

Causation is a required element of each of SCWA's claims.  *See Voss v. Black & Decker Mfg. Co.*, 450 N.E.2d 204, 209 (N.Y. 1983) (defective design); *Bee v. Novartis Pharm. Corp.*, 18 F. Supp. 3d 268, 283 (E.D.N.Y. 2014) (failure to warn); *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055, 1066 (N.Y. 2001) (negligence); *Copart Industries, Inc. v. Consol. Edison Co. of New York, Inc.*, 362 N.E.2d 968, 972 (N.Y. 1977) (public and private nuisance); *Phillips v. Sun*

10

*Oil Co.*, 121 N.E.2d 249, 251 (N.Y. 1954) (trespass).  SCWA must therefore allege "some direct relation between the injury asserted and the injurious conduct alleged."  *Laborers Loc. 17 Health and Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 235 (2d Cir. 1999) (internal quotation marks omitted); *id.* at 242-243 (holding that this requirement applies to New York common-law claims).  It has not done so.

SCWA alleges injury from the presence of dioxane "in varying amounts" in municipal wells.  *See* Compl. ¶¶1, 34.  According to the complaint, dioxane reached Suffolk County groundwater because third-party users of solvents—*not* defendants—"often mishandled and/or improperly disposed of" TCA, and because third-party residential and commercial users of detergents and other cleaning products—again, *not* defendants—disposed of those products such that dioxane leaked out due to "[e]xfiltration from sewer lines … and/or septic systems." Compl. ¶¶30, 37.  "1,4-dioxane has reached groundwater from TCA-related industrial uses in Suffolk County primarily because degreasing operations … were characterized by inefficient solvent recapture and disposal systems.  Leaks, spills, and careless disposal practices led to frequent and substantial releases from facilities using 1,4-dioxane-related compounds." Compl. ¶35.

These allegations might be sufficient to allege causation against the *users* who mishandled dioxane-containing products (and perhaps the designers or caretakers of Suffolk County's leaky sewer lines and septic tanks).  But they are woefully insufficient to allege causation against *defendants*.  The complaint does not allege that defendants engaged in *any* of the activities that allegedly caused SCWA's injury.  SCWA does not allege that defendants even used, much less "mishandled and/or improperly disposed of," dioxane-containing products in Suffolk County.  (For that matter, the complaint does not even identify a single instance or

location in or near Suffolk County where TCA was used.)  Nor does SCWA allege that any wastewater leaks came from defendants' property, or that any defendant designed or maintained the County's sewer lines and septic systems.  The complaint thus fails to bridge the causal gap between defendants' manufacturing and selling dioxane or dioxane-containing products, on the one hand, and end users' mishandling or improperly disposing of those products, on the other.

The alleged causal link between defendants' alleged actions and SCWA's alleged injury is thus far more attenuated than in other recent New York contamination cases.  For example, the defendants in *Town of Hempstead v. United States* actually owned and operated the sites from which the hazardous materials were released.  *See Town of Hempstead v. United States*, slip op. at 2, 6, No. 16-cv-3652 (E.D.N.Y. Sept. 18, 2017) (ECF No. 77).  The same was true in *Bethpage Water District v. Northrop Grumman Corp.*, __ F.3d __, 2018 WL 1122317, at *2 (2d Cir. March 2, 2018).  By contrast, SCWA does not allege that defendants have any relationship whatsoever to the Suffolk County sites from which dioxane escaped, other than that they sold unspecified quantities of products containing dioxane at unspecified times, and that those products (perhaps along with unspecified "other products," like "aircraft de-icing fluids," Compl. ¶14) found their way into the hands of unspecified third parties who *did* own and operate those sites.  That is far too remote a causal connection to support liability.  Like the manufacturer defendant in the seminal case *City of Bloomington, Indiana v. Westinghouse Electric Corp.*, defendants here cannot be held liable for their customers' independent acts.  891 F.2d 611, 614 (7th Cir. 1989) (dismissing nuisance, trespass, and strict-liability claims against PCB manufacturer for contamination caused by its customer's use and disposal).

**B.** **The complaint engages in improper group pleading.**

What's worse, the complaint fails to identify which defendant did what.  When alleging liability against multiple defendants, a plaintiff cannot merely "lum[p] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct."  *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001).  Yet that is exactly what SCWA has done.  Other than identifying each defendant and the products it manufactures, *see* Compl. ¶¶6, 11, 13, 15, 31, the complaint simply alleges that "Defendants" are responsible for SCWA's injuries, without any "factual basis to distinguish the conduct of each of the defendants."  *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012), *aff'd*, 530 Fed. Appx. 19 (2d Cir. 2013); *see also Schwartzco Enterprises LLC v. TMH Mgt., LLC*, 60 F. Supp. 3d 331, 356 (E.D.N.Y. 2014) ("Plaintiffs cannot hide behind 'group pleading' of the sort here that fails to distinguish between the defendants").

Indeed, the complaint strains to *avoid* product identification, claiming instead that any number of parties responsible for any number of products might theoretically be responsible for the dioxane in SCWA's wells.  Compl. ¶14.  SCWA does not identify how, when, and where any defendant's products allegedly resulted in the presence of dioxane in Suffolk County's groundwater and wells.  Instead, SCWA broadly alleges that "[p]roducts containing 1,4-dioxane purchased or otherwise acquired (directly or indirectly) from Defendants by third parties were applied, discharged, disposed of, or otherwise released onto lands and/or water in the vicinity of Plaintiff's drinking water production wells … at various locations, at various times, and in various amounts."  *Id*. ¶¶41, 53.  That is insufficient to plead causation in a multi-defendant case.  *See Atuahene*, 10 Fed. Appx. at 34; *S.F. v. Archer-Daniels-Midland Co.*, 2014 WL 1600414, at *5-6 (W.D.N.Y. Apr. 21, 2014), *aff'd*, 594 Fed. Appx. 11 (2d Cir. 2014).

13

In its pre-motion letter, SCWA confirms that it has no intention of ever providing details about each defendant's conduct; rather, SCWA asserts that it can base liability purely on a market-share (or "commingled-product") basis. *See* Dkt. 56 at 3. Under these theories, defendants who act in a "uniform" manner to market "identical, fungible products" and thereby "creat[e] the same risk to the public at large" may be held liable "based simply on market share." *Hamilton*, 750 N.E.2d at 1067.

SCWA's reliance on market-share liability is inapposite. The Court of Appeals has made clear that market-share liability is "an *exception* to the general rule that … a plaintiff *must* prove that the defendant's conduct was a cause-in-fact of the injury." *Id.* at 1066 (emphases added). Accordingly, the exception applies only if "the manufacturers acted in a parallel manner to produce an identical, generically marketed product." *Id.* at 1067. Similarly, the commingled-product theory—a species of market-share liability minted for the *MTBE* litigation—applies only if the products "of many refiners and manufacturers were present in a completely commingled or blended state at the time and place that the harm or risk of harm occurred." *In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig.*, 447 F. Supp. 2d 289, 301 (S.D.N.Y. 2006). SCWA's complaint contains no such allegations; to the contrary, it alleges that defendants acted in *different* manners to produce *different* products that were *never* blended together. Dow and Ferro are alleged to have produced dioxane itself—but the complaint does not allege that *anybody* in Suffolk County ever purchased dioxane. *See* Compl. ¶11. By contrast, Dow and Vulcan are alleged to have produced TCA, a completely different product. Compl. ¶13. And even further afield, Shell allegedly produced an ethoxylated surfactant, and P&G a household detergent. Compl. ¶¶15, 31. SCWA's claims thus implicate not a single product market, but at

least four—and likely more, since countless "other products" containing dioxane also contributed to the dioxane in SCWA's wells.  Compl. ¶14.

So not only are these not "identical, generically marketed product[s]," but the mechanism by which these products allegedly led to SCWA's injury are markedly different:  Industrial users allegedly "mishandled and/or improperly disposed of" TCA, whereas residential and commercial users of detergents introduced them into the wastewater stream via leaky sewer lines and septic systems.  Compl. ¶¶30, 37.  The Court of Appeals has "refused to extend the market share theory where products [a]re not fungible and differing degrees of risk [a]re created."  *Hamilton*, 750 N.E.2d at 1068.  That is precisely the case here.  Without alleging which defendant's products were released to the environment by which users, when and how those products were used, and how they were released, SCWA presents nothing more than the claim that defendants manufactured dioxane somewhere, at some time—and that some unknown time later, unknown third parties released products containing dioxane "at various locations, at various times, and in various amounts."  *Id*. ¶¶41, 53.  This type of "unadorned, the-defendant-unlawfully-harmed-me accusation" falls woefully short of meeting a plaintiff's pleading burden and warrants dismissal.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.   Counts III–VI fail to plead additional required elements.

Setting aside the complaint-wide defects described above, SCWA fails to state claims for negligence, public nuisance, private nuisance, and trespass for the additional and independent reasons that follow.

### A.   Count III, alleging negligence, does not adequately plead that defendants owed a duty to SCWA.

Count III alleges that defendants negligently "design[ed], formulat[ed], manufactur[ed], distribut[ed], s[old], suppl[ied], and/or market[ed]" dioxane or products containing dioxane,

Compl. ¶65.  "The question in any negligence action is: does defendant owe a legally recognized duty of care to plaintiff?"  *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055 (N.Y. 2001). SCWA has failed to state a claim because it does not adequately allege that defendants had a legally cognizable duty *to SCWA*.

"Without a duty running *directly to the injured person* there can be no liability in damages, however careless the conduct or foreseeable the harm."  *Lauer v. City of New York*, 733 N.E.2d 184, 187 (N.Y. 2000); *accord Carter v. United States*, 494 Fed. Appx. 148, 150 n.1 (2d Cir. 2012) (summary order).  The law requires "that a defendant ow[e] not merely a general duty to society but a specific duty to" the plaintiff "in order to avoid subjecting an actor to limitless liability to an indeterminate class of persons conceivably injured."  *Hamilton*, 750 N.E.2d at 1060 (internal quotation marks omitted).  SCWA has not alleged any such specific duty.  Instead, it alleges that defendants owed a duty *to third parties*—namely, end users of products containing dioxane—to warn them of the "latent dangers" of dioxane.  Compl. ¶51. Even assuming defendants had such a duty, it cannot form the basis for liability *to SCWA*. *Hamilton*, 750 N.E.2d at 1061.  SCWA's recovery, if any, would lie against persons who had a duty *to SCWA* not to pollute the municipal wells—*i.e.*, those who "mishandled and/or improperly disposed of" products containing dioxane, Compl. ¶30.

Moreover, SCWA's theory of recovery is squarely foreclosed by well-settled New York law.  New York courts have long refused to "exten[d] liability to defendants for their failure to control the conduct of others."  *Hamilton*, 750 N.E.2d at 1061.  That rule holds "even where as a practical matter defendant can exercise such control."  *Ibid.* (internal quotation marks omitted). Defendants therefore cannot be held liable for the actions of third parties who improperly disposed of products containing dioxane or failed to maintain the integrity of sewer lines and

septic systems.   Yet those are SCWA's *only* allegations of how dioxane wound up in its municipal wells.   *See* Compl. ¶¶30, 35-37, 52-54.   SCWA does *not* allege that defendants themselves improperly disposed of dioxane.   It alleges only that defendants designed, manufactured, marketed, and sold dioxane or products containing dioxane.   *See* Compl. ¶¶6, 11, 13, 15, 51, 64.   That is insufficient as a matter of law to support liability here.

If that were not enough, "New York courts do not impose a legal duty on manufacturers to control the distribution of potentially dangerous products …."   *McCarthy v. Olin Corp.*, 119 F.3d 148, 157 (2d Cir. 1997).   So even if subsequent misuse by third parties is "foreseeable …, [the defendant] is not legally liable for such misuse."   *Ibid.*   The sole exception is if the defendant and third party have a "special relationship," *ibid.*, but SCWA does not allege any such relationship here.   Nor could it: the defendant's relationship "with either the tortfeasor or the plaintiff" would have to be one that "places the defendant in the *best* position to protect against the risk of harm."   *Hamilton*, 750 N.E.2d at 1061 (emphasis added).   Examples of such relationships include landlord-tenant, master-servant, parent-child, and common carrier-passenger.   *Ibid.*   Defendants' relationship to the end users of products containing dioxane bears no similarity to these examples.

Nor does—or could—SCWA plausibly allege that defendants were in the *best* position to guard against the improper disposal of dioxane-containing products.   After all, according to the complaint itself, those products contaminated SCWA's wells long after they left defendants' possession and control.   No matter how framed, therefore, SCWA has failed to allege that defendants owed it a legal duty.   That failure requires dismissal of the negligence claim under well-settled New York law.

**B.     Count IV, alleging public nuisance, does not adequately plead causation or duty.**

A public nuisance "is an offense against the State and is subject to abatement or prosecution on application of the proper governmental agency." *Copart Industries, Inc. v. Consol. Edison Co. of New York, Inc.*, 362 N.E.2d 968, 971 (N.Y. 1977). "It consists of conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all in a manner such as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons." *Ibid.* (citations omitted). SCWA alleges that defendants "substantially interfered with and caused damage to a public or common resource," *i.e.*, the groundwater. Compl. ¶73.

But in New York, "courts are not to lay aside traditional notions of remoteness, proximate cause, and duty when evaluating public nuisance claims." *Janki Bai Sahu v. Union Carbide Corp.*, 528 Fed. Appx. 96, 101 (2d Cir. 2013) (summary order). SCWA's boilerplate allegation above does not explain *how* defendants "substantially interfered" with the groundwater; the only allegations are that defendants "manufacture[d], promot[ed], market[ed], s[old], distribut[ed], [or] suppl[ied]" dioxane or products containing dioxane to third parties. Compl. ¶72. Nowhere does SCWA explain how these activities actually "contaminated" the groundwater; to the contrary, as described in Part II.A above, defendants' alleged actions are too remote to have caused SCWA's alleged injuries. As the district court overseeing the MTBE multidistrict litigation has "repeatedly" held, "[public] nuisance actions cannot lie against defendants who allegedly contribute to MTBE contamination merely as … manufacturers, marketers, distributors, or suppliers." *In re Methyl Tertiary Butyl Ether (MTBE) Products Liab.*

*Litig.*, 2015 WL 4092326, at *4 (S.D.N.Y. July 2, 2015); *see also id.* at *4 n.54 (listing decisions); *Bloomington*, 891 F.2d at 614.

Moreover, as described in Part III.A above, SCWA has not adequately alleged that any defendant had a duty to SCWA to prevent third parties from contaminating the groundwater. Therefore, under "traditional notions of remoteness, proximate cause, and duty," the complaint has failed to state a claim for public nuisance under New York law. *Janki Bai Sahu*, 528 Fed. Appx. at 101; *see also Copart Industries*, 362 N.E.2d at 972 ("A nuisance, either public or private, based on negligence and whether characterized as either negligence or nuisance, is but a single wrong ….").

### C. Count V, alleging private nuisance, does not adequately plead an injury to one or relatively few people.

Other than "sameness in denomination," "public and private nuisances have almost nothing in common" under New York law. *Copart Industries*, 362 N.E.2d at 971 (internal quotation marks omitted). One critical distinction is that unlike a public nuisance, a "private nuisance threatens one person or a relatively few." *Ibid.* SCWA's complaint, however, alleges damage to groundwater—almost the epitome of a shared resource—supplying *1.2 million people*. Compl. ¶¶3, 5, 33-37. That is hardly a threat to "one person or a relatively few." True, SCWA alleges, in boilerplate fashion, an interference "with [its] property rights to appropriate, use, and enjoy groundwater from its wells." Compl. ¶82. But those "property rights" exist solely "for the benefit of *the people* of the county of Suffolk and the state of New York." N.Y. Pub. Auth. Law §1077(3) (emphasis added).

This Court and others have therefore held that a plaintiff who alleges contamination of groundwater or the public drinking-water supply has not stated a claim for a private nuisance. *See*, *e.g.*, *Town of Hempstead*, slip op. at 27-28 & n.26 (dismissing private-nuisance claim

because "the alleged injury sustained deals with contaminated groundwater"); *Town of New Windsor v. Avery Dennison Corp.*, 2012 WL 677971, at \*16 (S.D.N.Y. Mar. 1, 2012) (dismissing private-nuisance claim in a town's suit to remedy alleged contamination of its drinking water supply); *see also Wheeler v. Lebanon Valley Auto Racing Corp.*, 755 N.Y.S.2d 763, 765 (App. Div. 2003) ("where the claimed injury is 'common to the entire community,' a private right of action is barred").  Because SCWA has claimed contamination of the Suffolk County municipal drinking water supply, it has failed to allege a private nuisance under New York law.

### D.   Count VI, alleging trespass, does not adequately plead that defendants intended to invade SCWA's property.

"Under New York law, trespass is the *intentional* invasion of another's property." *Scribner v. Summers*, 84 F.3d 554, 557 (2d Cir. 1996) (emphasis added).  So to be liable for trespass a defendant must "intend the act which amounts to or produces the unlawful invasion, *and* the intrusion must be the *immediate or inevitable consequence* of what he willfully does." *Phillips v. Sun Oil Co.*, 121 N.E.2d 249, 251 (N.Y. 1954) (emphases added).

SCWA acknowledges that the intrusion of dioxane into the groundwater was the immediate and inevitable consequence of "mishandl[ing] and/or improperly dispos[ing]" products containing dioxane.  Compl. ¶30.  Yet SCWA does not allege that *any* of the defendants engaged in such mishandling or improper disposal.  Rather, it alleges that unnamed third parties did so.   *See* Compl. ¶¶30, 35-37, 52-54.   According to the complaint, defendants' only intentional or willful acts were manufacturing, selling, and delivering dioxane-containing products.  *See* Compl. ¶¶6, 11, 13, 15, 92.  But as in *Abbatiello v. Monsanto Co.*, "the presence of [dioxane in the groundwater] cannot be said to be the 'immediate or inevitable consequence' of [defendants'] manufacture, sale, and delivery of [dioxane]-containing products to [a third party]."  522 F. Supp. 2d 524, 542 (S.D.N.Y. 2007) (dismissing trespass claims against PCB

20

manufacturer).  Simply manufacturing and delivering dioxane is not an "act done … such as will to a substantial certainty result in the entry of the foreign matter."  *Phillips*, 121 N.E.2d at 251.

Unlike the defendant in *Scribner*, who deliberately took "barium-tainted furnaces outside its building and demolish[ed] them on site using jackhammers," thereby causing barium to escape into the plaintiff's adjoining property, 84 F.3d at 558, defendants here did not (according to the complaint) intentionally perform any act that directly resulted in dioxane's escaping into Suffolk County land.   And unlike the *Town of Hempstead* defendants, who were directly responsible for the "disposal and release of hazardous substance(s)" at sites they "owned and/or operated," slip op. at 2; *see also id.* at 6, defendants here did not own or operate any of the Suffolk County sites from which dioxane allegedly escaped into the soil.  Rather, like the PCB manufacturer in *Abbatiello*, 522 F. Supp. 2d at 542, defendants here merely manufactured, sold, and delivered dioxane-containing products to unnamed third parties—and it was those third parties, according to the complaint, who performed acts resulting in contamination.  Compl. ¶¶30, 35-37, 52-54.  And like the defendants in *Town of Islip v. Datre*, defendants here did not, according to the complaint, "directly dispos[e] of hazardous material" themselves.  245 F. Supp. 3d 397, 428-429 (E.D.N.Y. 2017).   Under New York law, therefore, the SCWA's allegations are insufficient to state a claim for trespass.  *Ibid.*

## CONCLUSION

The complaint should be dismissed.

Dated: March 23, 2018

Stephen C. Dillard (*pro hac*)
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010
Phone: (713) 651-5151
steve.dillard@nortonrosefulbright.com

Felice B. Galant
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY  1019
Phone: (212) 318-3000
felice.galant@nortonrosefulbright.com

*Counsel for Vulcan Materials Company*

Megan R. Brillault
Daniel M. Krainin
Paula J. Schauwecker
BEVERIDGE & DIAMOND, P.C.
477 Madison Avenue, 15th Floor
New York, New York 10022-5802
T: (212) 702-5400
mbrillault@bdlaw.com
dkrainin@bdlaw.com
pschauwecker@bdlaw.com

*Attorneys for Shell Oil Company, individually
and doing business as Shell Chemical LP*

Robb W. Patryk
Faranak Sharon Tabatabai Asl
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004
(212) 837-6000
robb.patryk@hugheshubbard.com
fara.tabatabai@hugheshubbard.com

*Counsel for Ferro Corporation*

Respectfully submitted,

/s/ *Kevin T. Van Wart*

Kevin T. Van Wart, P.C. (*pro hac*)
Nader R. Boulos, P.C. (*pro hac*)
Sopan Joshi  (*pro hac*)
KIRKLAND & ELLIS LLP
300 N. LaSalle Street
Chicago, Illinois 60654
(312) 862-2000
kevin.vanwart@kirkland.com
nader.boulos@kirkland.com
sopan.joshi@kirkland.com

Joel A. Blanchet
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY 14203
(716) 847-8400
jblanchet@phillipslytle.com

*Counsel for The Dow Chemical Company*

Diane P. Sullivan
David J. Lender
Jed P. Winer
Rachel Farnsworth
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Diane.Sullivan@weil.com
David.Lender@weil.com
Jed.Winer@weil.com
Rachel.Farnsworth@weil.com

*Attorneys for The Procter & Gamble Company*