IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SUFFOLK COUNTY WATER AUTHORITY,<br><br>    Plaintiff,<br><br>  **-against-**<br><br>THE DOW CHEMICAL COMPANY, FERRO CORPORATION, VULCAN MATERIALS COMPANY, PROCTER & GAMBLE COMPANY, SHELL OIL COMPANY, individually and doing business as SHELL CHEMICAL LP,<br><br>    Defendants. | Case No. 17-CV-6980<br><br>Hon. Joseph F. Bianco |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................. 1

BACKGROUND ................................................................................................... 2

LEGAL STANDARD ............................................................................................ 3

ARGUMENT ......................................................................................................... 3

   I.   SCWA's Claims Are Timely.......................................................................... 3

   II.   Defendants Injured SCWA ......................................................................... 10

       A.   SCWA Alleges Traditional "Substantial Factor" Causation. ................................. 10

       B.   SCWA Seeks Relief from 1,4-Dioxane Manufacturers and Suppliers. ................. 12

       C.   SCWA's Alternative Theories Also Establish Causation. ..................................... 13

          a.   Market Share Liability........................................................................ 14

          b.   Commingled Product Liability............................................................ 15

          c.   Concurrent Tortfeasor Liability.......................................................... 16

       D.   SCWA's Complaint Alleges Each Defendant's Tortious Conduct....................... 17

   III.   Counts III–VI Plead All Required Elements. .............................................. 18

       A.   SCWA's Negligence Claim Plausibly Pleads the Duty Element (Count III)......... 18

       B.   SCWA's Public Nuisance Claim Is Plausible (Count IV). ................................... 21

       C.   SCWA's Private Nuisance Claim Is Plausible (Count V).................................... 23

       D.   SCWA's Trespass Claim Is Plausible (Count VI)................................................ 24

CONCLUSION ................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012) ......................................................................... 3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................... 3

*Atkins v. ExxonMobil*,
   780 N.Y.S. 2d 666 (App. Div. 2004) ........................................................... 8

*Atuahene v. City of Hartford*,
   10 F. App'x 33 (2d Cir. 2001) ................................................................... 17

*Audiotext Network v. Am. Telephone & Telegraph Co.*
   62 F.3d 69 (2d Cir. 1995) ............................................................................ 9

*Bano v. Union Carbide Corp.*,
   361 F.3d 696 (2d Cir. 2004) .................................................................... 4, 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................... 3

*Benjamin v. Keyspan Corp.*,
   963 N.Y.S.2d 128 (App. Div. 2013)............................................................ 6

*Bethpage Water District v. Northrop Grumman Corp.*,
   884 F.3d 118 (2d Cir. 2018) .......................................................... 4, 6, 7, 12

*Black v. George Weston Bakeries, Inc.*,
   No. 07-cv-853S, 2008 WL 4911791 (W.D.N.Y. Nov. 13, 2008)............... 23

*Cangemi v. United States*,
   939 F. Supp. 2d 188 (E.D.N.Y. 2013) ...................................................... 23

*City of Bloomington, Indiana v. Westinghouse Electric Corp.*,
   891 F.2d 611 (7th Cir. 1989) .................................................................... 12

*City of Chicago v. Beretta U.S.A. Corp.*,
   821 N.E.2d 1099 (2004) ............................................................................ 12

*City of Pomona v. SQM N. Am. Corp.*,
   750 F.3d 1036 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 870 (2014)................... 6, 7, 9

*Copart Indus. Inc. v. Consol. Edison Co. of N.Y., Inc.*,
   362 N.E.2d 968 (N.Y. 1977) ................................................................. 23

*Cosmas v. Hassett*,
   886 F.2d 8 (2d Cir. 1989) .................................................................... 9

*DePace v. Flaherty*,
   183 F. Supp. 2d 633 (S.D.N.Y. 2002) ................................................... 13

*Elias v. Rolling Stone LLC*,
   872 F.3d 97 (2d Cir. 2017) ................................................................. 3

*Fisher v. APP Pharm. LLC*,
   783 F. Supp. 2d 424 (S.D.N.Y. 2011) ................................................... 17

*Godoy v. Abamaster of Miami, Inc.*,
   754 N.Y.S.2d 301 (App. Div. 2003) ...................................................... 13

*Hamilton v. Beretta U.S.A. Corp.*,
   750 N.E.2d 1055 (N.Y. 2001) .......................................................... 14, 20

*Hanna v. Motiva Enterprises, LLC*,
   839 F. Supp. 2d 654 (S.D.N.Y. 2012) .................................................... 8

*Harris v. City of New York*,
   186 F.3d 243 (2d Cir. 1999) ............................................................... 5

*Hicksville Water District v. Philips Elecs. N. Am. Corp.*,
   *2:17-cv-04442 (ADS)(ARL)*, 2018 WL 1542670 (Mar. 29, 2018) ................ passim

*Hymowitz v. Eli Lilly & Co.*,
   73 N.Y.2d 487 (1989) ...................................................................... 14

*Ivory v. Int'l Bus. Machines Corp.*,
   983 N.Y.S.2d 110 (App. Div. 2014) ...................................................... 24

*Johnson v. Bryco Arms*,
   304 F. Supp. 2d 383 (E.D.N.Y. 2004) ................................................... 12

*Liriano v. Hobart Corp.*,
   132 F.3d 124 (2d Cir. 1998) .............................................................. 18

*Margrave v. British Airways*,
   643 F. Supp. 510 (S.D.N.Y. 1986) ....................................................... 13

*McCarthy v. Olin Corp.*,
   119 F.3d 148 (2d Cir. 1997) .............................................................. 20

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig,*.
   725 F.3d 65 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 1877 (2014) .................................... passim

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
   175 F. Supp. 2d 593 (S.D.N.Y. 2001) ................................................................. 19, 20, 21, 22

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
   379 F. Supp. 2d 348 (S.D.N.Y. 2005) ................................................................. 13, 14, 16, 25

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
   447 F. Supp. 2d 289 (S.D.N.Y. 2006) ................................................................................ 15

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
   591 F. Supp. 2d 259, 276 (S.D.N.Y. 2008) .......................................................... 13, 15, 16, 18

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
   739 F. Supp. 2d 576 (S.D.N.Y. 2010), *aff'd*, 725 F.3d 65 (2d Cir. 2013) ........................ passim

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
   No. 04 CV 2389 SAS, 2007 WL 1601491 (S.D.N.Y. June 4, 2007).................................... 6, 8

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
   No. 04 CV 2389 SAS, 2007 WL 1601491 (S.D.N.Y. June 4, 2007) *on recons.,*
   No. 1:00-1989, 2007 WL 2936214 (S.D.N.Y. Oct. 4, 2007).............................................. 5

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
   *No. 1:00-1898, 2015 WL 4092326 (S.D.N.Y. July 2, 2015)*................................................ 21

*New York v. West Side Corp.,*
   790 F. Supp. 2d 13 (E.D.N.Y. 2011) .................................................................................. 4

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.,*
   No. 12-CV-2837 (KBF), 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012),
   *aff'd on other grounds*, 530 F. App'x 19 (2d Cir. 2013) ...................................................... 17

*Ortiz v. City of New York,*
   755 F. Supp. 2d 399 (E.D.N.Y. 2010) ................................................................................ 5

*Overall v. Estate of Klotz,*
   52 F. 3d 398 (2d Cir. 1995) .............................................................................................. 5

*Pani v. Empire Blue Cross Blue Shield,*
   152 F.3d 67 (2d Cir. 1998) ................................................................................................ 9

*Pavlou v. City of New York,*
   797 N.Y.S.2d 478 (App. Div. 2005)................................................................................ 10

*Phillips v. Sun Oil Co.*,
    307 N.Y. 328 (1954) ........................................................................................... 24

*Rojas v. City of New York*,
    617 N.Y.S.2d 302 (App. Div. 1994) ................................................................... 10

*Schneider v. Diallo*,
    788 N.Y.S.2d 366 (App. Div. 2005) ................................................................... 10

*Schwartzco Enterprises LLC v. TMH Mgmt., LLC*,
    60 F. Supp. 3d 331 (E.D.N.Y. 2014) .................................................................. 17

*Suffolk County Water Authority v. Dow Chem. Co.*,
    991 N.Y.S.2d 613 (App. Div. 2014) ................................................................. 8, 9

*Suffolk County Water Authority v. Dow Chem. Co.*
    987 N.Y.S.2d 819 (Sup. Ct. 2014) .................................................. 14, 17, 19, 20

*Silivanch v. Celebrity Cruises, Inc.*,
    171 F. Supp. 2d 241 (S.D.N.Y. 2001) ........................................................... 17, 19

*State v. Fermenta ASC Corp.*,
    656 N.Y.S.2d 342 (App. Div. 1997) ............................................................. 24, 25

*State v. Fermenta ASC Corp.*,
    616 N.Y.S.2d 702 (Sup. Ct. 1994) ...................................................................... 21

*State v. Schenectady Chems., Inc.*,
    479 N.Y.S.2d 1010 (App. Div. 1984) .................................................................. 21

*Stern v. City of New York, No. 12-CV-5210*,
    2015 WL 918754 (E.D.N.Y. Mar. 3, 2015) ....................................................... 13

*Town of Oyster Bay v. Occidental Chem. Corp.*,
    987 F. Supp. 182 (E.D.N.Y. 1997) ....................................................................... 4

*Voss v. Black & Decker Mfg. Co.*,
    59 N.Y.2d 102 (1983) ......................................................................................... 10

**Statutes**

CPLR 214-c(2) ............................................................................................................ 4

**Other Authorities**

New York Pattern Jury Instructions 2:70 ................................................................ 10

## INTRODUCTION

The Suffolk County Water Authority ("SCWA"), a public drinking water provider, brings this action to protect the public and restore its damaged drinking water supply wells, which are contaminated by the toxic chemical 1,4-dioxane. Defendants' Motion to Dismiss misconstrues SCWA's claims and the law, and rests entirely on disputed factual questions inappropriate for pretrial resolution, especially at this early stage.

Defendants' statute of limitations affirmative defense fails because, contrary to Defendants' argument, mere detection of any level of a contaminant in a well does not start the limitations clock. Rather, Defendants bear the (fact-intensive) burden of demonstrating a level of contamination so harmful that it would prompt a reasonable water provider to take *immediate* and *specific* remedial action. Defendants make no such showing here, and SCWA's claims are timely on the face of the complaint.

Likewise, Defendants invite this Court to reject at the pleading stage a theory of causation that has been tried to judgment against manufacturers of gasoline containing MTBE, and affirmed by the Second Circuit. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 739 F. Supp. 2d 576, 606 (S.D.N.Y. 2010), *aff'd*, 725 F.3d 65 (2d Cir. 2013). In so doing, Defendants here confuse the requisite proof of causation to support manufacturer liability for a dangerous product with proof that might be required for causes of action SCWA did not plead against third parties SCWA need not name. SCWA's complaint alleges that each Defendant's tortious manufacture, marketing, and promotion of 1,4-dioxane products was a substantial factor in contaminating SCWA's wells. SCWA's complaint also supports alternative theories of causation, including market share, commingled products, and concurrent tortfeasor liability.

For these and other reasons set forth below, the Court should deny the Motion to Dismiss.

# BACKGROUND

SCWA filed this action on November 30, 2017, to recover the costs necessary to protect the public from 1,4-dioxane drinking water contamination. Compl. ¶ 1.[1] SCWA's water comes from wells drawing from the Long Island Aquifer System, a "sole source" aquifer. ¶ 33.

Dioxane is a synthetic, man-made chemical known to cause liver and kidney damage and is classified by the U.S. Environmental Protection Agency as a likely carcinogen. ¶¶ 10, 17. Dioxane was most widely used as a stabilizer for the chlorinated solvent TCA (1,1,1-trichloroethane), which was heavily used to degrease machined metal products. ¶ 12. 1,4-dioxane was primarily manufactured by Defendants Dow Chemical Company ("Dow") and Ferro Corporation. ¶ 11. Dow also owned the technology for 1,4-dioxane stabilization of TCA, and licensed it to Defendant Vulcan Materials Company, which also produced 1,4-dioxane-stabilized TCA. ¶ 13. Dioxane also occurs as an impurity from the use of ethoxylated surfactants in certain detergents and soaps, among other products. ¶ 14. Defendant Shell Chemical LP produced these surfactants for Defendant Procter & Gamble, whose leading product Tide® at all relevant times contained significant levels of 1,4-dioxane. ¶¶ 15, 31.

Defendants knew or reasonably should have known that (a) 1-4 dioxane is toxic to humans; and (b) when products containing 1,4-dioxane are applied or disposed of onto land, its chemical properties cause it to migrate through the subsurface, mix easily with groundwater, and resist natural degradation, rendering drinking water unsafe. ¶¶ 26–32.

New York State enforces drinking water standards through maximum contaminant levels ("MCLs"), which set the highest level of a contaminant allowed in drinking water delivered to the public. There is no New York or federal MCL for 1,4-dioxane. ¶ 19. Instead, 1,4-dioxane falls

---

[1] All "¶" references are to Plaintiff's Complaint unless specifically stated otherwise.

under the "unspecified organic contaminant" state standard MCL of 50 parts per billion ("ppb").

¶ 20. None of SCWA's wells has ever exceeded that standard. *Id.*

## LEGAL STANDARD

In reviewing a motion to dismiss, the Court must construe the complaint liberally, accept all factual allegations as true, and "draw all reasonable inferences in favor of the plaintiff." *Town of Hempstead v. United States*, No. 16-CV-3652 (JFB) (SIL), Doc. No. 77, at 7 (E.D.N.Y. Sept. 8, 2017); *see also Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017).[2] The federal notice pleading standard "does not require 'heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Hempstead*, slip op. at 7 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting the facial plausibility standard "is not akin to a 'probability requirement'"); *see also Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012) ("A court ruling on [a motion to dismiss] may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible."). Here, SCWA pleads detailed allegations that are facially plausible and provide fair notice to Defendants. Accordingly, the Court should deny Defendants' Motion to Dismiss.

## ARGUMENT

## I.   SCWA's Claims Are Timely.

SCWA's claims for damages are governed by a three-year statute of limitations, which runs from "the date of discovery of the injury by the plaintiff or from the date when through the

---

[2] Unless otherwise noted, internal citations and quotations have been omitted.

exercise of reasonable diligence such injury should have been discovered by plaintiff, whichever is earlier." CPLR 214-c(2). By its terms, the limitations period in CPLR 214-c(2) only applies to actions for damages and thus does not bar SCWA's claims for injunctive and equitable relief. *See, e.g.*, *Bano v. Union Carbide Corp.*, 361 F.3d 696, 709–10 (2d Cir. 2004) (injunctive relief may be available to halt a continuing nuisance or trespass even when the recovery of money damages is barred by 214-c(2)). Indeed, "[u]nder common law, a continuing injury to real property gives rise to successive causes of action for the duration of the injury, and the right of the property owner to invoke the *equitable* power of the court similarly continues, regardless of the lapse of time that might occur before the commencement of legal proceedings." *New York v. West Side Corp.*, 790 F. Supp. 2d 13, 29, 32–33 (E.D.N.Y. 2011) (emphasis added); *see also Town of Oyster Bay v. Occidental Chem. Corp.*, 987 F. Supp. 182 (E.D.N.Y. 1997) (to the extent town sought order directing defendants to remediate a public nuisance, such relief was not in the nature of damages and was not barred by 214-c(2)).

Critically, "[m]ere detection of contamination is not enough" to trigger the CPLR 214-c(2) limitations period. *See Bethpage Water District v. Northrop Grumman Corp.*, 884 F.3d 118, 125 (2d Cir. 2018); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.* (hereinafter "*MTBE*"),[3] 725 F.3d 65, 112 (2d Cir. 2013), *cert. denied*, 134 S. Ct. 1877 (2014). Rather, discovery of the injury is "based upon an objective level of awareness of the dangers and consequences of the particular substance." *Bethpage*, 884 F.3d at 125. "Injury" in this context occurs on a well-by-well basis when "a reasonable water provider . . . would treat the water to reduce the levels or minimize the effects" of the contaminant in each well. *MTBE*, 725 F.3d at 107. That is, "a plaintiff's claims

---

[3] *In re MTBE Prods. Liab. Litig.* was a multi-district litigation in the Southern District of New York that resulted in many rulings by the District Court and several by the Second Circuit. We refer to any of these decisions as "*MTBE*," with specific citations to particular rulings by the District Court or Court of Appeals.

accrue when it first knows of both: (1) the presence of [a contaminant] at a level sufficient to constitute an injury and (2) the harmful impact of [that contaminant] on drinking water." *MTBE*, No. 04 CV 2389 SAS, 2007 WL 1601491 (S.D.N.Y. June 4, 2007), *on recons.*, No. 1:00-1989, 2007 WL 2936214 (S.D.N.Y. Oct. 4, 2007), at *6; *Hempstead*, slip. op. at 25.[4]

Applying this firmly established case law, Judge Spatt recently denied a motion to dismiss in a similar case involving 1,4-dioxane contamination in Long Island groundwater. *See Hicksville Water District v. Philips Elecs. N. Am. Corp.*, 2:17-cv-04442 (ADS)(ARL), 2018 WL 1542670, *4–6 (Mar. 29, 2018). Emphasizing "[i]t is not enough to merely detect contamination," the court explained that "knowledge of both the dangers of contamination as well as the harmful impact are required" to start the limitations period. *Id.* at *5. The court explained that although the plaintiff water district knew more than three years before starting its suit that its wells had 1,4-dioxane levels as high as 33 ppb, it "is not clear at that time that a 'reasonable water provider' would take immediate action," particularly because the test result was below the controlling 50 ppb MCL. *Id.*

The court's reasoning in *Hicksville* demands the same result here. The detection of 33-ppb 1,4-dioxane in Hicksville Water District's well was more than *double* the 15.2-ppb level Defendants here proffer as the maximum level of 1,4-dioxane contamination detected in a lone SCWA well in October 2014. As the court concluded in *Hicksville*, "it is not clear *as a matter of law*" that the water district suffered a legally cognizable injury upon learning of the 1,4-dioxane

---

[4] The statute of limitations is an affirmative defense for which "the defendant bears the burden of establishing by prima facie proof that the limitations period has expired since the plaintiff's claims accrued." *Overall v. Estate of Klotz*, 52 F. 3d 398, 403 (2d Cir. 1995). Because the defense is highly fact-dependent, "a motion to dismiss is often not the appropriate stage to raise affirmative defenses like the statute of limitations." *Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010). "[D]ismissal is appropriate only if the complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999); *see also Bano*, 361 F.3d at 710 ("Where it does not conclusively appear that a plaintiff had knowledge of facts from which the injury could be reasonably inferred, the complaint should not be dismissed on motion and the question should be left to the trier of fact.").

contamination in its well. *See id.* at *6. Rather, a litany of cases concludes that "resolving the Defendants' statute of limitations argument [at the motion to dismiss stage] is inappropriate, given the fact-specific evaluation that is required." *Id.* at *5 (listing cases).

Here, Defendants' only argument that SCWA's 1,4-dioxane contamination was "sufficiently significant" to "justify immediate and specific remediation efforts" is that by October 2014, the 1,4-dioxane concentration in one of SCWA's wells exceeded several *non-binding* guidance levels set by *other states*. *See* Mot. at 3–4 & 6–7. But "potentially actionable," Mot. at 7, levels of a contaminant in a well do not establish that a reasonable water provider must as a matter of law take "immediate and specific remediation efforts," and therefore do not establish injury to that well. *See Bethpage Water District*, 884 F.3d at 129.[5]

SCWA has never detected 1,4-dioxane in any well at a level that exceeds the applicable New York standard (the 50 ppb generic MCL), and therefore the statute of limitations has not run. *See MTBE*, 2007 WL 1601491, at *7 (once concentrations exceed the MCL, the limitations period begins to run as a matter of law). In the absence of a contaminant-specific MCL, or even a nonbinding New York guidance level, a reasonable water provider would not be expected to remediate 1,4-dioxane contamination. *Accord, e.g.*, *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1052 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 870 (2014) (nonbinding "action level" did not trigger the statute of limitations, and summary judgment was inappropriate because the water provider's failure to act may have been reasonable at the time, given the scientific

---

[5] Defendants' reliance on *Benjamin v. Keyspan Corp.*, 963 N.Y.S.2d 128, 129 (App. Div. 2013), Mot. at 6, is equally unfounded. *Benjamin*, a four-paragraph-long opinion, is distinguishable because there the plaintiff property owner did not rebut the defendant's argument that knowledge of the presence of contamination from a manufactured gas plant was "significant enough" to constitute injury. *Id.*; *see also Bethpage Water District*, 884 F.3d at 127–28 (explaining that *Benjamin* is merely consistent with the Second Circuit's conclusion in *MTBE* that a water provider may sue once the facts prove that contamination is "significant enough to justify an immediate or specific remediation effort").

uncertainty regarding the safety of levels of perchlorate in drinking water). Nor does SCWA's pilot program for 1,4-dioxane treatment—which appears nowhere on the face of the complaint—prove as a matter of law that SCWA knew the levels detected were sufficient to cause injury. In *MTBE*, the Second Circuit explained that anticipating a future need to remediate "does not prove that the City knew . . . that the contamination was significant enough to justify an immediate or specific remediation effort." 725 F.3d at 112. Here, too, launching a pilot program to develop an as-yet untested and unapproved treatment technology merely anticipated a potential future need to remediate and did not by itself constitute a present injury. *See id.*; *accord, e.g.*, *City of Pomona*, 750 F.3d at 1052.

The Second Circuit recently cautioned, as it has before, against equating anticipatory actions to investigate causes of and solutions for groundwater contamination with immediate and specific remedial actions sufficient to trigger the statute of limitations. Because "addressing water contamination is often a complex, multi-year process, a holding that any anticipatory action triggers the statute of limitations would run the risk of curtailing a municipality's ability to sue to recover costs." *Bethpage Water District*, 884 F.3d at 128. Defendants' comparison of SCWA's anticipatory 1,4-dioxane treatment pilot project to the "myriad of substantial and specific steps to address the contamination" undertaken by the plaintiff utility in *Bethpage Water District* is inapt. *See id.* at 128–29. Bethpage declared a public health emergency, removed two wells from service, sought millions of dollars of public bond financing to cover the cost of constructing two new treatment systems for concentrations of TCE (trichloroethylene, an industrial solvent) that would violate the established MCL. *Id.* at 123–24.

Here, SCWA made no such declarations, removed no wells from service, and had no

exceedances of an existing MCL, nor any existing remedial treatment it could employ.[6] SCWA's research of an unproven treatment technology, which may benefit numerous water providers, should not be deterred and certainly does not trigger the statute of limitations. *See Hanna v. Motiva Enterprises, LLC*, 839 F. Supp. 2d 654, 666 (S.D.N.Y. 2012) ("Plaintiffs should not be punished" for investigating source of hydrocarbon odors on their property because such actions are not sufficient to trigger statute of limitations). As Defendants note, the maximum levels of dioxane detected in SCWA's wells increased from 3.5 ppb in 2006 to 15.2 ppb in 2014 (Mot. at 3), and thus it was reasonable for SCWA to anticipate that potentially, at some point in the future, dioxane levels could continue to increase or regulatory levels could change, and remedial action could—at some unknown time in the future—become necessary.

Nor does *SCWA v. Dow Chemical Co.*, 991 N.Y.S.2d 613 (App. Div. 2014), which involved different contaminants regulated under a binding MCL of 5 ppb, help Defendants here. The MCL defined the appropriate binding threshold for action in that case, and thus discovery of contamination in excess of the MCL constituted discovery of the injury. *See id.* at 620–22. In contrast, there is currently no such binding regulatory guidepost (state or federal) for 1,4-dioxane.

SCWA's case is more similar to the MTBE cases. Like 1,4-dioxane, MTBE (a gasoline additive) originally fell under New York's generic 50 ppb MCL, but in 2003 the state established a new MCL for MTBE of 10 ppb. *MTBE*, 2007 WL 1601491, at *7. In New York City's MTBE case, the court explained that summary judgment was inappropriate because "[w]hile plaintiffs here were aware of the presence of MTBE (they regularly tested their wells for it), questions of fact remain as to whether and when they became aware of the *harms* MTBE may cause to groundwater at various concentrations." *Id.* at *6; *see also Atkins v. ExxonMobil*, 780 N.Y.S. 2d

---

[6] Further, unlike here, Bethpage filed suit more than three years after notice of impacts in excess of an established MCL.

666, 668 (App. Div. 2004) (plaintiffs' knowledge of the presence of MTBE in their wells alone was insufficient to trigger the statute of limitations, and plaintiffs raised triable issues of fact as to what information about MTBE was available and when). Further—as the jury found, Judge Scheindlin held, and the Second Circuit affirmed—New York City's anticipated future remediation needs and discovery of exposure in certain wells below any MCL, more than three years prior to filing suit, did not trigger the statute of limitations under New York law. *MTBE*, 739 F. Supp. 2d 576, 589 (S.D.N.Y. 2010); *MTBE*, 725 F.3d at 112. Here too, though SCWA was aware of the *presence* of 1,4-dioxane in its wells, whether and when it became aware of the *harms* 1,4-dioxane may cause at various levels is a question of fact. *Accord Pomona*, 750 F.3d at 1052–53 (determining when appreciable harm may have occurred is a question of fact for trial).[7]

Not until 2017, when New York State announced it would develop a 1,4-dioxane-specific MCL, could SCWA even arguably have first faced an objective basis to anticipate an imminent need to treat the 1,4-dioxane in its wells. ¶¶ 19, 21–22. Because it is not clear "on the face of the complaint" that the statute of limitations defense bars this action, *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998), dismissal is not warranted.

---

[7] Defendants assert that the Complaint incorporates by reference two external documents from Suffolk County, not SCWA. It does not. The Suffolk County 2015 Comprehensive Water Resources Management Plan ("2009 Plan," Mot. Ex. A) was not attached to the Complaint, nor even quoted in it. *See* ¶ 21. Defendants reach even further in asserting that the County's 2009 Plan (Mot. Ex. B) is incorporated by reference because it is merely *cited* in the 2015 Plan. *See* Mot. at 2. A court may only use public records outside the complaint for the limited purpose of demonstrating the existence of such a document or the plaintiff's knowledge of a given fact at a particular time. *Hicksville Water District*, 2018 WL 1542670, *4. An external document does not become incorporated by reference simply by "[l]imited quotation" in the complaint. *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989). Even the case Defendants cite does not support their position: *Int'l Audiotext Network v. Am. Telephone & Telegraph Co.* held only that if a plaintiff "relies heavily" upon a document, it may be "integral" to the complaint and thus incorporated by reference. 62 F.3d 69, 72 (2d Cir. 1995).

## II.     Defendants Injured SCWA.

### A.     SCWA Alleges Traditional "Substantial Factor" Causation.

SCWA asserts "substantial factor" legal causation supporting manufacturer liability[8] by identifying the "exact defendant[s] whose product[s] injured it." *MTBE*, 725 F.3d at 116. The substantial factor standard requires proof by "a preponderance of the evidence that the defendant's conduct was a substantial factor in producing the plaintiff's injury." *MTBE*, 739 F. Supp. 2d at 596; *Schneider v. Diallo*, 788 N.Y.S.2d 366, 367 (App. Div. 2005) (an act or omission is regarded as a legal cause of an injury "if it was a substantial factor in bringing about the injury"). The word "substantial" means that the act or omission "had such an effect in producing the injury that reasonable people would regard it as a cause of the injury." *Rojas v. City of New York*, 617 N.Y.S.2d 302 (App. Div. 1994). A defendant will be liable "even if its contribution to causing the injury was relatively small, as long as it is not slight or trivial." *Pavlou v. City of New York*, 797 N.Y.S.2d 478, 484 (App. Div. 2005); 1A New York Pattern Jury Instructions 2:70 (3d ed. 2007). In strict products liability, the product defect or the failure to warn must be a substantial cause of the plaintiff's injuries. *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 106 (1983).

In *MTBE*, the plaintiff's groundwater wells were also contaminated by a specific chemical (MTBE), and the plaintiff sought to attach liability to defendants that manufactured, supplied, and promoted that chemical.[9] Plaintiff adduced three pieces of evidence that established that each defendant was a substantial factor in causing the injury: (1) the defendant's MTBE was present at

---

[8] Defendants emphasize alternative theories of liability applicable in situations where a plaintiff cannot directly assign causation. These theories are discussed in Section II.C below.

[9] The plaintiff also established the defendant's "direct spiller" liability in that case, but the court analyzed the manufacturer and direct spiller liability theories as distinct for each cause of action. *See MTBE*, 739 F. Supp. 2d at 606–08 (order on post-trial motions); *MTBE*, 725 F.3d at 117–25 (analyzing groundwater contamination claims under both direct spiller and manufacturer liability lenses).

retail gas stations and underground storage tanks in the vicinity of the plaintiff's wells; (2) the defendant participated in the market for MTBE-containing gasoline such that its product was, on average, in every storage tank and therefore every plume at a substantial level (its market share)[10]; and (3) over time, the defendant knew that leaks from tanks containing the defendant's MTBE were inevitable. *MTBE*, 725 F.3d at 116. The plaintiff thereby established that the defendant's MTBE-containing gasoline was so ubiquitous that it was more likely than not present in the plumes affecting the plaintiff's wells, and therefore it was "more likely than not that [the defendant's] gasoline played a substantial role in bringing about the City's injury." *Id.*

The Complaint here alleges very similar facts establishing that Defendants' 1,4-dioxane-related conduct and products played a substantial role in bringing about SCWA's injury: (1) 1,4-dioxane is present in the commercial and consumer products that Defendants marketed, sold, and distributed to customers in Suffolk County, ¶¶ 3, 6, 32; (2) Defendants are the primary producers of 1,4-dioxane and hold dominant shares of the markets for 1,4-dioxane-containing products, ¶¶ 11, 13, 15, 31; (3) 1,4-dioxane releases are inevitable; and (4) Defendants' 1,4-dioxane is in every plume affecting Plaintiff's wells. ¶¶ 26–30 (discussing Defendants' own research and extant technical literature demonstrating that vapor degreasing, waste mishandling, and other industrial activities routinely release 1,4-dioxane to the environment); ¶ 36 (Defendants advised users to dispose of 1,4-dioxane waste to the environment); ¶ 37 (routine releases of 1,4-dioxane in consumer goods from sewerage and septic systems).

The ubiquity of Defendants' 1,4-dioxane-containing products used and released into the environment near SCWA's wells, coupled with Defendants' knowledge of the inevitability of 1,4-

---

[10] Substantial factor causation is distinct from market share liability, though a defendant's market share may be relevant to traditional substantial factor causation as "part of the mosaic of circumstantial evidence that helps the jury determine the scope of the defendant's contribution to the plaintiff's injury." *MTBE*, 725 F.3d at 117.

dioxane releases with normal use of those products and its persistence in groundwater, makes it likely that Defendants' conduct as manufacturers and suppliers of their products was a substantial factor in causing the contamination.

### B.    SCWA Seeks Relief from 1,4-Dioxane Manufacturers and Suppliers.

SCWA's claims are grounded in Defendants' wrongful manufacture, production, and promotion of their products despite their knowledge that the 1,4-dioxane in those products would inevitably infiltrate groundwater and contaminate drinking water supplies. The Second Circuit has held that this exact tortious conduct warrants liability under New York law via each of SCWA's causes of action. *See MTBE*, 725 F.3d at 117–25 (affirming manufacturer liability, independent of direct spiller liability, in groundwater contamination case).[11]

Defendants' motion avoids challenging the propriety of asserting manufacturer liability. Instead, Defendants argue, incorrectly, that because they did not release 1,4-dioxane to the environment, causation is inadequately pleaded. *See* Mot. at 11–12. But an intervening act by a third party does not break the causal chain unless it is of such "an extraordinary nature or so attenuated from the defendants' conduct that responsibility" cannot reasonably be attributed to the manufacturer. *Johnson v. Bryco Arms*, 304 F. Supp. 2d 383, 395 (E.D.N.Y. 2004). If, however, a third party's act was a foreseeable consequence of each Defendant's conduct, the causal chain

---

[11] Defendants' "recent" cases discussing causation, Mot. at 12, are inapposite because neither involved manufacturer liability, and instead sought relief from direct spillers. *See Hempstead*, No. 16-cv-3652, slip op. at 1–2 (claims based on "disposal and release" of contaminants); *Bethpage Water District*, 884 F.3d at 119–20 (claims based on release of VOCs from defendant's property). Further, causation with respect to a trespass cause of action was not at issue in *City of Bloomington, Indiana v. Westinghouse Electric Corp.*, a case decided under Indiana law and prior to the Second Circuit's affirmation of *MTBE*. *See* 891 F.2d 611, 615 (7th Cir. 1989). Respecting *Bloomington's* nuisance cause of action, the Seventh Circuit expressly declined to analyze whether *participation* in the creation of a nuisance condition supported liability in that case. *Id.* at 614 (rejecting nuisance claim where manufacturer defendant did not retain control over groundwater contaminant after point of sale). That opinion directly contravenes the controlling precedent announced in *MTBE* and has been critiqued by other courts as well. *See, e.g.*, *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1131 (2004) (Illinois Supreme Court not persuaded by *City of Bloomington's* requirement of control over the instrumentality of a nuisance).

remains intact. *Id.* Here, Defendants knew that industrial and consumer uses of their products would inevitably result in dioxane releases to the environment; indeed, Defendants actually instructed third parties to make such releases as part of disposing of used or spent product. *See, e.g.*, ¶¶ 26–30, 36–37. Because such releases and the resulting injuries were foreseeable, SCWA adequately pleads causation.

New York favors "liability [in products liability actions] for entities higher in the chain of distribution, reasoning that '[m]anufacturers are in the best position to know when products are suitably designed and properly made, as well as to diffuse the cost of safety in design and production.'" *MTBE*, 591 F. Supp. 2d 259, 276 (S.D.N.Y. 2008) (citing *Godoy v. Abamaster of Miami, Inc.*, 754 N.Y.S.2d 301, 307 (App. Div. 2003)). The same holds true for SCWA's nuisance, negligence, and trespass claims because, as alleged, Defendants had "substantial certainty" that the intended use of their 1,4-dioxane and products containing 1,4-dioxane would cause persistent groundwater contamination, putting them in the best position to prevent the harms arising from their tortious conduct. *See, e.g.*, *MTBE*, 725 F.3d at 120 (defendants' substantial certainty that groundwater contamination would result in releases constituting trespasses and nuisances supported imposition of manufacturer liability on those theories).

### C. SCWA's Alternative Theories Also Establish Causation.

SCWA also alleges facts that support alternative theories of causation, including market share liability, the commingled products theory of liability, and concurrent tortfeasor liability. SCWA is not bound to elect any particular theory of liability at the pleading stage. *See MTBE*, 379 F. Supp. 2d 348, 371 (S.D.N.Y. 2005) (plaintiffs may survive motions to dismiss by alleging a collective theory of liability but subsequently identify specific tortfeasors); *MTBE*, 739 F. Supp.

2d at 588 (jury presented with traditional and commingled product causation theories).[12]

### a. Market Share Liability

Market share liability "provides an exception to the general rule that a plaintiff must prove that defendant's conduct was the cause-in-fact of plaintiff's injury." *See MTBE*, 739 F. Supp. 2d at 598; *see also MTBE*, 379 F. Supp. 2d at 425 ("New York has unequivocally adopted the market share theory of liability where the product in question is fungible, and as a result, the plaintiff cannot identify which defendant proximately caused her harm. . . . MTBE is a fungible product; the manufacturers of the offending product cannot be identified; and defendants are manufacturers that together control a substantial share of the market for MTBE-containing gasoline. These allegations are sufficient to support the application of market share liability under New York law."). A plaintiff need not show that a specific defendant actually caused its injuries, because a manufacturer may be "presumed liable" for a Plaintiff's injury "to the extent of [defendant manufacturer's] share of the relevant product market." *MTBE*, 725 F.3d at 115 (citing *Hymowitz v. Eli Lilly & Co.*, 73 N.Y.2d 487, 511–12 (1989).

Defendants' reliance on *Hamilton v. Beretta U.S.A. Corp.*, 750 N.E.2d 1055 (N.Y. 2001), is therefore misplaced, because the harmful products in that case were not fungible. *See Hamilton*, 750 N.E. 2d at 1067 (handguns were decidedly "not identical, fungible products . . . [as] it is often possible to identify the caliber and manufacturer of the handgun"). But here, there are no distinguishing characteristics among the molecules of 1,4-dioxane in SCWA's wells, let alone any that would permit identification of any individual molecule's supplier. This case is much more

---

[12] "Causation generally is a question for the finder of fact." *Stern v. City of New York*, No. 12-CV-5210, 2015 WL 918754, at *5 (E.D.N.Y. Mar. 3, 2015) (quoting *DePace v. Flaherty*, 183 F. Supp. 2d 633, 638 (S.D.N.Y. 2002)); *see also Margrave v. British Airways*, 643 F. Supp. 510, 513 (S.D.N.Y. 1986) ("[T]he question of proximate cause may be one for the court where . . . reasonable jurors could reach only one conclusion regarding the issue of proximate cause.").

analogous to *SCWA v. Dow Chemical Co.*, where the court allowed SCWA to proceed on a market share theory in part because of the fungibility of the contaminant at issue. 987 N.Y.S.2d 819, 827–29 (Sup. Ct. 2014) (finding PCE to be "generic and fungible," such that the "product of one manufacturer . . . becomes commingled with that of another over time" and "it is essentially impossible to locate which manufacturer contributed to what extent to the contamination of which particular [SCWA] well").

Because Defendants are the primary producers for 1,4-dioxane and the market leaders of 1,4-dioxane-containing products (¶¶ 11, 13, 15, 31), and it is not possible to identify which Defendants are responsible for each individual molecule of dioxane in SCWA's wells (¶¶ 1, 2, 4), market share liability provides an alternative proof of causation available to Plaintiff at trial.

### b. Commingled Product Liability

In the water contamination context, "[t]o exempt defendants from liability…simply because plaintiffs are unable to deconstruct the molecules of the commingled [product] to identify the manufacturers of each gallon of spilled [product] is unjust." *MTBE*, 591 F. Supp. 2d 259, 274 (S.D.N.Y. 2008). Thus—and as alleged here—when a plaintiff can show that certain gaseous or liquid products "of many . . . manufacturers were present in a completely commingled or blended state at the time and place that the harm or risk of harm occurred, and the commingled product caused plaintiff's injury," the commingled product theory may be applied. *Id.* The burden then shifts to the defendant to "exculpate itself by proving that its product was not present at the relevant time or in the relevant place." *MTBE*, 725 F.3d at 89.

As Defendants rightly point out, commingled product theory applies *only if* the "products of many refiners and manufacturers were present in a completely commingled or blended state *at the time and place that the harm or risk of harm occurred*." Mot. at 14 (emphasis added) (citing

15

*MTBE*, 447 F. Supp. 2d 289, 301 (S.D.N.Y. 2006)). "The time that the risk of harm—the contamination of groundwater—occurred is an issue of fact for the jury" that may look to evidence of the timing of releases and detections, and "the place the harm or risk of harm occurred is the capture zone of each well." *See MTBE*, 591 F. Supp. 2d at 275. Thus, Defendants' assertion that their products were never commingled before they entered the groundwater aquifer, Mot. at 14–15, is irrelevant to the question of causation. Critically, the various means by which 1,4-dioxane was released to the environment in Suffolk County are immaterial:

> It is not necessary for plaintiffs or the jury to identify the particular spill(s) that caused contamination in a well for manufacturers to be liable under the commingled product theory, because identifying the source of a spill does not provide any additional information about the manufacturers of the gasoline contaminating the well.

*MTBE*, 591 F. Supp. 2d at 275–76.

Here, 1,4-dioxane is present in an entirely commingled and blended state when it enters SCWA's wells. ¶¶ 35–37 (describing the multiple sources of 1,4-dioxane contaminating SCWA's wells contemporaneously). Moreover, due to 1,4-dioxane's propensity to migrate through groundwater and its persistence in the aquifer over time, 1,4-dioxane, from multiple sources, has commingled and contaminated SCWA's wells. ¶¶ 4, 16, 26.

### c.   Concurrent Tortfeasor Liability

SCWA may also ultimately try the case under a theory of concurrent wrongdoing liability, which allows joint and several liability "when each tortfeasor's independent actions combine to produce the same wrong." *MTBE*, 591 F. Supp. 2d at 274. To attach liability to any one Defendant's tortious conduct, the tortious acts need not have occurred simultaneously; rather, the tortious conduct must combine to give rise to the plaintiff's indivisible injury. *See MTBE* 379 F. Supp. 2d at 371. Here, SCWA alleged that Defendants' tortious conduct *combined* produced Plaintiff's indivisible injuries—i.e., the contamination of SCWA's wells. *See id.* ("Contamination

in each well will generally be an indivisible injury. . . ."); ¶¶ 34–37.

### D.   SCWA's Complaint Alleges Each Defendant's Tortious Conduct.

In *Hicksville*, a recent groundwater contamination case also involving 1,4-dioxane, the court found that although it was unable to discern the accusations of wrongdoing applicable to each defendant, it could "draw the reasonable inference that [each] defendant [was] liable for the misconduct alleged." *Hicksville Water District*, 2018 WL 1542670, at *7. Similarly, in *SCWA v. Dow Chemical Co.*, 987 N.Y.S.2d at 820, 828, the court denied defendants' motion to dismiss for failure to "identify each precise defendant whose allegedly defective product injured the plaintiff and how the conduct of such party was the 'cause-in-fact' of such injury" where plaintiff "alleged that the product was not only dangerous from the point of manufacture, but, also, that it was reasonably foreseeable that it would cause harm to the groundwater system." Here, the alleged misconduct is attributed to each individual Defendant, each of which manufactured and promoted 1,4-dioxane with knowledge that it would inevitably cause injuries, including SCWA's. *See* ¶¶ 6, 11–17, 26–32, 34–37 (alleging each Defendant knowingly manufactured and distributed 1,4-dioxane; knew or should have known it would be used in Suffolk County; and knew or should have known would migrate through groundwater, resist degradation, and be costly to remove from the public drinking water supply); *see also Fisher v. APP Pharm. LLC*, 783 F. Supp. 2d 424, 429 (S.D.N.Y. 2011) (finding sufficient product defect claims asserted against all manufacturer defendants without individualized distinctions).[13]

---

[13] Defendants' cases stand for the unremarkable proposition that group pleading is disfavored, but none were based on allegations that, as here, defendants each engaged in the same tortious conduct. *See Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12-CV-2837 (KBF), 2012 WL 6082387, at *6 (S.D.N.Y. Dec. 3, 2012), *aff'd on other grounds*, 530 F. App'x 19 (2d Cir. 2013) (different forms of copyright infringement alleged as among defendants); *Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 356 (E.D.N.Y. 2014) (unclear which defendant was responsible for which of several allegedly grossly negligent acts); *Atuahene v. City of Hartford*, 10 F. App'x 33 (2d Cir. 2001) (complaint lacked any factual basis to distinguish among defendants' conduct).

III.     **Counts III–VI Plead All Required Elements.**

   A.  **SCWA's Negligence Claim Plausibly Pleads the Duty Element (Count III).**

   A manufacturer owes a duty to "market only those products that are reasonably safe." *Silivanch v. Celebrity Cruises, Inc.*, 171 F. Supp. 2d 241, 253 (S.D.N.Y. 2001). "It is well-settled under New York law that a manufacturer is under a duty to use reasonable care in designing its product so that it will be safe when used in a manner for which the product was intended, as well as any unintended yet reasonably foreseeable use." *Liriano v. Hobart Corp.*, 132 F.3d 124, 126 (2d Cir. 1998). Here, SCWA alleges that the Defendant manufacturers owed a duty of care to SCWA not to place a defective product into the stream of commerce that it knew or should have known posed an unreasonably dangerous threat to the local drinking water. *See*, *e.g.*, ¶¶ 64, 67; *MTBE*, 725 F.3d at 123 ("[A] manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its products of which it knew or should have known.").

   *MTBE* presented a virtually identical factual scenario to this case. The Second Circuit affirmed the jury's negligence verdict in favor of New York City, holding: "Evidence of [defendant] Exxon's timely knowledge of the particular dangers of MTBE, combined with evidence about remedial measures available as early as the 1980s, was sufficient to allow the jury to determine that Exxon breached the standard of ordinary care." *MTBE*, 725 F.3d at 118–19. Despite Defendants' repeated efforts to conflate direct spiller liability with manufacturer liability, "negligence claims against manufacturers are distinct from negligence claims against the retailer who spilled [the contaminant]—the manufacturer's breach would be distributing a dangerous product, or failing to provide warnings as to the use of a product, while the spiller's breach would be failing to prevent leaks on its property." *MTBE*, 591 F. Supp. 2d at 276.

   "As commercial manufacturers, sellers, distributors, suppliers, marketers, and/or designers

of 1,4-dioxane products, *Defendants owed a duty of care to Plaintiff* not to place into the stream of commerce a product that was in a defective condition and unreasonably dangerous to the drinking water in Suffolk County." ¶ 64 (emphasis added). SCWA has further alleged that Defendants knew 1,4-dioxane is "highly toxic" and "poses a risk to human health and safety" but failed to warn of the foreseeable dangers of 1,4-dioxane, that the "products containing 1,4-dioxane purchased by third parties were used in a reasonably foreseeable manner and without substantial change in the condition of such products," and that SCWA's injuries were reasonably foreseeable. ¶¶ 10, 26, 42, 65, 67.

In MTBE, the Second Circuit examined the contours of manufacturer liability for water contamination following third party usage of a defective product, and concluded that the "duty to warn extends to third persons exposed to a foreseeable and unreasonable risk of harm." *MTBE*, 725 F.3d at 123.[14] Moreover, New York law is clear that absent a subsequent modification that substantially alters a product, a manufacturer is liable for "marketing a product that causes injuries that were *generally* foreseeable." *Silivanch*, 171 F. Supp. 2d at 254; *SCWA v. Dow Chem. Co.*, 987 N.Y.S.2d at 828 (rejecting motion to dismiss where plaintiff "alleged that the product was not only dangerous from the point of manufacture, but, also, that it was reasonably foreseeable that it would cause harm to the groundwater system wherever it was ultimately used").

Indeed, the Second Circuit has explained that "[i]n cases brought against manufacturers and suppliers for injuries resulting from the use of hazardous materials or other unreasonably dangerous products, courts have generally held that such manufacturers owe a duty to warn

---

[14] In affirming the District Court's jury instruction on duty, the Second Circuit also found that the "manufacturer of a product that is reasonably certain to be harmful if used in a way that the manufacturer should reasonably foresee, is under a duty to use reasonable care to give adequate warnings to foreseeable users of the product of any danger known to it or which in the use of reasonable care it should have known and which the reasonable user of the product ordinarily would not discover." *MTBE*, 725 F.3d at 123 n.44.

foreseeable users of the latent dangers of the product." *MTBE*, 175 F. Supp. 2d 593, 625 (S.D.N.Y. 2001); *see also Silivanch*, 171 F. Supp. 2d at 253. Here, as in *MTBE*, while plaintiffs "do not allege that the contamination of their wells was the direct result of their own use of [Defendants' products], the allegations are sufficient to show that the harm suffered by [SCWA] was a foreseeable result of defendants' placement of [products containing 1,4-dioxane] in the marketplace." *MTBE*, 175 F. Supp. 2d at 625.

Ignoring cases involving groundwater contamination, Defendants instead rely heavily on *Hamilton v. Beretta*, 96 N.Y.2d at 229. In *Hamilton*, relatives of people killed through the criminal use of illegally purchased handguns sued 49 handgun manufacturers. *Id.* The court in that case declined to extend the duty of manufacturers regarding the distribution of hazardous materials to the gun industry, focusing on the critical distinction that handguns "are concededly not defective— if anything, the problem is that they work too well." *Id.* at 235. Defendants' reliance on *McCarthy v. Olin Corp.*, 119 F.3d 148, 157 (2d Cir. 1997), a case against a bullet manufacturer over a criminal shooting, is inapposite for the same reasons. Here, in stark contrast to *Hamilton* and *McCarthy*, Defendants' products were inherently and unreasonably dangerous and posed a risk to the public health at the point of distribution. ¶¶ 10, 26; *see also SCWA v. Dow Chem. Co.*, 987 N.Y.S.2d at 828 ("[T]he assertion in the current complaint is that the product was defective the very moment it left the manufacturers' control and did not become dangerous, as in the case of handguns, only through the use of third parties.").

Defendants' superior knowledge of 1,4-dioxane's threat to drinking water and public health placed them in the *best* position to guard against the risk. *MTBE*, 175 F. Supp. 2d at 625–26 (allegations sufficient to demonstrate a duty owed where "[p]laintiffs allege that defendants were uniquely aware of the dangers . . . Despite this knowledge, they allegedly marketed the product

without warning anyone").[15]

## B.   SCWA's Public Nuisance Claim Is Plausible (Count IV).

"To prevail on a public nuisance claim under New York law, a plaintiff must show that the defendant's conduct amounts to a substantial interference with the exercise of a common right of the public, thereby endangering or injuring the property, health, safety or comfort of a considerable number of persons." *MTBE*, 725 F.3d at 121 (affirming public nuisance verdict against manufacturer); *MTBE*, 175 F. Supp. 2d at 627 n. 51 ("[T]he release or threat of release of hazardous waste into the environment unreasonably infringes upon a public right and thus is a public nuisance as a matter of New York law."); *State v. Schenectady Chems., Inc.*, 479 N.Y.S.2d 1010, 1013–14 (App. Div. 1984) (upholding public nuisance claims against chemical manufacturer).[16]

Defendants misleadingly urge that "the *MTBE* multidistrict litigation has repeatedly held, '[public] nuisance actions cannot lie against defendants who allegedly contribute to MTBE contamination merely as … manufacturers.'" Mot. at 18 (citing *MTBE*, No. 1:00-1898, 2015 WL 4092326, at *4 (S.D.N.Y. July 2, 2015)). Defendants omit a key detail: the statements they quote *applied the laws of other states, not New York*. *MTBE*, 2015 WL 4092326, at *4 & n.54 (citing cases applying Pennsylvania, California, and New Hampshire laws, but *none applying New York law*).[17] In sharp contrast, the Second Circuit considered this precise issue in *MTBE*, explaining,

---

[15] Here, SCWA alleges that Defendants knew 1,4-dioxane was highly toxic and instructed third party users "to dispose of waste solvents by pouring them onto the ground or into trenches for evaporating or burning." ¶¶ 10, 26, 36, 48, 64.

[16] Defendants do not dispute that as a public entity, SCWA is exempt from making a showing that it suffered special damages as a result of the public nuisance. *See State v. Fermenta ASC Corp.*, 616 N.Y.S.2d 702, 704, 707 (Sup. Ct. 1994) (finding that SCWA acting in its governmental capacity is not required to allege special damages); ¶ 5 (SCWA "is a public drinking water provider . . . operating as a public benefits corporation since 1951").

[17] For example, the District Court overseeing the *MTBE* multidistrict litigation that Defendants reference distinctly applied Pennsylvania law, where Pennsylvania courts have "repeatedly constrained liability for

Our sister Circuits have reached differing conclusions when presented with common law nuisance claims against a manufacturer who was not in geographic proximity to the plaintiff. . . . These cases turn in large part, however, not on the geographic proximity of the defendant to the nuisance but on whether the defendant knew that its product would endanger public health, and whether the defendant took steps to mitigate the risks associated with its product.

*MTBE*, 725 F.3d at 122 n.43. Indeed, in *MTBE*, "the jury could have concluded (and evidently did conclude) that Exxon knew of the dangers of MTBE and failed to take actions to mitigate MTBE contamination," thus establishing a cognizable public nuisance based on manufacturer liability for water contamination. *Id.* Here, SCWA alleges that Defendants knew of the dangers 1,4-dioxane posed to public health and failed to mitigate the harm, including by failing to warn. ¶¶ 26–32, 55, 65, 91. Rather, Defendants instructed third party users to dispose of their products on "the ground or into trenches," leading directly to drinking water contamination. ¶ 36.

In addition, everyone "who creates a nuisance or participates in the creation or maintenance thereof is liable for it" under New York law. *MTBE*, 725 F.3d at 121 (rejecting defendant's argument that its conduct as a mere manufacturer of gasoline was too remote to support the jury's public nuisance verdict); *MTBE*, 175 F. Supp. 2d at 628 ("Although defendants argue that they cannot be held liable for public nuisance because they had no control over the product at the time

---

public nuisance specifically to an owner or operator of a nuisance source." *MTBE*, 2015 WL 4092326, at *3. This is not so under New York law. *See MTBE*, 725 F.3d at 122 n.43. Rather, New York courts have found "there must be some circumstance under which a defendant can be held liable for common law public nuisance when its conduct results in … interference [with a common right], even if another party, not within the defendant's control, contributes to the nuisance." *MTBE*, 175 F. Supp. 2d 593, 629 (S.D.N.Y. 2001). Notably, where plaintiffs have alleged that defendants had knowledge of the contaminant's harmful chemical properties and dangers it poses to groundwater, participated in the promotion, resale, and marketing of the contaminant, and failed to warn "downstream handlers, retailers," purchasers, and "well owners" of the dangers associated with the contaminant, "these allegations are sufficient to demonstrate defendants' participation and assistance in the creation of a nuisance." *Id.* Likewise, SCWA has made identical allegations here. *See* ¶¶ 26–32. 55, 57, 59, 65, 72, 91.

it was 'released' onto plaintiffs' property, [o]ne is subject to liability for a nuisance caused by an activity, not only when [it] carries on the activity but also when [it] participates to a substantial extent in carrying it on."). Defendants' acts have contaminated SCWA's production wells, and 1,4-dioxane "renders drinking water unsafe and/or non-potable." ¶¶ 26, 33, 35.

### C.  SCWA's Private Nuisance Claim Is Plausible (Count V).

The elements for public and private nuisance are generally the same under New York law and can be pleaded together. *Hempstead*, slip op. at 26 (citing *Cangemi v. United States*, 939 F. Supp. 2d 188, 205 (E.D.N.Y. 2013); *Black v. George Weston Bakeries, Inc.*, No. 07-cv-853S, 2008 WL 4911791, at *6 (W.D.N.Y. Nov. 13, 2008) ("When the nuisance, in addition to interfering with the public right, also interferes with the use and enjoyment of the plaintiff's land, it is a private nuisance as well as a public one."). Whereas a public nuisance addresses harms common to the general public that unreasonably infringe upon a public right, private nuisance remedies harms to a single plaintiff or "a relatively few." *Copart Indus. Inc. v. Consol. Edison Co. of N.Y., Inc.*, 362 N.E.2d 968, 971 (N.Y. 1977). A private nuisance claim is actionable by those "whose rights have been disturbed," primarily defined as "an interference with the use or enjoyment of land." *Id.*

Defendants have unreasonably interfered with SCWA's use of its property by contaminating many of its wells. ¶ 1; s*ee MTBE*, 725 F.3d at 83 (finding comparable private nuisance claim legally cognizable based on allegations that defendants "interfer[ed] with the City's rights as a property owner"). As the entity responsible for delivering drinking water to Suffolk County residents, SCWA has suffered damages different from the general public. SCWA, alone, has to incur the monetary burden of investigating, monitoring, and treating its contaminated wells, requiring significant investments of time, money, and resources. Consequently, SCWA has suffered a distinct harm from the "contamination than that suffered by the public at large,"

satisfying the requirement to plead a unique harm that is not felt by the entire community. *Cf.*
*Hempstead*, slip op. at 27 (emphasizing that the town did not allege an injury distinct from the
harm suffered by the public at large).

### D.    SCWA's Trespass Claim Is Plausible (Count VI).

To be liable for trespass it is enough to show that the defendant, and specifically one that
manufactured the subject contaminant, knew that (1) the contaminant would be spilled, applied, or
otherwise introduced to the environment; (2) the contaminant's properties would cause it to spread
widely and rapidly in groundwater; and (3) as a result, it was substantially certain that the
contaminant would enter groundwater, including groundwater in the capture zone of plaintiff's
wells. *See MTBE*, 725 F.3d 65, 120 (2d Cir. 2013) (citing *State v. Fermenta ASC Corp.*, 656
N.Y.S.2d 342, 346 (App. Div. 1997)). "It is not necessary that the trespasser 'intend or expect the
damaging consequences of his intrusion,' only that it 'intend the act which amounts to or produces
the unlawful invasion.'" *Hicksville Water District*, 2018 WL 1542670, at *10 (citing *Phillips v.
Sun Oil Co.*, 307 N.Y. 328, 331 (1954)).[18]

Defendants knew that the chemical characteristics of their 1,4-dioxane products—
specifically their mobility and persistence in the environment—meant that those chemicals would
be substantially certain to result in the intrusion into SCWA's drinking water supply. ¶¶ 34, 43,
55, 91. Moreover, SCWA alleges that "users of chlorinated solvents, including [TCA, a major
source of 1,4-dioxane], were routinely advised by Defendants themselves to dispose of waste

---

[18] Although the *Hicksville* court found that plaintiffs "properly alleged the requisite intent to plead a trespass
claim," the court, citing *Ivory v. International Business Machines Corp.*, 983 N.Y.S.2d 110, 117 (App. Div.
2014), concluded that groundwater contamination alone could not support a trespass claim in that case
because water is a "natural resource entrusted to the state by and for its citizens." But in *Ivory*, as the court
in *Hicksville* conceded, plaintiffs were "private residential property owners," *Hicksville*, 2018 WL 1542670,
at *21, unlike here, where SCWA alleges that it has been entrusted to protect the local water supply in its
role as a public drinking water provider under New York Public Authorities Law. ¶ 5. Thus, Plaintiff, acting
in its State authority, has pleaded a cognizable trespass claim.

solvents by pouring them onto the ground or into trenches for evaporation or burning." ¶ 36.

In *Fermenta*, plaintiff SCWA determined that several of its wells had been contaminated by a chemical byproduct of an herbicide. 656 N.Y.S.2d at 344. SCWA sued the herbicide's manufacturer on several legal theories, including trespass. *Id.* In affirming the trial court's denial of summary judgment on the trespass claim, the court explained that "it is enough that the defendants' actions in directing consumers to apply [defendant's product] to the soil [were] substantially certain to result in the entry of [the contaminant] into SCWA wells." *Id.* at 346. Similarly, in *MTBE*, the jury found Exxon for trespass (and the Second Circuit affirmed), because Exxon "knew that the gasoline containing MTBE that it manufactured, refined, sold and/or supplied would be spilled." *MTBE*, 725 F.3d at 120; *see also MTBE*, 379 F. Supp. 2d at 426–27 (denying motion to dismiss a trespass claim, finding it could be reasonably inferred that defendants willfully intruded on plaintiff's property because defendants intentionally created and distributed MTBE-containing gasoline despite awareness of the dangers).

Just as the manufacturers in *MTBE* and *Fermenta* knew or should have known about the risks of their products, SCWA alleges here that Defendants manufactured, marketed, and sold dangerous products that they knew or reasonably should have known would contaminate SCWA's wells. ¶¶ 91–92. These allegations readily satisfy the intent element to state a trespass claim. Accordingly, Defendants' Motion to Dismiss Count VI should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendants' motion to dismiss.[19]

---

[19] To the extent that the Court may find the Complaint deficient in any regard, SCWA respectfully requests that it be granted leave to replead.

Dated: April 23, 2018                    Respectfully submitted,


                                         */s/ Victor M. Sher*
                                         Victor M. Sher

                                         VICTOR M. SHER (*pro hac vice*)
                                         vic@sheredling.com
                                         MATTHEW K. EDLING (*pro hac vice*)
                                         matt@sheredling.com
                                         KATIE H. JONES (*pro hac vice*)
                                         katie@sheredling.com
                                         **SHER EDLING LLP**
                                         100 Montgomery St. Suite 1410
                                         San Francisco, CA 94104
                                         (628) 231-2500

                                         SCOTT MARTIN
                                         smartin@hausfeld.com
                                         JEANETTE BAYOUMI
                                         jbayoumi@hausfeld.com
                                         **HAUSFELD LLP**
                                         33 Whitehall St., 14th Floor
                                         New York, NY 10004
                                         (646) 357-1100

                                         RICHARD S. LEWIS (*pro hac vice*)
                                         rlewis@hausfeld.com
                                         **HAUSFELD LLP**
                                         1700 K Street, NW, Suite 650
                                         Washington, DC 20006
                                         (202) 540-7200

                                         KATIE R. BERAN (*pro hac vice*)
                                         kberan@hausfeld.com
                                         **HAUSFELD LLP**
                                         325 Chestnut Street, Suite 900
                                         Philadelphia, PA 19106
                                         (215) 985-3270

                                         *Attorneys for Plaintiff*
                                         *Suffolk County Water Authority*