# SHER EDLING LLP
*PROTECTING PEOPLE AND THE PLANET*

December 8, 2020

<u>Via ECF</u>

Hon. Roanne L. Mann
United States Magistrate Judge
United States District Court
For the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  Joint Status Report; *Suffolk County Water Authority v. The Dow Chemical Company et al.*, No. 2:17-cv-6980-NG-RLM, and *Related Cases*

Dear Judge Mann:

The Parties submit this Joint Status Report in accordance with the Court's October 19, 2020 Scheduling Order, which directed the Parties to file a joint updated status report/letter-motion proposing a pretrial schedule.

There are 27 related cases before Your Honor. All are on behalf of Long Island public water suppliers and primarily seek damages for the costs of removing 1,4-dioxane ("dioxane") from hundreds of drinking water wells. Plaintiffs allege that The Dow Chemical Company ("Dow"), Ferro Corporation ("Ferro"), Vulcan Materials Company ("Vulcan"), Proctor & Gamble Company ("P&G"), and Shell Oil Company ("Shell") manufactured or promoted the dioxane or dioxane-containing products that contaminated their wells. Dow, Ferro, and Vulcan are Defendants in all 27 actions, while P&G and Shell are Defendants in three actions.

The Parties have not been able to reach agreement on a pretrial schedule and, as a result, have separately laid out their respective positions concerning case management and pretrial scheduling. Plaintiffs' position is set out in **Attachment A** and Defendants' position in **Attachment B**.

Respectfully submitted,

*/s/ Matthew K. Edling*

Matthew K. Edling
**SHER EDLING LLP**

100 Montgomery Street, Suite 1410 – San Francisco, CA 94104
Office: (628) 231-2500 – sheredling.com

# ATTACHMENT A

# SHER EDLING LLP
## PROTECTING PEOPLE AND THE PLANET

December 8, 2020

<u>Via ECF</u>

Hon. Roanne L. Mann
Chief Magistrate Judge
United States District Court
For the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re:** Attachment A – Plaintiffs' Position Regarding Case Management;
*Suffolk County Water Authority v. The Dow Chemical Company et al.*, No. 2:17-cv-6980-NG-RLM, and *Related Cases*

Dear Judge Mann:

Given the number of actions before the Court with overlapping claims and discovery, Plaintiffs' case management approach will expedite discovery, minimize economic burden, prioritize issues and cases for convenience of the parties and the Court, and provide a timeline to ready the first actions for summary judgment and trial if necessary. Plaintiffs have proposed several suggestions since spring of 2019, both to Defendants and to the Court. Ultimately, Plaintiffs' final proposal was rejected by Defendants earlier today.

The parties met in good faith but have different perspectives on **when** the parties should submit a proposed scheduling and case management order that addresses case prioritization, fact and expert discovery, dispositive motions, and trial. While Plaintiffs did not see the basis for Defendants' proposal as of the filing of this submission, Defendants' last proposal deferred any discussion of a pretrial schedule or case prioritization until December 2021, which is more than four years after the first action was filed, *Suffolk County Water Authority v. The Dow Chemical Company et al.*, No. 2:17-cv-6980-NG-RLM. Plaintiffs believe those issues can be addressed now, and that the parties and the Court will benefit from doing so.[1]

Plaintiffs' proposal can be summarized as follows:

- The first-filed action, *Suffolk County Water Authority v. The Dow Chemical Company et al.*, No. 2:17-cv-6980-NG-RLM, should be one of the prioritized cases, as reflected in the proposed case schedule below.

- All parties substantially complete their document production by March 31, 2021;

---

[1] Defendants have not agreed that the first-filed *Suffolk County Water Authority* action should be a prioritized case.

- By April 15, 2021, the parties submit to the Court a joint status report regarding the parties' plan for determination of prioritization and pretrial readiness for additional related cases; and

- By June 15, 2021, the parties shall identify the additional related cases to be prioritized, their pretrial readiness, and proposed pretrial schedules for those prioritized actions.

Below is an overview of the discovery to date and a memorialization of Plaintiffs' continued case management proposals to Defendants and the Court.

**A. Discovery and Case Management**

Since spring 2019, Plaintiffs have repeatedly attempted to engage Defendants in a conversation regarding a case management schedule that sets forth discovery and trial deadlines and contemplates a timeline for selection of prioritized cases to be set for full discovery and case completion. *See* Dkt. No. 108 (detailing Plaintiffs' proposed discovery schedule for all cases and time period for selection of prioritized cases for trial readiness). Between June and August 2019, Plaintiffs and Defendants collaborated on the creation, distribution, and completion of facts sheets in lieu of Rule 26 disclosures and "to facilitate an exchange of information that would help frame subsequent formal discovery and lay the groundwork for discussions about case management." *See* Dkt Nos. 126, 127, 137. Copies of the plaintiff fact sheet and defendant fact sheet are available at Dkt. No. 127.

On November 26, 2019, the Parties exchanged completed fact sheets and accompanying document productions. Dkt. No. 137. Plaintiffs produced more than 27,000 pages of documents along with their fact sheet responses. Defendant The Dow Chemical Company served 7,530 pages of documents; Defendant Ferro Corporation served 124 pages; Defendant Vulcan Materials Company served 357 pages; Defendant Procter & Gamble served 35 pages; and Defendant Shell Oil Company served 13 pages. Dkt. No. 137.

Corresponding with the fact sheet completions, in November 2019, Plaintiffs proposed a detailed case schedule to Defendants. Defendants asked to defer case management discussion until all fact sheet information was received. Supplemental fact sheet information for the later-filed cases was provided to Defendants in March 2020. Between March 2020 and now, Plaintiffs requested substantive case management discussions with Defendants ahead of each scheduled status conference and related status report submission. Defendants refused to discuss these matters in detail.

On January 21, 2020, Defendants served common requests for production of documents ("RFPs") and a common interrogatory across the cases. Plaintiffs served their responses on July 1,



2020.[2] Plaintiffs have produced nearly 60,000 documents to Defendants as part of the fact sheet process and in response to Defendants RFPs.

Since November 2019, in their fact sheet responses and in subsequent document productions, Plaintiffs have produced responsive documents for the following categories of documents and information:

1. Plaintiff water provider information (i.e., size, location, number of wells, general water provider history);
2. Distribution maps, distribution zones, and information regarding service areas, including number of customers served;
3. Well locations, including well location information that was not requested in the fact sheets or Defendants' requests for productions (i.e., well coordinates);
4. Well details and specifications (i.e., depths, screening intervals, construction details);
5. Source Water Assessment Program reports and other well capture zone information
6. Well radius and Toxics Targeting reports (information Defendants' requested for their "point source" theory);
7. Comprehensive sampling information for dioxane and related contaminants;
8. Engineering reports;
9. Documents concerning treatment for dioxane, including costs associated with such treatment;
10. Information regarding Plaintiffs' membership in certain trade organizations;
11. Information regarding sources of water used for Plaintiffs' water supply;
12. Pumpage reports and myriad pumpage information;
13. Current and historic treatment methods for dioxane;
14. Plaintiffs' interconnection information;
15. Steps each Plaintiff has taken to identify potential sources of dioxane contamination
16. Steps taken and efforts spent to mitigate dioxane contamination impact on Plaintiffs' water supplies;
17. Anticipated/planned steps for future mitigation of dioxane contamination;
18. Information regarding funds received or requested (including grants and bonds) to address/treat dioxane contamination;
19. Categories of costs that have been or will be incurred for dioxane treatment and where applicable, estimates of those costs;
20. Correspondence with local, state, and federal governmental entities regarding dioxane contamination and treatment;

---

[2] Plaintiffs also served RFPs on Defendants in January, and Defendants then requested a mutual extension to respond to the outstanding discovery to July 1, 2020 due to COVID-19 complications. Until recently, Defendants had collectively produced under 2,000 documents. Now, Defendants have produced closer to 60,000 documents because of a recent large production from Defendant Proctor & Gamble.


SHER EDLING LLP
*PROTECTING PEOPLE AND THE PLANET*

21. Where applicable to a Plaintiff, lists of potential "point sources" and contaminated sites;
22. Lists of each Plaintiff's likely key witnesses/personnel who might have discoverable information; and
23. Hydrogeological maps and information.

Defendants now claim that scheduling discussions cannot occur until: (1) they have "point source information" and "detection information to know what wells are at issue" in every case; (2) document production in every case is complete; and (3) unlimited depositions occur across each case.

- Point Source Information: Defendants have had the vast majority, if not all, of Plaintiffs' responsive "point source" documents for months and have had Plaintiffs' interrogatory response on this exact topic since July 1, 2020 ("For each Supply Well you allege requires treatment to remove 1,4-dioxane, identify: (a) Each source You know to have contributed to the 1,4-dioxane in such Supply Well; or (b) If You do not know the source of the 1,4-dioxane in such Supply Well, each source You suspect to have contributed to the 1,4-dioxane in such Supply Well.").

- Detection Information: Plaintiffs produced detections and identification of **all** impacted wells with their fact sheet responses in November 2019, which have been supplemented where necessary since then. Defendants have had complete sampling histories from the majority of Plaintiffs for dioxane and related contaminants since November 2019 and from the later-filed Plaintiffs since March 2020, including thousands of sample results for each Plaintiff, and for some Plaintiffs, hundreds of thousands of sampling results.

- Document Production: Since the summer of 2019, Plaintiffs prioritized production of information by issue, custodian, or Plaintiff to substantially respond to fact sheet inquires and document requests. Defendants did not respond to additional offers to take this approach for the remaining document productions. Despite just recently having been apprised of Defendants belief that they need more documents to discuss a case schedule, Plaintiffs expect substantial completion of document productions will occur in every case by March 31, 2021.

- Depositions: Defendants have stated that depositions across each matter should be permitted before any case can be selected for completion of discovery and trial readiness. On this point, Plaintiffs disagree and believe a schedule can be reached, at least, as to the first-filed case (*Suffolk County Water Authority*) now and for other prioritized cases after document production is substantially complete in March 2021. Plaintiffs also offered to limit depositions of the Plaintiffs in a way that would assist Defendants in getting whatever information will allow them to discuss scheduling (e.g., by topic or a certain number of Plaintiffs). Defendants refused this and other efforts to compromise on this front.

At this juncture, the parties' disagreement is a straightforward one. Defendants continue to seek "more information" from every plaintiff and, it appears, all third parties before any case


SHER EDLING LLP
PROTECTING PEOPLE AND THE PLANET

prioritization discussion occurs, with no pretrial dates even set until discovery across every case is completed. Plaintiffs respectfully submit that Defendants' position ignores the function and benefit of the substantial information that Plaintiffs provided in response to the fact sheets served in November 2019—fact sheets that were designed collaboratively by all parties for the purpose of targeted discovery and selection of cases for more robust discovery. And even beyond the months spent on those tailored fact sheets, Plaintiffs have produced nearly 60,000 documents to Defendants as part of the fact sheet process and in response to Defendants' RFPs.

While Plaintiffs understand that Defendants need certain information to discuss prioritized cases and related case scheduling, Plaintiffs believe this information has been provided in response to fact sheets, in response to Defendants' interrogatory, and by Plaintiffs' document productions to date. At a minimum, a pretrial schedule for the first-filed case must be possible when substantial completion of document production occurs—expected in March 2021.

### B. Plaintiffs' Case Schedule Proposal

If Plaintiffs, on the basis of the fact sheets and Defendants' to-date modest productions, are prepared to address the significant common issues of law and fact across all of the related cases—which Defendants *do not dispute exist*—and prioritize a certain number of actions where full discovery will be permitted while common discovery across all cases is simultaneously conducted, Defendants should be prepared to do so as well. Such an approach was employed by Judge Scheindlin in *In re: Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation* (MDL No. 1358), which likewise involved drinking water contamination litigation brought by public entities, as a matter of public health and priority concern.

Plaintiffs' case schedule proposes that the first-filed *Suffolk County Water Authority* matter be set for further discovery and trial, as indicated in the chart below. Plaintiffs' proposal also contemplates selecting additional prioritized cases for remaining fact discovery, expert discovery, and trial so that the cases can be effectively managed and prepared for trial. Plaintiffs' proposal assumes that all parties will substantially complete document productions by March 31, 2021. Any non-duplicative fact discovery for prioritized cases (including but not limited to depositions) will conclude by November 2021. Thereafter, expert discovery and summary judgment briefing for *Suffolk County Water Authority* and each prioritized action as well as issues common to all cases would commence with a briefing schedule to be set by the Court and trial setting to follow thereafter.

| **Fact Discovery** | |
|---|---|
| Deadline to submit a joint status report regarding the parties' plan for determination of prioritization and pretrial readiness for the additional prioritized cases. Areas of disagreement, if any, concerning the plan shall be identified. | April 15, 2021 |



*SHER EDLING LLP*
*PROTECTING PEOPLE AND THE PLANET*

| | |
|---|---|
| Deadline to identify additional cases for prioritization and pretrial readiness; submission of proposed pretrial schedule for those prioritized actions. | June 15, 2021 |
| Completion of fact discovery for *Suffolk County Water Authority v. The Dow Chemical Company et al.*, No. 2:17-cv-6980-NG-RLM. | November 23, 2021 |
| **Expert Discovery for Suffolk County Water Authority Action** | |
| Deadline to serve initial expert reports. | February 15, 2022 |
| Deadline to serve rebuttal expert reports. | April 16, 2022 |
| **Dispositive Motions and Pre-Trial Order for Suffolk County Water Authority Action** | |
| Final date to request a summary judgment pre-motion conference. | June 15, 2022 |
| Deadline to file any summary judgment motion (if not set by the Court at the pre-motion conference). | August 15, 2022 |
| Submission of joint pre-trial order. | To be set after Court's ruling on any summary judgment motions. |

Plaintiffs welcome the opportunity to discuss any of the above if the Court wishes to set a status conference or otherwise set a time to discuss these matters with the parties.

Respectfully submitted,

*/s/ Matthew K. Edling*
Matthew K. Edling

MATTHEW K. EDLING
matt@sheredling.com
VICTOR M. SHER
vic@sheredling.com
STEPHANIE D. BIEHL
stephanie@sheredling.com
KATIE H. JONES
katie@sheredling.com



TIMOTHY R. SLOANE
tim@sheredling.com
NICOLE E. TEIXEIRA
nicole@sheredling.com
**SHER EDLING LLP**
100 Montgomery St. Suite 1410
San Francisco, CA 94104
(628) 231-2500

*Attorneys for Plaintiffs*[3]

SCOTT MARTIN
smartin@hausfeld.com
JEANETTE BAYOUMI
jbayoumi@hausfeld.com
**HAUSFELD LLP**
33 Whitehall St., 14th Floor
New York, NY 10004
(646) 357-1100

RICHARD S. LEWIS
rlewis@hausfeld.com
**HAUSFELD LLP**
1700 K Street, NW, Suite 650
Washington, DC 20006
(202) 540-7200

KATIE R. BERAN
kberan@hausfeld.com
**HAUSFELD LLP**
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
(215) 985-3270

*Attorneys for Plaintiff Suffolk County Water Authority*

FRANK R. SCHIRRIPA
fschirripa@hrsclaw.com
MICHAEL A. ROSE
mr@hachroselaw.com
HILLARY M. NAPPI
hnappi@hrsclaw.com
**HACH ROSE SCHIRRIPA & CHEVERIE, LLP**
112 Madison Avenue - 10th Floor
New York, New York 10016
(212) 213-8311

J. NIXON DANIEL, III
jnd@beggslane.com
MARY JANE BASS
mjb@beggslane.com
**BEGGS & LANE, RLLP**
501 Commendencia Street
Pensacola, FL 32502
850-469-3306

T. ROE FRAZER, II
roe@frazer.law
THOMAS ROE FRAZER, III
trey@frazer.law
W. MATTHEW PETTIT
mpettit@frazer.law
**FRAZER PLC**
30 Burton Hills Blvd
Suite 450
Nashville, TN 37215
615-647-0987

*Attorneys for Plaintiff New York American Water Company, Inc.*

PAUL J. NAPOLI
pnapoli@napolilaw.com
LILIA FACTOR
lfactor@napolilaw.com

---

[3] The Sher Edling firm represents all Plaintiffs in these related cases except Plaintiffs New York American Water (19-cv-2150) and Hicksville Water District (19-cv-5632).

                                      **NAPOLI SHKOLNIK PLLC**
                                      360 Lexington Avenue, 11th Floor
                                      New York, NY 10017
                                      (212) 397-1000

                                      *Attorneys for Plaintiff Hicksville Water*
                                      *District*



# ATTACHMENT B

# ATTACHMENT B

## Defendants' Position regarding Case Management and Pretrial Scheduling

Despite seeking billions of dollars, in the aggregate, across 27 distinct cases, Plaintiffs want the Court to put most of their actions on indefinite hold and to prematurely pick a few cases that will be deemed "priority" and tried ahead of other cases. And they want the Court to do this before sufficient discovery has been taken in the individual actions, discovery that would provide the Court a record that would inform discussions, proposals, and decisions about these important issues. Frontloading this ultimate case management issue, as Plaintiffs propose, would cause undue prejudice to Defendants. It would allow Plaintiffs to dictate the type and scope of discovery Defendants may take, limit the actions in which fact discovery occurs, and deprive Defendants of their right to develop evidence before "prioritization" through one of the most fundamental discovery tools of all: depositions.[1]

Plaintiffs' attempt to limit discovery to a handful of cases is not a response to either discovery abuses (there have been none) or any bona fide concern that such abuses are likely to occur (abuses that, in any event, could be policed through protective orders). Plaintiffs, notwithstanding the seriousness of their allegations and the magnitude of the damages they claim, simply do not want to be bothered with depositions. Of course, Defendants did not want to be burdened with 27 lawsuits, but now that they have been filed, Defendants have a right to investigate these claims and develop their affirmative defenses through the full range of discovery tools—including depositions—permitted under the Federal Rules of Civil Procedure.

Contrary to what Plaintiffs suggest, these 27 lawsuits are not "one size fits all" actions. Plaintiffs' position that unidentified "common issues" predominate and "prioritization" can and should occur now ahead of other record-developing discovery is nonsensical. This is not a class action; these are individual cases, brought by separate water districts at different locations with different industrial histories, different well locations, different potential sources of contamination that occurred at different times and in different ways, different internal approaches to the management of their water supply, and different remediation actions and decisions. Resolution of "prioritized" cases will do nothing to promote the efficient resolution of all the cases. But the problem here runs deeper: Plaintiffs are trying to foreclose discovery that would lead to a better

---

[1] Over the course of the last several weeks Plaintiffs' position with respect to case management has bounced about. In October, for example, Plaintiffs proposed to end "initial" and "common" fact discovery (nowhere defined) on June 30, 2021. Last week, they proposed to complete their initial document production by September 15, 2021. And yesterday, Plaintiffs proposed to complete their document production by March 30, 2021. Although Plaintiffs' current position is not entirely clear, the common thread through all of their proposals is that case "prioritization" should occur without Defendants first having the opportunity to take depositions and other discovery that would illuminate the issues in these actions and inform discussions about these and other case management issues.

understanding of the claims and inform discussions and decisions relating to case prioritization. For example:

- What is the source of the alleged dioxane contamination? An industrial source, residential septic systems, commercial laundromats, or something else?

- When and how did the contamination occur? An accidental spill, a homeowner pouring dioxane-containing products into its septic system? Illegal dumping or other failures to follow laws governing the use and disposal of such materials?

- What evidence connects the source of the contamination to a product produced by any defendant?

- How do the circumstances of the contamination relate, if at all, to any defendants' product literature?

- How sophisticated and knowledgeable about solvents were the entities that are determined to have been the source of the contamination? What practices did they follow relating to the use and disposal of dioxane-containing solvent products?

- When did particular plaintiffs learn of the contamination affecting their wells? What did they do about it?

- What alternatives did plaintiffs consider other than the costly AOP systems on which they base their damages claims?

- Which plaintiffs have wells that are tied to Superfund sites that are or were themselves the subject of government-supervised remediation and consent orders?

Additional case-specific discovery relating to these and other issues is important to deciding whether third-parties should be joined in certain of these actions and whether particular cases should have priority. At this stage, however, the parties do not have enough information to even identify all the relevant third-parties. One reason for this is that most Plaintiffs filed their actions without first investigating the source of the contamination on which they base their claims or any of the facts surrounding how the contamination occurred. Given their current case management proposal, these Plaintiffs apparently believed that they could bring lawsuits without having to do anything more than produce some documents. That, of course, is not how the rules work.

Plaintiffs' attempt to portray their proposal as an effort to achieve "economic efficiencies" is meritless. Left unsaid is that these are separate actions, and none of them is small. Consider that when the State set 1 part per billion as the drinking water standard (the Maximum Contaminant Level) for dioxane, it estimated that 89 wells Statewide would require treatment with upfront costs of $3.575 million per well. Plaintiffs, however, have upped the ante, claiming damages for nearly 500 hundred wells, 75% of which have dioxane levels <u>below</u> the 1 ppb MCL and more than half of which are below 0.5 ppb, and they told the Court at the last status conference that treating these wells will cost $8 to 13 million each. The Court should not

2

reward this kind of overreaching by limiting Defendants' right to take deposition discovery in these actions before decisions are made about case prioritization.

That does not mean that after some period of deposition discovery there should not be a discussion about case management and potentially prioritizing particular cases for trial. But at this point, any such discussion and any decision by the Court would for all intents and purposes be blind; the record, limited as it currently is to still-incomplete document discovery, is too sparse to make those kinds of draws, at least at this stage. That is why Defendants proposed that following the completion of document discovery, the parties begin depositions, just as they would in any other case, and regularly report to the Court the progress they are making and raising issues that might require judicial intervention. Defendants expect this discovery to be as acrimony-free as the document discovery has been.

We then expect that by late Fall, enough information will have been obtained to make informed proposals—supported by the record—about case management and the prioritization of cases. If Plaintiffs are able to complete their document productions sooner than the months they claim they still need, then this process can be accelerated. Given the claimed damages in these cases and Plaintiffs' complete control of the key information and witnesses on which their claims (and key defenses) will turn, it would be fundamentally unfair to not allow Defendants an opportunity to develop evidence that would guide case management decisions relating to these matters.

Defendants' proposed schedule is set forth below. It includes deadlines for the completion of document discovery, both by parties and third-parties, and, if necessary, the filing of motions to compel. While COVID-issues have delayed some of the document discovery to date, progress has been made, and we believe that parties should be able to comply with the proposed deadlines.

The schedule also includes a date for the commencement of deposition discovery. For now, these depositions would not be confined to particular actions or limited in scope. Each side would develop the evidence it deems appropriate, mindful of course that, at the appropriate time, such discovery will be used to formulate proposals for subsequent case management and develop their positions concerning the potential prioritization of cases.

The schedule also provides for regular progress reports to the Court. These reports will give both sides the opportunity to raise with the Court any concerns they have relating to the discovery that has occurred or is proposed.

Finally, the schedule includes a "reset button" in the form of a year-end deadline for the parties to submit for discussion with the Court their proposals for subsequent case management, including their positions concerning case prioritization, fact and expert discovery, dispositive motions, and trial. By that time, both sides should have enough information to ensure that their proposals are grounded in a fuller understanding of the facts and issues, and will be in a position to brief such issues as needed, so the Court has a full record on which to rule on them.

| DEFENDANTS' PROPOSED SCHEDULE ||
| --- | --- |
| **Event** | **Deadline** |
| Parties to file Joint Status Reports concerning the status and progress of discovery and identify known or anticipated disputes or issues requiring Court intervention | February 15, 2021; May 17, 2021; August 16, 2021 |
| Deadline to complete party document productions in response to outstanding discovery | February 1, 2021<br>(Plaintiffs propose March 31) |
| Deadline for motions to compel relating to party document discovery | February 15, 2021 |
| Commencement of depositions | March 1, 2021 |
| Deadline to file motions to compel relating to third-party document subpoenas served before December 1, 2020 | April 1, 2021 |
| Deadline to serve additional written discovery directed at case management issues | September 22, 2021 |
| Deadline for parties to submit their proposals for subsequent case management, including their positions concerning the issue of case prioritization, fact and expert discovery, dispositive motions, and trial. The Court will then set a hearing date to resolve any disagreement over scheduling and case management and allow the parties to brief these issues as necessary. | December 6, 2021 |