**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
**NEW YORK AMERICAN WATER COMPANY, INC.,**

        **Plaintiff,**

  - v. -

**THE DOW CHEMICAL COMPANY, FERRO CORPORATION, VULCAN MATERIALS COMPANY, PROCTER & GAMBLE, SHELL OIL COMPANY, JOHN DOE DEFENDANTS 1–50,**

        **Defendants.**

-------------------------------------------------------x
**HICKSVILLE WATER DISTRICT,**

        **Plaintiff,**

  - v. -

**THE DOW CHEMICAL COMPANY, FERRO CORPORATION, VULCAN MATERIALS COMPANY, PROCTER & GAMBLE, SHELL OIL COMPANY,** *individually and doing business as* **SHELL CHEMICAL, LP,**

        **Defendants.**

-------------------------------------------------------x

**OPINION & ORDER**

**19-CV-2150 (NG) (RLM)**

**19-CV-5632 (NG) (RLM)**

**GERSHON, United States District Judge:**

      Plaintiffs New York American Water Company, Inc. ("N.Y. American Water") and Hicksville Water District ("Hicksville") bring these two related actions against Procter & Gamble ("P&G"), Shell Oil Company ("Shell"), The Dow Chemical Company ("Dow"), Ferro Corporation ("Ferro"), and Vulcan Materials Company ("Vulcan"). Plaintiffs allege that defendants manufactured, promoted, and sold 1,4-dioxane ("dioxane") or products containing dioxane that

caused the contamination of the groundwater that is the source of their public water supply systems. Each complaint[1] raises five common law tort claims: strict products liability for defective design and failure to warn, negligence, public nuisance, and trespass.[2] Both plaintiffs seek compensatory and punitive damages, costs, and attorneys' fees, and N.Y. American Water additionally seeks injunctive relief.

Before the court are joint motions by defendants P&G and Shell to dismiss each plaintiff's complaint as against them. They seek dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on the basis that plaintiffs have failed to sufficiently allege substantial factor causation, and for lack of subject-matter jurisdiction under Rule 12(b)(1) on the basis that plaintiffs have failed to allege injuries that are fairly traceable to P&G or Shell. Moving defendants also seek to dismiss Hicksville's claims concerning one of its supply wells, Well 4-2, as time-barred. For the reasons set forth below, the motions are denied.

**I.   Procedural History**

These actions are two of 27 related cases pending before me. Each of the other 25 cases was previously subject to a motion to dismiss. The actions each contain the same core allegations that defendants are producers of dioxane or products containing dioxane and are responsible for the release of dioxane and contamination of plaintiffs' wells. The first-filed action, *Suffolk County Water Authority v. The Dow Chemical Company, et al.*, 17-CV-6980 ("*Suffolk*"), includes the same defendants as the two present actions. The Honorable Joseph F. Bianco, then district, now circuit, judge, to whom that case was previously assigned, denied defendants' joint motion to dismiss each

---

[1] N.Y. American Water filed a complaint, amended complaint, and corrected amended complaint. The corrected amended complaint filed August 12, 2019 will be treated as the operative complaint.

[2] Each plaintiff withdrew claims for private nuisance.

2

claim, except for a private nuisance claim, which he dismissed, in an oral decision dated December 13, 2018. On June 4, 2020, I also denied a motion to dismiss brought by defendants Dow, Ferro, and Vulcan in the 24 cases in which P&G and Shell are not named as defendants. *See Locust Valley Water Dist. v. Dow Chem. Co.*, ("*Locust Valley*"), 465 F. Supp. 3d 235, 243 (E.D.N.Y. 2020).

## II. Factual Allegations

The following facts are drawn from the complaints and are assumed to be true for the purposes of this motion.

N.Y. American Water owns and operates 17 public supply well systems that provide drinking water to an estimated 125,000 customers throughout New York State, including the counties of Nassau, Orange, Putnam, Sullivan, Ulster, Washington, and Westchester. Hicksville operates 14 municipal water supply wells that supply drinking water to more than 48,000 residents over a 7.9 square mile area in Hicksville, Nassau County, New York.

Dioxane, a synthetic industrial chemical, is a highly toxic, colorless, flammable liquid with multiple uses.[3] For example, dioxane is used as a solvent in the extraction of animal and vegetable oils and in the formulation of inks, coatings, adhesives, paints, varnishes, and lacquers. Dioxane is also generated as a byproduct of the production of ethoxylated surfactants and therefore occurs in certain consumer products, such as deodorants, shampoos, laundry detergents, cosmetics, and antifreeze. The United States Environmental Protection Agency ("EPA") classifies dioxane as a probable human carcinogen and an emerging contaminant to the environment. Exposure to the chemical poses short-term risks of eye, nose, and throat irritation, and long-term risks of kidney

---

[3] A more detailed description of the properties and history of dioxane is set forth in my order of June 4, 2020 denying Dow, Ferro, and Vulcan's motion to dismiss the 24 related complaints. *See Locust Valley,* 465 F. Supp. 3d at 237–38.

and liver damage. Dioxane has several properties that pose unique risks to the environment, including that it migrates long distances through soil and groundwater and cannot be removed easily from water systems using traditional treatment methods.

The complaints are against five defendants. Three defendants, Dow, Ferro, and Vulcan, have answered the complaints. Dow and Ferro are alleged to have been the primary manufacturers of dioxane in the United States, and Vulcan allegedly licensed technology from Dow to produce dioxane-stabilized methyl chloroform.

The allegations pled against all five defendants are that, as manufacturers, sellers, handlers, and dischargers of dioxane and products containing dioxane, defendants knew or should have known that the inclusion of dioxane in any such products presented an unreasonable risk to human health and the environment, and that dioxane's unique properties make it highly likely to contaminate water supplies if released into the environment. Despite knowledge of these risks, plaintiffs allege, defendants handled, discharged, and were otherwise responsible for the release of dioxane in the vicinity of plaintiffs' wells, including by manufacturing and selling dioxane and products containing dioxane with no warnings or instructions on use or disposal to avoid contamination. As a result, dioxane migrated through the subsurface and into the groundwater and now contaminates each of their wells. Each plaintiff has detected the presence of dioxane in its water supply—N.Y. American Water has detected dioxane in groundwater in various locations throughout New York, and Hicksville has detected dioxane in 11 of its wells[4]—and each has incurred significant costs related to the assessment and remediation of the dioxane contamination.

---

[4] Dioxane has been detected in Wells 1-4, 1-6, 4-2, 5-2, 5-3, 7-1, 8-2, 8-3, 9-1, 9-2, and 9-3.

With respect to moving defendants, Hicksville alleges that the most widespread household product containing dioxane as a byproduct is laundry detergent and that P&G produces Tide, the leading laundry detergent brand since 1945.[5] Hicksville further alleges, and moving defendants acknowledge, that P&G uses a surfactant manufactured by Shell in its production of Tide laundry detergent. Shell allegedly created a Neodol line of surfactants specifically for P&G and has identified how dioxane is formed during the production of ethoxylated surfactants.

Moving defendants argue that the prior decisions by Judge Bianco and me in the related cases denying motions to dismiss are not determinative because P&G and Shell are differently situated from Dow, Ferro, and Vulcan, who are alleged to have manufactured dioxane or dioxane-stabilized solvents. Specifically, moving defendants contend that plaintiffs' claims against them must be dismissed because they "treat[] Tide laundry detergent, a product that may contain trace levels of dioxane as a byproduct, no differently than pure dioxane."

### III. Legal Standards

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). To establish the "irreducible constitutional minimum" of Article III standing, a plaintiff must allege "an injury in fact" that is "fairly . . . trace[able]" to the defendant's allegedly unlawful conduct and likely to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). The fairly

---

[5] With respect to detergents, N.Y. American Water's bare bones complaint mentions that dioxane is used in the formulation of products, including "detergent preparations," and that the list of ordinary consumer products containing dioxane as a byproduct surfactant includes, *inter alia*, laundry detergents.

traceable requirement "does not create an onerous standard," but rather a "standard lower than that of proximate causation." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016).

Under Rule 12(b)(6), the court must accept as true all well-pleaded factual allegations and must draw all inferences in the plaintiff's favor. *Swiatkowski v. Citibank,* 446 F. App'x. 360, 360–61 (2d Cir. 2011). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face" and satisfy Federal Rule of Civil Procedure 8(a)(2). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Facial plausibility exists when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## IV. Discussion

### A. Rule 12(b)(6) — Have Plaintiffs Adequately Pled Causation?

#### i. Substantial Factor Causation

As in *Suffolk* and *Locust Valley,* the parties here dispute whether plaintiffs have adequately alleged substantial factor causation. Under the substantial factor standard for causation, which has been adopted in New York, "an act or omission is regarded as a legal cause of an injury 'if it was a substantial factor in bringing about the injury.'" *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 725 F.3d 65, 116 (2d Cir. 2013) (quoting *Schneider v. Diallo*, 14 A.D.3d 445, 445–46 (1st Dep't 2005)). The standard "recognizes that often many acts can be said to have caused a particular injury, and requires only that defendant's actions be a substantial factor in producing the injury." *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 591 F. Supp. 2d 259, 266 (S.D.N.Y. 2008). The Second Circuit has established that "[t]he word

'substantial' means that the act or omission 'had such an effect in producing the injury that reasonable people would regard it as a cause of the injury.'" *MTBE*, 725 F.3d at 116 (quoting *Rojas v. City of New York*, 208 A.D.2d 416, 617 (1st Dep't 1994)). Plaintiffs bear the burden of proving that the moving defendants' conduct was a substantial factor resulting in their injuries. *Id.* In groundwater cases, which frequently require extensive discovery, causation is generally a question for the finder of fact. *Hicksville Water Dist. v. Philips Elecs. N. Am. Corp.*, 2018 WL 1542670, at *6–7 (E.D.N.Y. Mar. 29, 2018).

Judge Bianco and I previously rejected arguments from defendants in related cases that causation had not been adequately pled. In *Suffolk,* in which Shell and P&G were named as defendants, Judge Bianco held that:

> for purposes of the pleading, certainly the plaintiff[ ] [has] alleged that each of the defendants manufactured, marketed, and promoted the [dioxane] product and that it was a substantial factor in contaminating the Suffolk County Water Authority's wells . . . [T]here's more than sufficient allegations for purposes of pleading and surviving a motion to dismiss on the issue of causation.

*Suffolk* Motion to Dismiss ("MTD") Transcript, December 13, 2018, at 6–7. In *Locust Valley*, defendants Dow, Ferro, and Vulcan argued that plaintiffs could not adequately plead causation in light of their own admissions that, "[u]sing currently accepted scientific methods, it is impossible, based on the chemical's physical characteristics, to identify the manufacturer . . . or the product containing the [dioxane]." *Locust Valley*, 465 F. Supp. 3d at 240–41. In considering the Second Circuit's ruling in *MTBE,* however, I concluded that it would be unreasonable to view the plaintiffs' allegations as an admission that they cannot prove substantial factor causation. *Id.* In *MTBE*, the Second Circuit affirmed the jury's finding that plaintiff successfully proved direct, substantial factor causation despite the fact that plaintiff had not traced individual MTBE molecules back to defendant Exxon, concluding that the plaintiff "identified the 'exact defendant

7

whose product injured' it[.]" *MTBE*, 725 F.3d at 116–17. The Court also upheld the jury instruction permitting the consideration of market share data as circumstantial evidence to aid in determining the scope of defendant's contribution to the injury. *Id.* at 117. I therefore observed in *Locust Valley* that, despite factual differences among the cases, "the relevant principle of the Second Circuit's *MTBE* decision—that direct, substantial factor causation can be proven in a groundwater contamination case asserting manufacturer liability resulting from a fungible contaminant—applies all the same." *Locust Valley,* 465 F. Supp. 3d at 241 (citing *id.* at 116–17).

The heart of moving defendants' argument is that plaintiffs' complaints inappropriately use "group pleadings" and treat moving defendants, who are alleged to manufacture, distribute, or sell products containing dioxane, no differently from the other defendants, who manufacture pure dioxane or dioxane-stabilized products. Moving defendants acknowledge that they presented similar arguments in the *Suffolk* motion to dismiss, but contend that Judge Bianco's oral ruling "did not analyze the causation issue in any detail." *Hicksville* Def. Mem., at 8 n.4. They argue that, as applied to moving defendants' conduct, the decision was based on an incorrect understanding that Suffolk had alleged that "each of the defendants manufactured, marketed, and promoted the diox[ane] product." *Hicksville* Def. Reply, at 4 (citing *Suffolk* MTD Trans., at 6–7). Contrary to moving defendants' suggestion, I am confident Judge Bianco knew full well what he was doing when he expressly rejected defendants' "group pleading" arguments in *Suffolk*. Indeed, the ruling referred directly to the section of the complaint which alleges that P&G, as a leading manufacturer of laundry detergents, uses a line of surfactants produced by Shell, and that "[d]efendant producers of ethoxylated surfactants and products containing such compounds have been aware that [dioxane] is present in their products as an impurity of production." *Suffolk* Compl. ¶ 31; *see also Suffolk* MTD Trans., at 7 (citing *id.*).

Of course, a complaint must "give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford,* 10 F. App'x. 33, 34 (2d Cir. 2001). But "[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 771 (S.D.N.Y. 2018) (internal quotations omitted). Here, plaintiffs make clear that identical claims are asserted against each defendant even though each defendant is differently situated. It is therefore unreasonable to suggest that moving defendants lack fair notice of the claims against them.

The cases upon which moving defendants rely for their arguments based on improper group pleadings are inapposite because they do not involve identical allegations against named defendants. In *Schwartzco*, plaintiffs' gross negligence claim was dismissed because the group pleading failed to distinguish among the conduct of defendants, LLCs and individuals, where the claim, which related to mismanagement of a business, turned specifically on each defendant's distinct duties and actions. *Schwartzco Enterprises LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 341–42, 356 (E.D.N.Y. 2014). Similarly, in *Atuahene*, the Second Circuit affirmed a district court's dismissal of a *pro se* plaintiff's 11-count complaint that failed to identify which defendants were responsible for myriad violations, including, *inter alia,* trespass, tortious interference, and civil rights violations. *Atuahene*, 10 F. App'x at 34. The district court found that the plaintiff had "refus[ed] to file a coherent, understandable complaint," which was dismissed because the "various defendants [we]re entitled to know what acts they individually or corporately are accused of doing." *Atuahene v. City of Hartford*, 2000 WL 433956, at *3–4 (D. Conn. Apr. 18, 2000). Finally, antitrust claims against defendants in *In re Zinc Antitrust Litig.* were struck down on the

basis that, in conspiracy claims, "each defendant is entitled to know how he is alleged to have conspired, with whom, and for what purpose." 155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016).

Nor is it fatal that the complaints do not specify the amount of dioxane present in each defendant's products. The amount of dioxane contained in any product sold, manufactured, or distributed by a defendant "is a question of fact" that is inappropriate to address at this stage in the litigation. *David v. Weinstein Co. LLC*, 2019 WL 1864073, at *5 (S.D.N.Y. Apr. 24, 2019). Although the allegations in the complaints here are sparser than those examined in *Locust Valley*, sufficient allegations concerning causation with respect to the moving defendants remain. Namely, plaintiffs allege that moving defendants marketed, sold, or distributed products containing dioxane; that moving defendants knew, or should have known, that dioxane and related constituents present unreasonable risks to human health, water quality, and the environment, yet moving defendants nonetheless handled, discharged and were otherwise responsible for the release of dioxane into the environment near plaintiffs' supply well sources without sufficient containment or caution; and that defendants' acts and omissions resulted in the presence of dioxane in the water sources of plaintiffs' public supply well systems. Whether the quantum of dioxane generated by moving defendants is less than that produced by Ferro, Dow, and Vulcan does not shield moving defendants from liability. After all, an act or omission may be considered a "substantial factor" in causing an injury even if a jury "assign[s] a relatively small percentage of fault to it," so long as the alleged cause is not "slight or trivial." *In re City of New York,* 475 F. Supp. 2d 235, 248 (E.D.N.Y. 2007), *aff'd*, 522 F.3d 279 (2d Cir. 2008) (citing 1A New York Pattern Jury Instructions 2:70 (3d ed. 2007)).

In the same vein, the existence of unnamed non-party manufacturers of dioxane-containing products does not render the allegations against moving defendants in this case insufficient. As I

observed in *Locust Valley,* "if plaintiffs can prove that each defendant's actions were a substantial factor in bringing about the harm, that non-parties may have contributed to the harm does not necessarily undermine the defendants' liability." *Locust Valley,* 465 F. Supp. 3d at 242. Moreover, "[w]hether a superseding cause exists and whether it was foreseeable is ordinarily decided by the factfinder." *Johnson v. Bryco Arms*, 304 F. Supp. 2d 383, 395 (E.D.N.Y. 2004).

Here, as in *Locust Valley,* "[w]hether plaintiffs ultimately will be able to prove that defendants' products are in their wells, despite the asserted factual differences between these cases and *MTBE*, requires an evaluation of the evidence and can be resolved only on summary judgment or at trial." *Locust Valley,* 465 F. Supp. 3d at 241. In sum, I find that the complaints sufficiently allege substantial factor causation.

### ii. Alternative Theories of Liability

Moving defendants additionally contend that the complaints should be dismissed because plaintiffs cannot successfully rely on market share liability to establish causation. In *Locust Valley*, I found Judge Bianco's rationale for deferring ruling on alternative theories of liability until summary judgment to be persuasive. *See Locust Valley,* 465 F. Supp. 3d at 242–43. Where, as here, plaintiffs have pleaded direct, substantial factor causation, such that the viability of the complaint does not depend on alternative theories of liability, moving defendants have provided no rationale for dismissing such theories at this stage in the litigation. *See id.* (citing *In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 447 F. Supp. 2d 289, 305 (S.D.N.Y. 2006) (noting that the applicability of such theories is generally better reserved for summary judgment or trial because of the fact-intensive nature of the inquiry)). Accordingly, moving defendants' motions to dismiss on the basis of alternative theories of liability are denied.

### B. Rule 12(b)(1) — Have Plaintiffs Alleged a Fairly Traceable Injury Sufficient to Give Rise to Article III Standing?

Moving defendants also challenge plaintiffs' standing to bring these suits. Whether plaintiffs have Article III standing is a jurisdictional matter, *Warth v. Seldin*, 422 U.S. 490, 498 (1975), typically addressed before considering the merits of a motion to dismiss. In this case, however, my conclusion that plaintiffs have sufficiently alleged substantial factor causation is determinative of the standing issue. With respect to standing, moving defendants argue that the complaints fail to allege injuries that are fairly traceable to them because (i) although plaintiffs describe how dioxane *may* find its way into the environment through a release, discharge, or disposal, they have not actually alleged facts about any such release, discharge, or disposal against moving defendants; and (ii) additional manufacturers of consumer products containing dioxane exist that are unnamed in these actions. Both of these arguments fail.

First, both plaintiffs specifically allege that defendants were responsible for the discharge of dioxane into the environment in a manner that caused dioxane to enter their groundwater wells. They allege that defendants designed, marketed, and sold products containing dioxane, knowing that routine use of the products would result in discharge, disposal, or release of dioxane in the environment without providing adequate warnings to users of the dangers associated with its use. The resulting harm associated with that use, plaintiffs contend, is therefore fairly traceable to the actions of the moving defendants. "[P]articularly at the pleading stage, the 'fairly traceable' standard is not equivalent to a requirement of tort causation." *Connecticut v. Am. Elec. Power Co., Inc.*, 582 F.3d 309, 346 (2d Cir. 2009) (citations omitted), *rev'd on other grounds*, 564 U.S. 410 (2011). Rather, the "requirement ensures that there is a genuine nexus between a plaintiff's injury and a defendant's alleged . . . conduct." *Id.* (quotation omitted). An intervening act of a third party would not break the causal chain if it is the "normal or foreseeable consequence of the situation created by the defendant's negligence." *Charney v. Wilkov*, 734 F. App'x 6, 10 (2d Cir. 2018)

(internal quotation marks omitted); *see also Suffolk* MTD Trans., at 7 ("Whether or not . . . any mishandling or improper disposal of the products by end users is sufficient to overcome or to defeat the allegations of causation can't again be decided at the motion to dismiss. That's a fact-intensive question.").

Second, as explained above, the existence of unnamed non-parties does not necessarily undermine moving defendants' liability. In establishing standing, "[w]hether or not [moving defendants are] the only cause of [plaintiffs'] injury is beside the point." *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 974 F. Supp. 2d 353, 358 (S.D.N.Y. 2013) *aff'd*, 769 F.3d 105 (2d Cir. 2014) (internal quotation omitted); *see also City of Perry, Iowa v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 284 (S.D.N.Y. 2016) ("Nor does the fact that other waste may be partially responsible for the clogs necessarily immunize each Defendant[] from liability for the contribution to the harm that its own products may have made.").

In sum, plaintiffs have sufficiently alleged an injury that is "fairly traceable" to moving defendants.

### C. Statute of Limitations

Moving defendants in the *Hicksville Water District* case, 19-CV-5632, additionally argue that Hicksville's allegations concerning Well 4-2 should be dismissed because they are time-barred. The motion to dismiss on statute of limitations grounds is denied without prejudice to its renewal upon a motion for summary judgment.[6] With respect to the parties' dispute over the proper interpretation of newly-enacted CPLR § 214-h, the parties are instructed that, if this issue

---

[6] Moving defendants have stated that, while their statute of limitations argument in this motion is directed at Well 4-2 alone, they reserve the right to seek summary judgment based on statute of limitations grounds as to all of Hicksville's wells.

is again raised on summary judgment, they should provide the court with as complete a showing of the statute's legislative history as is available.

V.      **Conclusion**

For the reasons set forth above, moving defendants' motions to dismiss the complaints are denied.


                                                    **SO ORDERED.**


                                                     /s/
                                                    **NINA GERSHON**
                                                    **United States District Judge**


**December 11, 2020**
**Brooklyn, New York**