# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                                    :
SUFFOLK COUNTY WATER                : 17-CV-6980 (NG)
AUTHORITY,                          : and its related cases
                                    :
        Plaintiff,                  :
                                    : United States Courthouse
                                    : Brooklyn, New York
    -against-                       :
                                    :
                                    : Wednesday, June 19, 2019
THE DOW CHEMICAL COMPANY, ET        : 10:30 a.m.
AL.,                                :
                                    :
        Defendants.                 :
                                    :


- - - - - - - - - - - - - - - X

        TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
            BEFORE THE HONORABLE NINA GERSHON
        UNITED STATES SENIOR DISTRICT COURT JUDGE


                    A P P E A R A N C E S:

For the Plaintiff       SHER EDLING LLP
Suffolk County              100 Montgomery Street - Suite 1410
Water Authority:            San Francisco, California 94101
                        BY: MATTHEW K. EDLING, ESQ.
                            KATHERINE JONES, ESQ.
                            VICTOR SHER, ESQ.

                        HAUSFELD LLP
                            165 Broadway - Suite 2301
                            New York, New York 10006
                        BY: SCOTT A. MARTIN, ESQ.


For the Plaintiff       HACH ROSE SCHIRRIPA & CHEVERIE, LLP
New York American           112 Madison Avenue - 10th Floor
Water Company:              New York, New York 10016
                        BY: FRANK R. SCHIRRIPA, ESQ.

```
For the Defendant      KIRKLAND & ELLIS LLP
The Dow Chemical          300 North Lasalle
Company:                  Chicago, Illinois 60654
                       BY:JONATHAN N. ADAIR, ESQ.
                          KEVIN T. VANWART, ESQ.


                       PHILLIPS LYTLE LLP
                          One Canalside
                          125 Main Street
                          Buffalo, New York 14203
                       BY:JOEL A. BLANCHET


For the Defendant      HUGHES HUBBARD & REED LLP
Ferro Corporation:        One Battery Park Plaza
                          New York, New York 10004
                       BY:ROBB W. PATRYK, ESQ.
                          FARANAK TABATABAI, ESQ.


For the Defendant      BEVERIDGE & DIAMOND PC
Shell Oil Company,        477 Madison Avenue - 15th Floor
individually and          New York, New York 10022
doing business as      BY:MEGAN R. BRILLAULT, ESQ.
Shell Chemical LP:        DANIEL M. KRAININ, ESQ.
                          PAULA J. SCHAUWECKER, ESQ.


For the Defendant      WEIL GOTSHAL & MANGES LLP
Procter & Gamble          757 Fifth Avenue
Company:                  New York, New York 10153
                       BY:DAVID J. LENDER, ESQ.


For the Defendant      NORTON ROSE FULBRIGHT US LLP
Vulcan Materials          1301 Avenue of the Americas
Company:                  New York, New York 10019
                       BY:STEPHEN C. DILLARD, ESQ.
                          FELICE GALANT, ESQ.


For Northrop           HOLLINGSWORTH LLP
Grumman:                  1350 I Street, NW
                          Washington, D.C. 20005
                       BY:FRANK LEONE, ESQ.


                       SIVE PAGET & RIESEL PC
                          560 Lexington Avenue
                          New York, New York 10022
                       BY:MARK A. CHERTOK, ESQ.
```

LAM    OCR    RPR
225 Cadman Plaza East / Brooklyn, NY 11201
lindacsr@aol.com
Proceedings recorded by mechanical stenography; transcript produced by Computer-Aided Transcription.

1          THE COURT:  Good morning.

2          (A chorus of good mornings.)

3          THE COURTROOM DEPUTY:  Civil cause for a status

4   conference, Suffolk County Water Authority v. Dow Chemical, et

5   al., and its related cases, the lead case is 17-CV-6980.

6          May I have the appearance for the Plaintiff, please?

7          MR. EDLING:  Matt Edling, of Sher Edling, on behalf

8   of the Plaintiffs, all of them, with the exception of New York

9   American Water.

10          With me is my partner --

11          THE COURT:  Just a second.  I'm not hearing you, so

12   bring the mic towards you.

13          MR. EDLING:  Better?

14          THE COURT:  You can just have a seat.  The mics are

15   geared towards sitting.

16          So, you are Mr. Edling, and with you are?

17          MR. EDLING:  My partner Vic Sher and my colleague

18   Katie Jones, as well as my co-counsel Scott Martin from the

19   Hausfeld firm.

20          THE COURT:  This is local counsel?

21          MR. EDLING:  He's co-counsel.

22          THE COURT:  Co-counsel.

23          Is there local counsel?

24          MR. EDLING:  Each of us, myself and Mr. Martin, are

25   admitted to this court.

1          THE COURT:  I see.

2          And at the end, your name, please?

3          MS. JONES:  Katie Jones.

4          THE COURT:  Thank you.

5          And we have one other Plaintiff?

6          THE COURTROOM DEPUTY:  Yes.  New York American Water

7    Company, Inc.

8          MR. SCHIRRIPA:  Good morning, your Honor.  Frank

9    Schirripa, from Hach Rose Schirripa & Cheverie, counsel for

10   New York American Water.

11         THE COURT:  Counsel, if you stand up and don't come

12   up to the bar, I won't hear you.  So, sit down, if you can,

13   and just use the mic.  Thanks.

14         The name of your client again?

15         MR. SCHIRRIPA:  New York American Water.

16         THE COURT:  Thank you.

17         THE COURTROOM DEPUTY:  For Defendant Dow Chemical?

18         MR. VANWART:  Good morning, your Honor.  Kevin

19   VanWart, with Kirkland & Ellis, for Dow Chemical.  And I'm

20   with my colleague Jonathan Adair, and from Phillips Lytle,

21   Joel Blanchet.

22         THE COURT:  Which is which?

23         MR. VANWART:  This is Mr. Adair --

24         THE COURT:  You're pointing.

25         MR. VANWART:  The one with the receding hairline is

1  Joel Blanchet.

2          THE COURT:  Why don't you let them identify

3  themselves.

4          MR. BLANCHET:  Your Honor, Joel Blanchet, from

5  Phillips Lytle, for Dow.

6          THE COURT:  Thank you.

7          MR. ADAIR:  Jonathan Adair, from Kirkland & Ellis

8  for Dow.

9          THE COURTROOM DEPUTY:  For Ferro Corporation?

10          MR. PATRYK:  Good morning, your Honor.  My name is

11  Robb Patryk.  I'm a partner with Hughes Hubbard & Reed.  With

12  me is my colleague Faraf Tabatabai.

13          THE COURT:  I'd like the spelling of her name,

14  please.

15          MS. TABATABAI:  I'll take that.  Last name,

16  T-A-B-A-T-A-B-A-I.

17          THE COURT:  Pronounce it for me, please.

18          MS. TABATABAI:  Tabatabai.

19          THE COURT:  Thank you.

20          THE COURTROOM DEPUTY:  For Vulcan Materials Company?

21          MS. GALANT:  Good morning, your Honor.  Felice

22  Galant and Steve Dillard, from Norton Rose & Fulbright, for

23  Defendant Vulcan Materials Company, now known as Legacy

24  Vulcan, LLC.

25          THE COURT:  May I have the spelling of your name,

1    please.

2                MS. GALANT:  F-E-L-I-C-E, Galant is G-A-L-A-N-T.

3                THE COURT:  Thank you.

4                THE COURTROOM DEPUTY:  For Shell Oil Company?

5                MS. SCHAUWECKER:  Good morning, your Honor.  My name

6    is Paula Schauwecker.  I represent Shell Oil, from Beveridge &

7    Diamond.  With me are my colleagues Megan Brillault,

8    B-R-I-L-L-A-U-L-T, and Dan Krainin, K-R-A-I-N-I-N.

9                THE COURT:  Anyone else?

10               THE COURTROOM DEPUTY:  For Procter & Gamble?

11               MR. LENDER:  Good morning, your Honor.  David

12   Lender, from the law firm of Weil Gotshal & Manges, for

13   Procter & Gamble.

14               THE COURTROOM DEPUTY:  Did I miss anyone?

15               THE COURT:  Why don't you come forward?

16               THE COURTROOM DEPUTY:  I'm sorry, you're from

17   Northrop Grumman?

18               MR. LEONE:  Yes, representing Northrop Grumman,

19   Frank Leone, from the firm of Hollingsworth, LLP.

20               MR. CHERTOK:  And Mark Chertok, from Sive, Paget &

21   Riesel.

22               THE COURTROOM DEPUTY:  Thank you.

23               THE COURT:  Will you be speaking?

24               MR. CHERTOK:  Possibly.

25               MR. EDLING:  You can come up and use ours, if you

1  need to.

2           THE COURT:  All right, counsel.  We have a few

3  things to take care of this morning, and I'm hoping to be

4  realistically expeditious because I'd like to get you all to

5  see Judge Mann this morning.  Chief Magistrate Judge Mann is

6  assigned to this case, and I'd like you to be meeting with her

7  with regard to discovery.  She is on arraignment duty today.

8  She's very busy but she's going to try to make some time to

9  see you.

10          And her law clerk is here?

11          THE COURTROOM DEPUTY:  Yes, Josh is here.

12          MR. PROUJANSKY:  Good morning, Judge.

13          THE COURT:  Josh stand up again.

14          So, when we're concluded here, Josh will lead you to

15 Judge Mann's courtroom, and, hopefully, she'll be able to see

16 you expeditiously.

17          It seemed to me that the first thing we ought to

18 take up was the application that was made in the first filed

19 case, the Suffolk Water Authority case, to limit discovery to

20 the statute of limitations issue.  And as you know, I issued

21 an order asking for any additional written submissions on that

22 issue to be presented by the end of May.

23          Before I hear from you on that, why don't I ask who

24 will speak to that?

25          MR. VANWART:  I will your Honor, Kevin VanWart.

1          THE COURT:  And Mr. Edling?

2          MR. EDLING:  Yes, your Honor.

3          THE COURT:  It seems to me that this application is

4   also an application to be able to move for summary judgment

5   solely on the statute of limitations issue and that if that

6   motion were unsuccessful, that you would then proceed to full

7   discovery and yet another motion for summary judgment.

8          Is that an accurate statement of your position?

9          MR. VANWART:  With respect to the statute of

10  limitations, your Honor, it would only be a single motion.

11  There might be other motions down the road.

12         THE COURT:  For summary judgment.

13         MR. VANWART:  For summary judgment possibly, yes,

14  your Honor.

15         THE COURT:  So, since the application to bifurcate

16  discovery implicates the potential summary judgment schedule,

17  I did advise Judge Mann that I would handle this issue,

18  although I do expect going forward that she will be handling

19  the discovery in the case.

20         So, I have reviewed your letters and, Mr. VanWart,

21  do you have anything else that you wanted to say?

22         MR. VANWART:  Just a few points, your Honor.

23         We had made this proposal, as you know, after Judge

24  Bianco had denied the motion to dismiss.  But in connection

25  with the briefing on that motion, we had brought before him

1  materials that at least we believe and we think he suspected

2  established a strong basis for the statute of limitations

3  defense.  And he was receptive to the idea of bifurcated

4  discovery focused only on the statute of limitations defense

5  because it was a way -- a potential way to resolve a case that

6  otherwise might take a long time in discovery.  And other

7  courts have taken a similar approach.

8          Again, Judge Bianco was looking for a commitment

9  from us, which we gave him, that the discovery that we would

10 take on statute of limitations would be limited and it would

11 be focused and it would not duplicate any discovery that would

12 occur if we then had to proceed to the merits.  And we stand

13 by that commitment.  It's all set out in our letter of

14 January 15 of this year to Judge Bianco.

15         THE COURT:  When you say that Judge Bianco expressed

16 himself, are you talking about during the course of his denial

17 of the motion?

18         MR. VANWART:  In the denial and then we had some

19 telephonic conferences.

20         THE COURT:  I see.  I didn't see anything like that

21 in the transcript of the conference where he denied the

22 motion.

23         MR. VANWART:  There were some subsequent

24 conferences, your Honor.

25         THE COURT:  I see.

1          MR. VANWART:  And that's what led to the letter

2    submission of January 15.

3          THE COURT:  Okay.

4          MR. VANWART:  He was promoted and he did not rule on

5    this, but our proposal still makes sense.  The statute of

6    limitations issues in this case are real and the evidence is

7    robust as it relates to the Suffolk County Water Authority.

8          And under our timetable, we could resolve the

9    discovery and get to briefing within about 120 days.  We

10   actually have already, through the *New York FOIA Act*, we've

11   already received some documents from Suffolk County, we would

12   limit the number of depositions and get some baseline

13   information so that we can start to complete that process.

14         But we are anticipating resolution perhaps by

15   September and would be in front of your Honor.  It's an

16   important issue and we're ready to go on it.

17         THE COURT:  Now, you're talking about the Suffolk

18   County Water Authority case, but what about my 20 other cases?

19         I think as of today I may be at 22.

20         MR. VANWART:  May even be 23, your Honor.  There was

21   another case just filed.  It's assigned to a different judge,

22   but I suspect that it will end up here as well.

23         THE COURT:  Okay.

24         MR. VANWART:  Those cases, we propose to file a

25   motion relating to those cases, but they don't have to

1    languish.  They are relatively recent cases and there are some

2    proposals for some initial exchanges with respect to those

3    cases.

4            THE COURT:  What I'm asking you is are you talking

5    about bifurcation on statute of limitations issues on all of

6    these cases or just the first filed case?

7            MR. VANWART:  The Suffolk County case, your Honor,

8    is the one we want to remain focused on.  Suffolk County is

9    also the water authority, the water provider, with the most

10   wells and they serve the most people.  They account for, I

11   think, 60 percent of the wells in the case.  So, it's

12   appropriate to focus on them.

13           And we've had discussions with Plaintiffs' counsel

14   and we acknowledge that the issues are going to be different

15   with different plaintiffs.  We're relatively clear as to what

16   the record is and is likely to be after additional discovery

17   with respect to Suffolk County.

18           THE COURT:  Are you saying that 60 percent of the

19   wells in all 22 or 23 of the cases?

20           MR. VANWART:  In all 23 of the cases.

21           THE COURT:  Are in --

22           MR. VANWART:  Suffolk County.

23           THE COURT:  They are part of the Suffolk County

24   Water Authority.

25           MR. VANWART:  Yes.  It is the single largest water

1  provider, serves the most people, and it has the most wells,

2  and it's alleging, as we understand it, the highest number of

3  contaminated wells.

4          And the evidence that you might have seen, as we

5  presented to Judge Bianco, their knowledge of dioxane issues

6  goes back a good number of years.

7          THE COURT:  I think what I'm trying to understand is

8  what you're proposing would happen with respect to discovery

9  as to 22 other cases.

10         MR. VANWART:  For the other cases, your Honor --

11         THE COURT:  Your client is in eleven cases?

12         MR. VANWART:  I think we're in all of them.

13         THE COURT:  You're in all cases.

14         MR. VANWART:  All of the cases.

15         So, there are about 23 cases.  And the way I kind of

16  break them up, your Honor, Suffolk County that began the

17  action; the Plaintiffs represented by the same law firm filed

18  20, 21 additional cases; two of those cases are different in

19  that they involve Northrop Grumman as well -- there's a plume,

20  two of those cases relate to that plume -- and then the other

21  cases are, again, represented by the counsel for American

22  Water and then the Sher Edling firm.

23         But with respect to those new cases, our proposal is

24  that we file the motion that we had outlined in our request,

25  our letter application, asking that we be able to focus on the

1   issue of product identification.

2          And one of the unique things about this case, your

3   Honor, and it's a fundamental issue which we believe should be

4   addressed at the outset, is that this is a piece of litigation

5   that's filed, again, 23 cases where nobody has sued the

6   polluter.  And the position that the Plaintiffs are taking is

7   that they can kind of leapfrog traditional causation and all

8   they have to do is sue the companies that decades ago provided

9   or made chemicals that were sold or used by people on Long

10  Island.

11         What's kind of unique about this case is that these

12  water authorities never even made an attempt to determine the

13  source of the pollution.  They say there's something in their

14  wells.  They don't do what you normally do in these types of

15  cases, which is you investigate to determine the source.  They

16  don't look to see if there are any facilities in the area

17  around the well; industrial facilities, facilities that might

18  have been using these chemicals.  They want to completely

19  leapfrog that and simply say, Look, if you sold or produced

20  the material, then you're liable.

21         We don't think that is the law in New York and it's

22  not the law as recognized by the Second Circuit.  That issue,

23  we believe, should be addressed at the outset of the

24  litigation rather than at the tail end because it's going to

25  effect the viability of these cases and, at a minimum, help

1   guide any discovery that might be necessary.

2          THE COURT:  You're saying it would resolve this one

3   case --

4          MR. VANWART:  Well, we propose this motion, your

5   Honor, would be filed for all of the newly filed cases.  It

6   effects all of the cases, but --

7          THE COURT:  All right, so maybe I'm misunderstanding

8   you.  I thought you why saying that this bifurcation

9   application would only effect the Suffolk County Water

10  Authority.

11         MR. VANWART:  Yes.

12         THE COURT:  Have I --

13         MR. VANWART:  The bifurcation motion as it relates

14  to the statute of limitations would apply to Suffolk County.

15         THE COURT:  And then what happens to the rest of the

16  cases?

17         MR. VANWART:  The other cases would be the subject

18  of this motion that we have sent a separate letter to your

19  Honor where we've outlined our position on product

20  identification.  And that's the motion that we want to file

21  with respect to the other cases.

22         THE COURT:  Okay.

23         MR. VANWART:  And then at the same time, we are

24  willing to even exchange -- start the exchange of information

25  without --

1      THE COURT:  You're saying that the discovery would

2  proceed, normal merits and statute of limitations discovery

3  would proceed in 22 cases but be bifurcated in one?

4      MR. VANWART:  In the dominant case, where there is a

5  relatively existing robust record about the knowledge of this

6  water provider as it related to dioxane and its activity with

7  dioxane issues.  We were acknowledging that Suffolk County is

8  different, but there would still be in the other cases

9  combined discovery.

10      But Suffolk County is different.  It was first filed

11  for a reason, it is the biggest, and our proposal made sense

12  back when we first proposed it and we think it still makes

13  sense today.

14      THE COURT:  Okay.

15      MR. VANWART:  Again, we're not saying put the other

16  cases on ice.  There is a path for working up the other cases

17  as appropriate, a threshold motion where we would need your

18  guidance and ask for your guidance, but, in the meantime, we

19  would be proceeding over the next 120 days, ballpark, with the

20  focus discovery as it relates to Suffolk County.

21      THE COURT:  Okay.  Thank you.

22      Mr. Edling?

23      MR. EDLING:  Your Honor, Mr. VanWart made a couple

24  of points that I'd like to immediately address, the first of

25  which is he said other courts have adopted a similar discovery

1  methodology, bifurcating the statute of limitations discovery.

2  The only case cited in their papers is the *Bethpage* case,

3  which is entirely different than the Suffolk County Water

4  Authority case.

5          For example, in *Bethpage*, there were only two wells

6  at issue.  Two.  Suffolk County Water Authority has 600 wells,

7  over 300 of which have contamination.  And the Second Circuit

8  guidance is that the statute of limitations inquiry is so

9  factually intense it is a jury issue.

10         Now, let's assume just for a moment that a given

11 well was subject to a statute of limitations defense.  It

12 would not resolve the case, it would only resolve one well,

13 which means we are spending, even by their definition, six

14 months that will not resolve the case.  And the federal rules

15 are clear, the cases in this district are clear:  We only

16 divorce from the typical rules of federal discovery with

17 bifurcation if it, in fact, will be dispositive of the case.

18 And here, it will not be.

19         Point of fact, it's their burden.  They don't even

20 lay out the elements in their papers, they didn't argue them

21 before you just now because they cannot meet them.

22         Will the parties be convenienced?  Certainly not.

23 Our client, Suffolk County Water Authority, alone, the same

24 individuals that will have to gather documents and sit for

25 depositions will have to do so again on merits.

1    The avoidance of prejudice.  Again, we are prejudice

2  because we are effectively standing still for an issue that

3  will not dispose of the case.

4    Third element and the most clear:  Is the request

5  something that would expedite the matter and make it more

6  economical for the parties and the Court?  Again, no.

7    Here is why:  Again, statute of limitations is on a

8  well-by-well basis.  Suffolk County alone, 600 wells.  Now, I

9  heard for the first time this morning that they want to do

10  discovery in accordance with the Federal Rules in 22 cases and

11  not Suffolk County's case.  But if you were to assume that

12  they want to make the same argument, that's a thousand wells

13  that we're going to go well-by-well-by-well.  But if we just

14  truncate it to Suffolk County as discussed this morning,

15  that's 600 wells.

16    The Second Circuit holds that mere detection is not

17  enough to trigger the statute of limitations.  So, you heard

18  Mr. VanWart say the evidence they submitted shows knowledge.

19  Okay.  But the mere knowledge and detection is not enough.

20  The Second Circuit is clear on this.  And the level at which a

21  contaminant becomes so significant as to harm a plaintiff's

22  well is an issue of fact for the jury to decide.  That's Judge

23  Scheindlin in the MTBE cases affirmed by the Second Circuit.

24    Just for maybe background, your Honor, this very

25  issue that they are suggesting was attempted against Suffolk

1   County Water Authority in the MTBE case in front of Judge

2   Scheindlin and was denied; it went to the Second Circuit, was

3   affirmed; and the MTBE cases on behalf the City of New York,

4   the statute of limitations was tested at summary judgment,

5   appropriately so after full discovery, went to trial, lost

6   again, affirmed by the Second circuit.

7           So, what they're proposing is sharply in contrast to

8   everything that the -- in that case, the Southern District has

9   gone through in the most-well known and robust water supplier

10  well contamination case in the country.  We have a roadmap for

11  how to do it, which is what we propose for your Honor.

12          Just two more points on this issue, your Honor.

13          The test to determine whether the statute of

14  limitations bars a claim is when was the property injured and

15  when did the Plaintiff discover the injury?  Each of those

16  elements is a jury question.

17          Now, here, where the test is when would a reasonable

18  water provider treat the water to reduce the levels of

19  contamination, in sharp contract to the only case they cite,

20  *Bethpage*, we have no wells that have a regulatory MCL where we

21  had exceedances.  Point of fact, there is a potential MCL that

22  will bring it way down, in which case all of the Plaintiffs

23  that we represent, New York American Water, will have elevated

24  levels above the MCL.  That's sort of a clear case.  But you

25  know when you're injured that there's an MCL and you're above

1   the MCL.  We don't have that here.

2           Again, in *Bethpage*, again the only case that they

3   rely upon, as a matter of law you could see how the Court

4   would say:  Well, we could get right to it.  You have

5   exceedances of an MCL and, as a matter of law, I can determine

6   injury and knowledge of the harm.

7           In contrast, the MTBE cases, where we have a very

8   similar framework, 50 parts per billion identified level, no

9   detections above that, and then we have a litany of cases.

10  The motions for summary judgment on statute of limitations

11  were denied because it was a jury issue.  We have the same

12  thing here.

13          My partner Mr. Sher will address what Mr. VanWart

14  said about product identification or causation.  I'm not

15  really sure, but I'm assuming that's the letter motion that

16  Judge Bianco addressed.  And I won't belabor that now.  I'll

17  stick to the statute of limitations.

18          The last point, your Honor, unless you have any

19  questions, is it was their burden, they didn't set forth any

20  of the elements, they didn't try to meet any of the elements,

21  and the only case that they cited is in sharp contrast to the

22  fact here wherein we have the series of litigation that the

23  district courts of New York have handled that show us how to

24  litigate these type of cases through discovery, which is

25  exactly what we proposed to your Honor.

1        Now, we can quibble and take it up with the

2  magistrate whether our suggested approach to deal with 23

3  cases is the most efficient way to do it, but we've provided

4  your Honor a plan.  They provided your Honor a means of delay

5  that cannot resolve any of the cases at summary judgment.

6        THE COURT:  Thank you.

7        Anything else?

8        MR. VANWART:  Yes, your Honor, couple of points.

9        First of all, we are not proposing to delay

10 anything.  Judge Bianco was interested in this approach, we

11 briefed it, we did the letter submissions.  He knew all about

12 the elements of statute of limitations because we had gone

13 through motion to dismiss, discussing at length what those

14 issues were, and he still was interested in the bifurcated

15 approach.

16       And what he was looking for was a commitment that it

17 would be efficient and not duplicative.  We're not looking for

18 delay.  We can get it done in first several months.  If we

19 started several months ago, we already would have been

20 finished with it.

21       With respect to other examples, there was a case

22 involving Suffolk County and the chemical called PCE.  Summary

23 judgment on statute of limitations, *Bethpage* which --

24       THE COURT:  You're talking about a state case?

25       MR. VANWART:  State case.

1          THE COURT:  All right.

2          MR. VANWART:  *Bethpage*, another one, summary

3     judgment following this type of procedure focused on statute

4     of limitation as we got summary judgment and it was affirmed

5     on appeal.

6          THE COURT:  Thank you very much.

7          MR. VANWART:  One final point because I'm not sure

8     what counsel was referring to.

9          The statute of limitations discovery would not

10    involve 600 wells.  That's the number of wells that Suffolk

11    County has.  That's not the number that they are alleging are

12    contaminated with dioxane.  That's a new fact if that's what

13    is they are saying.

14         All the discovery that we're talking about would be

15    focusing on what they were doing with respect to dioxane

16    contamination, their knowledge, and the development of a

17    treatment program for that.  It's been going on for years, and

18    they got approval from the State of New York for a treatment

19    system, but there is a robust record there that merits the

20    Court's early attention because it does affect the issue of

21    whether these claims are time barred.

22         MR. EDLING:  Your Honor, two brief points.

23         One, counsel seems to be resting the success of his

24    motion on the speculation of what Judge Bianco may have

25    thought.  All he did was allow them to file a letter brief so

1  he could consider it after he denied their blunderbuss motion

2  to dismiss.  So, that's it.  There's no written

3  memorialization of what Judge Bianco thought that any of us

4  have ever seen on this issue.

5          Second, Mr. VanWart, I'm sure he wasn't

6  intentionally playing fast and loose with the facts, but it's

7  a well-by-well analysis and Suffolk County does have 600

8  wells.  It's in our papers.

9          THE COURT:  Are you claiming that all 600 are

10  contaminated?

11          MR. EDLING:  There are well over 300 wells detected

12  now, which is what we put in our papers.

13          The reason that it's relevant for the number of

14  wells is, of course, they, themselves, will need to do a

15  well-by-well inquiry because they may try to argue that wells

16  that are not detected, have no detections now but may have

17  detections in the future, may also be subject to their statute

18  of limitations argument, which is just to say they are going

19  to have to do a well-by-well analysis to dispose of the case,

20  which they cannot meet.

21          But leaving aside whether we would win or we would

22  loss at trial on this issue, it is a trial issue.  And their

23  proposal does nothing to advance a case that really is about

24  public health.  And true enough, we've been sort of sitting

25  idle for a while.  It has nothing to do, frankly, with either

1   of the parties' tactics.  But we are here now, and their

2   proposal does not advance these cases to resolution.

3            THE COURT:  Thank you.

4            Since it's Mr. VanWart's application, if you have

5   anything further to said.

6            MR. VANWART:  No, your Honor.

7            THE COURT:  No?

8            MR. VANWART:  No.

9            THE COURT:  All right, counsel, I did review this

10  application and the opposition very carefully, I've reviewed

11  all of the case law that has been provided to me, and the

12  application is denied.

13           Unlike the motion to stay that was granted in the

14  *Bethpage* trial, for here I'm not satisfied that the Defendants

15  have shown good cause to limit the discovery in this way.

16  They haven't sufficiently shown a likelihood that they'll be

17  able to succeed on a motion for summary judgment limited to

18  the statute of limitations issue, nor have they shown that

19  proceeding as they propose to do would be more efficient than

20  proceeding with statute of limitations and merits discovery

21  together.

22           We now, of course, have the Second Circuit's ruling

23  in the *Bethpage* case, which, following the MTBE case, lays out

24  very clearly the law that's applicable to the statute of

25  limitations in this type of case.  Based upon my review of

1  those cases, as well as Judge Spatt's decision involving the

2  Hicksville Water District, the Defendants have not met their

3  burden of showing the likelihood that the issue will be

4  resolvable on a motion for summary judgment.  And absent such

5  a showing, I think efficiency requires that we not limit

6  discovery to a single issue.

7            I'll have something more to say about discovery

8  after we discussed the proposed motion to dismiss, which I'd

9  like to turn to now.

10           Who is going to address that?

11           MR. DILLARD:  Your Honor, Mr. Dillard, on behalf of

12 Vulcan.  I'll address that.

13           THE COURT:  You want to come up.

14           MR. DILLARD:  Yes, thank you.

15           THE COURT:  Your name again is Dillard?

16           MR. DILLARD:  Dillard.

17           THE COURT:  Thank you.

18           MR. DILLARD:  It's a bedrock principle of tort

19 law --

20           THE COURT:  Could you just save this for one second

21 while I organize here?

22           MR. DILLARD:  Yes, your Honor.

23           (Pause in proceedings.)

24           THE COURT:  Go ahead.  I'm sorry to interrupt your

25 dramatic beginning.

1          MR. DILLARD:  I'll see if I can replicate it.

2          THE COURT:  Please.

3          MR. DILLARD:  What I was going to say it's a bedrock

4   principle of tort law that the plaintiff has got to identify

5   the products that are the cause of the alleged injury in this

6   case.  It is a threshold issue to identify the products in

7   their wells.

8          You've heard counsel say this morning that this must

9   proceed on a well-by-well basis.  And, indeed, in the letter

10  that they wrote, their May 30 letter dealing with the statute

11  of limitations issue, they make the statement that:  It is a

12  fact-intensive inquiry determined on a well-by-well basis from

13  a reasonable water provider would treat the water to reduce

14  the level of contaminants in the well.

15         Well, here, they've got to show that, for example,

16  my client's product, Vulcan, if it's on a well-by-well basis,

17  they must show that that product is in this well and this well

18  and this well and this contaminated well in order to recover

19  or to proceed.  They can't simply say, well, it's impossible

20  for me to know, and, therefore, we're going to, as my

21  co-counsel said, leap ahead; in this case, leap ahead to

22  causation and damages.  And that's what they're proposing to

23  do here.

24         So, what we're simply saying is in the non-Suffolk

25  County Water Authority cases, the other 22, setting aside the

1 New York American Water Authority case, the cases where the

2 Sher Edling firm is representing the Plaintiffs, they've

3 alleged in each of those that it is impossible to identify

4 whose product is in their wells.  And our position is simply

5 that they cannot simply say it's impossible and then proceed

6 to go to liability and damages in this case.

7           And, so, we're asking the Court for permission to

8 pursue a motion to dismiss those cases.

9           THE COURT:  Well, of course you have the right to

10 move to dismiss, so I think my job here is to figure out how

11 to do this most efficiently.  So, there's no question to my

12 mind if you want to make a motion to dismiss in the case,

13 whether there hasn't yet been a motion to dismiss, that will

14 be permitted.

15           What I would like to know, though, is I'd like to

16 know how your proposed motion to dismiss differs from the

17 motion to dismiss that you made before Judge Bianco and which

18 was denied in the Suffolk Water Authority case.

19           MR. DILLARD:  Yes, your Honor.

20           Very simply, in the Suffolk County Water Authority

21 case, the Plaintiff does not allege in its complaint that it

22 is impossible to identify the source of the contaminants in

23 their water wells.  They do not make that allegation.

24           THE COURT:  So, I looked at this proposed motion as

25 a motion to dismiss on causation grounds.

1        Is that not correct?

2            MR. DILLARD:  It is, in essence, causation.

3            THE COURT:  All right.

4            MR. DILLARD:  Because if you cannot identify the

5    product, then it cannot be a cause of your injury.

6            THE COURT:  But isn't that what was argued in the

7    other case?

8            MR. DILLARD:  No, your Honor, because in the case

9    before Judge Bianco, the plaintiff did not allege that it was

10   impossible to identify the specific defendant's dioxane or

11   dioxane-containing products in their water wells.

12           It is only in these tagalong cases where that

13   allegation is made.  It is a different argument.  It was not

14   before Judge Bianco.  That was a more traditional causation

15   issue before Judge Bianco, not this one.

16           THE COURT:  I see.

17           MR. DILLARD:  And we think that's a distinguishing

18   factor.

19           We also don't think the Plaintiff can simply throw

20   up its hands and say I cannot identify.  We think they could

21   actually -- if they wanted to do the work, they could not only

22   identify the polluters that are responsible for the water

23   contamination for which they seek recovery, they could do that

24   as well, but they've obviously chosen not to and they sued

25   these manufacturers of products instead; and they could

1    identify through experts, and through effort they could

2    identify, if they wanted to go through the effort, the alleged

3    sources of the contamination in their water wells.  And they

4    have not done that.

5            So, the claims are different in this case.

6            THE COURT:  And your proposed motion to dismiss

7    would be against which cases?

8            MR. DILLARD:  It would be in all of the cases aside

9    from the Suffolk County Water Authority case and the New York

10   American Water Authority case, where there are no allegations

11   of impossibility to identify a particular Defendant's product

12   in a particular well.

13           THE COURT:  All right.  Thank you.

14           Mr. Edling or Mr. Sher?

15           MR. SHER:  Yes, your Honor.

16           THE COURT:  Why don't you come up?

17           Mr. Dillard, you can stay up here.

18           MR. SHER:  Good morning, your Honor.

19           THE COURT:  Good morning.

20           MR. SHER:  Counsel has misconstrued what's at issue

21   on causation in these cases.  Judge Bianco, in fact, heard

22   exactly the same issue and resolved it.

23           And this application is particularly ironic because

24   in their oppositions in front of -- or in their motion,

25   rather, in front of Judge Bianco, they complained that we had

1   inadequately alleged alternative causation theories, which

2   depend on fungibility and an inability to chemically

3   distinguish products.  So, we added those allegations here in

4   support of a potential alternative causation motion.

5           The truth is, we will prove exactly whose product is

6   in each well and we can do it as we did in the New York City

7   MTBE case that was affirmed by the Second Circuit through

8   testimony that says that the Defendants are the manufacturers

9   and producers of the products that reach the wells and that

10  their products are present in each of the wells.  And we can

11  establish that their products, which is the basis of his

12  motion, is in each well through a variety of testimony, other

13  than being able to chemically fingerprint them.

14          Now, the truth is that, as a practical matter,

15  trying to unwind contamination from enumerable sources across

16  the landscape is a scientific impossibility and, as a matter

17  of litigation, impractical.

18          And Mr. Dillard's colleague opened with a reference

19  to talking -- that the normal way of doing this is to sue the

20  polluter.  That is true when you can tell who the actual

21  releasor is.  But in these cases, the allegation is that the

22  pollution was a result of knowledge and failure to disclose on

23  behalf of the manufacturers who then sold their products to

24  users, enumerable users, in the vicinity of these wells, who

25  then foreseeably and sometimes, in fact, responding to direct

1  instructions from the manufacturers, leaked, spilled, and

2  disposed of their product on the ground so that it reached the

3  wells.

4           So, as a matter of direct causation, we expect the

5  testimony will be that their products are in every plume and

6  have substantially contributed to our Plaintiffs' injuries.

7           Now, for alternative causation, which is something

8  that a plaintiff defaults to in a less desirable circumstance

9  where you cannot prove direct causation, then you base your

10 proof on market share.  But we don't have to -- we don't have

11 to go there yet.  And what Judge Scheindlin said in the

12 district court in the MTBE proceedings is that:  A plaintiff

13 appropriately can conduct discovery and make an election at

14 trial between direct causation and one of these alternative

15 theories.

16          So, in our view, your Honor, this case was

17 already -- this motion, rather, was already decided by

18 Judge Bianco in the Suffolk County Water Authority case --

19          THE COURT:  Well, if your pleadings now in the newly

20 filed cases, after Suffolk County, do allege new theories of

21 what you're calling alternative theories of causation, then

22 it's not the same as the motion before Judge Bianco, correct?

23          MR. SHER:  No, your Honor.  Respectfully, no.

24          The alternative theory is an alternative, it's an

25 addition.  The complaint already includes the direct

1    allocations -- excuse me, the direct allegations exactly the

2    same as in Suffolk County Water Authority.  And in our letter,

3    we pointed you to the paragraphs in the new complaints that

4    say the same things.

5            THE COURT:  But the Defendants want to move against

6    those paragraphs as well now, correct?

7            MR. SHER:  But those are the same paragraphs that

8    were already -- on which their motion was denied by

9    Judge Bianco.

10           And then they complained in front of Judge Bianco

11   that with respect to possible alternative theories we had not

12   alleged this inability to distinguish.  And it's not that we

13   can't tell whose product is in the wells, your Honor, it's

14   that you cannot tell it by doing a chemical analysis.

15           As I said, we expect to be able to prove through

16   direct testimony that, basically, Dow's and Vulcan's and

17   Ferro's products are in all the wells and we can do that by

18   various means.  But they are the sole manufacturers.  It's not

19   as if there's another universe of sources.

20

21           (Continued on the following page.)

22

23

24

25

1   (Continuing.)

2         THE COURT:  The question that I indicated to

3   Mr. Dillard is what procedure we should follow here?

4         Obviously, they will have to move to dismiss any

5   complaint that is brought against them.

6         MR. SHER:  I have a suggestion on that.

7         THE COURT:  All right.

8         MR. SHER:  I think that they should stipulate that

9   the outcome of the motion to dismiss before Your Honor would

10  be the same as the outcome in front of Mr. Judge Bianco, and

11  that would preserve their rights to challenge it down the

12  road, both sides are protected, and we move on to discovery as

13  we proposed in our case management order.

14        THE COURT:  Well, I don't know that they would agree

15  to that.

16        MR. DILLARD:  You're correct, Your Honor.

17        MR. SHER:  The alternative is that Your Honor will

18  have to spend time and we'll have to spend time briefing it,

19  and then you will deny their motion as well.

20        THE COURT:  Well, it seems to me I have to allow his

21  motion.  So I am not entirely clear now whether this is

22  exactly the same motion or not, but either way I will have to

23  look at it.

24        Can we have a schedule?  And a schedule that will

25  not be terribly lengthy because you briefed a lot of it

1   already.

2          MR. SHER:  Your Honor, maybe -- maybe we could meet

3   and confer on a schedule and get back to you in a few minutes,

4   or do you want us --

5          THE COURT:  All right, or you can submit it if it's

6   okay, that's fine.  If you think you can do that and submit a

7   schedule to me, that's fine.

8          But my next question is that there are other

9   defendants who are all represented here, I believe, all

10  defendants who have been named are represented here, even

11  though they have not answered as yet, is that correct?

12         MR. SHER:  Correct, Your Honor.

13         THE COURT:  Okay.

14         MR. SHER:  And in these cases there are only three

15  defendants:  It's Dow, Ferro and Vulcan.

16         THE COURT:  But it is eleven cases, right, where you

17  want to move to dismiss?  Have I got that right?

18         MR. DILLARD:  Yes, Your Honor.

19         THE COURT:  Okay, but what is going to happen, what

20  I am saying is the time to answer has not yet passed with

21  respect to other defendants, and it seems to me that it might

22  be a lot more efficient for me to have the world of motions to

23  dismiss at one place, rather than to be doing this piecemeal

24  because I can imagine that the other defendants will have

25  similar arguments.

1        MR. SHER:  I believe, Your Honor, that the

2   additional defendants -- there are no additional defendants

3   with respect to this issue in the additional cases.  It's all

4   the same issue and the same defendants.

5        THE COURT:  I am not following that.  Maybe you

6   can --

7        MR. SHER:  All of the cases -- all of the cases

8   with, I believe, two exceptions involve only Dow, Ferro and

9   Vulcan, and they are all -- they are all on the same theory

10  and the complaints are substantially identical with respect to

11  this issue.

12       So there are two cases that involve Northrop

13  Grumman.

14       THE COURT:  Obviously, all of you are much more

15  knowledgeable about this than I am, so let me start in a very

16  elementary way.

17       My understanding was that the proposed motion to

18  dismiss related to eleven cases, is that wrong?

19       MR. DILLARD:  No, Your Honor.  If I might just

20  amplify that a bit?

21       THE COURT:  Go ahead, okay.

22       MR. DILLARD:  Those eleven cases had a response date

23  of May 31st.

24       THE COURT:  Correct.

25       MR. DILLARD:  Since that time the plaintiff has

1  continued to file these cases and now there are another ten or

2  eleven.  The response date, by agreement, has been extended on

3  those to either July 22 or August 6.

4            THE COURT:  Right.

5            MR. DILLARD:  And we are going to want to talk to

6  counsel about consolidating those into the same day if we

7  could, but those cases are not -- and, therefore, were not put

8  into our letter and that's why the Court sees eleven instead

9  of a broader number.

10            THE COURT:  Okay, but can we treat this as the

11  pre-motion conference as to all of those cases?

12            MR. EDLING:  Yes.

13            MR. DILLARD:  I would be agreeable do that.

14            MR. EDLING:  Yes.

15            THE COURT:  Okay.  So there is not going to be

16  another pre-motion conference you are requesting on those

17  other cases on other subjects?

18            MR. DILLARD:  Correct.

19            THE COURT:  Now, but there are some other

20  defendants?

21            MR. DILLARD:  Yes.

22            THE COURT:  What about them?

23            MR. DILLARD:  There are two cases --

24            MR. SHER:  Only two cases that involve Northrop

25  Grumman and -- and their situation is a little different.

1  Although as to this issue, the issue will be the same as to

2  these defendants.

3          THE COURT:  Where is counsel for Northrop Grumman?

4          Mr. Chertok.

5          MR. CHERTOK:  Yes, Your Honor.

6          THE COURT:  Are you going to want to move to dismiss

7  on the same ground?

8          MR. CHERTOK:  I doubt we would want to move to

9  dismiss on that ground.

10          THE COURT:  But you might have a different motion?

11          MR. CHERTOK:  That's correct.  The complaint is

12  going -- excuse me.  Plaintiffs have indicated they are going

13  to file an amended complaint in the two cases that involve

14  Northrop Grumman.

15          THE COURT:  Right.

16          MR. CHERTOK:  They are likely to also bring a

17  complaint against the United States Navy --

18          THE COURT:  Right.

19          MR. CHERTOK:  -- in those cases.

20          THE COURT:  Okay.

21          MR. CHERTOK:  So there may well be motions to

22  dismiss.  It's a little premature to be sure of that until we

23  see the amended complaint.

24          THE COURT:  I see.

25          MR. CHERTOK:  And the goal is to confer with the

1   Navy to try to coordinate any motions that would be made.

2       THE COURT:  All right.  So that, at most, what we

3   are talking about is one motion to dismiss by Dow and the

4   defendants in some twenty or so cases.  And then, potentially,

5   a motion to dismiss by Northrop Grumman and the Navy on

6   different grounds on the other two cases.

7       MR. CHERTOK:  Correct.  We're not manufacturers,

8   Your Honor.

9       THE COURT:  Okay.

10      MR. CHERTOK:  So we would not be moving to dismiss

11  anything on that ground.

12      THE COURT:  Right.

13      MR. CHERTOK:  I mean suppliers, pardon me.

14      THE COURT:  You are alleged to be what?

15      MR. CHERTOK:  Northrop Grumman was a manufacturer of

16  airplanes and the Lunar Module, et cetera, in Bethpage.  And

17  the allegation is that there was the use disposal, et cetera,

18  of products containing 1,4-Dioxane, which reached the wells of

19  Bethpage Water District and South Farmingdale Water District,

20  certain wells.

21      THE COURT:  All right, okay.  So then this will work

22  out, at least procedurally we are fine.

23      All right, so then I will leave this, the motion to

24  dismiss, for Mr. Dillard and Mr. Sher to work out a schedule

25  and to submit it to me.

1          MR. SHER:  Thank you, Your Honor.

2          MR. DILLARD:  Yes, Your Honor.

3          THE COURT:  All right, thank you very much.

4          Then I would like to turn to how the discovery

5    should proceed.  I know that the plaintiffs, as I mentioned,

6    have made a very, very detailed proposal.  The defendants have

7    not yet responded to that proposal because they were proposing

8    something different, which I just denied.

9          And I think at this point, unless there is anything

10   else that the parties want to raise with me, I ought to send

11   you off to Judge Mann to discuss how she wants to handle this.

12   I believe she will be asking for proposals from the defendants

13   and whether the defendants agree, at least in part, with some

14   of the things that the plaintiffs have proposed, but I think

15   that I should leave that to her good judgment.

16         Is there anything else that the parties think needs

17   to happen here today?

18         MR. EDLING:  Your Honor, I just have one.  I think

19   it's purely administrative, which I think would benefit all

20   the parties.

21         THE COURT:  Okay.

22         MR. EDLING:  Is a system where if we, any of us file

23   something, it's a master case, it could be appropriately

24   spread to all the cases.

25         THE COURT:  I would so like to do that.

1          MR. EDLING:  We can't?

2          THE COURT:  So far I am hitting my head against a

3     wall, but we will try again.  Maybe I will talk to our Clerk's

4     office again and maybe have counsel speak to them.

5          Here is what I understand to be the problem.

6          MR. EDLING:  Sure.

7          THE COURT:  And maybe you people can work it out,

8     and my deputy is here looking at me wondering what I am going

9     to say about this.

10         So in a multi-district litigation that is exactly

11    what we do, and I have one ongoing now and it works perfectly.

12    It is very easy for counsel and it is, frankly, very easy for

13    my office as well, or at least relatively easy compared to

14    this.

15         The problem is that these cases are not

16    consolidated.  If these cases were consolidated, I could do

17    it.  I am not a technology expert and I am mystified as to why

18    we cannot use the same type of procedure, even though these

19    cases are only related and not consolidated.  But I commit to

20    you that I will try harder to see if I can figure something

21    out.  And if you can think of a way to do that spreading-type

22    of system.

23         MR. EDLING:  I would hope with this collective brain

24    trust we could come up with a way to make this more efficient.

25         THE COURT:  The problem is not that, the problem is

1    the bureaucracy downstairs.

2                 MR. EDLING:  I understand.

3                 THE COURT:  Well, let me just have a private word

4    with my deputy.  Hold on.

5                 (Pause.)

6                 THE COURT:  All right, counsel, I think I have a

7    better sense of what the problem is, and I will speak to,

8    actually our Clerk of Court, who, the clerk, himself, is

9    actually our highest technology person, and I will see if

10   there is some way that we can do this.  And obviously, we will

11   let you know if we can, but if you think of something let us

12   know.

13                MR. EDLING:  We have one.

14                THE COURT:  Okay.

15                MR. EDLING:  If whatever you're proposing doesn't

16   work, which could be some type of administrative motion to

17   consolidate for pretrial purposes.

18                Is that what you just said?  I was listening.

19                THE COURT:  Well, right, let me speak with you.

20                (Pause.)

21                THE COURT:  All right, counsel, I will pursue this

22   with the Clerk and we will let you know if we have some

23   success.  And if I do, I will issue an order saying how you do

24   it and how you spread things to the various cases.

25                At a minimum, though, it is certainly not necessary

1  for you to file 22 sets of motion-to-dismiss papers.  Right?

2  You can just file a cover letter to me indicating that you

3  are -- no?

4        (Pause.)

5        THE COURT:  All right, well, we will try to work

6  this out, but I can tell you now you do not have to file, from

7  my point of view, 22 or whatever sets of motion papers.  That

8  is insane.

9        So, we will take one set of papers and you will

10  indicate on the docket that you are moving to dismiss, that

11  there is a motion to dismiss.  And that how about this, at

12  least on this one issue:  That you file in each case a

13  statement that says that you are moving to dismiss the

14  complaint and the motion papers, the opposition and the reply.

15        And I will want replies, so make sure you schedule

16  that in the schedule you are going to give me.

17        Those motion papers have been filed in case number

18  whatever the case number is so we will know where to find it

19  and anybody looking at the docket will know where to find it,

20  and you will submit in accordance with my individual

21  practices, you will submit one courtesy copy set.  Okay?

22        At least, we can take care of that.  All right?

23        Anything else you can think of right now?

24        MR. SHER:  Your Honor, just one second, please.

25        THE COURT:  Sure.

1          (Pause.)

2          MR. SHER:  Thank you, Your Honor.

3          THE COURT:  Anything else?

4          MR. BLANCHET:  No, Your Honor.

5          THE COURT:  Okay, Josh.

6          MR. PROUJANSKY:  Yes.

7          THE COURT:  Do you know whether Judge Mann is

8   available now?

9          MR. PROUJANSKY:  No, if you go up to Courtroom 13C

10  South I will endeavor to locate Judge Mann.

11         THE COURT:  I would assume, counsel, you are going

12  to order the transcript of this proceeding.  I would assume

13  you would like to have it.

14         MR. EDLING:  Yes.

15         THE COURT:  I would like a transcript of this

16  proceeding.

17

18         (Matter adjourned.)

19

20

21  *We certify that the foregoing is a correct transcript from*
    *the record of proceedings in the above-entitled matter.*
22
        */s/ Linda A. Marino*              *June 20, 2019*
23       *LINDA A. MARINO*                     *Date*

24       */s/ Stacy A. Mace*                *June 20, 2019*
         *STACY A. MACE*                       *Date*
25

SAM     OCR     RMR     CRR     RPR