# EXHIBIT 3

```
          UNITED STATES DISTRICT COURT
          EASTERN DISTRICT OF NEW YORK

-------------------------------X Docket#
SUFFOLK COUNTY WATER             : 17-cv-06980-NG-RLM
 AUTHORITY,                      :
              Plaintiff,         :
                                 :
     - versus -                  : U.S. Courthouse
                                 : Central Islip, New York
                                 :
                                 :
THE DOW CHEMICAL COMPANY,        : February 9, 2021
         et al.,                 : 2:05 PM
              Defendants         :
-------------------------------X
       TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
            BEFORE THE HONORABLE NINA GERSHON
             UNITED STATES DISTRICT JUDGE
                         AND
           THE HONORABLE ROANNE L. MANN
             UNITED STATES MAGISTRATE JUDGE
```

**A  P  P  E  A  R  A  N  C  E  S:**
(TELEPHONICALLY)

**For the Plaintiffs:**          **Matthew K. Edling, Esq.**
                                 **Victor Sher, Esq.**
                                 **Katherine Jones, Esq.**
                                 **Stephanie D. Biehl, Esq.**
                                 **Nicole E. Teixeira, Esq.**
                                 **Quentin Karpilow, Esq.**
                                 Sher Edling LLP
                                 100 Montgomery Street
                                 Suite 1410
                                 San Francisco, CA 94104

For NY American Water:           **Frank R. Schirripa, Esq.**
                                 **Hillary M. Nappi, Esq.**
                                 Hach Rose Schirripa
                                 & Cheverie LLP
                                 112 Madison Ave.
                                 New York, NY  10016

**For Hicksville Water:**        **Lilia Factor, Esq.**
                                 **Paul Napoli, Esq.**
                                 Napoli Shkolnik, PLLC
                                 360 Lexington Ave.
                                 New York, NY 10017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**TELEPHONIC APPEARANCES (Continued)**:

**For Plaintiff Suffolk
County Water**:
    **Scott Martin, Esq.**
**Richard S. Lewis, Esq.**
**Katie R. Beran, Esq.**
**Jeanette Bayoumi, Esq.**
**Tamara Freilich, Esq.**
Hausfeld LLP
33 Whitehall St., 14th Fl.
New York, NY 10004


**For Defendants**:
    **Joel Alan Blanchet, Esq.**
Phillips Lytle LLP
One Canalside, 125 Main Street
Buffalo, NY 14203


**For Defendant Dow**:
    **Nader Boulos, Esq.**
**Kevin T. Van Wart, Esq.**
**Jason Miller, Esq.**
Kirkland & Ellis
300 North LaSalle
Chicago, IL 60654


**For Defendant Ferro**:
    **Robb W. Patryk, Esq.**
**Faranak Sharon Tabatabai, Esq.**
**Amina Hassan, Esq.**
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004


**For Defendant Vulcan**:
    **Stephen C. Dillard, Esq.**
**Felice B. Galant, Esq.**
Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10019


**For Defendant P&G**:
    **David J. Lender, Esq.**
**Jed Winer, Esq.**
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY 10153

**TELEPHONIC APPEARANCES (Continued)**:

**For Defendant Shell**:          **Megan Rose Brillault, Esq.**
                                  **Daniel Mark Krainin, Esq.**
                                  Beveridge & Diamond P.C.
                                  477 Madison Avenue
                                  New York, NY 10022

**Transcription Service**:        **Transcriptions Plus II, Inc.**
                                  61 Beatrice Avenue
                                  West Islip, New York 11795
                                  laferrara44@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

Proceedings

1          JUDGE GERSHON:  All right.  This is Judge

2  Gershon.  Judge Mann, are you there?  Hello, this is

3  Judge Gershon.  Gina, just let me know when Judge Mann is

4  on, please.

5          THE CLERK:  Yes, I will let you know when she

6  signs on.

7          JUDGE GERSHON:  Thank you.

8          JUDGE MANN:  This is Judge Mann on the line

9  now.  I think from what I understand, everyone is on now.

10          JUDGE GERSHON:  Yes.  Hi, Judge Mann.

11          JUDGE MANN:  Hi.  Ms. Miller, do you want to

12  call the case?

13          THE CLERK:  Certainly.  This is 17-cv-6980,

14  Suffolk County Water Authority v. Dow Chemical Company,

15  et al. and related cases in front of Judge Gershon and

16  Judge Mann.

17          JUDGE MANN:  And why don't we have counsel

18  state their appearances for the record.

19          MR. EDLING:  Sure.  Good afternoon, your Honor.

20  This is Matt Edling from Sher Edling, counsel for Suffolk

21  County Water Authority, as well as all of the related

22  cases with the exception of New York American Water and

23  Hicksville Water District.  I will be speaking for the

24  plaintiffs this afternoon.

25          JUDGE MANN:  And do we have anyone else with

Proceedings

1  Mr. Edling?

2          MR. EDLING:  Yes, your Honor.

3          JUDGE MANN:  We might as well get everyone's

4  appearances.  For the plaintiff?

5          MR. EDLING:  Sure.  Your Honor, we could do

6  that.  We did give the names to your clerk and I did

7  offer to email the clerk everyone who has already

8  identified themselves for the clerk and who is on the

9  phone, but obviously if you would like, we can go back

10  through and introduce everyone.

11          JUDGE MANN:  Well, I defer to Judge Gershon as

12  to whether or not she wants to have the roll call on the

13  record.

14          JUDGE GERSHON:  I don't think it's necessary.

15  I would just ask that as each attorney identifies

16  themselves or herself that we know who may be speaking

17  today and anybody else who is just listening in, I don't

18  think we need more than what Mr. Edling has offered and

19  your clerk has all that information.

20          So for you, Mr. Edling, is anyone going to

21  speak besides you?

22          MR. EDLING:  This is Mr. Edling.  No, your

23  Honor --

24          JUDGE GERSHON:  Okay.

25          MR. EDLING:  -- unless I screw up, it's just

Proceedings

1  me.

2          JUDGE GERSHON:  That's fine.  Okay.

3          And for the other plaintiffs?  Anyone going --

4          MS. FACTOR:  This is Lilia --

5          JUDGE GERSHON:  Go ahead.

6          MS. FACTOR:  Sorry, your Honor.  This is Lilia

7  Factor from Napoli Shkolnik appearing on behalf of

8  plaintiff Hicksville Water District.

9          JUDGE GERSHON:  Okay.

10          MR. SCHIRRIPA:  Good morning, your Honor.

11          JUDGE GERSHON:  And could you spell your last

12  name?  No, let me just get counsel's last name?  Go

13  ahead.

14          MS. FACTOR:  Factor, F as in Frank, A-C-T-O-R,

15  Factor.

16          JUDGE GERSHON:  Oh, yes, you appeared before me

17  recently, right, on the motion to dismiss, okay.

18          MS. FACTOR:  Yes.

19          JUDGE GERSHON:  All right.  And North American

20  Water?

21          MR. SCHIRRIPA:  Yes, your Honor.  This is Frank

22  Schirripa from Hach Rose Schirripa & Cheverie for New

23  York American Water.  Along with me is my colleague,

24  Hillary Nappi.

25          Good afternoon.

Proceedings

1    JUDGE GERSHON:  Okay, thank you.  All right.

2    Can we go to the defendants then?  Ms. Hill, do

3  you want to call them or however --

4    THE CLERK:  Yes, defendant -- on behalf of

5  defendant Dow Chemical, please identify yourself.

6    MR. BOULOS:  Good afternoon, your Honor.

7    This is Nader Boulos from Kirkland & Ellis on

8  behalf of Dow.  I'm joined on the phone today by my

9  colleagues, Kevin Van Wart, Joel Blanchet and Jason

10  Miller of Dow.  I will be speaking today on behalf of

11  Dow.

12    JUDGE GERSHON:  Can you spell your last name

13  please for me?

14    MR. BOULOS:  Certainly.  It's Boulos, B as in

15  boy, O-U-L-O-S as in Sam.

16    JUDGE GERSHON:  Thank you.  Okay.

17    THE CLERK:  And on behalf of defendant Ferro

18  Corp.?

19    MR. PATRYK:  Good afternoon, your Honor.

20    My name is Robb Patryk from the firm of Hughes

21  Hubbard & Reed.  With me on the call are my colleagues

22  Faranak Tabatabai and Amina Hassan and I will speak to

23  the extent Ferro makes comments.

24    THE CLERK:  Okay.  And on behalf of defendant

25  Vulcan Materials Co.?

Proceedings

1          MR. DILLARD:  Yes, good afternoon.

2          This is Stephen Dillard, D-I-L-L-A-R-D, along

3   with my colleague, Felice Gallant on behalf of defendant

4   Legacy Vulcan.

5          THE CLERK:  Okay.  And on behalf of defendant

6   in case 17-cv-6980 and case 19-cv-2150, Shell Oil Co.?

7          MS. BRILLAULT:  This is Megan Brillault on

8   behalf of Shell Oil Co., along with my colleague Dan

9   Krainin.

10          JUDGE GERSHON:  Could you spell your last name,

11   please?

12          MS. BRILLAULT:  Absolutely.  B as in boy, R-I-

13   L-L-A-U-L-T.

14          JUDGE GERSHON:  Okay, thank you.

15          THE CLERK:  And on behalf of defendant Proctor

16   & Gamble in case 17-cv-6980 and 19-cv-2150?

17          MR. LENDER:  Good afternoon.

18          This is David Lender, L-E-N-D-E-R, from the law

19   firm of Weil Gotshal & Manges and I have on the phone

20   with me, my colleague, Jed Winer, W-I-N-E-R.

21          JUDGE GERSHON:  Okay, very good.  Do we have

22   everyone then?

23          THE CLERK:  Yes, I believe so, your Honor.

24          JUDGE GERSHON:  All right.  Then counsel, Judge

25   Mann and I agreed that because we'll be talking first

Proceedings

1 about trial management issues, that I'd begin the

2 discussion. Judge Mann, obviously, will feel free to

3 interrupt at any time with her own comments and questions

4 and when we turn to specific discovery issues, she'll

5 take the lead.

6 Let me make two general comments. It occurred

7 to me that this case is very similar to a multi-district

8 litigation other than it's only in one district by its

9 nature but I think it's helpful to think about that.

10 And the second general comment is just that I'm

11 saying trial management but as I think the parties

12 recognize, we're talking about overall case management,

13 management of summary judgment motions and other motions

14 and so on. So even though I use the word "trial

15 management", I understand that we're talking about the

16 whole ball of wax.

17 I'd like to start with some questions to the

18 plaintiff. Although you've used the term "bellwether" in

19 describing what you're seeking, it seems to me that you

20 are not, in fact, seeking to identify any of the 27 cases

21 here as a bellwether in either of the two sentences in

22 which that term is generally used; one in the mass tort

23 context as a test case which would serve as an example

24 and help the parties reach settlement of the other cases

25 or two, as a case which would be used to preclude parties

Proceedings

1  in later cases on certain common issues of liability.

2  That is, as we understand it, you're only talking about

3  which cases of the 27 will be tried to completion first.

4  So I'd just like to know whether I'm correct about that.

5          MR. EDLING:  Yes, your Honor.  This is Matt

6  Edling speaking on behalf of the plaintiffs.

7          The plaintiffs do advance Suffolk County Water

8  Authority as a case that can and should be understood as

9  a bellwether in the sense of a test case as you've just

10 described it in the mass tort context.  So that would be

11 point one.

12         The second point, in terms of case

13 prioritization in advancing a case to trial first is also

14 what we propose, and the reason that I am differentiating

15 those two is the defendants consistently have said that

16 they do not agree that a bellwether approach is

17 appropriate here for their own reasons.

18         Now while the plaintiffs clearly disagree with

19 that, as a means of moving these cases forward and

20 identifying, understanding and adjudicating what will be

21 common factual evidentiary and legal issues, prioritizing

22 the Suffolk County Water Authority case first, as well as

23 additional cases to move towards resolution can and I

24 suspect, will accomplish the same efficiencies as would

25 be gained in a bellwether context.

Proceedings

1          So to repeat, we do believe that we are

2   advancing and suggesting the Suffolk County Water

3   Authority case, as well as other cases in that

4   traditional first sense of a bellwether but the

5   defendants --

6          JUDGE GERSHON:  All right.

7          MR. EDLING:  -- have opposed that, that's the

8   prioritization language as I identified in our recent

9   submission.

10          JUDGE GERSHON:  All right.

11          MR. EDLING:  Is that clear, your Honor?

12          JUDGE GERSHON:  Yes, perfectly.  I'll get to

13   that to discuss Suffolk in more detail but let me first

14   make a -- ask a more general question of both the

15   plaintiffs and the defendants.  In response to the order

16   that Judge Mann and I issued recently, you have offered

17   no theory of prioritization.  So we're curious, where are

18   your criteria for choosing a priority case?  I'd like to

19   know your position on that.  I'd like to know the

20   defendants' position on that and whether -- and I'd like

21   to know whether or not you've agreed on any metrics for

22   making your decision.

23          So let's here first from the plaintiffs and

24   then the defendants.

25          MR. EDLING:  Sure, your Honor.  This is Matt

Proceedings

1  Edling again.

2          I apologize if our submission was not clear but

3  we are prioritizing Suffolk County Water Authority.  If

4  you get a chance to look at the docket 161, which is our

5  submission, both in the first page and on page 4, we

6  specifically identify --

7          JUDGE GERSHON:  No, I'm sorry.  I think you

8  misunderstood me.  I assure you Judge Mann and I have

9  reviewed your papers in some detail.

10          MR. EDLING:  Sure.

11          JUDGE GERSHON:  I said you offered no theory of

12  priority, other than that it's the first named case,

13  what's the basis for prioritizing?  We recognize you want

14  to prioritize it.

15          MR. EDLING:  Sure.

16          JUDGE GERSHON:  Why?

17          MR. EDLING:  Sure.  So Suffolk County Water

18  Authority in addition to being the first filed case is

19  one of three cases that has all of the defendants in this

20  matter, so let's start there.  It has all of the

21  defendants named in any of the cases are in the Suffolk

22  County Water Authority case.

23          The second, and this is unique to Suffolk

24  County, as distinct from Nassau County --

25          JUDGE GERSHON:  Well, excuse me.  Excuse me.

Proceedings

1  It would hardly be an example then to the other

2  defendants in 25 or whatever the number is, cases, right?

3           MR. EDLING:  No, I would disagree with that,

4  your Honor.

5           JUDGE GERSHON:  I mean --

6           MR. EDLING:  The reason is is that -- I'm

7  sorry, your Honor, did I interrupt you?

8           JUDGE GERSHON:  Go ahead.

9           MR. EDLING:  Okay.

10           JUDGE GERSHON:  No, not at all.  Go ahead.

11           MR. EDLING:  Okay.  The reason is is that Dow,

12  Ferro, and Vulcan are named in every case.

13           JUDGE GERSHON:  Yes.

14           MR. EDLING:  Dow, Ferro, Vulcan, Shell, and

15  Proctor & Gamble are identified in the Suffolk County

16  Water Authority case.  So if we were to advance one of

17  the cases where Shell and Proctor & Gamble are not

18  defendants, common issues of fact discovery and evidence,

19  Shell and Proctor & Gamble, would not assumedly

20  participate for rational economic reasons.

21           Whereas in the Suffolk County Water Authority

22  case, the discovery that we would obtain as to the common

23  defendants in all 27 cases could be and should be applied

24  as to all those cases so the defendants get the benefit

25  of not having duplicative discovery and Shell and Proctor

Proceedings

1  & Gamble's due process rights for their participation

2  would be ensured, whereas that would not be the case if

3  in fact we advanced prioritization for cases where they

4  are not named defendants.

5          JUDGE GERSHON:  All right.  If there's nothing

6  else from you, can we hear from the defendants, whoever

7  is talking?

8          MR. BOULOS:  Your Honor --

9          MR. EDLING:  Your Honor, I do have some

10  additional reasons why but I will be happy to --

11          JUDGE GERSHON:  Oh, go ahead.

12          MR. EDLING:  -- (indiscernible) speak.

13          JUDGE GERSHON:  Go ahead.

14          MR. EDLING:  Okay.  In addition to the common

15  defendant, there are also common issues as to the Suffolk

16  County Water Authority case that apply to all of the

17  cases.  Namely, whether or not the plaintiffs can

18  establish that the defendants, in fact, their products,

19  on a more likely than not basis, played a substantial

20  role in bringing about the injuries.  That is common in

21  all cases.

22          What is unique and why I think it is

23  appropriate for the Suffolk County Water Authority case

24  to be prioritized is that one of the allegations as to

25  how the dioxane that is present in the wells for all of

Proceedings

1  the plaintiffs, contributed to that is that in largely

2  unsewered areas in Long Island, stabilized TCA, a product

3  that we allege -- the plaintiffs allege was manufactured,

4  marketed and promoted by Dow, Ferro and Vulcan, led to

5  the contamination of the wells through contribution to

6  those unsewered areas, namely as an additive to Suffolk

7  tank cleaners.

8           That issue is largely not present in the Nassau

9  County cases, not just because those are largely

10 unsewered -- or pardon me, those are largely sewered

11 areas but that is a substantial reason why the Suffolk

12 County Water Authority case, just to give you an

13 illustration, has not just all of the defendants but has

14 all of the theories that need to be, and I suspect would

15 be prosecuted by any individual case, but probably more

16 important, would be an issue to the defendants as to

17 affirmative defenses they would seek to raise, as well as

18 discovery they would seek to advance.

19           JUDGE GERSHON:  All right.  Anything else or

20 should I turn to the defendants?

21           MR. EDLING:  I'll -- I believe that's enough

22 for now, your Honor.  Thank you.

23           JUDGE GERSHON:  Okay.  Thank you.

24           MR. BOULOS:  Your Honor, Nader Boulos on behalf

25 of Dow.

Proceedings

1    Going back to your Honor's question, I think

2  it's a very observation that neither party submissions

3  really set out a criteria for prioritizing and in the

4  defendants' case, I hope what comes through is that

5  that's not an omission but rather what we are saying is

6  that the facts that will be necessary in the first

7  instance, for the parties to make informed proposals to

8  the Court and ultimately, what's most important, for the

9  Court to make decisions about prioritization and how, by

10  which I mean structuring trial and pre-trial proceedings,

11  like summary judgment or expert work as your Honor

12  referred to, those facts simply aren't developed yet.

13  That's why defendants propose we need some period of

14  initial discovery to develop the record that will go to

15  the factors that I expect the Court will ultimately be

16  looking at; what's going to be a productive way to manage

17  these cases, should the Court and parties take up a

18  subset of one plaintiffs' wells or look at common issues

19  cutting across different water districts.

20    I think there are many different ways that the

21  Court could choose to ultimately structure the later

22  stages of this -- of the proceedings in this case but we

23  aren't at that later stage yet.

24    And I think where this really comes out is in

25  Mr. Edling's comments a moment ago and in the submissions

Proceedings

we made about why we need discovery.  It's clear that the
plaintiffs think it's sufficient to look at this case
from a 30,000-foot level and say there are common
products, so you can skip all the way back from the fact
that there's dioxane present in certain wells, all the
way up to the manufacturer level and talk about what
products could've led to the presence of dioxane.

What we are -- the reason we are asking for
discovery, the reason these depositions matter is that
these plaintiffs, the water districts, aren't identical
to one another and certainly even within a water
district, the wells are not identical to one another.
These are individual wells, miles apart, each one has a
different story on just the fundamentals of who, what,
when, where and how contamination got into those wells
and in every case, the answer to that is someone other
than the defendants.

Developing that record matters and informs the
court case management decisions its ultimately going to
make because it's central to the plaintiffs' claims,
central to causation, central to testing the sufficiency
of the warnings that are allegedly insufficient, central
to affirmative defenses as Mr. Edling referred to.

It may implicate third-party practice which
will be a consideration, I would expect in the way the

Proceedings

1  Court chooses to structure the cases for later

2  proceedings.

3          So to be clear, we don't ask for -- we're not

4  asking to go do all the discovery in all the cases.  What

5  we're asking for is a period of time to do some basic

6  discovery that will not be duplicated later that will

7  inform the decisions the Court is to make.

8          JUDGE GERSHON:  All right.  I'd like to return

9  back to the plaintiffs and Mr. Edling, you've spoken

10 about common factual issues as to the defendants.  You

11 have identified with more specificity this afternoon than

12 you did in the letter, but how would common factual

13 issues as to the defendants affect the decision as to

14 what case to try in terms of it being a bellwether when

15 we're not talking about preclusion?

16         You're just saying it will be decided, when

17 it's all decided, then maybe the other cases will fold of

18 their own afford because decisions will have been made on

19 all of the issues, is that your point?

20         MR. EDLING:  No, your Honor, but I think that

21 there were a couple of subparts to your question and I

22 will try to address each.

23         JUDGE GERSHON:  Okay.

24         MR. EDLING:  Once cases are advanced and

25 rulings are made by your Honor as a matter of law, and

Proceedings

1   assumedly if it were to try, go to judgment, there

2   undoubtedly would be issues where -- which would be

3   preclusive in future cases.

4           I was approaching your Honor's initial question

5   both from the perspective of a bellwether in the sense of

6   would there or would there not be preclusive rulings, as

7   well as from the case management perspectives and I

8   attempted to answer both.

9           JUDGE GERSHON:  All right.  So you're talking

10  from the --

11          MR. EDLING:  As --

12          JUDGE GERSHON:  -- they would be preclusive in

13  a collateral estoppel sense.

14          MR. EDLING: Yes.  Yes, your Honor.  I also

15  based on experience, and this goes to your first point

16  this morning, which is this feels similar to an MDL,

17  although the cases are aggregated just in one district;

18  that is entirely correct.  And the approach that is

19  frequently and perhaps always taken, and it is the

20  guidance of the Manual for Complex Litigation, is to

21  identify cases for advancement and prioritization to

22  obtain the efficiencies and in fact, the cost savings of

23  common discovery which is exactly what we propose here.

24          This is occurring right now in an MDL involving

25  water contamination asserting manufacturer liability

Proceedings

1  theory, very similar to what we're asserting here which

2  is that --

3          JUDGE GERSHON:  Are you talking about Judge

4  Gergel's case?

5          MR. EDLING:  Yes, your Honor.

6          JUDGE GERSHON:  All right.  But you know,

7  you're talking about a mass tort case there, aren't you?

8          MR. EDLING:  No, your Honor -- well, I was not,

9  your Honor.  What Judge Gergel has done in that MDL is

10  has identified that the water provider cases, because

11  you're quite right that there are different types of

12  cases in that MDL before Judge Gergel, but what Judge

13  Gergel has done is said that there, and in fact there

14  are, hundreds of water provider cases and he has in his

15  written order, instructed the parties to identify

16  specific cases to prioritize in advance to be bellwether

17  cases.  His words, your Honor.

18          I viewed that --

19          JUDGE GERSHON:  I understand but I don't -- I'm

20  having -- I read his order.  You cited it, I read it --

21          MR. EDLING:  Yes, your Honor.

22          JUDGE GERSHON:  -- as did Judge Mann.  But it

23  seems to me that while we can -- it's appropriate to look

24  at MDL practice, this is not a mass tort case with

25  thousands of cases where you pick two or three.  We're

Proceedings

1  not talking about that.  You're talking about picking a

2  huge case out of all of them, and maybe we should go to

3  that, I was going to get to that a bit later, but I don't

4  see how Suffolk serves as an example when it's too big.

5          And let me just put on the record right now,

6  Judge Mann and did not focus when we entered our recent

7  order and queried why Suffolk shouldn't go first, we

8  didn't focus on the fact that 300 of the 500 wells at

9  issue in the 27 cases are in the Suffolk case.

10      So I think you have to consider the slate clean on

11  that point, in terms of our position.  We just focused on

12  its being the oldest.

13          MR. EDLING:  Sure.

14          JUDGE GERSHON:  So what you're proposing, seems

15  to me, not at all like what Judge Gergel has done.

16          MR. EDLING:  So your Honor --

17          JUDGE GERSHON:  It's interesting, not very

18  authoritative, it seems to me, for this case, let's put

19  it that way.

20          MR. EDLING:  Sure.  I won't spend much time on

21  Judge Gergel's order, other than to clarify that the

22  cases -- the potential cases for bellwether selection in

23  Judge Gergel's courtroom are only water provider cases,

24  many of which involve hundreds of wells far more than the

25  Suffolk County Water Authority case.

Proceedings

1          Appreciating that is a different case, the

2     bellwether approach that Judge Gergel has identified and

3     the parties are working towards, are exclusively water

4     provider cases that were identified and proposed on the

5     basis of fact sheet and document production alone.

6          Moving to your --

7          JUDGE GERSHON:  Okay.  Well, what benefit is

8     accomplished by prioritizing more than half of the wells?

9     Where is the priority there?

10         MR. EDLING:  What it's accomplished, your

11     Honor, is that the Suffolk County Water Authority  case

12     has all of the defendants, 25 of the cases do not.

13         JUDGE GERSHON:  Okay.

14         MR. EDLING:  Additionally, there are factual

15     issues that reside in Suffolk County that are not at

16     issue in Nassau County.  So as you look to, and you say

17     well there are 500 wells at issue in Suffolk County Water

18     Authority and there's no contestation, has more of the

19     impacted wells, you also have to look at part of the

20     theory of the case, your Honor, is that the contribution

21     to the harm from the defendants happened in three

22     discrete ways:  one, through industrial debriefing

23     operations -- well, that's in Nassau County and in

24     Suffolk County; two, through ethoxylated surfactants.

25     Well, that's only Suffolk County and included in the

1  Suffolk County Water Authority case; and three, that the

2  contribution to the harm through septic tank cleaning is

3  unique to Suffolk County.  What case includes all of

4  those?  The only one is Suffolk County Water Authority.

5          In addition, your Honor, this case is a

6  manufacturer liability case.  It is not a CERCLA case.

7  So the theory that the plaintiffs are all advancing, and

8  which would be gained in a prioritization is in fact

9  going to provide benefits in every case.

10         And to be very specific, plaintiffs will prove

11 or not, that the warnings that were provided by the

12 defendants were adequate as to all, as to all; the time

13 does not matter as to our burden.  If we cannot do that,

14 we will not win but that doesn't in any sense, inhibit

15 the appropriateness case, especially given while Suffolk

16 County Water Authority is of course the biggest, it also

17 has the most impacted citizens in Long Island.

18         So on the one hand it's larger, on the other

19 hand it's of outside import to the Island and because it

20 has the same factual issues, evidentiary issues and legal

21 issues as do all of the cases, as well as some additional

22 bases by which certainly the defendants have already

23 tried to secure discovery, it will be the only case that

24 would allow us to determine and efficiently prosecute all

25 of the affirmative defenses, all of the claims for relief

Proceedings

1  against all of the defendants based on all of the

2  plaintiffs theories with common evidence.  It is the only

3  one.

4          JUDGE MANN:  May I ask, this is Judge Mann, if

5  I might just ask a question and I understand that you'll

6  say that not all the theories are present but you did say

7  much earlier that Suffolk County was one of three cases

8  that involved all defendants.  And I'm not as much in the

9  weeds as to all 27 cases as you folks are, what are the

10  other two cases in which all defendants have been named

11  and how many wells are we talking about in those cases?

12          MR. EDLING:  Yes, your Honor, that is

13  Hicksville, and New York American Water.  I am not

14  counsel in those cases, so I don't know with granular

15  detail but I know that --

16          JUDGE GERSHON:  Mr. Schirripa?  Why don't we

17  let Mr. Schirripa and Ms. Factor answer that question.

18          MR. SCHIRRIPA:  Yes, your Honor.  This is Frank

19  Schirripa from New York American Water.  I believe we

20  have 17 wells at issue.

21          JUDGE GERSHON:  And Ms. Factor, you have 11

22  maybe, if I am remembering correctly?

23          MS. FACTOR:  Yes, your Honor, we have 11 wells

24  and all five defendants --

25          JUDGE GERSHON:  Okay.

Proceedings

1          MS. FACTOR:  -- are included.

2          JUDGE GERSHON:  Yes.  Okay.

3          MR. EDLING:  Judge Mann, this is Matt Edling.

4          JUDGE MANN:  Yes.

5          MR. EDLING:  Just going to one particular point

6    that I've made, I do appreciate that Suffolk County Water

7    Authority is the largest case and that one would think

8    would lead to additional work by the parties.  That said,

9    the Hicksville and New York American Water cases are not

10   in Suffolk County.  So some of the common factual issues

11   and evidentiary issues that will be appropriately hotly

12   contested and provide insight to the parties, would not

13   be present in those cases.

14          And to just sort of step back for a moment, we

15   are not saying only Suffolk County Water Authority.  If

16   the defendants want to identify other cases for

17   prioritization, we did not object to that.  We also did

18   not object to their request for discovery in all of the

19   cases and identified as an appropriate, we thought,

20   proposal for their consideration, that they take up to

21   50, 5-0, depositions across the landscape of cases, in

22   addition to the Suffolk County Water Authority cases,

23   obtain third-party discovery as they determined would be

24   most useful to their defenses, which would include but

25   not be limited to their ability to assert that sources

1  and third-parties were the or could be contributing

2  parties both to name for their own consideration, as Mr.

3  Boulos identified previously, the potential to be

4  identified as defendants in this case.

5          Those common issues are present in the Suffolk

6  County Water Authority case but we were not in any way

7  foreclosing or at least attempting to foreclose

8  defendants from securing discovery to aid in their

9  determination for prioritization as well, frankly, to go

10 towards the prosecution and defense of the case at large.

11         JUDGE MANN:  Well, this is Judge Mann again.

12         I do intend to get into more specifics with

13 counsel later on in the proceeding regarding what is the

14 -- you know, what precisely are the contours of the

15 discovery that you're proposing but I don't want to go

16 down that road prematurely because I know that Judge

17 Gershon has other issues to address with the group.

18         JUDGE GERSHON:  Okay.  So let's talk about the

19 -- let's see, the elephant in the china shop.  No one has

20 said anything about how long a case like Suffolk County

21 case would take to try and we're aware of that in now

22 Judge Scheindlin's MTBE 2007 decision when she was

23 talking about trying -- just a subset of Suffolk wells,

24 that that was going to take a very, very long time.

25         So if we're talking about trial management, Mr.

1  Edling, I take it you're talking about trying all 300

2  wells in one trial and how long do you say that would

3  take to do?

4          MR. EDLING:  Yes, your Honor, I do and I'm

5  going to answer you.  I'm also going to invite my

6  partner, Vic Sher, who tried that New York City case that

7  Judge Scheindlin presided over, as well as was pretrial

8  and lead counsel in the State of New Hampshire case which

9  involved more wells than what we're talking about here,

10  each went to verdict.

11          We are advocating and will prove based on our

12  common liability theory that the defendants warnings were

13  inadequate and that their products were a substantial

14  contribution to the harm in each well as to all wells.

15  We do not intend nor do we need to prosecute this on a

16  well-by-well basis, that has been tried and as your Honor

17  has already indicated, affirmed by the Second Circuit in

18  an approach that we would propose here, which is to

19  say --

20          JUDGE GERSHON:  Okay, but that's a different

21  case, right?  The case that went up to the Circuit is not

22  the case that I'm talking about, right, is it?

23          MR. EDLING:  Yes, your Honor, I'm aware of it.

24  Sure, I believe you were referring to the Suffolk County

25  Water Authority case and the MTBE prosecution.

Proceedings

1          JUDGE GERSHON:  Right, not the one -- not the

2    Exxon case.

3          MR. EDLING:  Well --

4          JUDGE GERSHON:  Not the one that was --

5          MR. SHER:  Your Honor?

6          JUDGE GERSHON:  Not the -- let's be clear,

7    we're talking about the same decision.

8          MR. SHER:  This is Victor Sher, your Honor, if

9    I may?

10          JUDGE GERSHON:  Yes.

11          MR. SHER:  The Suffolk County Water Authority

12   MTBE case was a prioritized case for discovery and trial,

13   among others, including the City of New York's case.

14   That case, that is the Suffolk County Water Authority

15   case, settled in part because it was advanced and then

16   the New York City trial was tried later before Judge

17   Scheindlin in 2009.

18          JUDGE GERSHON:  Okay.  Right, that's my

19   understanding.

20          MR. SHER:  I think --

21          JUDGE GERSHON:  Okay.

22          MR. SHER:  -- I think the point that my

23   partner, Matt Edling is trying to make here is that in

24   terms of trying the cases, and when we prepared for trial

25   and tried the New Hampshire statewide case which involved

Proceedings

1    thousands of public water supply wells -- I'm sorry,

2    hundreds of thousands of private wells, the nature of the

3    proof focused on expert testimony concerning the kinds of

4    fundamental issues that Mr. Edling's talking about; were

5    there adequate warnings, what were the state of practices

6    by handlers of the product and disposers of the product,

7    and the common manufacturer liability questions, that

8    none of these cases were tried on a well-by-well basis

9    and --

10              JUDGE GERSHON:  Okay, then how long do --

11              MR. SHER:  -- the length --

12              JUDGE GERSHON:  How long would you estimate

13   that the Suffolk County Water Authority case that you're

14   proposing be prioritized will take to try?

15              MR. SHER:  From the plaintiffs' perspective,

16   this is a six-week case.  That is the -- we don't see the

17   liability issues or causation issues as complicated and

18   the main issue will be frankly, damages and these are

19   cases that can be efficiently managed and both sides can

20   do it.

21              Now the New York City trial took -- it was

22   phased, it took a total of, I think a little over two

23   months, and the State of New Hampshire case took a little

24   over -- about the same length of time to try and we can't

25   control that -- you know, at this point, I think you'll

Proceedings

1  hear that it will take essentially forever from the other

2  side but it's just not true.

3     JUDGE GERSHON:  All right.  Let me hear from

4  the other side.

5     MR. BOULOS:  All right.  Your Honor, this is --

6     JUDGE GERSHON:  If you want to address this at

7  all, if you don't want to, I'll go on because I have more

8  questions.

9     MR. BOULOS:  Your Honor, it's Nader Boulos.

10     I will just very briefly --

11     JUDGE GERSHON:  Okay.

12     MR. BOULOS:  -- (indiscernible) that this case

13  is very different from MTBE in that there, there was

14  essentially one source, the distribution pipeline of gas

15  line, so -- excuse me, of gasoline.  So those cases did

16  not present the issues that the plaintiffs clearly will

17  have to deal with here in terms of all the potential

18  sources, the plaintiffs and defendants will have to deal

19  with that.

20     It's not sufficient, it doesn't answer the

21  question to simply say this is a manufacturer liability

22  case or to simply say that we're going to present this

23  case in a way that allows decision on all the warnings.

24     It matters when those warnings were given, to

25  whom they were given, what the recipients of those

Proceedings

1   warnings knew, and what they did.  That inevitably makes

2   this a well-by-well analysis.  And that is the reason

3   that prioritizing, in other words, putting at the front

4   of the line for trial, the case with 300 wells will never

5   allow the other cases to progress.

6          JUDGE GERSHON:  All right.  Let me go back and

7   ask another question that we've been circling around and

8   I want to ask the plaintiffs something, and eventually

9   though I'm going to get back to some of the issues that

10  Mr. Boulos has just raised.

11         So the defendants in their letter seem to

12  suggest the possibility of common issues that can be

13  tried together on which I understand they mean that not

14  picking a case as such but possibly trying certain issues

15  from multiple cases, plaintiffs say they don't "advocate"

16  for this but they say they haven't "foreclosed" it.  So I

17  would like to ask the plaintiffs whether if your proposal

18  as to Suffolk isn't accepted, shouldn't the parties be

19  consulting on this alternative possibility or do you not

20  want to face that at the moment?

21         MR. EDLING:  This is Matt Edling, your Honor.

22         JUDGE GERSHON:  Yes.

23         MR. EDLING:  And I don't ever think it's good

24  (audio interference) not to answer a judge's question, so

25  I will do so.

Proceedings

1       The concept and construct that this must be
2   prosecuted and tried on a well-by-well basis as Mr.
3   Boulos just referred to, I think was the (audio
4   interference) of your question and the reason I say that
5   is plaintiffs will prove or not that the defendants
6   warnings were inadequate to all because the assertion is
7   they never included any warning as to the disposal,
8   handling or anything, relating to dioxane.

9       That is an issue that would be subject to
10  common proof and perhaps even adjudication at summary
11  judgment and that would touch upon all cases and is a
12  common issue.  It is also the reason why the well-by-well
13  approach that the defendants say is necessary is in fact
14  not necessary.  Plaintiffs will prove that the
15  defendants' products are insubstantial part in every well
16  through plaintiffs' own evidence which shows as a matter
17  of chemistry because there is a chemical fingerprint as
18  to almost, if not 100 percent of the wells at issue in
19  this case, tying it to the defendant's products.

20      So that's point one, that's a common issue and
21  the warning, and it is plaintiffs' theory that the
22  warnings were inadequate to all is a reason why a well-
23  by-well -- is just one reason, but is any reason and a
24  cheap reason why a well-by-well approach is simply a
25  recipe for madness and endless and costly discovery.

1       The issue as to the adequacy of warning and

2  causation which cuts across all cases, I would advance is

3  an issue and perhaps a series of issues that the parties

4  could present to each of your Honor as something that we

5  would not foreclose in advance as common issues that

6  could be ultimately adjudicated either by your Honor at

7  summary judgment or to the trier of fact, typically

8  although not as you I am sure are aware, causation and

9  the adequacy of warnings are frequently issues of fact

10 but not always.

11      JUDGE GERSHON:  All right.  Let me move onto

12 another issue and this is again, directed to the

13 plaintiffs.  If we got the Suffolk case ready for trial

14 or summary judgment, would virtually all of the discovery

15 that you want from the defendants in all of the cases be

16 done?

17      MR. EDLING:  Yes.  This is Matt Edling and the

18 answer is yes, your Honor.

19           JUDGE GERSHON:  Okay.  And so --

20           MR. EDLING:  But the reciprocal is not correct.

21           JUDGE GERSHON:  So what -- yeah, what wouldn't

22 be done?  I mean, what I'm looking at is both sides here

23 have said that we can talk about prioritization before

24 all the discovery is done and I'm kind of wondering why

25 -- frankly, why the defendants have agreed to that.  I

Proceedings

1   mean, if all of the discovery of the defendants will be

2   done, once you've finished with Suffolk County, we're

3   talking about discovery of the individual plaintiffs

4   here.

5              MR. EDLING:  Your Honor?

6              JUDGE GERSHON:  The damages can -- go ahead.

7              MR. EDLING:  So I apologize, I didn't mean to

8   interrupt.

9              JUDGE GERSHON:  Go ahead.  No, no, I'm just --

10             MR. EDLING:  Right.

11             JUDGE GERSHON:  I'd rather hear from you.

12             MR. EDLING:  This is Matt Edling, your Honor.

13             JUDGE GERSHON:  Okay.

14             MR. EDLING:  I will lead with why the

15  reciprocal is not true and there are two very clear

16  reasons why the issues that would be prosecuted and

17  resolved for the authority cut across all cases and why

18  it's the most efficient.  I've already discussed with

19  your Honors the common defendants unique to the three of

20  the 27 cases.

21             JUDGE GERSHON:  Right.

22             MR. EDLING:  Additionally, the location of the

23  wells being in Suffolk County  focus in theory of

24  liability unique to Suffolk County.  And the third, which

25  we have not touched upon, but is also unique to Suffolk

Proceedings

1  County, and frankly unique only Suffolk County Water
2  Authority, is the following.
3  Shell and Proctor & Gamble are defendants I
4  this case, not the Nassau County cases, based upon the
5  allegation that their product, their consumer products
6  have contributed to the harm of certain wells. Whereas
7  the stabilized TCA product which are as alleged, marketed
8  -- manufactured, marketed, promoted and sold by Dow,
9  Ferro and Vulcan. The consumer products, we believe,
10 will only be at issue with a subset of wells as to all
11 the cases in the Suffolk County Water Authority case.
12 So we would be able to address all of the
13 defendants, all of the theories of liability, all of the
14 causation, all of the legal issue, as well as any
15 assertions as between the defendant, as to allocation on
16 a joint or several liability basis in the Water Authority
17 case, and only the Water Authority cases.
18 So this issue as to the Shell and Proctor &
19 Gamble defendants having them being able frankly to
20 obtain evidence and have their due process rights
21 protected, of course, is as I am sure more acutely their
22 issue than my own but our ability to identify and
23 determine their liability which would across a number of
24 cases is only unique to a certain number of wells that
25 I'll profess to you we believe are tied to a shallow

Proceedings

1    water aquifer as distinct from the deep water aquifer

2    which provides supply well to the balance of the

3    defendants -- pardon me, the balance of the plaintiffs.

4              JUDGE GERSHON:  So how much additional

5    discovery in quantity, in terms of how long would it

6    take, would be required to simply do all the discovery in

7    all of the cases before we try any case?

8              MR. EDLING:  So this is Matt Edling, your

9    Honor.

10             JUDGE GERSHON:  Yes.

11             MR. EDLING:  (Audio interference) there are two

12   answers.  As to the liability, the affirmative liability,

13   the affirmative liability discovery from the plaintiffs,

14   we would be able to complete that by, as we identified in

15   our proposal, Thanksgiving, the fact discovery, and then

16   the expert discovery would take several months.  That's

17   in one case, right?  We could do all the liability

18   evidence but that would apply across all the cases at

19   large.

20             If your Honor were to order fact discovery in

21   all of the cases, getting any one case ready for trial

22   would take years and the burden would be enormous on all

23   the parties --

24             JUDGE GERSHON:  Why?

25             MR. EDLING:  -- because obviously the defendant

Proceedings

1  -- because the defendants would be --

2          JUDGE GERSHON:  Why would it?

3          MR. EDLING:  Sure.  The defendants would be

4  taking discovery from every plaintiff, 27 of them,

5  multiple depositions, document collection, examination,

6  damages analysis, expert discovery as to the damages for

7  each claimant but the reverse is not true, which is to

8  say that the plaintiff in one case or perhaps two cases

9  or three cases, would be able to obtain discovery from

10  the defendants once.  That is to say, Dow's witnesses,

11  Shell's witnesses, Ferro's witnesses, Vulcan's witnesses

12  would sit for one deposition and those would be the only

13  depositions they would sit for that would be equally and

14  readily available for whichever is the first case that's

15  put before your Honor for summary judgment at trial.

16          JUDGE GERSHON:  What --

17          MR. EDLING:  So advance --

18          JUDGE GERSHON:  -- you've now -- you've been

19  talking about this being a single trial.  If there's so

20  much damages discovery, should we be contemplating

21  separating out liability and damages at trial?

22          MR. EDLING:  Your Honor, this is Matt Edling.

23          An issue as to the bifurcation of damages from

24  liability, I would -- we would contest but would brief

25  that before your Honor if that is an issue that you

Proceedings

1  believe is necessary.  I was focused more on your

2  question which is why would it take longer to prepare all

3  of the cases to complete fact discovery as distinct from

4  some subset and the reason is that there would be, and

5  the defendants would be entitled to, discovery as to each

6  plaintiff, whereas --

7            JUDGE GERSHON:  But other than -- excuse me,

8  other than damages, what is this other discovery?

9            MR. EDLING:  That would be the substance of the

10  discovery but it would be depositions and document

11  production and to be clear, your Honor, we did as a

12  proposal, suggest to the defendants that in addition to

13  the Suffolk County Water Authority case, which we believe

14  should be prioritized that we would be amenable for the

15  defendants to take that discovery from the plaintiffs,

16  albeit with some limitation because we assume, that we

17  would not be prosecuting and trying all of the cases at

18  once, such that the defendants would be afforded the

19  right to obtain the very discovery into the damages as

20  your Honor is identifying, across all of the cases but to

21  do so in a reasonable manner such that it wouldn't be

22  discovery as to every plaintiff in every case because

23  that would necessarily mean just because of time, if

24  there was no limitation under the -- and just you apply

25  the Federal Rules to every plaintiff in every case, that

Proceedings

1  would take years to complete discovery if there is no

2  prioritization of cases.

3           JUDGE GERSHON:  How do you --

4           MR. EDLING:  If the defendants --

5           JUDGE GERSHON:  Go ahead.

6           MR. EDLING:  Your Honor --

7           JUDGE GERSHON:  I'll hear from the defendants

8  on this as well but let me just ask this other question

9  of the plaintiffs.  How do you respond to their argument

10  that they need discovery just to complete the pleadings

11  that is to identify third-party claims?  Can I decide

12  what case to try before the pleadings are complete?

13           MR. EDLING:  This is Matt Edling, your Honor.

14           My response would be --

15           JUDGE GERSHON:  Yes.

16           MR. EDLING:  -- that's what they've been doing

17  for two years.  Our proposal permits them to do that now.

18  We simply said let's get on with fact discovery and have

19  a pretrial schedule in a case, as opposed to allowing

20  discovery to occur as to all cases at all times without

21  any trial date.

22           So to be clear, the defendants have, as have

23  the plaintiffs, have been pursuing third-party discovery

24  for years and they have more time to do that now, and

25  we're in no way limiting their right to seeking third-

Proceedings

1   party discovery but at some point, the matters should be

2   ready for trial and the defendants be forced to either

3   name or not name additional parties in this case.  And of

4   course, if they determine that there's some parties

5   seeking contribution, then they have that right in a

6   post-trial equitable contribution claim, if they so

7   choose.

8          But to be very clear, your Honor, years of

9   discovery into third-party defendants has already been

10  incepted by the defendants.  No such other defendants

11  have been named but we are in no way foreclosing their

12  right to do it.  We're simply saying we should have some

13  case we believe for the reasons I stated, it should be

14  the Authority's case, advanced, so that we can have

15  expert discovery occur and have that common liability

16  discovery as to the defendants completed.

17          JUDGE GERSHON:  All right.

18          JUDGE MANN:  This is Judge Mann again.

19          JUDGE GERSHON:  Okay.  Sorry, go ahead.

20          JUDGE MANN:  Judge Gershon, is it all right?

21          JUDGE GERSHON:  Sure, of course.

22          JUDGE MANN:  I just wanted to ask, on behalf of

23  plaintiff, you've indicated that the discovery that the

24  plaintiffs are seeking is going to be common in all of

25  the cases.  You could complete discovery of defendants,

Proceedings

1   since we have a limited universe of defendants, and your

2   theory is that the adequacy or inadequacy of the warnings

3   would apply to all cases and wouldn't require a well-by-

4   well analysis. So your position is, you could complete

5   all that discovery by Thanksgiving.

6           But the defendants' position, they contest your

7   theory of the case.  They say that that requires well-by-

8   well analysis.  So for purposes of discovery, let's take

9   your approach for the moment that Suffolk County is going

10  to be prioritized and you say that it's going to be

11  discovery of defendants that's limited in scope, let's

12  assume that the defendants want discovery on 300 wells.

13  Are you suggesting that because of your theory that that

14  is not dispositive, they shouldn't be able to get

15  discovery on that?

16          And another question, if it would take years

17  without prioritization to do full discovery, then I would

18  think that you're still talking about a very substantial

19  time for full discovery for 300 out of 500 wells.

20          MR. EDLING:  So your Honor --

21          JUDGE GERSHON:  Good question.  Thank you,

22  Judge Mann.

23          MR. EDLING:  Judge Mann, this is Matt Edling.

24  I'll address both of your questions.

25          The first is are we foreclosing the defendants'

Proceedings

1  right as to each well?  The answer is no and, in fact, we

2  have produced information, documents, interrogatory

3  responses and fact sheets as to all wells and the

4  defendants have pursued third-party discovery that

5  applies to all wells and to each well.  So we are in no

6  way foreclosing that.  If that is the defense that they

7  wish to advance, they may.  It is not what we will prove.

8           Second, the three to 500 well issue is a red

9  herring and the reason that it is a red herring is I was

10  basing my statement as to why it would take years to

11  ready all the cases for trial if in fact full fact

12  discovery were to apply to all 27 cases, not because it

13  would require or should or should not require a well-by-

14  well approach but instead, 27 cases necessarily would

15  lead the defendants to want to take depositions,

16  discovery, and focus on the damages as to each of those

17  27 cases.

18           Now I want to be very clear, your Honor, while

19  we believe the liability theory applies across all of the

20  plaintiffs' wells and doesn't require a well-by-well

21  theory to prove our case, as to the damages associated

22  with a given well, that can differ and I'll give you just

23  one very clear example.

24           There will be wells for every plaintiff that

25  are larger or smaller than others and if it is a larger

1  well, it will require a larger treatment system to get

2  rid of the dioxane.  Now, proving that the defendants'

3  contribution to the harm in that well will not differ as

4  between those two wells but the cost borne by the water

5  provider to treat the wells will differ and based on

6  experience, that is and frequently is the dominant focus

7  as to damages and discovery in these cases because the

8  plaintiffs' theory of liability is otherwise common and

9  damages as your Honors are well aware, is frequently a

10  hotly contested issue in all cases but that is especially

11  so when we're talking about treatment costs as expenses

12  as what we were talking about here.

13          So not foreclosing and the reason -- not

14  foreclosing their ability to pursue their defenses as

15  they see fit and as they have already and the reason I

16  was saying  and the only reason I was saying that it

17  would take years is not the number wells but instead, the

18  ability for the defendants to talk about and -- pardon me

19  -- to discover the damages associated with each plaintiff

20  in the depositions and written discovery that they would

21  assuredly be entitled to as to each plaintiff.

22          JUDGE GERSHON:  So going back to my earlier

23  question, so you seem to be emphasizing that the

24  discovery that the defendants will want will be from each

25  of the 27 plaintiffs is going to be about damages and

1  nothing else.  You seem to think that's what's going to

2  take years to do, damages discovery.  I'm struggling to

3  see why that should be the case but we'll hear from the

4  defendants.

5          Let me just make sure that Judge Mann doesn't

6  have anything else or any follow-up before I turn to the

7  defendants here.

8          JUDGE MANN:  Not at all.  Not at all.

9          JUDGE GERSHON:  Okay.

10          MR. EDLING:  Your Honor, sorry?

11          JUDGE GERSHON:  Yes.

12          MR. EDLING:  Matt Edling.

13          I want to be, sorry, very, very clear.

14  Obtaining all discovery --

15          JUDGE GERSHON:  You keep saying -- Mr. Edling,

16  Mr. Edling, you keep --

17          MR. EDLING:  Yes, your Honor.

18          JUDGE GERSHON:  -- you want to be clear but the

19  reason we have so many questions is maybe you're not

20  quite as clear as you want to be.

21          MR. EDLING:  Well --

22          JUDGE GERSHON:  So try again.

23          MR. EDLING:  -- then for that, I apologize.  I

24  apologize if I am not being as clear as I need to be.

25          The discovery in 27 cases, to ready 27 cases

Proceedings

1  for trial, will necessarily take longer than preparing

2  less than 27 cases.

3          JUDGE GERSHON:  How much longer is my question?

4          MR. EDLING:  There are --

5          JUDGE GERSHON:  How much longer?  What are we

6  really talking about.  You've said damages, I can

7  understand that but apart from damages --

8          MR. EDLING:  Sure.

9          JUDGE GERSHON:  -- which would be separate for

10 each plaintiff --

11         MR. EDLING:  Sure, I --

12         JUDGE GERSHON:  -- but maybe I should be asking

13 the defendants about this because it's not your

14 discovery, it's their discovery of you, right?  You want

15 to make it very lengthy, I mean obviously for your own

16 strategic purposes, you want to say their discovery of

17 you is going to take forever but I don't know if that's

18 the case.

19         Let me talk to them.  Okay.  So defendants,

20 this is a slightly different point but we've touched on

21 it, it has to do with the third-party potential

22 pleadings.  You say you need discovery to identify

23 sources who you might add as third-party defendants and I

24 do want to make a point here that I'm concerned with your

25 nomenclature.

Proceedings

1          Obviously, the plaintiffs claim is that your
2   clients are the sources, the actual polluters.  I think
3   what you're referring to is something we could call
4   "intermediate sources", who I assume are your customers
5   or your customers' customers and I don't know why you
6   think this information would be more available from the
7   plaintiffs than from your own files.
8          The plaintiffs are saying that source questions
9   should be part of expert discovery.  I'm curious as to
10  your position on that and then I'm curious as to your
11  position a to -- that there can be no decisions about
12  priority until all the pleadings are complete.  What
13  about before expert discovery is done?
14         And why, I'm raising a new question presented
15  by Mr. Edling, why can't you decide these third-party
16  issues already, if you've been pursuing your third-party
17  discovery?  So that's a bunch of questions.
18         MR. BOULOS:  Very good, your Honor.  Nader
19  Boulos again on behalf of Dow.
20         I'm going to try to take them all and please, I
21  know your Honor will tell me if I miss one.
22         JUDGE GERSHON:  Yes.
23         MR. BOULOS:  It is --
24         JUDGE GERSHON:  Not to worry.
25         MR. BOULOS:  It is definitely not our position

Proceedings

1  that 100 percent of discovery in all the cases has to be

2  done before any discussion or decisions on prioritization

3  can be made.  It's not even to -- your Honor's question

4  was are we saying that all expert discovery needs to be

5  done?  We're not and in our submission, we were not even

6  asserting that all fact discovery needs to be done.

7          JUDGE GERSHON:  Let me interrupt you for a

8  second.  I understand that and frankly, I didn't

9  understand it.  I mean, I understood what you said but I

10  didn't -- my question about how much additional discovery

11  would be needed once we finish the Suffolk County case,

12  is really directed at both sides.

13          I understand that you said oh, we can decide

14  prioritization maybe in a year from now or whenever, but

15  I'm trying to get an overall picture of what this case

16  looks like or cases look like and how much discovery

17  really would be if we finished all the discovery in the

18  Suffolk County case.  How much is left for these 27

19  cases?

20          So I am really asking you to address not your

21  position but my surprise about your position, shall we

22  say.

23          MR. BOULOS:  Understood, your Honor.

24          The proposition -- the concept of doing the

25  discovery in the Suffolk County case really has two --

1  there are two sides to that coin.  There's the discovery

2  the plaintiffs want to do of the defendants and I think I

3  heard Mr. Edling say that that would be all of the

4  discovery that they want to do of the defendants for all

5  the cases, and that doesn't surprise me.

6          JUDGE GERSHON:  Yes.

7          MR. BOULOS:  And I think that's very easily

8  understood.  The flip side of that coin, our discovery,

9  the defendants' discovery in the Suffolk County case,

10  would only be of Suffolk County Water Authority.  It

11  would only relate to its wells.  So it wouldn't include

12  any of the discovery on the 26 other cases.

13          Parenthetically, if we were to do, to be

14  required to do, the discovery in I'll put air quotes

15  around just the "Suffolk County" case by November, as the

16  plaintiffs suggest, that would at a practical level, if

17  we're going to do all the fact discovery on a 300-well

18  case, I don't think it will be done by November and it

19  certainly won't permit other discovery which now I hope I

20  will more directly  respond to the other part of your

21  question.

22          JUDGE GERSHON:  Okay.

23          MR. BOULOS:  What other discovery would the

24  defendants need?  We would need discovery in the other --

25  the other 26 cases would not be advanced at all from our

Proceedings

1   perspective with respect to our defenses and I think

2   Judge Mann put her finger on this.  The plaintiffs'

3   theory, the fact that they want to view this case from

4   the tree tops and say it's all -- we can prove or not

5   prove, as Mr. Edling allows, that all the warnings were

6   insufficient, that theory doesn't limit the defendants'

7   defenses.

8           We are allowed, and in fact we have to, drill

9   deeper than that and say who did those warnings go to,

10  when, what did they know, and match that against what the

11  contamination picture is at the wells.  So that's why we

12  need basic discovery in the other cases.

13          Now to return to an observation your Honor made

14  at the outset, which is --

15          JUDGE GERSHON:  Excuse me.  You're saying what

16  did who know, the people that you sold it to?

17          MR. BOULOS:  The --

18          JUDGE GERSHON:  Who are you talking about?

19          MR. BOULOS:  Whoever it is shown to be -- we

20  need to go backwards from the presence of dioxane in a

21  well to the source of that dioxane.  That, I don't mean

22  to quibble the nomenclature --

23          JUDGE GERSHON:  Okay.

24          MR. BOULOS:  -- but that is the actual

25  polluter, the person or entity that released the product

Proceedings

1  that found its way into the ground water and then

2  identify, understand what warning that person had and

3  what they knew.  Was there a failure to warn that person

4  and was that a substantial factor in leading to the

5  presence of dioxane?

6          JUDGE GERSHON:  And you're saying you don't

7  know who those people are?

8          MR. BOULOS:  That is correct.  We don't know

9  that and Mr. Edling said there have been years of

10  discovery about sources of contamination, that is not the

11  case.  We sit here with the plaintiffs still not having

12  completed their initial document production, with third

13  parties not having completed their document production.

14  So that discovery is not complete.

15          I recall your Honor asked a question about

16  whether that's an expert discovery issue or maybe Mr.

17  Edling's comment, I'm recalling.

18          JUDGE GERSHON:  No, no, I did ask about that.

19          MR. BOULOS:  Okay.

20          JUDGE GERSHON:  Or I think based upon what the

21  plaintiffs had suggested.

22          MR. BOULOS:  And the answer to that is there is

23  at least some ordinary course of business information

24  that we should -- that we are seeking in discovery that

25  shows what these water districts did to actually

Proceedings

1  investigate and determine what those sources were.

2        Now maybe some of them will say they didn't do

3  any and if that's the record in discovery, that will be

4  the record in discovery but what we're asking for now is

5  not the whole -- we're not suggesting, maybe this goes

6  back to my comments a few minutes ago, we're not

7  suggesting that you have to take this all the way through

8  expert discovery necessarily before making any decisions

9  on structuring or prioritization if we're going to use

10 that label, what we want is to develop the factual

11 record, understand what information the water districts

12 themselves had or maybe some of these third-party

13 governmental agencies had that will help us understand

14 who the actual polluters were of the well (audio

15 interference).

16        JUDGE GERSHON:  Maybe it would help me if you,

17 and Judge Mann, if you identify the types of expert

18 discovery that is actually involved in this case.

19 Usually in an MDL, expert discovery is a driver.  Here,

20 it seems not to be.  Nobody's really mentioned and it's

21 not even on your schedule of proposed discovery, what

22 kind of expert discovery are we talking about?

23        MR. LENDER:  Your Honor?

24        JUDGE GERSHON:  What are the subject areas.

25        MR. LENDER:  Your Honor, this is David Lender

1   for Proctor & Gamble.

2          I just -- I think it would be worth, if I

3   could, just take a moment and talk about us because this

4   -- you know, for most of the conversation we've been

5   talking about the industrial defendants but there's only

6   one consumer company that's (audio interference) and

7   that's P&G.

8          JUDGE GERSHON:  Yes.

9          MR. LENDER:  And you know where you started at

10  the beginning of this conversation which is how is

11  Suffolk County representative of the 27 cases, if we're

12  going to go down that route, I did hear a reference to

13  the Manual for Complex Litigation but as your Honor

14  knows, the Manual for Complex Litigation talks about the

15  specific plaintiffs and their claims being representative

16  of the cases.

17         And the issue here is when you heard the

18  description of why plaintiffs want to proceed with

19  Suffolk County is because apparently they have a view

20  that there are certain of the wells within Suffolk County

21  that may have, some allege, some impact by P&G but in

22  terms of expert discovery and actual fact discovery, as

23  your Honor knows we are just one of hundreds and hundreds

24  of consumer products that people use that have some trace

25  amounts of 1,4-dioxane and that is an unintended

Proceedings

1  byproduct of the manufacturing process.

2          And we, one of our big issues which is what

3  really makes Suffolk County not representative is the

4  causation element because if you're just going to name

5  one of hundreds and hundreds of products, what if any is

6  our contribution versus everyone else's contribution?

7  And that is going to be the subject of both discovery but

8  clearly also expert discovery because that would be one

9  of the core issues that I just wanted to make sure was

10  not being lost as we're talking about product warnings or

11  products that people are selling when they're selling

12  1,4-dioxane that just -- we're just in a very different

13  position.

14          JUDGE GERSHON:  Well --

15          MR. LENDER:  And Shell is --

16          JUDGE GERSHON:  Okay.  Let me just ask you this

17  then, you're saying your contribution would be subject to

18  expert discovery, assuming that that's correct.  Why

19  wouldn't that happen if there was -- if plaintiffs'

20  proposal to go forward with Suffolk first was adopted?

21          MR. LENDER:  We just want to make sure that we

22  also would have the opportunity, there's an initial

23  complexity that we're going to want to and need to take

24  discovery of third parties in order to make sure that

25  we're identifying all of the (audio interference) -- I

Proceedings

1  don't know how many products there are that have 1, 4-

2  dioxane that I guess go down the drain and also arguably

3  would be a contributor, if not a bigger contributor, to

4  the extent the consumer products are contributing

5  anything.

6          JUDGE GERSHON:  Well, nobody's been stopping

7  you from taking such discovery, have they?

8          MR. LENDER:  No, no, we've -- to be honest,

9  we're -- the plaintiffs have not really spent a lot of

10  time talking to us, but no, we can proceed and we wanted

11  to see where we were going in terms of priority and

12  discovery but yes, I mean obviously depending on what

13  comes out of this, we will proceed with that kind of

14  discovery.

15          JUDGE GERSHON:  I see.  Okay.

16          JUDGE MANN:  This is Judge Mann again.

17          JUDGE GERSHON:  Judge Mann, you're -- it's not

18  clear.

19          JUDGE MANN:  Is it?  Okay.  I'm sorry.  I just

20  wanted to ask a question of Mr. Boulos is just --

21          JUDGE GERSHON:  All right.  Let me just ask --

22          JUDGE MANN:  -- (audio interference) --

23          JUDGE GERSHON:  -- can those --

24          JUDGE MANN:  -- I'm sorry.

25          JUDGE GERSHON:  I can't hear you.  Can other

1 people hear Judge Mann?  If other people can, I'll try to

2 change my -- I'll do something --

3              MR. EDLING:  No, your Honor.

4              JUDGE GERSHON:  -- to my phone.

5              JUDGE MANN:  (Audio interference).

6              JUDGE GERSHON:  No.

7              UNIDENTIFIED SPEAKER:  I apologize, Judge.

8              JUDGE GERSHON:  I think it's your line, Judge

9 Mann, there's some problem.

10             JUDGE MANN:  I think it may be my headphones.

11 I'm not (audio interference).

12             JUDGE GERSHON:  Yeah, maybe try the speaker or

13 something different.

14             JUDGE MANN:  Can you hear me now?

15             JUDGE GERSHON:  Perfect.

16             JUDGE MANN:  Okay.

17             JUDGE GERSHON:  Perfectly.

18             JUDGE MANN:  It was my headphones.

19             JUDGE GERSHON:  Oh, okay.

20             JUDGE MANN:  I apologize to everyone.

21             JUDGE GERSHON:  Okay.

22             JUDGE MANN:  I wanted to ask Mr. Boulos a

23 question that Judge Gershon put to Mr. Edling, and that

24 is, you know, do the defendants have in mind any criteria

25 or metrics by which they would weigh in on

Proceedings

1 prioritization. I understand you say you need more

2 discovery to ascertain the underlying facts. That said,

3 you know, the Suffolk County case has been pending now

4 for over three years, I'm sure you've thought about the

5 issues and what is it that you're looking for, what do

6 you think would make a case representative and therefore,

7 an appropriate bellwether or test case?

8         MR. BOULOS:  Well, your Honor, it's Nader

9 Boulos again, it's not clear on the record that we have

10 now what could be common across the cases but it could

11 be, for instance common polluters, customers, as Judge

12 Gershon referred to them, whether direct or indirect, but

13 you could have common polluters across different wells

14 maybe even cutting across districts, that could make a --

15 that could provide a candidate for an approach on how to

16 either structure a case or subset of a case or a cross

17 case sample for briefing or trial.

18         There could be issues like the statute of

19 limitations offense.  There could be issues based on the

20 level of contamination in certain wells.  And I know this

21 is -- I'm answering in a higher level of generality than

22 I would like to for what is a specific question but I'm

23 somewhat constrained to do that because we just don't

24 have that record yet on the other cases.

25         I also think at a very practical level, I am

Proceedings

1  sure one of the considerations will be what can be
2  presented -- what can be prepared for trial, and what can
3  be presented in a manageable way, and I think to the
4  extent those are yardsticks, Suffolk County is going to
5  come up short unavoidably compared to other water
6  districts because of its size.

7          There is simply just as a matter of common
8  sense, it will take shorter, it will take less time in
9  discovery to prepare a case with fewer wells.  There will
10 be less plaintiff discovery, less third-party discovery
11 required there.  It will take less time to try a case
12 with fewer wells.

13         I'm not suggesting today that the Court has to
14 adopt those or should adopt those as the metrics but I
15 think those will go into the calculus.

16         Back to a question that was asked earlier, how
17 much time would it take to do all the discovery the
18 defendants want of the plaintiffs in all the cases, I
19 think that -- I think we could proceed on that approach
20 and what we were already proposing was to do discovery in
21 parallel and check back in with the Court in nine months
22 after the end of document production.  I don't think that
23 will be sufficient to do at all but I do think it can all
24 be done in a manageable and efficient way.

25         There's been no scorched earth litigation in

Proceedings

1   this case and there's no reason to believe that there's

2   going to be.  The defendants don't have any interest in

3   taking more depositions than we need to and we propose

4   structurally a mechanism where we would report to the

5   Court regularly and if anybody thought discovery was

6   getting out of hand, the Court could intervene.

7           So I think we could, and this is just to wrap

8   it up, goes back to Judge Gershon's observation at the

9   beginning of the case that in some way -- the beginning

10  of the call, that in some ways this is like an MDL.

11  Well, that -- if there is one thing we can take from the

12  MDL is that you do the fact discovery and return cases

13  for trial.  I'm not necessarily saying we need to do all

14  the fact discovery.  Our proposal in our letter of last

15  week allows for us to do an initial period and check in

16  and I suggest that's a sensible way to proceed.

17          JUDGE GERSHON:  So you think that less

18  discovery will be needed than what the plaintiffs think?

19          MR. BOULOS:  I don't think that it will be

20  unmanageable in any way.  It will be discovery -- the

21  plaintiffs' side, the plaintiffs' discovery of us will

22  not be expanded at all.  Our -- yes, we'll have more

23  discovery to take --

24          JUDGE GERSHON:  Right.

25          MR. BOULOS:  -- more depositions --

Proceedings

1          JUDGE GERSHON:  Okay.

2          MR. BOULOS:  -- but there's no reason to think

3     that that should be unmanageable.

4          JUDGE GERSHON:  All right.  Let me ask one

5     final set of questions which will lead us into -- that

6     really relate to discovery and then will lead us to Judge

7     Mann's world, I am concerned about there being too many

8     layers of discovery that are being proposed by both

9     sides.  For example, there are proposals for depositions

10    for determining priority and then there are depositions

11    for "full discovery".

12          Put another way, the defendants on page 1 of

13    their letter say "Some discovery short of the completion

14    of full fact discovery is needed before trial decisions

15    are made".  And I'm not sure -- maybe you tried to answer

16    this already and maybe I just haven't understood it, but

17    I don't exactly understand what would be the subject of

18    discovery after trial decisions are made, and would that

19    be different from a decision on when we do summary

20    judgment briefing?  Defendants also refer to something

21    called "basic discovery" in all cases.  I just don't know

22    what that means.

23          So if either side can try to respond to that,

24    and then after that, well, we'll turn this over to Judge

25    Mann.

Proceedings

1          MR. BOULOS:  Your Honor, it's Nader Boulos.

2          JUDGE GERSHON:  Okay.

3          MR. BOULOS:  It was my (audio interference), so

4    I'll go first.  We are -- all we are talking about is the

5    ability to start to deposition discovery. We would be

6    perfectly content to set one schedule to do fact

7    discovery and take it through its completion and just do

8    the discovery that's needed in the cases.

9          We understood that the Court was looking to us

10   to come up with a way to eventually decide on something

11   short of completing discovery in all of the cases, and

12   that's why we proposed this approach where we would do

13   nine months of discovery and then report back in.

14          To be clear --

15          JUDGE GERSHON:  But do you think --

16          MR. BOULOS:  Yeah, sorry.

17          JUDGE GERSHON:  Do you think that there's

18   something that's going to be -- what I am concerned about

19   with these layers of discovery is that you'll end up

20   doing more discovery than you would have done had you

21   just completed all the discovery in all the cases.

22          In other words, every time you call witnesses,

23   you have to ask them what's your name, where do you work,

24   what do you do, dah-dah-dah.  I mean, you know, you have

25   to go on and --

Proceedings

1          MR. BOULOS:  Understood.

2          JUDGE GERSHON:  Why call these people --

3          MR. BOULOS:  (Audio interference).

4          JUDGE GERSHON:  Plaintiff says you're going to

5    call these people back three times; is that true?

6          MR. BOULOS:  No.  It definitely isn't.

7          JUDGE GERSHON:  Oh, that's (audio

8    interference) --

9          MR. BOULOS:  And I appreciate the opportunity

10   to respond to that --

11         JUDGE GERSHON:  Okay.

12         MR. BOULOS:  -- because I had that on the list.

13   We definitely intend this to operate as multiple layers

14   of depositions of the same people, multiple bites at the

15   apple and we would be, I think -- I do appreciate the

16   Court's sense that it might just be more efficient to set

17   one deadline, whether that's 12 months or something else

18   and come back if you need more time and just do all the

19   discovery.

20         But if we were to -- the way our approach was

21   intended to operate was that if we depose someone during

22   this nine-month period, same rule for the plaintiffs,

23   deposing one of our witnesses, the presumption would be

24   you would not depose that person again.  If you did, it

25   could only be on something that isn't duplicative.  For

Proceedings

1  instance, if you found out that some employee was also

2  responsible for other wells, (audio interference) go and

3  take the deposition of other wells but you could only do

4  that with agreement of the parties or leave of court.

5       So we were trying to build in, in fact, a

6  prohibition against multiple layers because we don't want

7  to depose people multiple times and we certainly don't

8  want our people deposed multiple times.

9       JUDGE GERSHON:  Okay.  All right.  Do we all

10  have the energy to continue, need a break or Judge Mann,

11  can you take over?

12       JUDGE MANN:  I'm happy to take over, let me

13  just check that everyone can hear me?

14       JUDGE GERSHON:  Yes, I can.

15       JUDGE MANN:  (Audio interference)?

16       JUDGE GERSHON:  Yes.

17       MR. EDLING:  Yes, your Honor.

18       JUDGE MANN:  There's one issue that is not

19  really a discovery issue but my curiosity was peaked and

20  that is that Mr. Edling -- it seemed to me listening to

21  all these arguments that what would be most efficient if

22  the plaintiff says we have a theory and if we're right,

23  then all defendants are liable.

24       It seems to snuggest that the most efficient

25  way of proceeding would be to bifurcate liability and

1  damages and Mr. Edling has said that the plaintiffs are

2  opposed to that.  And I guess if this is going to be

3  litigated, I don't want to open up oral argument now but

4  I'm curious as to a very brief response from Mr. Edling

5  as to why the plaintiffs would oppose that and then I

6  certainly would solicit the defendants' view on that

7  approach.

8          MR. EDLING:  Sure.  This is Matt Edling.  Thank

9  you, your Honor.

10          My experience in these cases, it would lead to

11  necessarily duplicative discovery of multiple witness and

12  here would be a reason.  Mr. Boulos identified statute of

13  limitation as one issue that (audio interference) would

14  want discovery on.  So for example, if they were to

15  depose the superintendent or consultant for a particular

16  water provider as to when he or she were on notice of

17  dioxane present in their wells and what did they do when

18  they were on notice of that, they will answer and what it

19  will at some point get to is well, what did you do when

20  you discovered it, which then will lead to the cost of

21  treatment which would then be arguably a damages issue

22  and the line between what is damages and what is

23  liability in these cases frequent overlaps.  It was for

24  that reason.

25          I also in turning that there was a suggestion

Proceedings

1  at trial of bifurcating liability and damages and we

2  would contest that because having a different jury hear

3  damages versus liability is something I would at least

4  like the opportunity to brief before your Honor if that's

5  where we are but the first goes to duplicative discovery

6  and the second goes to the presentation of the

7  plaintiffs' case.

8          JUDGE MANN:  All right.  And I, just out of

9  curiosity, what is the defendants' position on that

10  issue?

11          MR. BOULOS:  Your Honor, Nader Boulos.

12          It's really not an issue that I've considered

13  yet or conferred with my client on and I really don't

14  speak for the other defendants on it, so I really can't

15  give you a position, I apologize but that's why I can't.

16          One comment though is that the discovery we

17  need from the plaintiffs is not damages discovery.  Of

18  course, eventually we will need damages discovery from

19  the plaintiffs but the kind of discovery we've been

20  talking about today that defendants need from the

21  plaintiffs is liability discovery not damages discovery.

22          So bifurcation of the liability and damages

23  wouldn't speak to -- wouldn't be a way to streamline

24  discovery or wouldn't be a way to obviate the discovery

25  that Mr. Edling seems not to want which is where I think

1　this line of conversation began, if I haven't hopeless

2　confused it.

3　　　　　JUDGE MANN:  All right.  With respect to

4　discovery, one problem that Judge Gershon and I had was

5　because we got simultaneous submissions from the parties,

6　it wasn't entirely clear to us as to what, if anything,

7　the parties had agreed to.  You know, we had from one

8　side, an 11-page submission, the other side a 7-page

9　submission.  You have to go back and forth to try and see

10　if there are any overlapping proposals or understandings.

11　　　　　And going forward, we both would find it very

12　helpful if the parties begin with a clear statement as to

13　what, if anything, they've agreed to after a meet and

14　confer on discovery or other issues.

15　　　　　Let me address plaintiffs' counsel first.  Both

16　sides seem to agree that the discovery of defendants in

17　one case will be usable across all cases, I think that's

18　not disputed but one thing that the plaintiffs haven't

19　addressed is this.  Assuming relevance, putting that to

20　the side for the moment, shouldn't that also be true for

21　discovery taken from the plaintiffs and their

22　consultants?  And that is -- my understanding is that is

23　what the defendants are proposing.  So is that agreeable

24　to the plaintiffs?

25　　　　　MR. EDLING:  This is Matt Edling, your Honor.

1          I'm sorry, I don't -- the first part of your

2    question is correct.  The second part, I don't understand

3    and I apologize.

4          JUDGE MANN:  Well, my question is if there are

5    consultants -- well, maybe I should address that first.

6    As I understand it, both sides talk about plaintiffs'

7    consultants.

8          MR. EDLING:  Yes.

9          JUDGE MANN:  To clarify, I assume that we're

10    talking about nonlitigation experts --

11          MR. EDLING:  Correct.

12          JUDGE MANN:  -- who would be called to testify

13    as fact witnesses, correct?

14          MR. EDLING:  Yes, this is Matt Edling.

15          Yes, that's my presumption as to what the

16    defendants are getting at and I think I now understand

17    your question.

18          JUDGE MANN:  And I take it that they either

19    discovered or confirmed that the contamination is -- and

20    perhaps played another role, perhaps in remediation

21    proposals or --

22          MR. EDLING:  Yes.

23          JUDGE MANN:  -- can you tell me what, you know,

24    roles they played?

25          MR. EDLING:  Sure, yes.  Yes, sure, your Honor.

Proceedings

1    Many of the water providers have outside consultants that

2    provide that type of investigation and engineering as

3    your comments and questions just elucidated and there are

4    frankly only a couple of firms that provide that to the

5    water providers on the island.

6            Within each of those consulting firms, there

7    would be engineers associated with particular providers.

8    There may be and in fact, are engineers that provide

9    those services to multiple providers and I am not

10   terribly in the habit of trying to help the defendants

11   get more discovery than they're entitled but here would

12   be a reason why the defendants are entitled to depose a

13   consultant perhaps more than once which is the following.

14           If Susan Smith is the consultant for Jericho

15   Water District and South Farmingdale Water District and

16   provides different services and provided different

17   analyses for each of those plaintiffs, I don't think it

18   would be fair to say Ms. Smith could only be deposed

19   once, although we would, of course, want to work with the

20   defendants on reasonable depositions of Ms. Smith as to

21   each of those plaintiffs.  Did that make sense, your

22   Honor?

23           JUDGE MANN:  Well, why not have a combined

24   deposition because while there may be different services

25   provided, I assume that to the extent that there are

Proceedings

1 questions about her knowledge and experience and the

2 like, why shouldn't a deposition apply across all cases

3 in which she might have involvement.

4          MR. EDLING:  I see.  I see.  Indeed, your

5 Honor, on that I am sure myself and Mr. Boulos and our

6 colleagues would certainly be able to work that out.

7          I was making the point that Ms. Smith worked as

8 to Jericho, would be specific to Jericho, and is not

9 necessarily dispositive of issues that defendants would

10 want to explore as to her work for South Farmingdale.

11 That was the only point I was trying to make.

12          JUDGE MANN:  Do you know, did each of the

13 plaintiffs engage a consultant?

14          MR. EDLING:  Your Honor, with the exception of

15 Suffolk County Water Authority, each of the 25 plaintiffs

16 that my firm represents, do have outside consulting

17 firms.  They are H2M and DMB primarily.  Suffolk County

18 Water Authority has its own in-house engineering and did

19 not outsource that consulting.  I do not know the answer

20 as to New York American Water.  I do know that Hicksville

21 has its own consultant.

22          JUDGE MANN:  And I take it from what you've

23 said that various plaintiffs used the same outside

24 consultants.  You said there are essentially two firms

25 that provided this service.

Proceedings

1          MR. EDLING:  Correct.

2          JUDGE MANN:  Do you know approximately how many

3    consultants there are across all 27 cases?

4          MR. EDLING:  Yes, your Honor, it would be --

5    and the persons that would have the most knowledge as to

6    the issues that I assume the defendants would want to

7    explore is probably, although not entirely, less than

8    approximately 20, I would gather, 20 individuals.

9          JUDGE MANN:  And those would be for Suffolk, it

10   would be -- they have their own in-house group --

11         MR. EDLING:  Correct.

12         JUDGE MANN:  -- or at least the Suffolk --

13         And getting back to my earlier question, is

14   there any reason why if these 20 individuals were to sit

15   for depositions, they couldn't be deposed in one

16   deposition and we can talk about how long that should be

17   but in a single deposition, should sit for -- should be

18   examined about all the cases?

19         MR. EDLING:  This is Matt Edling, your Honor.

20         From my perspective, no, the defendants would

21   be able to question that consultant as to the water

22   providers that she provides services to.

23         JUDGE MANN:  I'm actually not sure -- maybe it

24   was an inartful framing of the question but I was asking

25   can all the defendants question a consultant at a single

Proceedings

1  deposition --

2          MR. EDLING:  Oh, yes, yes.

3          JUDGE MANN:  -- so that we don't have multiple

4  depositions.

5          MR. EDLING:  Yes.  Your Honor, the answer is

6  yes, that that particular consultant could sit for a

7  deposition.  The defendants would all have the right to

8  depose her as to her work on behalf of the water

9  provider.  I'm perhaps making an issue where there isn't

10  one.  All I am saying is that particular engineer has

11  multiple clients and so if those clients are plaintiffs

12  in this litigation, the defendants would have the right

13  to question her as to each -- as to her work as to each

14  of those plaintiffs.

15          JUDGE MANN:  And moving onto another discovery

16  related issue, the plaintiffs' primary proposal is that

17  prioritization should be determined based on documentary

18  discovery.  At page 8 of their letter, the defendants

19  complain that a number of water districts have not

20  completed their fact sheets and/or their initial document

21  production.  What is your response to that complaint?

22          MR. EDLING:  My response -- this is Matt

23  Edling, your Honor -- is that is that incorrect.  While

24  it is true, the document production is not complete for

25  all plaintiffs, that will be complete by next month.

Proceedings

1          All of the plaintiffs have completed their fact

2    sheets.  All of the plaintiffs have answered written

3    discovery.

4          JUDGE MANN:  And I'm hoping that I am not going

5    to begin a deluge of discovery motions but have there

6    been any discussions between counsel about any alleged

7    inadequacies in the plaintiffs fact sheets?

8          MR. EDLING:  This is Matt Edling, your Honor.

9          There have and I would say that the parties

10   have worked pretty cooperatively to resolve issues where

11   the defendants stopped -- or identified issues with fact

12   sheets that they believed were deficient, just as we have

13   tried to resolve issues where we believe that defendants'

14   production was deficient or their fact responses to

15   deficient -- were deficient such that we could avoid

16   bringing motions before your Honor and have not to date.

17   And I trust at least as to those types of issues, that

18   will continue to be the case.

19         JUDGE MANN:  Well, and I hope you'll continue

20   to try and resolve those issues in good faith, so that

21   you at least -- you eliminate or at least narrow the

22   issues that are going to be presented to me down the

23   road.

24         As a compromise position, the plaintiffs had

25   proposed that "During the initial discovery period, the

Proceedings

1  defendants would be permitted to take up to 50

2  depositions, including Rule 30(b)(6) depositions of any

3  or all plaintiffs and their relevant consultants" and

4  that's a quote from page 2 of your letter.

5          As there are 27 cases and at least 27

6  plaintiffs, wouldn't that proposal effectively afford

7  defendants collectively an average of one or two

8  depositions of plaintiffs and/or their consultants in

9  each case?

10          MR. EDLING:  Yes, your Honor, and we identified

11  that as what we believe was a reasonable number for them

12  to determine in cases for prioritization.  It was not our

13  intent that those would be the only depositions they

14  would be entitled to to complete discovery as to those

15  plaintiffs.

16          JUDGE MANN:  But do you think that that is

17  reasonable given the number of plaintiffs as opposed to

18  the number of defendants?  You know, we have five

19  defendants, so it's a much more limited universe.  Do you

20  think 50 is a reasonable number, with 20 consultants and

21  27 plaintiffs?

22          MR. EDLING:  Your Honor, this is Matt Edling.

23          Yes, I don't believe they need any depositions

24  to pick cases for prioritization but they do.  Their

25  proposal was at least five for plaintiff which would be

Proceedings

1　135 depositions.  We thought 50 was a reasonable number

2　to be able to identify cases for prioritization.

3　　　　Now if they wanted to spend five or ten

4　depositions of a single plaintiff, that was their right.

5　I don't believe that you need 135 cases to pick which one

6　-- 135 depositions to pick cases for prioritization.

7　　　　JUDGE MANN:  Well, the parties can't even agree

8　on and haven't really articulated what the criteria are

9　for making the selection of the test cases or

10　prioritization and if these are going to be -- we're

11　talking about bellwether cases, aren't they supposed to

12　be representative and how does one -- if you don't even

13　know what the metrics are, how can you determine what's

14　representative and what isn't?

15　　　　MR. EDLING:  This is Matt Edling, your Honor.

16　　　　From plaintiffs' perspective, that was the

17　entire purpose of us working for months on fact sheets,

18　coming up with what those questions would be, together

19　with the defendants, fighting over inclusion and

20　exclusion of particular questions, then answering them in

21　good faith, producing documents in response thereto was

22　so that we could identify those cases for prioritization.

23　　　　The proposal that provide additional written

24　discovery as to the parties, that the third-parties and

25　depositions was so that the defendants could identify

Proceedings

1  plaintiffs that they believed for whatever purpose would

2  be appropriate for their determination for

3  prioritization, I have identified for you today and I

4  believe -- and I had thought that our submissions had

5  articulated what those common issues are.

6         If your Honor has continued questions as to

7  what might be metrics that the parties could agree on,

8  I'm -- I would hope that Mr. Boulos and myself and our

9  colleagues could identify potential metrics whether or

10 not we agree as to what cases satisfy those metrics.

11        JUDGE MANN:  The -- in response to your

12 suggestion that the Suffolk County be prioritized,

13 defendants have suggested two other cases that are much

14 more limited cases and why are those -- what objection do

15 you have to those cases, other than that I assume you're

16 going to say it doesn't involve all defendants.  Do you

17 have any other objections?

18        MR. EDLING:  I don't have objections, your

19 Honor, to additional prioritized cases, I do have

20 objection to those cases not just because they don't

21 include all the defendants but a moment ago, I -- well, I

22 don't know how long ago, I identified that there -- that

23 we believe that there are additional unique issues that

24 are not present in Nassau County with respect to the

25 contribution of the harm.  Those two particular water

Proceedings

1  providers are in Nassau County.

2          If what your Honor -- if in part what your

3  Honor is getting at is counsel discussed with one another

4  metrics that you may believe are appropriate for

5  prioritization and please try to pick cases amongst

6  yourselves that satisfy those criteria, I take the

7  instruction and would try to do so but there are reasons

8  why I believe only having cases in Nassau County would

9  not be sufficient for Bellwether purposes, prioritization

10 purposes and frankly discovery inefficiency purposes.

11          JUDGE MANN:  All right.  Thank you.

12          MR. EDLING:  If you --

13          JUDGE MANN:  Do you have something else?

14          MR. EDLING:  I was just trying to (audio

15 interference) --

16          JUDGE MANN:  Mr. Edling?

17          MR. EDLING:  Yes, your Honor.  This is Mr.

18 Edling.  I was just simply saying, we were never saying

19 just Suffolk County Water Authority.  We thought that

20 they would want other cases for prioritization.  It may

21 be that they want those two and we can discuss them.

22 That was the first time in the written submission that I

23 had ever seen them or discussed those particular water

24 providers with defense counsel.

25          JUDGE MANN:  All right.  Mr. Boulos, the

Proceedings

1  defendants' proposal contemplates an initial discovery

2  period in which the defendants would be permitted to

3  conduct up to five depositions of each plaintiff and up

4  to five consultants retained by any plaintiff with

5  respect to the work performed for that plaintiff.

6  I now know that we're only talking about

7  approximately 20 consultants, so that at least limits it

8  somewhat.  We're not talking about five consultants per

9  plaintiff but nevertheless, you're talking about in

10  excess of 150 depositions if my math is right, just to

11  determine prioritization and that's in addition to the

12  defendants' suggestion which plaintiffs do not oppose,

13  that plaintiffs collectively be authorized to take up to

14  ten depositions for each of the 50 defendants or an

15  additional 50 depositions.

16  So how is that an efficient use of the parties'

17  resources to conduct in excess of 200 depositions just to

18  determine what the test cases should be?

19  MR. BOULOS:  Your Honor, we don't propose that

20  those depositions be taken only to determine what the

21  test cases should be.  What we're asking for is the right

22  to take some depositions in these cases.  They will

23  certainly, if the Court is inclined to adopt some sort of

24  prioritization approach, as opposed to getting the cases

25  through discovery and trying them in the order they're

Proceedings

1  ready and I don't think any of us should pre-judge that

2  there will be an approach of prioritization.

3          I say that only because the Court has never so-

4  ordered.  We've understood that's an approach the

5  plaintiffs want to take (audio interference) and what

6  we've been saying is we need some discovery whether cases

7  will be prioritized or not.

8          So to come back to your question more directly,

9  what we are proposing is that we be allowed start

10 depositions and understanding that the plaintiffs want to

11 propose some sort of priority approach and understanding

12 that it sounds like the Court has some interest in it,

13 allow us to then come back with the benefit of a record,

14 more discovery will allow us to I think identify the best

15 metrics for (audio interference) issue.  And (audio

16 interference) --

17         JUDGE MANN:  I would ask someone who is not

18 speaking to please mute your audio because I'm hearing a

19 lot of stomping in the background.

20         I'm sorry, Mr. Boulos, you can continue.

21         MR. BOULOS:  Appreciate it, your Honor.

22         So to the question of how is our proposal an

23 efficient way to address these cases, this is discovery

24 that in each case is going to need to be done.  We're

25 proposing that we start discovery in all these cases, do

Proceedings

1  it in a nonduplicative way, so we're not saying this is

2  only for purposes of making a case structure decision.

3  Rather we're saying, we'll do it and then if the Court

4  wants us to return after some period of time to discuss

5  case structure, we'll have the benefit of that discovery.

6         And one of the decisions the Court might make

7  at that time is let's just try the cases in the order

8  that they can -- that discovery can be completed.  We'll

9  know where we are with respect to completion of discovery

10 in the case.

11         JUDGE GERSHON:  I may --

12         JUDGE MANN:  Well, as a practical matter --

13         JUDGE GERSHON:  Go ahead.

14         JUDGE MANN:  Oh, go ahead --

15         JUDGE GERSHON:  Oh, I just --

16         JUDGE MANN:  -- Judge Gershon.

17         JUDGE GERSHON:  Yes, sorry.  Just one comment

18 that I wanted to make in response to Mr. Boulos' use of

19 the term "priority" and "prioritization", you're using it

20 very skeptically and you note in your papers that

21 prioritization isn't a word that's found in the Federal

22 Rules but neither is common sense and obviously, no one

23 can try 27 cases at the same time.

24         So at some point, we will have to decide what

25 to try first or what summary judgment to hear first.  So

Proceedings

1 this has to happen at some point.  It's not a foolish

2 exercise.  It has to happen and the question obviously is

3 when and how but there was something in what you said

4 just now that made me think that you weren't really

5 recognizing that we would have to make that decision.

6           MR. BOULOS:  No, I apologize for that.

7           JUDGE MANN:  And I was going to make a similar

8 comment which is as a practical matter, assume that the

9 Court said all right, just take your discovery in these

10 cases, we'll set a schedule.  You're talking about many

11 of the same law firms across most of the cases and the

12 Court is not going to be setting different deadlines for

13 different cases absent some prioritization structure.

14           So there will come a time when presumably the

15 parties are all going to want to move for summary

16 judgment, you're really then talking, if there isn't some

17 prioritization of discovery at the discovery level, then

18 you're going to have all the cases coming to the same

19 point in this big bottleneck.

20           So I agree with what Judge Gershon said that at

21 some point, a determination is going to have to be made

22 as to what case gets tried first and why should that be

23 -- after full discovery has taken place.

24           MR. BOULOS:  Understood, your Honor, and I

25 apologize for having obviously come off as suggesting

Proceedings

1   otherwise.  We do understand the Court is going to have

2   to make decisions about how to structure these cases and

3   before that, how to keep them advancing.

4        What we're trying to do -- what our proposal is

5   aimed at is advancing the cases now and developing a

6   concrete record for the Court to make those decisions

7   about how to structure the case.

8        JUDGE MANN:  According to plaintiffs in

9   footnote 2 of their letter, they state that defendants

10  are proposing that plaintiffs be deposed separately as

11  fact witnesses, Rule 30(b)(6) witnesses and then again as

12  fact witnesses in connection with full discovery after

13  case prioritization.

14       You may have already addressed this and I

15  apologize if you did, but since we've been going at this

16  for two hours now, but is that a fair characterization of

17  the defendants' proposal and if it isn't, explain why

18  not?

19       MR. BOULOS:  It is not, your Honor.  Our

20  proposal, I will read here from paragraph number 2 on

21  page 5 of our proposal because we really wanted to be as

22  clear as we could and bake this into the letter itself.

23       We propose, and I'll quote, "a witness deposed

24  during the initial deposition period, will only be

25  redeposed by agreement of the parties or leave of court

Proceedings

1  and only on nonduplicative matters."

2        So our proposal is that if a person -- whenever

3  deposition discovery starts, if a plaintiff is deposed,

4  that will be the deposition of that plaintiff unless

5  there's some nonduplicative deposition that we can either

6  convince the other side or convince your Honors that we

7  should be able to take down the road.

8        Now the naming of an individual witness as also

9  a corporate representative, I think that's something we

10  all are just -- we are taking an individual deposition

11  and we're told that that person will also be identified

12  as a 30(b)(6) representative, we can take those two

13  depositions at the same time.

14        JUDGE MANN:  Well, I certainly did take note of

15  your proposal about the presumption and I immediately

16  thought there's going to be a lot of litigation over that

17  presumption.  So I certainly hope that I am wrong in

18  expecting the worst.

19        I don't -- I think that covers everything that

20  I had intended to ask the parties.

21        JUDGE GERSHON:  Yes, and I think I -- you made

22  a point about the two hours.  I think we've exhausted the

23  issues -- we've exhausted ourselves if not the issues.  I

24  guess we could just ask, if there's anybody who wants to

25  say anything nonduplicative at this point?

Proceedings

1    Hearing silence, I think Judge Mann and I could
2  say adieu to everyone.  Thank you very much.  I hope
3  everybody is staying well during these continuing trying
4  times and let me just check my text to see if anybody
5  with me has any thoughts.  Again, seeing nothing --
6          MR. EDLING:  Your Honor, this is Matt Edling.
7          JUDGE GERSHON:  Okay.  Sure.
8          MR. EDLING:  Just as an administrative matter,
9  I had offered your and Judge Mann's clerk with Mr. Boulos
10 as well, to send an email with all the persons that are
11 on this call.
12         JUDGE GERSHON:  Okay.
13         MR. EDLING:  I didn't actually get the email
14 address of the clerk that we were speaking to, so I would
15 just ask could I have that and then Mr. Boulos and I will
16 send the list of attendees for this.
17         JUDGE MANN:  I'll have her send that to you.
18 This is Judge Mann --
19         MR. EDLING:  Okay.
20         JUDGE MANN:  -- so that we don't have to put it
21 on the record.
22         MR. EDLING:  Sure.  Thank you, Judge.
23         JUDGE GERSHON:  All right.  Then thank you
24 everyone very much --
25         MR. EDLING:  Thank you.

Proceedings

1    JUDGE GERSHON:  -- and we will confer and

2  you'll hear from us.  Thank you.

3    IN UNISON:  Thank you, your Honor.

4    (Matter Concluded)

5    -o0o-

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **11th** day of **February** 2021.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656
Transcriptions Plus II, Inc.