**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SUFFOLK COUNTY WATER AUTHORITY,<br><br>                         Plaintiff,<br><br>                     -against-<br><br>THE DOW CHEMICAL COMPANY, FERRO CORPORATION, VULCAN MATERIALS COMPANY, PROCTER & GAMBLE COMPANY, and SHELL OIL COMPANY, individually and doing business as SHELL CHEMICAL LP,<br><br>                        Defendants.<br><br>AND ALL RELATED CASES | Case No. 17-CV-6980-NG-RLM<br><br>Hon. Nina Gershon<br><br>Hon. Roanne L. Mann |

**DECLARATION OF LETITIA MAILE SMITH IN SUPPORT OF DEFENDANTS'**
**MOTION TO EXTEND TIME TO ADD THIRD-PARTY DEFENDANTS**

I, Letitia Maile Smith, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a Senior Associate Geologist with GSI Environmental, Inc. (**GSI**).

2. GSI has been retained by Defendants The Dow Chemical Company, Ferro Corporation and Legacy Vulcan, LLC to provide environmental consulting services in these cases.

3. As part of that engagement, GSI has been working expeditiously to analyze the millions of pages and gigabytes of data that have been, and are being, produced in these matters. While progress has been made on this front, there is much more work to do.

4.       Between June 1 and June 3, 2021, Plaintiff Suffolk County Water Authority ("**SCWA**") produced three testing databases that house millions of sampling results for over 400 chemicals covering the 1970s to the present.  This information will help identify the source of 1,4-dioxane (**dioxane**) in a particular well.  A commonly-accepted method environmental specialists use to determine the source of groundwater contamination is to compare the suite of compounds detected in one location (*e.g.*, a water supply well) to the suite of compounds detected at a known point source (*e.g.*, a Superfund site).  The databases SCWA recently provided will assist GSI in making these determinations.  We are awaiting receipt from Plaintiffs of associated documentation that will allow us to more efficiently use the data.

5.       In addition, because Plaintiffs have not historically removed any dioxane from the water they extract and deliver to their customers, Plaintiffs' distribution networks are important to determine whether the source of dioxane in any particular well may be the result of Plaintiffs' own activities in extracting and redistributing water that contains dioxane, rather than (or in addition to) separate releases by third parties.  Fifteen Plaintiffs' distribution models were produced within the past three weeks, and we are working to understand and analyze them.

6.       Plaintiffs submit engineering reports in connection with permit applications to drill or modify wells.  These reports often contain evaluations of potential point-sources of pollution.  It is common practice for environment specialists to consider these assessments of potential point-sources to help identify the third parties potentially responsible for known contamination.  Plaintiffs recently produced approximately 145,000 pages of well permits, water supply applications, well radius reports, and other documents, which GSI will need to review and analyze.

7. Finally, the New York State Department of Environmental Conservation (**DEC**) and the Environmental Protection Agency (**EPA**) are in possession of documents related to environmental remediation sites on Long Island. Included are documents identifying sites that have detected dioxane and other chemicals, as well as technical information related to, among other things, groundwater flow, soil conditions, plume delineations, and investigation findings. Also included are administrative record materials identifying third-parties that are required to remediate certain sites under federal and state environmental statutes. The agencies have been producing these materials on a rolling basis in response to the Parties' document requests pursuant to subpoena (DEC) and the Freedom of Information Act (EPA). We are working to analyze these materials as we receive them.

8. The information contained in the documents and materials set forth above are essential in identifying and evaluating what role third parties may have played in the contamination of some or all of the approximately 575 wells that are issue in the case. Given the volume of these materials, it will take GSI several more weeks and months to review, digest, and understand the materials so we can offer meaningful guidance about what parties and what releases are responsible for the contamination that has been detected. This is true despite GSI's best efforts, which includes the significant resources GSI has devoted to this project.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 23, 2021, in Oakland, California.

_____
LETITIA MAILE SMITH