# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

| | | |
|---|---|---|
| Nader R. Boulos, PC<br>To Call Writer Directly:<br>+1 312 862 2061<br>nboulos@kirkland.com | 300 North LaSalle<br>Chicago, IL 60654<br>United States<br>+1 312 862 2000<br>www.kirkland.com | Facsimile:<br>+1 312 862 2200 |

**Via ECF**

Hon. Nina Gershon
Hon. Roanne L. Mann
United States District Court
  Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

October 13, 2021

Re:  *Suffolk County Water Authority v. The Dow Chemical Company et al.*,
      No. 2:17-cv-6980-NG-RLM, and Related Cases

Dear Judge Gershon and Judge Mann:

Plaintiffs have moved to sever and stay Defendants' claims against owners of landfills, industrial sites and other properties that Plaintiffs thus far have only generically alleged are sources of dioxane in their wells. Having apparently done no source investigation, Plaintiffs remarkably now fault *Defendants* for identifying source properties themselves, and claim they would be "prejudiced" by conducting discovery and trying a case about where the dioxane in their wells came from. The consequences of Plaintiffs' strategic decision to ignore contamination sources is not "prejudice"; to the contrary, Defendants will be prejudiced -- and the ultimate resolution impeded -- if responsible parties are excused from the cases until some unspecified future time, left out of discovery, and taken off the jury verdict form. In their effort to avoid discovery and put blinders on the finder of fact, Plaintiffs mischaracterize the "transaction or occurrence" at the center of these cases, and fail to identify any "exceptional circumstances" that justify severing or staying the third-party claims. *E.g.*, *Certain Underwriters at Lloyd's London v. Art Crating, Inc.*, 2014 WL 123488, at *21 (E.D.N.Y. Jan. 10, 2014); *Hartford Fire Ins. Co. v. Cty. Asphalt, Inc.*, 2002 WL 31654853, at *4 (S.D.N.Y. Nov. 22, 2002). Their motion should be denied.

Plaintiffs' 27 lawsuits claim the use of dioxane in Dow, Ferro and Vulcan products made those products defective. Plaintiffs now dub the manufacturers "Solvent Source Defendants" -- a newly-coined term found nowhere in the complaints.[1] It is clear from the face of the complaints, however, that the manufacturing of the products is the act farthest removed from the "transaction or occurrence" that allegedly injured Plaintiffs. Instead, Plaintiffs claim Defendants sold their products to distributors, who sold the products to end users, who then used the products in a way that caused injury. According to Plaintiffs, this alleged injury occurred when end users released dioxane-stabilized TCA products onto the ground at various (but unspecified) properties. After the release, Plaintiffs claim the property owners never fully cleaned up the contamination, and as

---

[1] The reference to "Solvent Source Defendants" and "water supplies" is rhetoric with no basis in the complaints: Plaintiffs have never accused Dow, Vulcan or Ferro of releasing dioxane into the environment, or being the point-source of dioxane in any well. Likewise, Plaintiffs' claims are not (and cannot be) based on "water supplies," but on damage to property -- their wells. *See, e.g.*, *Ivory v. Int'l Bus. Machines Corp.*, 983 N.Y.S.2d 110, 117 (N.Y. App. Div. 2014) ("groundwater . . . is a natural resource entrusted to the state"), *leave denied*, 23 N.Y.3d 903 (2014).

a result the dioxane is migrating from the sites into their wells. In short, Plaintiffs claim to be injured because there is dioxane in their wells, and the direct and proximate cause of dioxane in their wells is this alleged unabated migration of dioxane -- including from the properties that Defendants were forced to identify because Plaintiffs declined to do so.

**The contribution claims arise out of the same transaction or occurrence**: Defendants' claims focus on relatively few third-parties -- owners of sites that are sources of contamination.[2] There is nothing novel about these claims. *E.g., State of N.Y. v. Shore Realty Corp.*, 759 F.2d 1032, 1051 (2d Cir. 1985) (site owner "should have the responsibility of taking reasonable measures to remedy conditions on it that are a source of harm to others"). CERCLA, in fact, holds site owners strictly liable for the contamination Plaintiffs allege: it "unequivocally imposes strict liability on the current owner of a facility from which there is a release or threat of release, without regard to causation." *Id.* at 1044. Indeed, *Plaintiffs* initially sued Northrop Grumman -- *in this case* -- under an owner-liability theory like the one underlying Defendants' contribution claims against Northrop Grumman and others. *E.g.*, Bethpage, No. 19-cv-1348, ECF No. 1 ¶ 148 (alleging dioxane in Bethpage's wells "is now, and will continue to be, present, until Northrop Grumman . . . abate[s]" it); S. Farmingdale, No. 19-cv-1404, ECF No. 1 ¶ 74 (Northrop Grumman's "treatment facilities . . . do not remove 1,4-dioxane, and the discharge causes . . . spreading of 1,4-dioxane contamination to the District's" wells). Likewise, Hicksville is asserting similar claims in another case in this district alleging that over 50 defendants are responsible for dioxane in its wells, *Hicksville Water Dist. v. Jerry Spiegel Assocs.*, No. 19-cv-6070, ECF No. 112, including over 20 site owners that Defendants have named as Third-Party Defendants. Hicksville, No. 19-cv-5632, ECF No. 92; T. Hempstead, 19-cv-5775, ECF No. 65.

Omitted from Plaintiffs' motion is that their *own* complaints allege public nuisance and trespass claims, and request "a fund to abate the nuisance and trespass" caused by the migration of dioxane. *E.g.*, SCWA Compl. ¶¶ 74, 93, Prayer for Relief. These are the *same legal bases* underlying the contribution claims, which also overlap completely with an element Plaintiffs concede they must prove for *all their claims*: the source of the dioxane in their wells. ECF No. 232 at 3 ("Plaintiffs' claims require the finder of fact to determine . . . whether the *Solvent Source Defendants'* products contaminated Plaintiffs' water [wells].") (emphasis in original); Ex. D, June 19, 2019 Hrg. at 29:5-13 (Plaintiffs "will prove exactly whose product is in each well").

**The facts relevant to the third-party claims -- and the discovery, documents and witnesses required to prove them -- are the same facts at the heart of Plaintiffs' claims**: Before the third-party claims were filed, Plaintiffs served subpoenas[3] seeking facts about all 63 of the Third-

---

[2] Ten of the 27 cases have no third-parties, and ten others have less than three. Ex. A. Since Plaintiffs claim about 575 wells are contaminated and acknowledge consumer products that have nothing to do with TCA are the likely source, the third-parties named represent a small subset of potential third-parties that could have been named. *E.g.*, Ex. B, Port Washington Website, Apr. 15, 2017 (Dioxane "*is only an issue for water supply systems because its presence is so pervasive in … everyday household products*") (emphasis added); Ex. C, Hicksville "1,4-Dioxane in Drinking Water" (listing consumer products as "Contributing Products" to dioxane in water).

[3] *E.g.*, Ex. E, DEC, Req. 15 (seeking administrative record for Superfund sites, including highlighted sites owned by Third-Party Defendants); *compare*, *e.g.*, Ex. F, Arkwin, Req. 4 (seeking present-day documents regarding releases of dioxane to groundwater), *with* T. Hempstead Third-Party Compl., No. 19-cv-5775, ECF No. 65 ¶¶ 52-53.

Party Defendants' properties. The case management order anticipated this overlap, and thus required third-parties to be added before party depositions began. ECF No. 168, at 2; ECF No. 171, at 4. Plaintiffs never objected to this, or a brief extension of time to add third-parties.

Identifying third-parties involved a well-by-well analysis that, as documented in Defendants' previous motion to compel, most Plaintiffs failed to perform before filing these lawsuits. ECF No. 173, at 1; ECF No. 175, at 3. Plaintiffs suggest it is "ironic" that the third-party complaints do not cite the documents the Court ordered them to produce. That jab is misplaced. To be clear, the well-specific discovery Plaintiffs provided in response to Defendants' motion to compel (*e.g.*, well depth, age, operational history, contaminant profile, capture zone maps) was necessary to identify the Third-Party Defendants, as were materials all Parties subpoenaed about historic releases and migration of TCA and dioxane, because they show *specific locations* at which historic TCA and/or dioxane releases are known to have occurred, and may be migrating to *specific wells*. Defendants' contribution claims are based on these specific connections.

**Severing and staying these completely overlapping claims will undermine judicial economy**: It will turn 27 lawsuits into 44, and park many with no plan for resolution. It will do nothing to limit the facts relevant to the dispute, but is likely to create knotty questions about what discovery is and is not subject to the stay -- and will very likely result in protracted and costly duplication of discovery by and against the Third Party Defendants down the road, taking even more of the Court's and Parties' resources. *See, e.g., Graham-Johnson v. City of Albany*, 2021 WL 1614763, at *6 (N.D.N.Y. Apr. 26, 2021) ("[J]udicial economy is no doubt served in keeping the claims and discovery concerning all involved parties . . . in a single action and on a single discovery schedule."). And excusing the Third-Party Defendants from the proceeding now is highly likely to impede any effort to reach an extra-judicial resolution of these cases.

**The Third-Party Complaints do not prejudice Plaintiffs, but severance would prejudice Defendants**: Plaintiffs fail to identify any prejudice resulting from the inclusion of third-parties. Fact discovery in the SCWA case is not set to close for eight months. There is no deadline in the other 26 cases. Any logistical or scheduling challenges are the result of the scope and volume of Plaintiffs' 27 lawsuits and wells at issue, and their failure to identify the likely source of dioxane in their wells before filing the lawsuits. This is not a reason to sever or stay claims and parties that have equal stakes in the outcome of a dispute over removing dioxane from a well. If anything, a stay prejudices Defendants by delaying their access to the courts and increasing the chances of duplicative discovery, motions, and trials. Plaintiffs' motion should be denied.[4]

---

[4] The cases Plaintiffs cite do not support the relief they seek, *e.g., Colonomos v. Ritz-Carlton Hotel Co.*, 2002 WL 732113 (S.D.N.Y. Apr. 25, 2002) (motion to sever denied), and/or are readily distinguishable. *See Mosca v. City of N.Y.*, 2019 WL 5592855 (E.D.N.Y. Oct. 30, 2019) (unopposed motion in police harassment case); *Gusinski v. Genger*, 2010 WL 4877841 (S.D.N.Y. Nov. 30, 2010) (fraud involved acts and witnesses unrelated to loan default claim); *In re Merrill Lynch & Co., Ins. Research Reports Sec. Litig.*, 214 F.R.D. 152 (S.D.N.Y. 2003) (unviable securities fraud claim with "tenuous" connection); *T.S.I. 27, Inc. v. Berman Enter., Inc.*, 115 F.R.D. 252, 254 (S.D.N.Y. 1987) (claim based "on an entirely different factual situation from that underlying plaintiff's claim for payment"); *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 237 F.R.D. 679, 682–84 (N.D. Okla. 2006) (allowing discovery but severing claims that "complicate" and "transform" action); *Deajass Med. Imaging, P.C. v. Travelers Indem. Co.*, 222 F.R.D. 563, 564 (S.D.N.Y. 2004) (33 malpractice claims assigned to one plaintiff).

Sincerely,


/s/ Nader R. Boulos, PC


Kevin T. Van Wart, P.C. (*pro hac*)
Nader R. Boulos, PC (*pro hac*)
Jonathan N. Adair (*pro hac*)
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL  60654
Phone: (312) 862-2000
kevin.vanwart@kirkland.com
nader.boulos@kirkland.com
jonathan.adair@kirkland.com


Joel A. Blanchet
Andrew P. Devine
PHILLIPS LYTLE LLP
One Canalside
125 Main Street
Buffalo, NY  14203
Phone: (716) 847-8400
jblanchet@phillipslytle.com
adevine@phillipslytle.com

*Counsel for Defendant/Third-Party Plaintiff
The Dow Chemical Company*

Robb W. Patryk
Faranak Sharon Tabatabai Asl
Amina Hassan
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY  10004
Phone: (212) 837-6000
robb.patryk@hugheshubbard.com
fara.tabatabai@hugheshubbard.com
amina.hassan@hugheshubbard.com

*Counsel for Defendant/Third-Party Plaintiff
Ferro Corporation*


Stephen C. Dillard (*pro hac*)
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, TX  77010
Phone: (713) 651-5151
steve.dillard@nortonrosefulbright.com

Felice B. Galant
NORTON ROSE FULBRIGHT US LLP
1301 Avenue of the Americas
New York, NY  10019
Phone: (212) 318-3000
felice.galant@nortonrosefulbright.com

*Counsel for Defendant/Third-Party Plaintiff
Legacy Vulcan, LLC, formerly known as Vulcan
Materials Company*