**Jeffrey Migdalen, Esq.**
Partner

**Direct Dial/Text**
516.693.8342

**Fax:** 516.738.4646

**Email:**
jmigdalen@GerberCiano.com

GERBER CIANO KELLY BRADY LLP

**US Mail:**
228 Park Avenue South,
Suite 97572
New York, NY 10003-1502

**Visit Us/FedEx/UPS:**
1325 Franklin Avenue
Suite 500
Garden City, NY 11530

May 17, 2022

**VIA ECF**
Magistrate Judge Roanne L. Mann
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     *Suffolk County Water Authority v. The Dow Chemical Company et al*
         Civil Action No.: 2:17-cv-6980 and all *Related Cases*

Dear Judge Mann:

Our office has been retained as local counsel for non-party, Westlake Chemical Corporation ("Westlake"), in the above referenced matter. In accordance with Your Honor's rules, please accept this correspondence as Westlake's request to file either a letter motion or formal motion to quash two (2) subpoenas issued by the plaintiff, Suffolk County Water Authority ("SCWA"), upon Westlake.

Annexed hereto as Exhibits "A" and "B" are copies of the subpoenas, which were submitted via ECF on March 17, 2022 as part of a joint motion to compel (Docket No. 275).

Annexed as Exhibit "C" is Westlake's Objection to the subpoenas.

**Factual Background**

The plaintiff has commenced this action to recover economic damages arising from alleged water-supply contamination involving a chemical called "1,4-dioxane". Plaintiff served Westlake with subpoenas seeking the production of documents and a deposition of a witness related to the design, production and sale to purchasers in Nassau and Suffolk Counties of 1,4 -dioxane from 1956 through 2010 (*54 years worth of records*).

Westlake's principal place of business in the United States is located in Houston, Texas. Westlake did not have any direct involvement with the items/information plaintiff seeks. During the time period in question (1956 – 2010), the subject chemical was designed, manufactured, sold, etc., by PPG Industries ("PPG"). Westlake's involvement with PPG arises as follows.

In 2013, PPG divested its commodity chemicals division (chlor-alkali and derivatives). The PPG chemicals division became part of a newly formed public company called Axiall Corporation ("Axiall"). In 2016, Westlake acquired Axiall, which continues to do business as a subsidiary of Westlake.

## Basis for Objections/Leave to Move to Quash

The basis for Westlake's objections are essentially twofold. First, the demands are overbroad and it would be unduly burdensome for Westlake, a non-party in this action, to divert substantial resources attempting to locate, digest and disclose 50+ years-worth of records created by PPG (whose headquarters are located in Pittsburgh, PA), the majority of which were created before computers and electronic file maintenance came into existence. In this regard, Westlake respectfully refers this Court to SCWA's subpoena. The documents sought are no short order. The SCWA seeks:

- "All documents and communications between 1962 and the present from and between you and industry organizations..."

- "All documents between 1962 and 1995 relating to instructions and/or warnings regarding the use, storage, handling of 1,4-dioxane products...including communications, sales contracts, invoices, marketing agreements, technical and safety data sheets, receipts, records of volume of purchases and/or inventory records..."

- Distribution and sales of 1,4-dioxane products from 1956 through 2010 to purchasers in Nassau and Suffolk Counties, including identity of purchasers and annual quantity of 1,4-dioxane products sold;

- Marketing materials, warning labels, safety manuals, etc. given to purchasers during this time period;

- The time period and formulas for the manufacture of its 1,1,1-trichloroethan products, and whether and how they changed over time.

The SCWA does not seek a few documents that are easily obtainable by one person looking up a file on a Westlake database/server. The demand is omnibus and to respond will require a non-party to this litigation to divest tens if not hundreds of hours locating and reviewing a mass of business records/documents prepared by a company (PPG) that may have given their records/documents to Axiall, which Westlake acquired in 2016.

Second, the SCWA is not entitled to documents from Westlake that seek confidential, trade sensitive and/or proprietary information, or that which is protected by Privileged Work Product, Trade Secret, Attorney-Client Materials or Litigation Materials.

## Timeliness

Westlake's response and request for leave to move to quash is timely, as counsel for the SCWA extended Westlake's time to respond to the subpoenas to May 17, 2022.

Respectfully submitted,

Gerber Ciano Kelly Brady, LLP

*Jeffrey Migdalen*

Jeffrey Migdalen

cc:     <u>**Via ECF**</u>:

All Counsel Consented via ECF

EXHIBIT A

 CT Corporation

**TO:** Ben Ederington, General Counsel
WESTLAKE CHEMICAL CORPORATION
2801 Post Oak Blvd Ste 600
Houston, TX 77056-6105

**RE:** **Process Served in Texas**

**FOR:** WESTLAKE CHEMICAL CORPORATION  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Suffolk County Water Authority vs. The Dow Chemical Co |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 17CV6980 |
| **NATURE OF ACTION:** | Subpoena - Business records |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Dallas, TX |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/28/2022 at 11:04 |
| **JURISDICTION SERVED :** | Texas |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  Ben Ederington  bederington@westlake.com |
| | Email Notification,  Eva Gregory  egregory@westlake.com |
| | Email Notification,  Richard Kroger  rkroger@westlake.com |
| | Email Notification,  Rebecca Moring  rmoring@westlake.com |
| | Email Notification,  Melissa Judd  mjudd@westlake.com |
| | Email Notification,  Chris McDaniel  cmcdaniel1@westlake.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>1999 Bryan Street<br>Suite 900<br>Dallas, TX 75201<br>877-467-3525<br>SmallBusinessTeam@wolterskluwer.com |

CT Corporation

**TO:**     Ben Ederington, General Counsel
WESTLAKE CHEMICAL CORPORATION
2801 Post Oak Blvd Ste 600
Houston, TX 77056-6105

**RE:**     **Process Served in Texas**

**FOR:**    WESTLAKE CHEMICAL CORPORATION   (Domestic State: DE)

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be
relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s)
of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other
advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained
therein.



# PROCESS SERVER DELIVERY DETAILS

**Date:**                        Mon, Mar 28, 2022
**Server Name:**           Caleb Malone

| Entity Served | Westlake Chemical Corporation |
|---|---|
| Case Number | 17-cv-6980 |
| Jurisdiction | TX |

| Inserts | | |
|---|---|---|
| | | |



# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| | |
|---|---|
| Suffolk County Water Authority | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.   17-cv-6980 and related cases |
| The Dow Chemical Co. et al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:             Westlake Chemical Corporation c/o CT CORPORATION SYSTEM
                  1999 BRYAN STREET, SUITE 900 DALLAS, TX 75201

*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:  **See Attachment A**

| Place: | Date and Time: |
|---|---|
| Deposition to take place remotely. | May 3, 2022 10:00 am CT |

The deposition will be recorded by this method:    Stenographically and Videorecorded

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

       See Attachment B and Attachment C

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    3/25/2022

            *CLERK OF COURT*

                              OR

                                      */s/ Katie Jones*

        *Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Suffolk County Water Authority                                , who issues or requests this subpoena, are:

Katie Jones, 100 Montgomery St., Ste. 1410, San Francisco, CA 94104; katie@sheredling.com, 628-231-2500

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Caleb Malone
PSC 1574 exp 10/31/2021
2022/03/28 11:04:34

Civil Action No.  17-cv-6980 and related cases

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

<u>**ATTACHMENT A**</u>

The following terms used in this Exhibit have the meanings, inclusions, and/or constructions set for the below unless otherwise stated.

1.     As used herein, **"you"** and **"your"** refers to **Westlake Chemical Corp.** and includes all past and present officers, directors, employees, predecessors, successors, subsidiaries, parent corporations, partners, affiliates, agents, servants, and representatives, independent contractors, consultants, and all other persons acting or purporting to act at the direction of or on behalf of you.

2.     As used herein, **"The Dow Chemical Company"** refers to Defendant The Dow Chemical Company and includes all persons acting or purporting to act at the direction of or on behalf of The Dow Chemical Company.

3.     As used herein, **"Vulcan Materials Company"** refers to Defendant Vulcan Materials Company and includes all persons acting or purporting to act at the direction of or on behalf of Vulcan Materials Company.

4.     As used herein, **"communication(s)"** refers to any act, action, oral speech, written correspondence, contact, expression of words, thoughts, ideas, transmission or exchange of data or other information to another person, whether orally, person-to-person, in a group, by telephone, letter, personal delivery, telex, email, facsimile, text message, instant message, recorded message or any other process—electronic, computer, or otherwise. All such communications in writing shall include, without limitation, printed, typewritten, handwritten, electronic, or other document(s).

5.     As used herein, **"document(s)"** shall have the broadest meaning possible and shall mean all documents, electronically stored information, and tangible things discoverable under Rule

34 of the Federal Rules of Civil Procedure, including without limitation: all writings and all other means of recording information, whether written, transcribed, taped, filmed, microfilmed, or in any other way produced, reproduced, or recorded, and including but not limited to originals (or identical duplicates when originals are not available), drafts, computer-sorted and computer-retrievable information, copies and duplicates that are marked with any notation or annotation or otherwise differ in any way from the original, correspondence, memoranda, reports, notes, minutes, contracts, agreements, leases, subleases, lease assignments, amendments, books records, checks, vouchers, permits, invoices, purchase orders, hazardous waste manifests, timesheets, bills of lading, receipts, ledgers, diaries, logs, calendars, computer printouts, computer disks, card files, lists of persons attending meetings or conferences, site plans, floor plans, blueprints, equipment lists, maps, diagrams, drawings, photographs, sketches, calculations, evaluations, analyses, directions, work papers, press clippings, sworn or unsworn statements, requisitions, manuals or guidelines, audit work papers, financial analyses, tables of organizations, charts, graphs, indices, advertisements and promotional materials, audited and unaudited financial statements, trade letters, trade publications, newspapers and newsletters emails, electronic or mechanical records, facsimiles, telegrams and telecopiers, and audiotapes. Each draft, annotated, or otherwise non-identical copy is a separate document within the meaning of this term. Documents shall also include any removable sticky notes, flags, or other attachments affixed to any of the foregoing, as well as the files, folder tabs, and labels appended to or containing any documents. Documents expressly include all electronic records.

6.     As used herein, **"relating to"** and **"concerning"** shall include within their meaning "containing," "alluding to," "responding to, "commenting upon," "discussing," "explaining," "mentioning," "analyzing," "constituting," "memorializing," "compromising," "reporting,"

"incorporating," "confirming," "listing," "evidencing," "setting forth," "summarizing," or "characterizing," either directly or indirectly, in whole or in part.

7.    As used herein, **"1,4-dioxane product(s)"** means 1,4-dioxane (also referred to as diethylene ether, DEE, p-dioxane, or dioxane) or any substance or product containing 1,4-dioxane, including but not limited to stabilized 1,1,1-trichloroethane (also referred to as methyl chloroform, 1,1,1-TCA, TCA, and 1,1,1-TCE), and including but not limited to the following Dow Chemical Company products:

- Diethylene Ether/1,4-Dioxane; 1,1,1-Trichloroethane CP; 1,1,1-Trichloroethane FP; 1,1,1-Trichloroethane MC; 1,1,1-Trichloroethane Vapor Degreasing Grade/CP; 1,1,1-Trichloroethane, AP Grade; 1,1,1-Trichloroethane, Inhibited; 1,1,1-Trichloroethane, S.E.M.I. Grade; Chlorothene; Chlorothene Industrial; Chlorothene NU; Chlorothene NU-Reinstated; Chlorothene SM; Chlorothene SM Solvent-CP; Chlorothene SM-M Solvent; Chlorothene VG-Modified; Chlorothene VG-Reinstated; Chlorothene VG Solvent; Chlorothene VP Solvent-CP; Chlorothene VG-CS Solvent; Dowclene LS; Dowclene WR; Inhibitor Concentrate for Chlorothene SM Solvent; Prelete Defluxer Solvent; Prelete Defluxer Solvent Improved; and Dow Deodorizer C; and

The following Vulcan Materials Company products:

- Solvent 111 General Purpose Grade; Solvent 111 Vapor Degreasing Grade; and Solvent 111 Industrial Grade.

8.    As used herein, the term **"disposal"** shall mean discharge, deposit, dispersal, burial, injection, dumping, spilling, leaking, or removing.

9.    As used herein, **"environmental effect(s)"** means any possible or actual effect, impact, alteration, and/or change to any environmental resource, including but not limited to air, land (including recreational, transport, agricultural, residential, and/or commercial), soil, sediments, water (including surface water, groundwater, drinking water, and/or other aquatic

bodies), and/or biota (including but not limited to plants and animals, including wildlife and aquatic organisms).

10.     As used herein, **"environmental fate and transport"** means where and how chemicals travel and persist and/or degrade in the environment (including but not limited to all land, air, and water) when chemicals are released intentionally or unintentionally in the environment.

11.     As used herein, the term **"handle(d)"** or **"handling"** shall mean to possess, store, use, operate, maintain, touch, place, move, or disturb in any manner.

12.     As used herein, **"human health effect(s)"** means any possible or actual effect, impact, alteration, change, ailment, sickness and/or disease relating to humans.

13.     As used herein, **"sale(s),"** **"sell,"** or **"sold"** means the transfer of title, exchange pursuant to an agreement, distribution, marketing, supply, deliver, ship, transport, or otherwise make commercially available at the wholesale and retail level.

14.     As used herein, **"toxicological effect(s)"** means any possible or actual effect, impact, change, and/or alteration (including but not limited to cellular, biochemical, and/or macromolecular effects) relating to the toxicity, poisonousness, and/or harm of chemicals or substances to living organisms.

## TOPICS FOR EXAMINATION

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Westlake Chemical Corp. shall designate and produce a person or persons to testify regarding the following subjects. Unless otherwise indicated, the relevant time period for the following topics is from 1956 through 2010:

1.     Your distribution and sales of 1,4-dioxane products to purchasers in Nassau and Suffolk Counties, New York, including identity of purchasers and annual quantity of 1,4-dioxane products sold, and including reclaimed or recycled 1,4-dioxane products.

2.     Marketing materials, instructions and/or warnings you provided to your customers related to the purchase, handling, adverse effects (including environmental effects, environmental fate and transport, toxicological effects, and human health effects), and/or disposal of 1,4-dioxane products, including but not limited to product labels, warnings, material safety data sheets, product bulletins, user guides, instructions, manuals, product stewardship documents, and related communications with customers.

3.     Formulations of your 1,1,1-trichloroethane products, including stabilizer or inhibitor ingredients, and whether and how they changed over time.

4.     The time period during which you manufactured each of your 1,1,1-trichloroethane products.

5.     Your production and sales volume of each of your 1,1,1-trichloroethane products.

## ATTACHMENT B

## INSTRUCTIONS

1.      Unless otherwise specified, each request herein pertains to information and/or documents in your possession, custody, or control, prepared in connection with, reflecting, or relating in any way to any fact, occurrence, thing, or other matter described.

2.      To the extent reasonably practicable, documents are to be produced in groups responsive to each of the numbered requests set forth below, and you shall indicate the request to which each such group is responsive.

3.      If privilege is claimed as a ground for not responding in whole or in part to any request, you shall identify the nature of the privilege that is being claimed and describe the nature of the documents being withheld, including, without limitation, the following information: (a) the type of document (e.g. letter, memorandum, etc.); (b) the general subject matter of the document; (c) the date of the document; and (d) any such other information that is sufficient to identify the document.

4.      You are requested to produce documents in the format specified in the Stipulated Order Establishing Document and ESI Production Protocol, ECF 125 in *Suffolk Cty. Water Auth. v. Dow Chem. Co., et al.*, Case No. 2:17-cv-6980-NG-RLM, attached as Exhibit C.

## REQUESTS FOR PRODUCTION

**Request No. 1**

Documents sufficient to identify the formulations of your 1,1,1-trichloroethane products, including stabilizer or inhibitor ingredients, and whether and how they changed over time.

**Request No. 2**

Documents sufficient to identify the time period during which you manufactured each of your 1,1,1-trichloroethane products.

**Request No. 3**

Documents sufficient to identify your production and sales volume of each of your 1,1,1-trichloroethane products on an annual basis.

**Request No. 4**

If you ever manufactured 1,4-dioxane-stabilized 1,1,1-trichloroethane product(s), documents concerning your decision to use 1,4-dioxane as an ingredient in your 1,1,1-trichloroethane product(s) and your decision to discontinue use of 1,4-dioxane as an ingredient in your 1,1,1-trichloroethane product(s).

**Request No. 5**

If you ever manufactured 1,4-dioxane-stabilized 1,1,1-trichloroethane product(s), all documents relating to your purchase of 1,4-dioxane from The Dow Chemical Company, Ferro Corporation (and/or Ferro Corporation's Grant Chemical Division), or any other seller or distributor between 1962 and 1995. This request includes, but is not limited to, communications, sales contracts, invoices, marketing agreements, technical and safety data sheets, receipts, records of volume of 1,4-dioxane, and/or inventory records.

**Request No. 6**

If you ever sold 1,4-dioxane-stabilized 1,1,1-trichloroethane product(s) that you did not manufacture, all documents relating to your purchase of 1,4-dioxane-stabilized 1,1,1-trichloroethane products from The Dow Chemical Company, Vulcan Materials Company, or any other seller or distributor between 1962 and 1995. This request includes, but is not limited to, communications, sales contracts, invoices, marketing agreements, technical and safety data sheets, receipts, records of volume of purchases, and/or inventory records.

**Request No. 7**

All documents between 1962 and 1995 relating to instructions and/or warnings regarding the use, storage, handling, and/or disposal of 1,4-dioxane products. This request includes, but is not limited to, communications between you and The Dow Chemical Company, Vulcan Materials Company, or any other seller or distributor; and between you and any purchaser and/or end-user of 1,4-dioxane products you supplied.

**Request No. 8**

All documents between 1962 and the present relating to toxicological effects, human health effects, environmental fate and transport, or environmental effects of 1,4-dioxane or 1,4-dioxane products. This request includes, but is not limited to, communications between you and The Dow Chemical Company, Vulcan Materials Company, Ferro Corporation (and/or Ferro Corporation's Grant Chemical Division), or any other seller or distributor; between you and any purchaser and/or end-user of 1,4-dioxane products you supplied; and between you and any federal or state governmental entity.

**Request No. 9**

All documents and communications between 1962 and the present from and between you and industry organizations, including but not limited to the American Society for Testing & Materials, American Chemistry Council, Manufacturing Chemists' Association, American Cleaning Institute, and American Coatings Association, between 1951 and the present relating to 1,4-dioxane or 1,4-dioxane products. This request includes, but is not limited to, documents and communications relating to instructions and/or warnings regarding the purchase, use, storage, handling, disposal, or sale of 1,4-dioxane products, as well as toxicological effects, human health effects, environmental fate and transport, or environmental effects of 1,4-dioxane products.

**Request No. 10**

All documents between 1962 and 1995 relating to your sale(s) of 1,4-dioxane products to purchasers in Nassau or Suffolk Counties, New York. This request includes, but is not limited to, communications, sales contracts, invoices, marketing agreements, technical and safety data sheets, receipts, records of volume of 1,4-dioxane products, and/or inventory records.

ATTACHMENT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SUFFOLK COUNTY WATER AUTHORITY, | Case No. 17-CV-6980 |
| Plaintiff, | Hon. Nina Gershon |
| **-against-** | |
| THE DOW CHEMICAL COMPANY, FERRO CORPORATION, VULCAN MATERIALS COMPANY, PROCTER & GAMBLE COMPANY, SHELL OIL COMPANY, individually and doing business as SHELL CHEMICAL LP. | |
| Defendants. | |
| AND ALL RELATED CASES | |

**STIPULATED ORDER ESTABLISHING**
**DOCUMENT AND ESI PRODUCTION PROTOCOL**

This Stipulated Order Establishing Document and ESI Production Protocol (the "Protocol") is intended to govern the discovery, collection, and production of documents, including electronically-stored information ("ESI"), in the above-captioned actions (the "Litigation"). This Protocol supplements the Federal Rules of Civil Procedure and the Local Rules of the Eastern District of New York. The parties to the above-captioned actions (collectively, the "Parties" and each individually a "Party") mutually seek to reduce the time, expense, and other burdens of discovery of certain hard copy documents and ESI, and to better define the scope of their obligations with respect to producing such information and materials. This Protocol is intended to promote a "just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. This Protocol does not prevent the Parties from negotiating additional agreements regarding discovery as may be necessary in the course of this action. This Protocol is not intended to expand any document storage, preservation, or production requirement beyond

the common law or the Federal Rules of Civil Procedure or to limit any rights or protections

otherwise available to a Party under the Federal Rules of Civil Procedure or the Federal Rules of

Evidence.

## I.      PRESERVATION AND PRODUCTION OF DATA

1.      By preserving information that is reasonably anticipated to be subject to discovery

in this Litigation in accordance with the terms of this Protocol, no Party shall be deemed to have

waived any objection to particular discovery requests or the scope of discovery.

2.      Absent a showing of good cause by a Party as determined by the Court, efforts and

activities undertaken in compliance with the duty to preserve information are protected from

disclosure and discovery.

3.      The Parties shall meet and confer regarding:  (a) relevant data sources, including

custodial, noncustodial, and third-party documents; (b) search methodology and search terms, if

any, to be applied; (c) any applicable and appropriate timeframes for the collection, review, and

production of documents; and (d) any use of technology assisted review ("TAR") or similar

technologies to streamline the discovery process.

4.      The exchange of the information contemplated in paragraph 3 shall not waive any

Party's objections, rights, or protections regarding the production of any documents.

## II.     ESI PRODUCTION SPECIFICATIONS

5.      Except as set forth below, a Party producing documents (a "Producing Party")

will produce ESI in single-page TIFF format with corresponding load files and multi-page OCR

text or extracted text files.  TIFF files shall be created directly from the original electronic

documents; a Party may not create a TIFF file from ESI by printing out paper copies of that

electronic document and then scanning that paper  copy of the ESI.  Unless not feasible in certain

circumstances, all TIFF files will conform to the following specifications:

> a.      All TIFF files will be single page, black and white TIFF at 300x300 dpi
>
> resolution and 8 1/2 x 11-inch page size, except and to the extent
>
> reasonably practicable for documents requiring color or different

resolution or page size to be legible and comprehensible.  Tracked changes, comments, notes, and other similar information shall be imaged so that this information is captured on the produced image file.

b.      Each production shall include a standard format load file (*e.g.*, Opticon opt, Concordance.Dat, Summation Dii, etc.) containing the production's Beginning and Ending Bates numbers and the additional Metadata fields detailed below.  The appropriate unitization of the documents and family relationship shall accompany the TIFF production.

c.      Except as otherwise agreed by the parties, all productions shall be made in .opt and .dat file formats.

d.      All TIFF images shall be branded in the bottom right with a Bates number, beginning with an alphanumeric prefix followed by at least an 8-digit number. Any numbers with less than 8 digits will be front padded with zeros to reach the required 8 digits.  All ESI produced in TIFF format shall contain a unique Bates Number on each page of the document, electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document.

e.      The Parties shall produce the following metadata fields to the extent they exist with respect to the original electronic document, including native files:

1.      BegAttach
2.      EndAttach
3.      From
4.      To
5.      Cc
6.      Bcc
7.      Subject
8.      DateSent
9.      DateCreated (documents)
10.     DateModified (documents)

3

11.  Custodian
12.  FileName
13.  FileType
14.  OriginalFilePath
15.  Bates Begin
16.  Bates End
17.  Deduped Custodian
18.  Deduped Custodian Path
19.  Custodian
20.  MD5 Hash
21.  Extracted Text Path
22.  Native File link
23.  Page Count
24.  Confidential Designation
25.  Redaction
26.  File Size
27.  File Extension
28.  Author
29.  Production Volume
30.  Message ID
31.  ESI Type

f.   Documents that include hidden data, computer slide presentations (*i.e.*,
PowerPoint files), spreadsheet files (*e.g.*, Excel files), audio files, video
files, GIS files, and other file types that cannot be accurately converted to
image format as described in paragraph 5(a) above shall be produced in
native format, except to the extent such documents require redaction, in
which case they shall be produced in accordance with paragraph 22 below.
The Producing Party shall produce a single page TIFF "placeholder" page
for each file produced in native format.  The placeholder page shall bear a
Bates number and indicate that the corresponding document has been
produced in native format.

g.   The Parties, in consultation with their respective technical personnel, shall
promptly meet and confer in good faith on a reasonable protocol for
producing any databases or other files that may not easily conform to the
production specifications set forth above.  In the event the Parties are

        unable to agree on such a protocol, either Party may promptly move the

        Court for an order regarding the production of such databases or other

        files.

    h.     The presumptive source of extracted text shall be from the native file.

        Where a document has been redacted and produced in TIFF format, OCR

        may be used to generate text for the text file.

6.     To the extent identical copies of ESI exist in a Producing Party's files, the Producing Party may opt to produce only one such identical copy.  Each Producing Party may remove exact duplicate documents from its production.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also exact duplicates.  An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.  Near-duplicate documents shall not be removed from production.

7.     Email thread suppression techniques shall not be applied in production, although such techniques may be used as a review tool.

8.     If global de-duplication is done across a Producing Party's entire collection of documents, the Deduped Custodian metadata field must list each custodian, separated by a semi-colon, who was a source of that document.

9.     ESI collections and productions may be De-NISTed to remove commercially available operating system and application file information contained on the current NIST file list.

10.    In their productions, the Parties may filter out files identified as zero bytes in size and any logo files.

11.    Embedded objects or files such as Excel spreadsheets, Word documents, and audio and video files shall be extracted and searched.  Non-substantive embedded files, such as logos, need not be extracted or searched.  All embedded files produced pursuant to this

procedure shall be produced in accordance with the specifications set forth above.  For

production purposes, embedded files shall be identified as attachments to the parent document in

which the file was embedded, and load files for such embedded files shall refer to the parent

document in which the file was embedded.

### III.     SUPPLEMENTAL PRODUCTION OF SPECIFIC NATIVE FILES

12.     In addition to the native files produced in accordance with paragraph 5(f) above, a

Party may request production of additional native files of electronic documents in accordance

with the provisions of paragraphs 13 and 14 below.

13.     No Party may seek to compel production of native files on a wholesale or

otherwise unreasonable basis.

14.     Any request for additional native files will be carried out under the following

protocol:

> a.     The Party requesting production of additional native files will identify the
> native files it seeks by Bates number to the extent practicable.

> b.     The Producing Party will respond in writing within ten (10) calendar days
> by either agreeing or refusing to produce the requested native  files.

> c.     If the Producing Party agrees to the request, the production shall be made
> within fifteen (15) calendar days of the notification of agreement or as
> otherwise agreed by the  Parties.

> d.     If the Producing Party refuses to produce the requested native files, it shall
> provide a written statement of the reasons it declines the request.  If the
> reason is technical difficulty in producing, the written statement shall
> explain the technical difficulty.  The Party requesting the native files may
> then move the Court to compel production of such native files, and any
> objections by the Producing Party shall be due seven (7) calendar days
> after service of that motion.  No reply briefs will be permitted.

## IV.   HARD COPY DOCUMENT PRODUCTION SPECIFICATIONS

15.   To the extent possible, hard copy documents and attachments should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat).  To the extent the information exists, the database load file should contain the following information:  Custodian(s), Bates Number Beginning, Bates Number Ending, Family Range Beginning (Parent/Child Order), Family Range Ending (Parent/Child Order), Confidential Designation, Redaction, OCR Text Path, and Production Volume.  Where reasonably feasible, hard copy documents should be logically unitized (*i.e.*, distinct documents should not be merged into a single record, and single documents should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business.  Where possible, original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape), and the Bates number shall be outside of the portions of the imaged pages containing content.

16.   Document pages that have affixed notes, such as Post-it® Notes, shall be imaged with the note attached so long as it does not obscure or conceal underlying text or document information.  If such a note cannot be imaged with the document for the foregoing reason, the Producing Party shall either (a) separately image the note and produce it as an attachment to the document to which it was originally affixed, or (b) image the document both with and without the note affixed and produce both images.

17.   If an original hard copy document contains color, then the document produced shall be in color, produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image.  Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.

18.   Multi-page OCR text for each document shall be provided to the extent possible.  OCR text files shall be provided as a single text file for each hard copy document, rather than one text file per page, unless otherwise agreed among the Parties.  The filename of the document should match its respective TIFF or JPG filename.  The OCR software shall maximize text

quality.  Settings such as "auto-skewing" and "auto-rotation" should be turned on during the

OCR process.  Notwithstanding the requirements set forth above, absent a showing of good

cause, a Party is not obligated to re-scan and re-process hard copy documents that were scanned

before the entry of this Protocol.

19.     The Parties recognize the substantial burden of producing hard copy files.  Hard

copy documents that a Producing Party determines to be exact duplicates of documents stored

electronically shall be produced only in electronic format, consistent with this Protocol.  Nothing

in this section waives a Party's right to request specified documents produced electronically to be

produced as hard copy documents in accordance with this Protocol.  If a Party so requests, the

Parties will meet and confer regarding the necessity of and reasons for such a production.  If the

Parties cannot agree to such a production, the Party requesting production may seek appropriate

relief from the Court.

## V.     COSTS

20.     The cost of preserving, collecting, and producing documents shall be borne by the

Producing Party.  In the event, however, that a Party requests documents that would result in the

production of cumulative or repetitive information or that otherwise imposes an undue burden or

expense, the Producing Party may object.  The Parties shall work to resolve any such objection.

In the event that the Parties are unable to resolve any such objection, the Producing Party may

move the Court for an order shifting the cost of producing such documents to the Party that

requested them.

## VI.    REDACTIONS

21.     A Producing Party may redact from any TIFF image, metadata field, or native file

material that is protected from disclosure by applicable privilege or immunity, as required by

applicable law or regulation, or as otherwise permitted by any order of the Court, including any

protective order governing the Litigation.   The Producing Party shall identify redactions clearly

on the face of any TIFF image.

22.     If a document that would otherwise be produced in native format requires

redaction, such document may be produced in TIFF format with an OCR text file in accordance with this Protocol.  The native file version of redacted documents need not be produced unless the Parties agree otherwise.

## VII.   OTHER ISSUES

23.   To maximize the security of information in transit, any production may be encrypted.  In such cases, the Producing Party shall transmit the encryption key or password to all Parties receiving the production, contemporaneously with sending the encrypted production.

24.   To the extent that a Producing Party determines that a document exists in more than one language, that document shall be produced in English, if available.  If no English version of a document is available, the Producing Party does not have an obligation to produce an English translation of that  document.

25.   The Parties acknowledge that, if the processing time zone for productions in this Litigation is not standardized across all productions, then the email metadata for custodians in different time zones will be different.  As a result, two copies of the same email may fail to be de-duplicated, and the different time zones could create a convoluted chronology.  As a result, to the extent reasonably practicable, the Parties agree to produce their ESI standardized to Eastern Standard Time (EST).

26.   The terms of any Protective Order ordered by the Court are incorporated herein by reference and govern all production pursuant to this Protocol.

27.   Subsequent to the entry of this Protocol, if any Party determines that any of the requirements in this Protocol impose an undue burden or otherwise pose an issue with respect to compliance, the Parties shall meet and confer regarding that issue, including discussing, as appropriate, an alternative process or processes.  In the event that the Parties cannot resolve such issue, the Party claiming undue burden or difficulty with compliance may seek appropriate relief from the Court.

28.   The Parties will meet and confer regarding the preparation and production of privilege logs.

29.     Nothing contained herein limits a Producing Party's right to conduct a review of documents, ESI, or other information (including metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected information before production.

30.     To the extent the Parties processed any ESI or hard copy documents prior to the entry of this Protocol, and the ESI or hard copy documents do not comply with this Protocol, the Parties shall meet and confer regarding the production of such ESI or hard copy documents.

31.     Nothing in this Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.


SHER EDLING LLP

By:  _/s/ Matthew K. Edling_____
        Matthew K. Edling
        Victor M. Sher (admitted *pro hac vice*)
        Stephanie D. Biehl (admitted *pro hac vice*)
        Katie H. Jones (admitted *pro hac vice*)
        Timothy R. Sloane (admitted *pro hac vice*)
100 Montgomery St., Suite 1410
San Francisco, CA  94104
Telephone No. (628) 231-2500
matt@sheredling.com
vic@sheredling.com
stephanie@sheredling.com
katie@sheredling.com
tim@sheredling.com


HAUSFELD LLP

By:  _/s/ Scott Martin_____
        Scott Martin
        Jeanette Bayoumi
33 Whitehall St., 14th Floor
New York, NY 10004
(646) 357-1100

-and-


KIRKLAND & ELLIS LLP

By:  _/s/ Kevin T. Van Wart_____
        Kevin T. Van Wart, P.C.
        Nader R. Boulos, P.C.
300 N. LaSalle Street
Chicago, Illinois 60654
Telephone No. (312) 862-2000
kevin.vanwart@kirkland.com
nader.boulos@kirkland.com

-and-

PHILLIPS LYTLE LLP
Joel A. Blanchet
Andrew P. Devine
One Canalside
125 Main Street
Buffalo, New York 14203
Telephone No. (716) 847-8400
jblanchet@phillipslytle.com
adevine@phillipslytle.com

Attorneys for Defendant
*The Dow Chemical Company*


NORTON ROSE FULBRIGHT US LLP

By:  _/s/ Stephen C. Dillard_____

Richard S. Lewis (admitted *pro hac vice*)
1700 K Street, NW, Suite 650
Washington, DC 20006
(202) 540-7200


FRAZER PLC

By: */s/ J. Nixon Daniel, III*
      J. Nixon Daniel, III
      Mary Jane Bass
      (admitted pro hac vice)
501 Commendencia Street
Pensacola, FL 32502
(850) 432-2451
jnd@beggslane.com
mjb@beggslane.com

FRAZER PLC

By: */s/ T. Roe Frazer, II*
      T. Roe Frazer, II
      Thomas Roe Frazer, III
      W. Matthew Pettit
      (admitted pro hac vice)
30 Burton Hills Blvd., Ste. 450
Nashville, TN 37215
(615) 647-6464
roe@frazer.law
trey@frazer.law
mpettit@frazer.law


HACH ROSE SCHIRRIPA & CHEVERIE LLP

By: */s/ Frank F. Schirripa*
      Frank F. Schirripa
      John Blyth
112 Madison Avenue
New York, NY 10016
(212) 213-8311
fschirripa@hrsclaw.com
jb@hachroselaw.com

Attorneys for Plaintiffs

Stephen C. Dillard (admitted *pro hac vice*)
1301 McKinney, Suite 5100
Houston, Texas 77010
Phone: (713) 651-5151
steve.dillard@nortonrosefulbright.com

-and-

Felice B. Galant
1301 Avenue of the Americas
New York, NY 10019
Phone: (212) 318-3000
felice.galant@nortonrosefulbright.com

Attorneys for Defendant
*Legacy Vulcan, LLC, formerly known as Vulcan Materials Company*


HUGHES HUBBARD & REED LLP

By: */s/ Robb W. Patryk*
      Robb W. Patryk
      Fara Tabatabai
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 837-6000
robb.patryk@hugheshubbard.com
fara.tabatabai@hugheshubbard.com

Attorneys for Defendant
*Ferro Corporation*


WEIL, GOTSHAL & MANGES LLP

By: */s/ Diane P. Sullivan*
      Diane P. Sullivan
      David J. Lender
      Jed P. Winer
      Rachel Farnsworth
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Diane.Sullivan@weil.com
David.Lender@weil.com
Jed.Winer@weil.com
Rachel.Farnsworth@weil.com

Attorneys for Defendant
*The Procter & Gamble Company*

BEVERIDGE & DIAMOND, P.C.

By: */s/ Megan R. Brillault*
        Megan R. Brillault
        Daniel M. Krainin
        Paula J. Schauwecker
477 Madison Avenue, 15th Floor
New York, New York 10022-5802
T: (212) 702-5400
mbrillault@bdlaw.com
dkrainin@bdlaw.com
pschauwecker@bdlaw.com

Attorneys for Defendant
*Shell Oil Company, individually and doing*
*business as Shell Chemical LP*


HOLLINGSWORTH LLP

By: */s/ Frank Leone*
        Frank Leone
        Mark A. Miller
1350 I Street, NW
Washington, DC 20005
T: 202.898.5800
fleone@hollingsworthllp.com
mmiller@hollingsworthllp.com

-and-

SIVE, PAGET & RIESEL P.C.
Daniel Riesel
Margaret Holden
560 Lexington Avenue, 15th Floor
New York, NY 10022
Phone: (212) 421-2150
Direct: (646) 378-7224
driesel@sprlaw.com
mholden@sprlaw.com

Attorneys for Defendant
*Northrup Grumman Corporation*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SUFFOLK COUNTY WATER AUTHORITY, | Case No. 17-CV-6980 |
| Plaintiff, | Hon. Nina Gershon |
| -against- | |
| THE DOW CHEMICAL COMPANY, FERRO CORPORATION, VULCAN MATERIALS COMPANY, PROCTER & GAMBLE COMPANY, SHELL OIL COMPANY, individually and doing business as SHELL CHEMICAL LP. | |
| Defendants. | |
| AND ALL RELATED CASES | |

**STIPULATED PROTECTIVE ORDER**

The parties to the above-captioned actions (the "Parties," and each individually a

"Party") anticipate producing documents and information to each other that contain

confidential, proprietary, or sensitive information.  The Parties are willing to provide these

documents to each other for inspection and review pursuant to the terms and conditions set

forth in this Stipulated Protective Order (the "Protective Order").  By entering this Protective

Order, the Court is only ordering the procedures that the Parties must follow in designating

and objecting to the confidentiality of discovery materials and is not ordering that any

confidential or proprietary information is, or is not, subject to disclosure.

1.     **Definitions.**  As used in this Protective Order, the following terms have the

following meanings:

a.     "Action" refers to *Suffolk County Water Authority v. The Dow Chemical*

*Company, et al.,* Case No. 17-CV-6980, and all related cases presently

filed or filed after the entry of this Protective Order.

b.    "Material" refers to documents, information, or any other tangible material or thing produced or presented in this Action, including all materials within the scope of Rule 34(a) of the Federal Rules of Civil Procedure, and all exhibits, evidence, or testimony used or given at trial, in depositions, or in other proceedings in this Action.

c.    "Producing Party" or "Designating Party" refers to the Party or non-party producing Material and/or designating Material as Confidential pursuant to the terms of this Protective Order.

d.    "Receiving Party" refers to a Party or non-party receiving or having access to Material.

e.    "Confidential Information" refers to Material designated as Confidential in accordance with this Protective Order unless (i) the Designating Party has withdrawn the Confidential designation, or (ii) the Court determines that the Material does not constitute or contain confidential information.

2.    **Scope of Protective Order.**  This Protective Order shall apply to Materials exchanged by the Parties or by third parties in discovery.  Nothing in this Order creates a presumption or implies that Material designated by a Party as "Confidential" actually constitutes protected information under applicable law.

3.    **Designation of Confidential Information.**  A Party may only designate Material as Confidential if it has a good-faith basis to believe that the Material constitutes or contains proprietary or highly sensitive business, financial, or critical infrastructure information, trade secrets, personal identifying information, or information that otherwise meets the standard for protection set forth in Rule 26(c)(l)(G) of the Federal Rules of Civil Procedure. Notwithstanding the foregoing, a Producing Party may not designate as Confidential any Material that is publicly available or that a court of competent jurisdiction has determined not to be Confidential.

4.     **Use of Confidential Information.**  Material designated as Confidential shall be maintained in confidence and shall not be disclosed, disseminated, or used for any purpose other than litigation of this Action, absent the express written consent of the Producing Party or pursuant to order of the Court.  Nothing in this Protective Order limits the right of any Party to disclose or otherwise use (a) its own Material produced or disclosed in this Action; (b) any Material produced or disclosed in this Action that is not designated as Confidential; or (c) any Material that a Party already possessed prior to its production or disclosure in this Action or that it obtained by proper means from other sources.

5.     **Access to Confidential Information.**  Access to Confidential Information shall be limited to:

a.  Judges, magistrate judges, court reporters, court personnel, videographers, and special masters in connection with this Action.

b.  The Parties and counsel of record for the Parties in this Action, including outside and in-house counsel of the Parties, and the attorneys, secretaries, paralegals, assistants, and other employees in the same firm/company of such counsel, in all cases only to the extent reasonably necessary to render professional services in this Action.

c.  Messenger, copy, and other clerical services vendors not employed by a Party or its counsel of record, only to the extent reasonably necessary to assist the Parties and counsel of record for the Parties in rendering professional services in this Action.

d.  The insurers or indemnitors of the defendants or any agents retained by the insurers or indemnitors, including independent claims management personnel.

e.  Subject to paragraph 6 below, witnesses during depositions, hearings, and trial testimony in this Action, either during the deposition, hearing or trial or to the extent reasonably necessary to prepare such persons to

3

testify, and counsel for such persons to the extent not included in Section 4(b).

f.  Subject to paragraph 6 below, consultants or experts retained for the purpose of assisting counsel of record for the Parties in this Action, including consulting and testifying experts, jury/trial consultants, and mock jurors or focus group members.

g.  Subject to paragraph 6 below, third party contractors retained for the purpose of organizing, filing, coding, converting, storing, or retrieving Material or maintaining database programs for handling Material for this Action.

h.  Subject to paragraph 6 below, other persons with the express written consent of the Producing Party or pursuant to Court order.

6.    **Signing the Protective Order.**  Before disclosing Confidential Information to any person listed in paragraphs 5(f)-(h), the Party proposing such disclosure must provide a copy of this Protective Order to such person and such person must fill out and sign the affirmation attached hereto as Exhibit A.  The Party proposing disclosure must retain a copy of the signed affirmation.  If the person to whom disclosure is contemplated refuses to sign an affirmation and is a witness being deposed or compelled to testify pursuant to a subpoena, notice, or other order of this Court, then the Parties will work cooperatively to seek a ruling on the issue by the Court prior to the person's scheduled testimony.  While awaiting a ruling on that issue by the Court, no one may disclose Confidential Information to such person.  Before disclosing Confidential Information to any person listed in paragraph 5(e), the Party making such disclosure must generally explain this Protective Order and/or the Confidential nature of the Material to that person.

7.    **Filing Confidential Information with the Court.**  The Parties agree to seek leave to file any Confidential Information under seal.  Any request to file documents under seal must comply with the Federal Rules of Civil Procedure, the Local Rules of the Eastern District

4

of New York, and any Individual Practices or Standing Orders of Judge Nina Gershon and

Magistrate Judge Roanne L. Mann.  Following a request by the filing Party for leave to file

under seal, the Designating Party (if a different Party than the filing Party) shall have seven (7)

calendar days to file a supplemental letter brief in support of the filing Party's motion for leave

to file the Confidential Information under seal.  If the Court grants the filing Party's motion for

leave to file certain documents under seal, that Party shall file such documents under seal and

shall also publicly file such documents with redactions of Confidential Information to the extent

permitted by the Court in granting the motion to seal.   If the Confidential Information in a

document filed under seal is later de-designated, any Party may seek to unseal such document

for the public record.

8.    **Production of Confidential Information.**  With respect to documents that are

produced in TIFF format, any designation of confidentiality shall be made by including the

word "CONFIDENTIAL" in the lower left corner of the document, so long as this designation

does not obscure or conceal information contained in the document.  The addition of any

designation pursuant to this Protective Order shall not be deemed an alteration of the document.

With respect to documents that are produced in native format, the designation of confidentiality

shall be made by including the word "CONFIDENTIAL" on a cover sheet produced in TIFF

format along with the native file and may include, at the Producing Party's discretion, the word

"CONFIDENTIAL" in the file name of the native file as produced.  If a Party adds a

designation to the file name for documents produced in native format, such addition will not be

considered an alteration of the file.

9.    **Designation of Deposition Transcripts as Confidential.**  All depositions or

portions of depositions taken in this Action may be designated as Confidential pursuant to this

Protective Order.  To designate deposition transcripts as Confidential, a Party must identify the

page number and line(s) of testimony that contain Confidential Information, either on the

record at the deposition or by written notice to the other Parties within 21 calendar days of

receipt of the final transcript of the deposition from the court reporter.  Unless otherwise

agreed, deposition transcripts shall be treated as Confidential from the time of the deposition through the 21-calendar-day period following receipt of the final transcript from the court reporter, after which time, if no portion of the transcript is designated as Confidential, the transcript shall be treated as non-confidential.

10.   **Contesting Confidentiality Designations.**  If any Party believes that any Material designated as Confidential does not constitute Confidential Information, then that Party (the "Challenging Party") may challenge the designation by sending written notice to the Designating Party, identifying the challenged Material and articulating the reason(s) for challenging the confidentiality designation.  The Parties shall promptly confer in good faith to resolve any challenge to a confidentiality designation.  If the Parties are unable to resolve their dispute within fourteen (14) calendar days of the notice to the Designating Party of such challenge, or the Designating Party does not respond within such time, then the Challenging Party may request that the Court resolve the dispute.  The Designating Party shall have the burden of showing that the Material at issue is Confidential.

11.   **Inadvertent Failure to Designate Material as Confidential.**  Any Party that inadvertently fails to designate Material as Confidential shall have fourteen (14) business days from the discovery of its oversight to designate such Material as Confidential by providing written notice to all Parties of the late designation together with substitute versions of the inadvertently undesignated Material with the appropriate confidentiality designation applied.  Such notice shall be deemed to apply to all copies of the inadvertently undesignated Material.  Upon receiving such notice and substitute copies, the Receiving Parties shall make reasonable efforts to retrieve any copies of the undesignated Material from any person to whom that Material was provided and who would not be entitled to receive the Confidential Information under this Protective Order; provided, however, that any Party that received such inadvertently undesignated Material shall have no liability for having received or disclosed any Confidential Information contained within such Material prior to that Material being designated as Confidential.  An inadvertent failure to designate Material as Confidential shall not, on its own,

6

be deemed a waiver in whole or in part of the Producing Party's claim of confidentiality, either as to the specific inadvertently undesignated Material or Material concerning the same or related subject matter.  This paragraph applies equally to any portions of a hearing or other proceeding before the Court that a Party inadvertently failed to designate as Confidential during that hearing or proceeding.

12.   **No Waiver of Any Privilege Upon Production.**  The Parties agree that they do not intend to disclose in the course of discovery in this Action information that is subject to a claim of attorney-client privilege, attorney work product protection, or any other applicable privilege or immunity from disclosure.  Production of such Materials shall not constitute a waiver of any privilege, provided that the Producing Party, within fourteen (14) calendar days of discovery of the production of such Material, notifies all other Parties in writing of the production, identifies the Material that was produced, and requests a "clawback" of such Material.  If the Producing Party claims that only a portion of a produced document is privileged, the Producing Party shall provide a new copy of the document with the allegedly privileged portions redacted.  A Party receiving a clawback notice shall immediately and diligently act to destroy the Material identified in such notice and any work product reflecting the contents of such Material.  A Receiving Party may, after receipt of the Producing Party's clawback notice, make a motion before the Court disputing the claim of privilege.  If a Receiving Party elects to file such a motion, that Receiving Party may retain possession of the Material that is the subject of that motion, as well as any work product reflecting the content of such Material, pending resolution of the motion by the Court, but shall not use or further disclose such Material unless and until the Court grants the Receiving Party's motion.  If the Receiving Party's motion is denied, the Receiving Party shall promptly destroy such Material and any work product reflecting the content of such Material.

13.   **Requests for Confidential Information.**  If a Receiving Party receives a discovery request, subpoena, order, or other form of legal process that seeks production of the Confidential Information of a Producing Party (a "Request"), that Receiving Party must

promptly provide notice of the Request in writing to counsel for the Producing Party, together with a copy of the Request.  The Producing Party shall have seven (7) calendar days to object to the Receiving Party's production of the Producing Party's Confidential Information in response to the Request.  During that 7-calendar-day period, the Receiving Party shall not, except to the extent required by applicable law, provide or otherwise disclose the Producing Party's Confidential Information in response to the Request.  If the Producing Party objects to disclosure, then the Receiving Party to whom the Request is directed shall not, except to the extent required by applicable law, disclose the Producing Party's Confidential Information unless directed to do so by the Producing Party or pursuant to order of a court of competent authority.

14.    **Storage and Transmittal of Confidential Information.**  To avoid security risks inherent in certain current technologies and to facilitate compliance with the terms of this Protective Order, all persons with access to Confidential Information are prohibited from storing or transmitting any Confidential Information in or via any online service (other than the firm or corporate email system of a Party of counsel for a Party) that is managed or maintained by any third party, other than a litigation support service provider that uses (a) a secure document hosting facility, (b) encrypted webenabled software, and (c) secure sharing and collaboration among only authorized users.  Notwithstanding the foregoing provisions of this paragraph, the Parties may temporarily store and/or transmit files with Confidential Information to persons authorized to receive Confidential Information via secure FTP, Dropbox, Box.com, or by way of a third party vendor that the Parties agree may be used for encrypted and secure domestic transmissions, provided that, for any such transmissions, the Parties shall take all reasonable steps to protect Confidential Information from being disclosed to unauthorized third parties.  The use of a third-party vendor may include short-term, incidental storage of files for the sole purpose of transmitting them, provided that the files are promptly deleted upon transmission.

15.    **Personal Identifying Information:**  Any Party that receives personal

identifying information in connection with discovery in this Action shall preserve the privacy, integrity, and confidentiality of such information.  Personal identifying information includes social security numbers, birth dates, personal addresses, personal email addresses, personal account numbers, certificate/license numbers, vehicle identifiers and serial numbers, license plate numbers, device identifiers and serial numbers, medical record numbers, health plan beneficiary numbers, biometric identifiers such as finger and voice prints, full face photographic images and comparable images, and any other unique personal identifying number, characteristic, or code.  Material containing personal identifying information shall be designated as Confidential.  The Parties are not required to but may redact personal identifying information so long as the redaction of such information displays text reading: "Redacted – PII".

18.      **Confidential Information Produced by a Non-Party**.  Any non-party who may be called upon to make discovery herein or to provide deposition or other testimony pursuant to subpoena or other formal or informal discovery device is entitled to avail itself of the provisions and protections of this Protective Order.  All Material designated by a non-party as Confidential will be treated in the same manner as any Confidential produced by the Parties.

19.      **Non-Termination.**  The duty to treat Confidential Information in accordance with this Protective Order survives the completion of this Action.  At the conclusion of this Action by settlement, jury verdict, judgment, or otherwise, each Party must destroy all Confidential Information belonging to another Party that it does not otherwise have a right to retain.  The destruction of Confidential Information under this paragraph will include, without limitation, all copies and duplicates thereof.  Within 90 days of receipt of a written request, or such other time frame as agreed among the Parties, the Parties will certify that all Confidential Information required to be destroyed has been destroyed. Unless otherwise ordered by the Court, this paragraph does not apply to (a) copies of pleadings or other papers that have been filed with the Court and that contain Confidential Information; (b) a Party's own work product; or (c) official deposition, trial, or other Court transcripts and exhibits thereto.  The terms and provisions of this

Order will continue to apply to any such Material retained by counsel.

20. **Non-Waiver of Objections.** Neither this Protective Order nor any of the provisions described herein shall operate as a waiver of any Party's right to object to the admissibility or discoverability of any Material, or to seek further protection from the Court before producing Material that a Party believes may not be adequately protected by the provisions of this Protective Order, or to seek leave to refuse production of such Material.

21 **Modification Permitted.** This Protective Order may be modified at any time by the Court on its own motion or, for good cause shown, on motion of any Party or non-party, or by agreement of the Parties with the Court's approval.

SHER EDLING LLP

By: */s/ Matthew K. Edling*
    Matthew K. Edling
    Victor M. Sher (admitted *pro hac vice*)
    Stephanie D. Biehl (admitted *pro hac vice*)
    Katie H. Jones (admitted *pro hac vice*)
    Timothy R. Sloane (admitted *pro hac vice*)
100 Montgomery St., Suite 1410
San Francisco, CA 94104
Telephone No. (628) 231-2500
matt@sheredling.com
vic@sheredling.com
stephanie@sheredling.com
katie@sheredling.com
tim@sheredling.com

HAUSFELD LLP

By: */s/ Scott Martin*
    Scott Martin
    Jeanette Bayoumi
33 Whitehall St., 14th Floor
New York, NY 10004
(646) 357-1100

-and-

Richard S. Lewis (admitted *pro hac vice*)
1700 K Street, NW, Suite 650
Washington, DC 20006

KIRKLAND & ELLIS LLP

By: */s/ Kevin T. Van Wart*
    Kevin T. Van Wart, P.C.
    Nader R. Boulos, P.C.
300 N. LaSalle Street
Chicago, Illinois 60654
Telephone No. (312) 862-2000
kevin.vanwart@kirkland.com
nader.boulos@kirkland.com

-and-

PHILLIPS LYTLE LLP

Joel A. Blanchet
Andrew P. Devine
One Canalside
125 Main Street
Buffalo, New York 14203
Telephone No. (716) 847-8400
jblanchet@phillipslytle.com
adevine@phillipslytle.com

Attorneys for Defendant
*The Dow Chemical Company*

NORTON ROSE FULBRIGHT US LLP

By: */s/ Stephen C. Dillard*
    Stephen C. Dillard (admitted *pro hac vice*)
1301 McKinney, Suite 5100

(202) 540-7200


FRAZER PLC

By: */s/ J. Nixon Daniel, III* _____
       J. Nixon Daniel, III
       Mary Jane Bass
       (admitted pro hac vice)
501 Commendencia Street
Pensacola, FL  32502
(850) 432-2451
jnd@beggslane.com
mjb@beggslane.com

FRAZER PLC

By: */s/ T. Roe Frazer, II* _____
       T. Roe Frazer, II
       Thomas Roe Frazer, III
       W. Matthew Pettit
       (admitted pro hac vice)
30 Burton Hills Blvd., Ste. 450
Nashville, TN  37215
(615) 647-6464
roe@frazer.law
trey@frazer.law
mpettit@frazer.law


HACH ROSE SCHIRRIPA & CHEVERIE LLP

By: */s/ Frank F. Schirripa* _____
       Frank F. Schirripa
       John Blyth
112 Madison Avenue
New York, NY  10016
(212) 213-8311
fschirripa@hrsclaw.com
jb@hachroselaw.com


Attorneys for Plaintiffs

Houston, Texas 77010
Phone: (713) 651-5151
steve.dillard@nortonrosefulbright.com

-and-

Felice B. Galant
1301 Avenue of the Americas
New York, NY 10019
Phone: (212) 318-3000
felice.galant@nortonrosefulbright.com

Attorneys for Defendant
*Legacy Vulcan, LLC, formerly known as Vulcan
Materials Company*


HUGHES HUBBARD & REED LLP

By: */s/ Robb W. Patryk* _____
       Robb W. Patryk
       Fara Tabatabai
One Battery Park Plaza
New York, NY 10004
Telephone:  (212) 837-6000
robb.patryk@hugheshubbard.com
fara.tabatabai@hugheshubbard.com

Attorneys for Defendant
*Ferro Corporation*


WEIL, GOTSHAL & MANGES LLP

By*: /s/ Diane P. Sullivan* _____
       Diane P. Sullivan
       David J. Lender
       Jed P. Winer
       Rachel Farnsworth
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Diane.Sullivan@weil.com
David.Lender@weil.com
Jed.Winer@weil.com
Rachel.Farnsworth@weil.com

Attorneys for Defendant
*The Procter & Gamble Company*

BEVERIDGE & DIAMOND, P.C.

By: */s/ Megan R. Brillault*
      Megan R. Brillault
      Daniel M. Krainin
      Paula J. Schauwecker
477 Madison Avenue, 15th Floor
New York, New York 10022-5802
T: (212) 702-5400
mbrillault@bdlaw.com
dkrainin@bdlaw.com
pschauwecker@bdlaw.com

Attorneys for Defendant
*Shell Oil Company, individually and doing
business as Shell Chemical LP*


HOLLINGSWORTH LLP

By: */s/ Frank Leone*
      Frank Leone
      Mark A. Miller
1350 I Street, NW
Washington, DC 20005
T: 202.898.5800
fleone@hollingsworthllp.com
mmiller@hollingsworthllp.com

SIVE, PAGET & RIESEL P.C.
Daniel Riesel
Margaret Holden
560 Lexington Avenue, 15th Floor
New York, NY 10022
Phone: (212) 421-2150
Direct: (646) 378-7224
driesel@sprlaw.com
mholden@sprlaw.com


Attorneys for Defendant
*Northrup Grumman Corporation*

EXHIBIT A

| | |
|---|---|
| SUFFOLK COUNTY WATER AUTHORITY, | Case No. 17-CV-6980 |
| Plaintiff, | Hon. Nina Gershon |
| **-against-** | |
| THE DOW CHEMICAL COMPANY, FERRO CORPORATION, VULCAN MATERIALS COMPANY, PROCTER & GAMBLE COMPANY, SHELL OIL COMPANY, individually and doing business as SHELL CHEMICAL LP. | |
| Defendants. | |
| AND ALL RELATED CASES | |

## AGREEMENT TO RESPECT CONFIDENTIAL MATERIAL

I, _____, hereby affirm that:

1.  My address is _____.

2.  My present occupation or job description is _____

_____.

3.  I received a copy of the Stipulated Protective Order entered in the above-captioned actions.

4.  I carefully reviewed the provisions of the Stipulated Protective Order and understand those provisions.

5.  I will comply with all of the provisions of the Stipulated Protective Order.

6.  In particular, I will hold in confidence any Confidential Information I receive in connection with the above-captioned action(s) and will not further disclose or disseminate any such information, except as permitted under the Stipulated Protective Order.  I will only use any

Confidential Information I receive as necessary in connection with the above-captioned action(s) and as permitted under the Stipulated Protective Order, and not for any other purpose.

      7.  I hereby submit to the jurisdiction of the Court in the above-captioned actions for the purpose of enforcement of this agreement.


Dated: _____              _____

EXHIBIT B



**Service of Process Transmittal**
03/28/2022
CT Log Number 541296334

TO: Ben Ederington, General Counsel
WESTLAKE CHEMICAL CORPORATION
2801 Post Oak Blvd Ste 600
Houston, TX 77056-6105

RE: **Process Served in Texas**

FOR: Axiall Corporation  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Suffolk County Water Authority vs. The Dow Chemical Co. |
| **DOCUMENT(S) SERVED:** | -- |
| **COURT/AGENCY:** | None Specified<br>Case # 17CV6980 |
| **NATURE OF ACTION:** | Subpoena - Business records |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Dallas, TX |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/28/2022 at 11:04 |
| **JURISDICTION SERVED :** | Texas |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  Ben Ederington  bederington@westlake.com |
| | Email Notification,  Eva Gregory  egregory@westlake.com |
| | Email Notification,  Richard Kroger  rkroger@westlake.com |
| | Email Notification,  Rebecca Moring  rmoring@westlake.com |
| | Email Notification,  Melissa Judd  mjudd@westlake.com |
| | Email Notification,  Chris McDaniel  cmcdaniel1@westlake.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>1999 Bryan Street<br>Suite 900<br>Dallas, TX 75201<br>877-467-3525<br>SmallBusinessTeam@wolterskluwer.com |

CT Corporation

**TO:**    Ben Ederington, General Counsel
WESTLAKE CHEMICAL CORPORATION
2801 Post Oak Blvd Ste 600
Houston, TX 77056-6105

**RE:**    **Process Served in Texas**

**FOR:**    Axiall Corporation  (Domestic State: DE)

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

**DOCKET HISTORY:**

| DOCUMENT(S) SERVED: | DATE AND HOUR OF SERVICE: | TO: | CT LOG NUMBER: |
|---|---|---|---|
| -- | By Process Server on 03/21/2022 at 03:01 | Ben Ederington, General Counsel WESTLAKE CHEMICAL CORPORATION | 541259190 |



# PROCESS SERVER DELIVERY DETAILS

**Date:**                                     Mon, Mar 28, 2022
**Server Name:**                              Caleb Malone

| Entity Served | AXIALL CORPORATION |
|---------------|--------------------|
| Case Number   | 17-cv-6980         |
| Jurisdiction  | TX                 |

| Inserts | | |
|---|---|---|
| | | |



# UNITED STATES DISTRICT COURT

### for the

### Eastern District of New York

| | |
|---|---|
| Suffolk County Water Authority | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.    17-cv-6980 and related cases |
| The Dow Chemical Co. et al. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:        AXIALL CORPORATION c/o CT CORPORATION SYSTEM
                  1999 BRYAN STREET, SUITE 900 DALLAS, TX 75201

*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:  See Attachment A

| Place: Deposition to take place remotely. | Date and Time: April 29, 2022 10:00 am CT |
|---|---|

       The deposition will be recorded by this method:    Stenographically and Videorecorded

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

       See Attachment B and Attachment C

       The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    3/25/2022

            *CLERK OF COURT*

                                OR

                _____        */s/ Katie Jones*

                *Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Suffolk County Water Authority                                       , who issues or requests this subpoena, are:

Katie Jones, 100 Montgomery St., Ste. 1410, San Francisco, CA 94104; katie@sheredling.com, 628-231-2500

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Civil Action No.  17-cv-6980 and related cases

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

The following terms used in this Exhibit have the meanings, inclusions, and/or constructions set for the below unless otherwise stated.

1.      As used herein, **"you"** and **"your"** refers to **Axiall Corporation** and includes all past and present officers, directors, employees, predecessors, successors, subsidiaries, parent corporations, partners, affiliates, agents, servants, and representatives, independent contractors, consultants, and all other persons acting or purporting to act at the direction of or on behalf of you.

2.      As used herein, **"The Dow Chemical Company"** refers to Defendant The Dow Chemical Company and includes all persons acting or purporting to act at the direction of or on behalf of The Dow Chemical Company.

3.      As used herein, **"Vulcan Materials Company"** refers to Defendant Vulcan Materials Company and includes all persons acting or purporting to act at the direction of or on behalf of Vulcan Materials Company.

4.      As used herein, **"communication(s)"** refers to any act, action, oral speech, written correspondence, contact, expression of words, thoughts, ideas, transmission or exchange of data or other information to another person, whether orally, person-to-person, in a group, by telephone, letter, personal delivery, telex, email, facsimile, text message, instant message, recorded message or any other process—electronic, computer, or otherwise. All such communications in writing shall include, without limitation, printed, typewritten, handwritten, electronic, or other document(s).

5.      As used herein, **"document(s)"** shall have the broadest meaning possible and shall mean all documents, electronically stored information, and tangible things discoverable under Rule 34 of the Federal Rules of Civil Procedure, including without limitation: all writings and all other

1

means of recording information, whether written, transcribed, taped, filmed, microfilmed, or in any other way produced, reproduced, or recorded, and including but not limited to originals (or identical duplicates when originals are not available), drafts, computer-sorted and computer-retrievable information, copies and duplicates that are marked with any notation or annotation or otherwise differ in any way from the original, correspondence, memoranda, reports, notes, minutes, contracts, agreements, leases, subleases, lease assignments, amendments, books records, checks, vouchers, permits, invoices, purchase orders, hazardous waste manifests, timesheets, bills of lading, receipts, ledgers, diaries, logs, calendars, computer printouts, computer disks, card files, lists of persons attending meetings or conferences, site plans, floor plans, blueprints, equipment lists, maps, diagrams, drawings, photographs, sketches, calculations, evaluations, analyses, directions, work papers, press clippings, sworn or unsworn statements, requisitions, manuals or guidelines, audit work papers, financial analyses, tables of organizations, charts, graphs, indices, advertisements and promotional materials, audited and unaudited financial statements, trade letters, trade publications, newspapers and newsletters emails, electronic or mechanical records, facsimiles, telegrams and telecopiers, and audiotapes. Each draft, annotated, or otherwise non-identical copy is a separate document within the meaning of this term. Documents shall also include any removable sticky notes, flags, or other attachments affixed to any of the foregoing, as well as the files, folder tabs, and labels appended to or containing any documents. Documents expressly include all electronic records.

6. As used herein, **"relating to"** and **"concerning"** shall include within their meaning "containing," "alluding to," "responding to, "commenting upon," "discussing," "explaining," "mentioning," "analyzing," "constituting," "memorializing," "compromising," "reporting,"

"incorporating," "confirming," "listing," "evidencing," "setting forth," "summarizing," or "characterizing," either directly or indirectly, in whole or in part.

7.      As used herein, **"1,4-dioxane product(s)"** means 1,4-dioxane (also referred to as diethylene ether, DEE, p-dioxane, or dioxane) or any substance or product containing 1,4-dioxane, including but not limited to stabilized 1,1,1-trichloroethane (also referred to as methyl chloroform, 1,1,1-TCA, TCA, and 1,1,1-TCE), and including but not limited to the following Dow Chemical Company products:

- Diethylene Ether/1,4-Dioxane; 1,1,1-Trichloroethane CP; 1,1,1-Trichloroethane FP; 1,1,1-Trichloroethane MC; 1,1,1-Trichloroethane Vapor Degreasing Grade/CP; 1,1,1-Trichloroethane, AP Grade; 1,1,1-Trichloroethane, Inhibited; 1,1,1-Trichloroethane, S.E.M.I. Grade; Chlorothene; Chlorothene Industrial; Chlorothene NU; Chlorothene NU-Reinstated; Chlorothene SM; Chlorothene SM Solvent-CP; Chlorothene SM-M Solvent; Chlorothene VG-Modified; Chlorothene VG-Reinstated; Chlorothene VG Solvent; Chlorothene VP Solvent-CP; Chlorothene VG-CS Solvent; Dowclene LS; Dowclene WR; Inhibitor Concentrate for Chlorothene SM Solvent; Prelete Defluxer Solvent; Prelete Defluxer Solvent Improved; and Dow Deodorizer C; and

The following Vulcan Materials Company products:

- Solvent 111 General Purpose Grade; Solvent 111 Vapor Degreasing Grade; and Solvent 111 Industrial Grade.

8.      As used herein, the term **"disposal"** shall mean discharge, deposit, dispersal, burial, injection, dumping, spilling, leaking, or removing.

9.      As used herein, **"environmental effect(s)"** means any possible or actual effect, impact, alteration, and/or change to any environmental resource, including but not limited to air, land (including recreational, transport, agricultural, residential, and/or commercial), soil, sediments, water (including surface water, groundwater, drinking water, and/or other aquatic

bodies), and/or biota (including but not limited to plants and animals, including wildlife and aquatic organisms).

10.     As used herein, **"environmental fate and transport"** means where and how chemicals travel and persist and/or degrade in the environment (including but not limited to all land, air, and water) when chemicals are released intentionally or unintentionally in the environment.

11.     As used herein, the term **"handle(d)"** or **"handling"** shall mean to possess, store, use, operate, maintain, touch, place, move, or disturb in any manner.

12.     As used herein, **"human health effect(s)"** means any possible or actual effect, impact, alteration, change, ailment, sickness and/or disease relating to humans.

13.     As used herein, **"sale(s),"** **"sell,"** or **"sold"** means the transfer of title, exchange pursuant to an agreement, distribution, marketing, supply, deliver, ship, transport, or otherwise make commercially available at the wholesale and retail level.

14.     As used herein, **"toxicological effect(s)"** means any possible or actual effect, impact, change, and/or alteration (including but not limited to cellular, biochemical, and/or macromolecular effects) relating to the toxicity, poisonousness, and/or harm of chemicals or substances to living organisms.

## TOPICS FOR EXAMINATION

Pursuant to Federal Rule of Civil Procedure 30(b)(6), Axiall Corporation shall designate and produce a person or persons to testify regarding the following subjects. Unless otherwise indicated, the relevant time period for the following topics is from 1956 through 2010:

1.     Your distribution and sales of 1,4-dioxane products to purchasers in Nassau and Suffolk Counties, New York, including identity of purchasers and annual quantity of 1,4-dioxane products sold, and including reclaimed or recycled 1,4-dioxane products.

2.     Marketing materials, instructions and/or warnings you provided to your customers related to the purchase, handling, adverse effects (including environmental effects, environmental fate and transport, toxicological effects, and human health effects), and/or disposal of 1,4-dioxane products, including but not limited to product labels, warnings, material safety data sheets, product bulletins, user guides, instructions, manuals, product stewardship documents, and related communications with customers.

3.     Formulations of your 1,1,1-trichloroethane products, including stabilizer or inhibitor ingredients, and whether and how they changed over time.

4.     The time period during which you manufactured each of your 1,1,1-trichloroethane products.

5.     Your production and sales volume of each of your 1,1,1-trichloroethane products.

**ATTACHMENT B**

**INSTRUCTIONS**

1.      Unless otherwise specified, each request herein pertains to information and/or documents in your possession, custody, or control, prepared in connection with, reflecting, or relating in any way to any fact, occurrence, thing, or other matter described.

2.      To the extent reasonably practicable, documents are to be produced in groups responsive to each of the numbered requests set forth below, and you shall indicate the request to which each such group is responsive.

3.      If privilege is claimed as a ground for not responding in whole or in part to any request, you shall identify the nature of the privilege that is being claimed and describe the nature of the documents being withheld, including, without limitation, the following information: (a) the type of document (e.g. letter, memorandum, etc.); (b) the general subject matter of the document; (c) the date of the document; and (d) any such other information that is sufficient to identify the document.

4.      You are requested to produce documents in the format specified in the Stipulated Order Establishing Document and ESI Production Protocol, ECF 125 in *Suffolk Cty. Water Auth. v. Dow Chem. Co., et al.*, Case No. 2:17-cv-6980-NG-RLM, attached as Exhibit C.

**REQUESTS FOR PRODUCTION**

**Request No. 1**
Documents sufficient to identify the formulations of your 1,1,1-trichloroethane products, including stabilizer or inhibitor ingredients, and whether and how they changed over time.

**Request No. 2**
Documents sufficient to identify the time period during which you manufactured each of your 1,1,1-trichloroethane products.

**Request No. 3**

Documents sufficient to identify your production and sales volume of each of your 1,1,1-trichloroethane products on an annual basis.

**Request No. 4**

If you ever manufactured 1,4-dioxane-stabilized 1,1,1-trichloroethane product(s), documents concerning your decision to use 1,4-dioxane as an ingredient in your 1,1,1-trichloroethane product(s) and your decision to discontinue use of 1,4-dioxane as an ingredient in your 1,1,1-trichloroethane product(s).

**Request No. 5**

If you ever manufactured 1,4-dioxane-stabilized 1,1,1-trichloroethane product(s), all documents relating to your purchase of 1,4-dioxane from The Dow Chemical Company, Ferro Corporation (and/or Ferro Corporation's Grant Chemical Division), or any other seller or distributor between 1962 and 1995. This request includes, but is not limited to, communications, sales contracts, invoices, marketing agreements, technical and safety data sheets, receipts, records of volume of 1,4-dioxane, and/or inventory records.

**Request No. 6**

If you ever sold 1,4-dioxane-stabilized 1,1,1-trichloroethane product(s) that you did not manufacture, all documents relating to your purchase of 1,4-dioxane-stabilized 1,1,1-trichloroethane products from The Dow Chemical Company, Vulcan Materials Company, or any other seller or distributor between 1962 and 1995. This request includes, but is not limited to, communications, sales contracts, invoices, marketing agreements, technical and safety data sheets, receipts, records of volume of purchases, and/or inventory records.

**Request No. 7**

All documents between 1962 and 1995 relating to instructions and/or warnings regarding the use, storage, handling, and/or disposal of 1,4-dioxane products. This request includes, but is not limited to, communications between you and The Dow Chemical Company, Vulcan Materials Company, or any other seller or distributor; and between you and any purchaser and/or end-user of 1,4-dioxane products you supplied.

**Request No. 8**

All documents between 1962 and the present relating to toxicological effects, human health effects, environmental fate and transport, or environmental effects of 1,4-dioxane or 1,4-dioxane products. This request includes, but is not limited to, communications between you and The Dow Chemical Company, Vulcan Materials Company, Ferro Corporation (and/or Ferro Corporation's Grant Chemical Division), or any other seller or distributor; between you and any purchaser and/or end-user of 1,4-dioxane products you supplied; and between you and any federal or state governmental entity.

**Request No. 9**

All documents and communications between 1962 and the present from and between you and industry organizations, including but not limited to the American Society for Testing & Materials, American Chemistry Council, Manufacturing Chemists' Association, American Cleaning Institute, and American Coatings Association, between 1951 and the present relating to 1,4-dioxane or 1,4-dioxane products. This request includes, but is not limited to, documents and communications relating to instructions and/or warnings regarding the purchase, use, storage, handling, disposal, or sale of 1,4-dioxane products, as well as toxicological effects, human health effects, environmental fate and transport, or environmental effects of 1,4-dioxane products.

**Request No. 10**

All documents between 1962 and 1995 relating to your sale(s) of 1,4-dioxane products to purchasers in Nassau or Suffolk Counties, New York. This request includes, but is not limited to, communications, sales contracts, invoices, marketing agreements, technical and safety data sheets, receipts, records of volume of 1,4-dioxane products, and/or inventory records.

ATTACHMENT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SUFFOLK COUNTY WATER AUTHORITY,<br><br>       Plaintiff,<br><br>    **-against-**<br><br>THE DOW CHEMICAL COMPANY, FERRO CORPORATION, VULCAN MATERIALS COMPANY, PROCTER & GAMBLE COMPANY, SHELL OIL COMPANY, individually and doing business as SHELL CHEMICAL LP.<br><br>       Defendants.<br><br>AND ALL RELATED CASES | Case No. 17-CV-6980<br><br>Hon. Nina Gershon |

**STIPULATED ORDER ESTABLISHING**
**DOCUMENT AND ESI PRODUCTION PROTOCOL**

   This Stipulated Order Establishing Document and ESI Production Protocol (the "Protocol") is intended to govern the discovery, collection, and production of documents, including electronically-stored information ("ESI"), in the above-captioned actions (the "Litigation"). This Protocol supplements the Federal Rules of Civil Procedure and the Local Rules of the Eastern District of New York. The parties to the above-captioned actions (collectively, the "Parties" and each individually a "Party") mutually seek to reduce the time, expense, and other burdens of discovery of certain hard copy documents and ESI, and to better define the scope of their obligations with respect to producing such information and materials. This Protocol is intended to promote a "just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1. This Protocol does not prevent the Parties from negotiating additional agreements regarding discovery as may be necessary in the course of this action. This Protocol is not intended to expand any document storage, preservation, or production requirement beyond

the common law or the Federal Rules of Civil Procedure or to limit any rights or protections otherwise available to a Party under the Federal Rules of Civil Procedure or the Federal Rules of Evidence.

## I.     PRESERVATION AND PRODUCTION OF DATA

1.     By preserving information that is reasonably anticipated to be subject to discovery in this Litigation in accordance with the terms of this Protocol, no Party shall be deemed to have waived any objection to particular discovery requests or the scope of discovery.

2.     Absent a showing of good cause by a Party as determined by the Court, efforts and activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery.

3.     The Parties shall meet and confer regarding:  (a) relevant data sources, including custodial, noncustodial, and third-party documents; (b) search methodology and search terms, if any, to be applied; (c) any applicable and appropriate timeframes for the collection, review, and production of documents; and (d) any use of technology assisted review ("TAR") or similar technologies to streamline the discovery process.

4.     The exchange of the information contemplated in paragraph 3 shall not waive any Party's objections, rights, or protections regarding the production of any documents.

## II.    ESI PRODUCTION SPECIFICATIONS

5.     Except as set forth below, a Party producing documents (a "Producing Party") will produce ESI in single-page TIFF format with corresponding load files and multi-page OCR text or extracted text files.  TIFF files shall be created directly from the original electronic documents; a Party may not create a TIFF file from ESI by printing out paper copies of that electronic document and then scanning that paper  copy of the ESI.  Unless not feasible in certain circumstances, all TIFF files will conform to the following specifications:

> a.     All TIFF files will be single page, black and white TIFF at 300x300 dpi resolution and 8 1/2 x 11-inch page size, except and to the extent reasonably practicable for documents requiring color or different

2

resolution or page size to be legible and comprehensible.  Tracked changes, comments, notes, and other similar information shall be imaged so that this information is captured on the produced image file.

b.      Each production shall include a standard format load file (*e.g.*, Opticon opt, Concordance.Dat, Summation Dii, etc.) containing the production's Beginning and Ending Bates numbers and the additional Metadata fields detailed below.  The appropriate unitization of the documents and family relationship shall accompany the TIFF production.

c.      Except as otherwise agreed by the parties, all productions shall be made in .opt and .dat file formats.

d.      All TIFF images shall be branded in the bottom right with a Bates number, beginning with an alphanumeric prefix followed by at least an 8-digit number. Any numbers with less than 8 digits will be front padded with zeros to reach the required 8 digits.  All ESI produced in TIFF format shall contain a unique Bates Number on each page of the document, electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document.

e.      The Parties shall produce the following metadata fields to the extent they exist with respect to the original electronic document, including native files:

        1.      BegAttach
        2.      EndAttach
        3.      From
        4.      To
        5.      Cc
        6.      Bcc
        7.      Subject
        8.      DateSent
        9.      DateCreated (documents)
        10.     DateModified (documents)

|      |                         |
| ---- | ----------------------- |
| 11.  | Custodian               |
| 12.  | FileName                |
| 13.  | FileType                |
| 14.  | OriginalFilePath        |
| 15.  | Bates Begin             |
| 16.  | Bates End               |
| 17.  | Deduped Custodian       |
| 18.  | Deduped Custodian Path  |
| 19.  | Custodian               |
| 20.  | MD5 Hash                |
| 21.  | Extracted Text Path     |
| 22.  | Native File link        |
| 23.  | Page Count              |
| 24.  | Confidential Designation|
| 25.  | Redaction               |
| 26.  | File Size               |
| 27.  | File Extension          |
| 28.  | Author                  |
| 29.  | Production Volume       |
| 30.  | Message ID              |
| 31.  | ESI Type                |

f.   Documents that include hidden data, computer slide presentations (*i.e.*, PowerPoint files), spreadsheet files (*e.g.*, Excel files), audio files, video files, GIS files, and other file types that cannot be accurately converted to image format as described in paragraph 5(a) above shall be produced in native format, except to the extent such documents require redaction, in which case they shall be produced in accordance with paragraph 22 below. The Producing Party shall produce a single page TIFF "placeholder" page for each file produced in native format. The placeholder page shall bear a Bates number and indicate that the corresponding document has been produced in native format.

g.   The Parties, in consultation with their respective technical personnel, shall promptly meet and confer in good faith on a reasonable protocol for producing any databases or other files that may not easily conform to the production specifications set forth above. In the event the Parties are

unable to agree on such a protocol, either Party may promptly move the Court for an order regarding the production of such databases or other files.

h.   The presumptive source of extracted text shall be from the native file. Where a document has been redacted and produced in TIFF format, OCR may be used to generate text for the text file.

6.   To the extent identical copies of ESI exist in a Producing Party's files, the Producing Party may opt to produce only one such identical copy.  Each Producing Party may remove exact duplicate documents from its production.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also exact duplicates.  An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.  Near-duplicate documents shall not be removed from production.

7.   Email thread suppression techniques shall not be applied in production, although such techniques may be used as a review tool.

8.   If global de-duplication is done across a Producing Party's entire collection of documents, the Deduped Custodian metadata field must list each custodian, separated by a semi-colon, who was a source of that document.

9.   ESI collections and productions may be De-NISTed to remove commercially available operating system and application file information contained on the current NIST file list.

10.   In their productions, the Parties may filter out files identified as zero bytes in size and any logo files.

11.   Embedded objects or files such as Excel spreadsheets, Word documents, and audio and video files shall be extracted and searched.  Non-substantive embedded files, such as logos, need not be extracted or searched.  All embedded files produced pursuant to this

5

procedure shall be produced in accordance with the specifications set forth above.  For production purposes, embedded files shall be identified as attachments to the parent document in which the file was embedded, and load files for such embedded files shall refer to the parent document in which the file was embedded.

## III.    SUPPLEMENTAL PRODUCTION OF SPECIFIC NATIVE FILES

12.    In addition to the native files produced in accordance with paragraph 5(f) above, a Party may request production of additional native files of electronic documents in accordance with the provisions of paragraphs 13 and 14 below.

13.    No Party may seek to compel production of native files on a wholesale or otherwise unreasonable basis.

14.    Any request for additional native files will be carried out under the following protocol:

a.    The Party requesting production of additional native files will identify the native files it seeks by Bates number to the extent practicable.

b.    The Producing Party will respond in writing within ten (10) calendar days by either agreeing or refusing to produce the requested native  files.

c.    If the Producing Party agrees to the request, the production shall be made within fifteen (15) calendar days of the notification of agreement or as otherwise agreed by the  Parties.

d.    If the Producing Party refuses to produce the requested native files, it shall provide a written statement of the reasons it declines the request.  If the reason is technical difficulty in producing, the written statement shall explain the technical difficulty.  The Party requesting the native files may then move the Court to compel production of such native files, and any objections by the Producing Party shall be due seven (7) calendar days after service of that motion.  No reply briefs will be permitted.

IV.     **HARD COPY DOCUMENT PRODUCTION SPECIFICATIONS**

15.     To the extent possible, hard copy documents and attachments should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). To the extent the information exists, the database load file should contain the following information: Custodian(s), Bates Number Beginning, Bates Number Ending, Family Range Beginning (Parent/Child Order), Family Range Ending (Parent/Child Order), Confidential Designation, Redaction, OCR Text Path, and Production Volume. Where reasonably feasible, hard copy documents should be logically unitized (*i.e.*, distinct documents should not be merged into a single record, and single documents should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. Where possible, original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape), and the Bates number shall be outside of the portions of the imaged pages containing content.

16.     Document pages that have affixed notes, such as Post-it® Notes, shall be imaged with the note attached so long as it does not obscure or conceal underlying text or document information. If such a note cannot be imaged with the document for the foregoing reason, the Producing Party shall either (a) separately image the note and produce it as an attachment to the document to which it was originally affixed, or (b) image the document both with and without the note affixed and produce both images.

17.     If an original hard copy document contains color, then the document produced shall be in color, produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.

18.     Multi-page OCR text for each document shall be provided to the extent possible. OCR text files shall be provided as a single text file for each hard copy document, rather than one text file per page, unless otherwise agreed among the Parties. The filename of the document should match its respective TIFF or JPG filename. The OCR software shall maximize text

quality.  Settings such as "auto-skewing" and "auto-rotation" should be turned on during the

OCR process.  Notwithstanding the requirements set forth above, absent a showing of good

cause, a Party is not obligated to re-scan and re-process hard copy documents that were scanned

before the entry of this Protocol.

19.     The Parties recognize the substantial burden of producing hard copy files.  Hard

copy documents that a Producing Party determines to be exact duplicates of documents stored

electronically shall be produced only in electronic format, consistent with this Protocol.  Nothing

in this section waives a Party's right to request specified documents produced electronically to be

produced as hard copy documents in accordance with this Protocol.  If a Party so requests, the

Parties will meet and confer regarding the necessity of and reasons for such a production.  If the

Parties cannot agree to such a production, the Party requesting production may seek appropriate

relief from the Court.

## V.     COSTS

20.     The cost of preserving, collecting, and producing documents shall be borne by the

Producing Party.  In the event, however, that a Party requests documents that would result in the

production of cumulative or repetitive information or that otherwise imposes an undue burden or

expense, the Producing Party may object.  The Parties shall work to resolve any such objection.

In the event that the Parties are unable to resolve any such objection, the Producing Party may

move the Court for an order shifting the cost of producing such documents to the Party that

requested them.

## VI.    REDACTIONS

21.     A Producing Party may redact from any TIFF image, metadata field, or native file

material that is protected from disclosure by applicable privilege or immunity, as required by

applicable law or regulation, or as otherwise permitted by any order of the Court, including any

protective order governing the Litigation.   The Producing Party shall identify redactions clearly

on the face of any TIFF image.

22.     If a document that would otherwise be produced in native format requires

redaction, such document may be produced in TIFF format with an OCR text file in accordance with this Protocol.  The native file version of redacted documents need not be produced unless the Parties agree otherwise.

## VII.    OTHER ISSUES

23.    To maximize the security of information in transit, any production may be encrypted.  In such cases, the Producing Party shall transmit the encryption key or password to all Parties receiving the production, contemporaneously with sending the encrypted production.

24.    To the extent that a Producing Party determines that a document exists in more than one language, that document shall be produced in English, if available.  If no English version of a document is available, the Producing Party does not have an obligation to produce an English translation of that document.

25.    The Parties acknowledge that, if the processing time zone for productions in this Litigation is not standardized across all productions, then the email metadata for custodians in different time zones will be different.  As a result, two copies of the same email may fail to be de-duplicated, and the different time zones could create a convoluted chronology.  As a result, to the extent reasonably practicable, the Parties agree to produce their ESI standardized to Eastern Standard Time (EST).

26.    The terms of any Protective Order ordered by the Court are incorporated herein by reference and govern all production pursuant to this Protocol.

27.    Subsequent to the entry of this Protocol, if any Party determines that any of the requirements in this Protocol impose an undue burden or otherwise pose an issue with respect to compliance, the Parties shall meet and confer regarding that issue, including discussing, as appropriate, an alternative process or processes.  In the event that the Parties cannot resolve such issue, the Party claiming undue burden or difficulty with compliance may seek appropriate relief from the Court.

28.    The Parties will meet and confer regarding the preparation and production of privilege logs.

29.     Nothing contained herein limits a Producing Party's right to conduct a review of documents, ESI, or other information (including metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected information before production.

30.     To the extent the Parties processed any ESI or hard copy documents prior to the entry of this Protocol, and the ESI or hard copy documents do not comply with this Protocol, the Parties shall meet and confer regarding the production of such ESI or hard copy documents.

31.     Nothing in this Protocol shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity.

SHER EDLING LLP

By: /s/ Matthew K. Edling
     Matthew K. Edling
     Victor M. Sher (admitted *pro hac vice*)
     Stephanie D. Biehl (admitted *pro hac vice*)
     Katie H. Jones (admitted *pro hac vice*)
     Timothy R. Sloane (admitted *pro hac vice*)
100 Montgomery St., Suite 1410
San Francisco, CA 94104
Telephone No. (628) 231-2500
matt@sheredling.com
vic@sheredling.com
stephanie@sheredling.com
katie@sheredling.com
tim@sheredling.com

HAUSFELD LLP

By: /s/ Scott Martin
     Scott Martin
     Jeanette Bayoumi
33 Whitehall St., 14th Floor
New York, NY 10004
(646) 357-1100

-and-

KIRKLAND & ELLIS LLP

By: /s/ Kevin T. Van Wart
     Kevin T. Van Wart, P.C.
     Nader R. Boulos, P.C.
300 N. LaSalle Street
Chicago, Illinois 60654
Telephone No. (312) 862-2000
kevin.vanwart@kirkland.com
nader.boulos@kirkland.com

-and-

PHILLIPS LYTLE LLP
Joel A. Blanchet
Andrew P. Devine
One Canalside
125 Main Street
Buffalo, New York 14203
Telephone No. (716) 847-8400
jblanchet@phillipslytle.com
adevine@phillipslytle.com

Attorneys for Defendant
*The Dow Chemical Company*

NORTON ROSE FULBRIGHT US LLP

By: /s/ Stephen C. Dillard

Richard S. Lewis (admitted *pro hac vice*)
1700 K Street, NW, Suite 650
Washington, DC 20006
(202) 540-7200


FRAZER PLC

By: _/s/ J. Nixon Daniel, III_____
     J. Nixon Daniel, III
     Mary Jane Bass
     (admitted pro hac vice)
501 Commendencia Street
Pensacola, FL 32502
(850) 432-2451
jnd@beggslane.com
mjb@beggslane.com

FRAZER PLC

By: _/s/ T. Roe Frazer, II_____
     T. Roe Frazer, II
     Thomas Roe Frazer, III
     W. Matthew Pettit
     (admitted pro hac vice)
30 Burton Hills Blvd., Ste. 450
Nashville, TN 37215
(615) 647-6464
roe@frazer.law
trey@frazer.law
mpettit@frazer.law


HACH ROSE SCHIRRIPA & CHEVERIE LLP

By: _/s/ Frank F. Schirripa_____
     Frank F. Schirripa
     John Blyth
112 Madison Avenue
New York, NY 10016
(212) 213-8311
fschirripa@hrsclaw.com
jb@hachroselaw.com

Attorneys for Plaintiffs

Stephen C. Dillard (admitted *pro hac vice*)
1301 McKinney, Suite 5100
Houston, Texas 77010
Phone: (713) 651-5151
steve.dillard@nortonrosefulbright.com

-and-

Felice B. Galant
1301 Avenue of the Americas
New York, NY 10019
Phone: (212) 318-3000
felice.galant@nortonrosefulbright.com

Attorneys for Defendant
*Legacy Vulcan, LLC, formerly known as Vulcan Materials Company*


HUGHES HUBBARD & REED LLP

By: _/s/ Robb W. Patryk_____
     Robb W. Patryk
     Fara Tabatabai
One Battery Park Plaza
New York, NY 10004
Telephone: (212) 837-6000
robb.patryk@hugheshubbard.com
fara.tabatabai@hugheshubbard.com

Attorneys for Defendant
*Ferro Corporation*


WEIL, GOTSHAL & MANGES LLP

By: _/s/ Diane P. Sullivan_____
     Diane P. Sullivan
     David J. Lender
     Jed P. Winer
     Rachel Farnsworth
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Diane.Sullivan@weil.com
David.Lender@weil.com
Jed.Winer@weil.com
Rachel.Farnsworth@weil.com

Attorneys for Defendant
*The Procter & Gamble Company*

BEVERIDGE & DIAMOND, P.C.

By: */s/ Megan R. Brillault*
      Megan R. Brillault
      Daniel M. Krainin
      Paula J. Schauwecker
477 Madison Avenue, 15th Floor
New York, New York 10022-5802
T: (212) 702-5400
mbrillault@bdlaw.com
dkrainin@bdlaw.com
pschauwecker@bdlaw.com

Attorneys for Defendant
*Shell Oil Company, individually and doing*
*business as Shell Chemical LP*

HOLLINGSWORTH LLP

By: */s/ Frank Leone*
      Frank Leone
      Mark A. Miller
1350 I Street, NW
Washington, DC 20005
T: 202.898.5800
fleone@hollingsworthllp.com
mmiller@hollingsworthllp.com

-and-

SIVE, PAGET & RIESEL P.C.
Daniel Riesel
Margaret Holden
560 Lexington Avenue, 15th Floor
New York, NY 10022
Phone: (212) 421-2150
Direct: (646) 378-7224
driesel@sprlaw.com
mholden@sprlaw.com

Attorneys for Defendant
*Northrup Grumman Corporation*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SUFFOLK COUNTY WATER AUTHORITY, | Case No. 17-CV-6980 |
| Plaintiff, | Hon. Nina Gershon |
| -against- | |
| THE DOW CHEMICAL COMPANY, FERRO CORPORATION, VULCAN MATERIALS COMPANY, PROCTER & GAMBLE COMPANY, SHELL OIL COMPANY, individually and doing business as SHELL CHEMICAL LP. | |
| Defendants. | |
| AND ALL RELATED CASES | |

**STIPULATED PROTECTIVE ORDER**

The parties to the above-captioned actions (the "Parties," and each individually a

"Party") anticipate producing documents and information to each other that contain

confidential, proprietary, or sensitive information.  The Parties are willing to provide these

documents to each other for inspection and review pursuant to the terms and conditions set

forth in this Stipulated Protective Order (the "Protective Order").  By entering this Protective

Order, the Court is only ordering the procedures that the Parties must follow in designating

and objecting to the confidentiality of discovery materials and is not ordering that any

confidential or proprietary information is, or is not, subject to disclosure.

      1.    **Definitions.**  As used in this Protective Order, the following terms have the

following meanings:

          a.    "Action" refers to *Suffolk County Water Authority v. The Dow Chemical*

               *Company, et al.,* **Case No. 17-CV-6980,** and all related cases presently

filed or filed after the entry of this Protective Order.

b.   "Material" refers to documents, information, or any other tangible material or thing produced or presented in this Action, including all materials within the scope of Rule 34(a) of the Federal Rules of Civil Procedure, and all exhibits, evidence, or testimony used or given at trial, in depositions, or in other proceedings in this Action.

c.   "Producing Party" or "Designating Party" refers to the Party or non-party producing Material and/or designating Material as Confidential pursuant to the terms of this Protective Order.

d.   "Receiving Party" refers to a Party or non-party receiving or having access to Material.

e.   "Confidential Information" refers to Material designated as Confidential in accordance with this Protective Order unless (i) the Designating Party has withdrawn the Confidential designation, or (ii) the Court determines that the Material does not constitute or contain confidential information.

2.   **Scope of Protective Order.**  This Protective Order shall apply to Materials exchanged by the Parties or by third parties in discovery.  Nothing in this Order creates a presumption or implies that Material designated by a Party as "Confidential" actually constitutes protected information under applicable law.

3.   **Designation of Confidential Information.**  A Party may only designate Material as Confidential if it has a good-faith basis to believe that the Material constitutes or contains proprietary or highly sensitive business, financial, or critical infrastructure information, trade secrets, personal identifying information, or information that otherwise meets the standard for protection set forth in Rule 26(c)(l)(G) of the Federal Rules of Civil Procedure. Notwithstanding the foregoing, a Producing Party may not designate as Confidential any Material that is publicly available or that a court of competent jurisdiction has determined not to be Confidential.

2

4.     <u>**Use of Confidential Information.**</u>   Material designated as Confidential shall be maintained in confidence and shall not be disclosed, disseminated, or used for any purpose other than litigation of this Action, absent the express written consent of the Producing Party or pursuant to order of the Court.  Nothing in this Protective Order limits the right of any Party to disclose or otherwise use (a) its own Material produced or disclosed in this Action; (b) any Material produced or disclosed in this Action that is not designated as Confidential; or (c) any Material that a Party already possessed prior to its production or disclosure in this Action or that it obtained by proper means from other sources.

5.     <u>**Access to Confidential Information.**</u>  Access to Confidential Information shall be limited to:

> a.  Judges, magistrate judges, court reporters, court personnel, videographers, and special masters in connection with this Action.
>
> b.  The Parties and counsel of record for the Parties in this Action, including outside and in-house counsel of the Parties, and the attorneys, secretaries, paralegals, assistants, and other employees in the same firm/company of such counsel, in all cases only to the extent reasonably necessary to render professional services in this Action.
>
> c.  Messenger, copy, and other clerical services vendors not employed by a Party or its counsel of record, only to the extent reasonably necessary to assist the Parties and counsel of record for the Parties in rendering professional services in this Action.
>
> d.  The insurers or indemnitors of the defendants or any agents retained by the insurers or indemnitors, including independent claims management personnel.
>
> e.  Subject to paragraph 6 below, witnesses during depositions, hearings, and trial testimony in this Action, either during the deposition, hearing or trial or to the extent reasonably necessary to prepare such persons to

testify, and counsel for such persons to the extent not included in Section 4(b).

f.  Subject to paragraph 6 below, consultants or experts retained for the purpose of assisting counsel of record for the Parties in this Action, including consulting and testifying experts, jury/trial consultants, and mock jurors or focus group members.

g.  Subject to paragraph 6 below, third party contractors retained for the purpose of organizing, filing, coding, converting, storing, or retrieving Material or maintaining database programs for handling Material for this Action.

h.  Subject to paragraph 6 below, other persons with the express written consent of the Producing Party or pursuant to Court order.

6.      **Signing the Protective Order.**  Before disclosing Confidential Information to any person listed in paragraphs 5(f)-(h), the Party proposing such disclosure must provide a copy of this Protective Order to such person and such person must fill out and sign the affirmation attached hereto as Exhibit A.  The Party proposing disclosure must retain a copy of the signed affirmation.  If the person to whom disclosure is contemplated refuses to sign an affirmation and is a witness being deposed or compelled to testify pursuant to a subpoena, notice, or other order of this Court, then the Parties will work cooperatively to seek a ruling on the issue by the Court prior to the person's scheduled testimony.  While awaiting a ruling on that issue by the Court, no one may disclose Confidential Information to such person.  Before disclosing Confidential Information to any person listed in paragraph 5(e), the Party making such disclosure must generally explain this Protective Order and/or the Confidential nature of the Material to that person.

7.      **Filing Confidential Information with the Court.**  The Parties agree to seek leave to file any Confidential Information under seal.  Any request to file documents under seal must comply with the Federal Rules of Civil Procedure, the Local Rules of the Eastern District

4

of New York, and any Individual Practices or Standing Orders of Judge Nina Gershon and

Magistrate Judge Roanne L. Mann.  Following a request by the filing Party for leave to file

under seal, the Designating Party (if a different Party than the filing Party) shall have seven (7)

calendar days to file a supplemental letter brief in support of the filing Party's motion for leave

to file the Confidential Information under seal.  If the Court grants the filing Party's motion for

leave to file certain documents under seal, that Party shall file such documents under seal and

shall also publicly file such documents with redactions of Confidential Information to the extent

permitted by the Court in granting the motion to seal.   If the Confidential Information in a

document filed under seal is later de-designated, any Party may seek to unseal such document

for the public record.

8.    **Production of Confidential Information.**  With respect to documents that are

produced in TIFF format, any designation of confidentiality shall be made by including the

word "CONFIDENTIAL" in the lower left corner of the document, so long as this designation

does not obscure or conceal information contained in the document.  The addition of any

designation pursuant to this Protective Order shall not be deemed an alteration of the document.

With respect to documents that are produced in native format, the designation of confidentiality

shall be made by including the word "CONFIDENTIAL" on a cover sheet produced in TIFF

format along with the native file and may include, at the Producing Party's discretion, the word

"CONFIDENTIAL" in the file name of the native file as produced.  If a Party adds a

designation to the file name for documents produced in native format, such addition will not be

considered an alteration of the file.

9.    **Designation of Deposition Transcripts as Confidential.**  All depositions or

portions of depositions taken in this Action may be designated as Confidential pursuant to this

Protective Order.  To designate deposition transcripts as Confidential, a Party must identify the

page number and line(s) of testimony that contain Confidential Information, either on the

record at the deposition or by written notice to the other Parties within 21 calendar days of

receipt of the final transcript of the deposition from the court reporter.  Unless otherwise

agreed, deposition transcripts shall be treated as Confidential from the time of the deposition through the 21-calendar-day period following receipt of the final transcript from the court reporter, after which time, if no portion of the transcript is designated as Confidential, the transcript shall be treated as non-confidential.

10.    **Contesting Confidentiality Designations.**  If any Party believes that any Material designated as Confidential does not constitute Confidential Information, then that Party (the "Challenging Party") may challenge the designation by sending written notice to the Designating Party, identifying the challenged Material and articulating the reason(s) for challenging the confidentiality designation.  The Parties shall promptly confer in good faith to resolve any challenge to a confidentiality designation.  If the Parties are unable to resolve their dispute within fourteen (14) calendar days of the notice to the Designating Party of such challenge, or the Designating Party does not respond within such time, then the Challenging Party may request that the Court resolve the dispute.  The Designating Party shall have the burden of showing that the Material at issue is Confidential.

11.    **Inadvertent Failure to Designate Material as Confidential.**  Any Party that inadvertently fails to designate Material as Confidential shall have fourteen (14) business days from the discovery of its oversight to designate such Material as Confidential by providing written notice to all Parties of the late designation together with substitute versions of the inadvertently undesignated Material with the appropriate confidentiality designation applied. Such notice shall be deemed to apply to all copies of the inadvertently undesignated Material. Upon receiving such notice and substitute copies, the Receiving Parties shall make reasonable efforts to retrieve any copies of the undesignated Material from any person to whom that Material was provided and who would not be entitled to receive the Confidential Information under this Protective Order; provided, however, that any Party that received such inadvertently undesignated Material shall have no liability for having received or disclosed any Confidential Information contained within such Material prior to that Material being designated as Confidential.  An inadvertent failure to designate Material as Confidential shall not, on its own,

be deemed a waiver in whole or in part of the Producing Party's claim of confidentiality, either as to the specific inadvertently undesignated Material or Material concerning the same or related subject matter. This paragraph applies equally to any portions of a hearing or other proceeding before the Court that a Party inadvertently failed to designate as Confidential during that hearing or proceeding.

12.     **No Waiver of Any Privilege Upon Production.**  The Parties agree that they do not intend to disclose in the course of discovery in this Action information that is subject to a claim of attorney-client privilege, attorney work product protection, or any other applicable privilege or immunity from disclosure.  Production of such Materials shall not constitute a waiver of any privilege, provided that the Producing Party, within fourteen (14) calendar days of discovery of the production of such Material, notifies all other Parties in writing of the production, identifies the Material that was produced, and requests a "clawback" of such Material.  If the Producing Party claims that only a portion of a produced document is privileged, the Producing Party shall provide a new copy of the document with the allegedly privileged portions redacted.  A Party receiving a clawback notice shall immediately and diligently act to destroy the Material identified in such notice and any work product reflecting the contents of such Material.  A Receiving Party may, after receipt of the Producing Party's clawback notice, make a motion before the Court disputing the claim of privilege.  If a Receiving Party elects to file such a motion, that Receiving Party may retain possession of the Material that is the subject of that motion, as well as any work product reflecting the content of such Material, pending resolution of the motion by the Court, but shall not use or further disclose such Material unless and until the Court grants the Receiving Party's motion.  If the Receiving Party's motion is denied, the Receiving Party shall promptly destroy such Material and any work product reflecting the content of such Material.

13.     **Requests for Confidential Information.**  If a Receiving Party receives a discovery request, subpoena, order, or other form of legal process that seeks production of the Confidential Information of a Producing Party (a "Request"), that Receiving Party must

promptly provide notice of the Request in writing to counsel for the Producing Party, together with a copy of the Request.  The Producing Party shall have seven (7) calendar days to object to the Receiving Party's production of the Producing Party's Confidential Information in response to the Request.  During that 7-calendar-day period, the Receiving Party shall not, except to the extent required by applicable law, provide or otherwise disclose the Producing Party's Confidential Information in response to the Request.  If the Producing Party objects to disclosure, then the Receiving Party to whom the Request is directed shall not, except to the extent required by applicable law, disclose the Producing Party's Confidential Information unless directed to do so by the Producing Party or pursuant to order of a court of competent authority.

      14.    **Storage and Transmittal of Confidential Information.**  To avoid security risks inherent in certain current technologies and to facilitate compliance with the terms of this Protective Order, all persons with access to Confidential Information are prohibited from storing or transmitting any Confidential Information in or via any online service (other than the firm or corporate email system of a Party of counsel for a Party) that is managed or maintained by any third party, other than a litigation support service provider that uses (a) a secure document hosting facility, (b) encrypted webenabled software, and (c) secure sharing and collaboration among only authorized users.  Notwithstanding the foregoing provisions of this paragraph, the Parties may temporarily store and/or transmit files with Confidential Information to persons authorized to receive Confidential Information via secure FTP, Dropbox, Box.com, or by way of a third party vendor that the Parties agree may be used for encrypted and secure domestic transmissions, provided that, for any such transmissions, the Parties shall take all reasonable steps to protect Confidential Information from being disclosed to unauthorized third parties.  The use of a third-party vendor may include short-term, incidental storage of files for the sole purpose of transmitting them, provided that the files are promptly deleted upon transmission.

      15.    **Personal Identifying Information:**  Any Party that receives personal

identifying information in connection with discovery in this Action shall preserve the privacy, integrity, and confidentiality of such information. Personal identifying information includes social security numbers, birth dates, personal addresses, personal email addresses, personal account numbers, certificate/license numbers, vehicle identifiers and serial numbers, license plate numbers, device identifiers and serial numbers, medical record numbers, health plan beneficiary numbers, biometric identifiers such as finger and voice prints, full face photographic images and comparable images, and any other unique personal identifying number, characteristic, or code. Material containing personal identifying information shall be designated as Confidential. The Parties are not required to but may redact personal identifying information so long as the redaction of such information displays text reading: "Redacted – PII".

18.     **Confidential Information Produced by a Non-Party**. Any non-party who may be called upon to make discovery herein or to provide deposition or other testimony pursuant to subpoena or other formal or informal discovery device is entitled to avail itself of the provisions and protections of this Protective Order. All Material designated by a non-party as Confidential will be treated in the same manner as any Confidential produced by the Parties.

19.     **Non-Termination.** The duty to treat Confidential Information in accordance with this Protective Order survives the completion of this Action. At the conclusion of this Action by settlement, jury verdict, judgment, or otherwise, each Party must destroy all Confidential Information belonging to another Party that it does not otherwise have a right to retain. The destruction of Confidential Information under this paragraph will include, without limitation, all copies and duplicates thereof. Within 90 days of receipt of a written request, or such other time frame as agreed among the Parties, the Parties will certify that all Confidential Information required to be destroyed has been destroyed. Unless otherwise ordered by the Court, this paragraph does not apply to (a) copies of pleadings or other papers that have been filed with the Court and that contain Confidential Information; (b) a Party's own work product; or (c) official deposition, trial, or other Court transcripts and exhibits thereto. The terms and provisions of this

Order will continue to apply to any such Material retained by counsel.

20.   **Non-Waiver of Objections.**   Neither this Protective Order nor any of the provisions described herein shall operate as a waiver of any Party's right to object to the admissibility or discoverability of any Material, or to seek further protection from the Court before producing Material that a Party believes may not be adequately protected by the provisions of this Protective Order, or to seek leave to refuse production of such Material.

21   **Modification Permitted.**   This Protective Order may be modified at any time by the Court on its own motion or, for good cause shown, on motion of any Party or non-party, or by agreement of the Parties with the Court's approval.

| | |
|---|---|
| SHER EDLING LLP | KIRKLAND & ELLIS LLP |
| By: */s/ Matthew K. Edling* | By:  */s/ Kevin T. Van Wart* |
|     Matthew K. Edling |     Kevin T. Van Wart, P.C. |
|     Victor M. Sher (admitted *pro hac vice*) |     Nader R. Boulos, P.C. |
|     Stephanie D. Biehl (admitted *pro hac vice*) | 300 N. LaSalle Street |
|     Katie H. Jones (admitted *pro hac vice*) | Chicago, Illinois 60654 |
|     Timothy R. Sloane (admitted *pro hac vice*) | Telephone No. (312) 862-2000 |
| 100 Montgomery St., Suite 1410 | kevin.vanwart@kirkland.com |
| San Francisco, CA  94104 | nader.boulos@kirkland.com |
| Telephone No. (628) 231-2500 | |
| matt@sheredling.com | |
| vic@sheredling.com | -and- |
| stephanie@sheredling.com | |
| katie@sheredling.com | PHILLIPS LYTLE LLP |
| tim@sheredling.com | Joel A. Blanchet |
| | Andrew P. Devine |
| | One Canalside |
| | 125 Main Street |
| HAUSFELD LLP | Buffalo, New York 14203 |
| | Telephone No. (716) 847-8400 |
| By:  */s/ Scott Martin* | jblanchet@phillipslytle.com |
|     Scott Martin | adevine@phillipslytle.com |
|     Jeanette Bayoumi | |
| 33 Whitehall St., 14th Floor | Attorneys for Defendant |
| New York, NY 10004 | *The Dow Chemical Company* |
| (646) 357-1100 | |
| | |
| -and- | NORTON ROSE FULBRIGHT US LLP |
| | |
| Richard S. Lewis (admitted *pro hac vice*) | By: */s/ Stephen C. Dillard* |
| 1700 K Street, NW, Suite 650 |     Stephen C. Dillard (admitted *pro hac vice*) |
| Washington, DC 20006 | 1301 McKinney, Suite 5100 |

(202) 540-7200


FRAZER PLC

By: */s/ J. Nixon Daniel, III*
           J. Nixon Daniel, III
           Mary Jane Bass
           (admitted pro hac vice)
501 Commendencia Street
Pensacola, FL  32502
(850) 432-2451
jnd@beggslane.com
mjb@beggslane.com

FRAZER PLC

By: */s/ T. Roe Frazer, II*
           T. Roe Frazer, II
           Thomas Roe Frazer, III
           W. Matthew Pettit
           (admitted pro hac vice)
30 Burton Hills Blvd., Ste. 450
Nashville, TN  37215
(615) 647-6464
roe@frazer.law
trey@frazer.law
mpettit@frazer.law


HACH ROSE SCHIRRIPA & CHEVERIE LLP

By: */s/ Frank F. Schirripa*
           Frank F. Schirripa
           John Blyth
112 Madison Avenue
New York, NY  10016
(212) 213-8311
fschirripa@hrsclaw.com
jb@hachroselaw.com


Attorneys for Plaintiffs

Houston, Texas 77010
Phone: (713) 651-5151
steve.dillard@nortonrosefulbright.com

-and-

Felice B. Galant
1301 Avenue of the Americas
New York, NY 10019
Phone: (212) 318-3000
felice.galant@nortonrosefulbright.com

Attorneys for Defendant
*Legacy Vulcan, LLC, formerly known as Vulcan Materials Company*


HUGHES HUBBARD & REED LLP

By: */s/ Robb W. Patryk*
           Robb W. Patryk
           Fara Tabatabai
One Battery Park Plaza
New York, NY 10004
Telephone:  (212) 837-6000
robb.patryk@hugheshubbard.com
fara.tabatabai@hugheshubbard.com

Attorneys for Defendant
*Ferro Corporation*


WEIL, GOTSHAL & MANGES LLP

By*: /s/ Diane P. Sullivan*
           Diane P. Sullivan
           David J. Lender
           Jed P. Winer
           Rachel Farnsworth
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Diane.Sullivan@weil.com
David.Lender@weil.com
Jed.Winer@weil.com
Rachel.Farnsworth@weil.com

Attorneys for Defendant
*The Procter & Gamble Company*

11

BEVERIDGE & DIAMOND, P.C.

By: */s/ Megan R. Brillault*
     Megan R. Brillault
     Daniel M. Krainin
     Paula J. Schauwecker
477 Madison Avenue, 15th Floor
New York, New York 10022-5802
T: (212) 702-5400
mbrillault@bdlaw.com
dkrainin@bdlaw.com
pschauwecker@bdlaw.com

Attorneys for Defendant
*Shell Oil Company, individually and doing
business as Shell Chemical LP*


HOLLINGSWORTH LLP

By: */s/ Frank Leone*
     Frank Leone
     Mark A. Miller
1350 I Street, NW
Washington, DC 20005
T: 202.898.5800
fleone@hollingsworthllp.com
mmiller@hollingsworthllp.com

SIVE, PAGET & RIESEL P.C.
Daniel Riesel
Margaret Holden
560 Lexington Avenue, 15th Floor
New York, NY 10022
Phone: (212) 421-2150
Direct: (646) 378-7224
driesel@sprlaw.com
mholden@sprlaw.com


Attorneys for Defendant
*Northrup Grumman Corporation*

EXHIBIT A

| | |
|---|---|
| SUFFOLK COUNTY WATER AUTHORITY,<br><br>      Plaintiff,<br><br>    **-against-**<br><br>THE DOW CHEMICAL COMPANY, FERRO CORPORATION, VULCAN MATERIALS COMPANY, PROCTER & GAMBLE COMPANY, SHELL OIL COMPANY, individually and doing business as SHELL CHEMICAL LP.<br><br>      Defendants. | Case No. 17-CV-6980<br><br> Hon. Nina Gershon |

AND ALL RELATED CASES

### AGREEMENT TO RESPECT CONFIDENTIAL MATERIAL

I, _____, hereby affirm that:

1.  My address is _____.

2.  My present occupation or job description is _____

_____.

3.  I received a copy of the Stipulated Protective Order entered in the above-captioned actions.

4.  I carefully reviewed the provisions of the Stipulated Protective Order and understand those provisions.

5.  I will comply with all of the provisions of the Stipulated Protective Order.

6.  In particular, I will hold in confidence any Confidential Information I receive in connection with the above-captioned action(s) and will not further disclose or disseminate any such information, except as permitted under the Stipulated Protective Order.  I will only use any

Confidential Information I receive as necessary in connection with the above-captioned action(s) and as permitted under the Stipulated Protective Order, and not for any other purpose.

7.  I hereby submit to the jurisdiction of the Court in the above-captioned actions for the purpose of enforcement of this agreement.


Dated: _____          _____

EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SUFFOLK COUNTY WATER AUTHORITY,

Plaintiff,

-against-

THE DOW CHEMICAL COMPANY, FERRO
CORPORATION, VULCAN MATERIALS COMPANY,
PROCTER & GAMBLE COMPANY, SHELL OIL
COMPANY, individually and doing business as SHELL
CHEMICAL L.P.,

Defendants.

Civil Action No.: 17-CV-6980-NG-
RLM

Judge: Hon. Nina Gershon

## WESTLAKE CHEMICAL CORPORATION'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S SUBPOENAS AND REQUESTS FOR PRODUCTION

### I.     PRELIMINARY STATEMENT

These responses, the information contained therein, and the production of responsive documents, if any, are made by the entity Westlake Chemical Corporation (hereinafter "Westlake"). The following corporate history will provide insight. Westlake's principal place of business in the United States is located in Houston, Texas. Westlake did not have any direct involvement with the items/information plaintiff seeks. During the time period in question (1956 – 2010), the subject chemical was designed, manufactured, sold, etc., by PPG Industries ("PPG"). Westlake's involvement with PPG arises as follows. In 2013, PPG divested its commodity chemicals division (chlor-alkali and derivatives). The PPG chemicals division became part of a newly formed public company called Axiall Corporation ("Axiall"). In 2016, Westlake acquired Axiall, which continues to do business as a subsidiary of Westlake.

### II.    GENERAL OBJECTIONS

1.     Westlake objects to Plaintiff's Subpoena and Requests for Production to the extent

1

that they request the disclosure of information or documents containing confidential or proprietary, technical, financial, business, trade secret, research or development or other information without the protection of an acceptable form of stipulation and protective order adequate to preserve the confidentiality of such information.

2. Westlake objects to Plaintiff's Subpoena and Requests for Production to the extent that they are vague, ambiguous, overly broad, unduly burdensome or oppressive, or seek information or documents that are not relevant to the claims or defenses of any party or to the subject matter involved in this action, or to the extent they seek information or documents beyond which is permitted by the Federal Rules of Civil Procedure.

3. Westlake objects to Plaintiff's Subpoena and Request for Production to the extent they seek documents or information protected from discovery by the attorney-client privilege, work product privilege or other privilege, or that are otherwise immune or protected from disclosure.

4. Westlake objects to Plaintiff's Subpoena and Requests for Production to the extent they are not limited to documents that are within the possession, custody, or control of Westlake. Westlake shall construe Plaintiff's requests as limited to documents that are within the "possession, custody, or control" of Westlake, as that terminology is defined by the Federal Rules of Civil Procedure.

5. Westlake objects to Plaintiff's Subpoena and Requests for Production to the extent they call for information or documents that are unreasonably cumulative or duplicative, or obtainable from some other source that is more convenient, less burdensome, or less expensive.

## III.　OBJECTIONS TO ATTACHMENT "A"

1.　Westlake objects to Plaintiff's definition of the terms "you" and "your" as said definition renders any discovery requests utilizing the terms overly broad and unduly burdensome. Any discovery request utilizing these terms necessarily invades the attorney work product and attorney-client privileges. To the extent these terms are intended to include predecessors, parents, subsidiaries, affiliates, and divisions as well as present and former officers, directors, executors, agents, representatives, and any other person purporting to act on behalf of Westlake, any inquiry utilizing these terms is overly broad and unduly burdensome as to make any such inquiry virtually impossible to answer. Moreover, this definition is overly broad and discharges the corporate form because it includes entities that are legally separate and distinct from Westlake.

2.　Westlake objects to Plaintiff's definition of the term "1,4-dioxane product(s)" as said definition renders any discovery request utilizing this term overly broad, unduly burdensome and incapable of being responded to fully, appropriately and without speculation.

## IV.　OBJECTIONS TO TOPICS FOR EXAMINATION

1.　Westlake objects to Plaintiff's topics for examination in their entirety on the grounds that they seek information and documents covering a 54-year period of time that began over 66 years ago making these topics overly broad and burdensome. Westlake also objects to Plaintiff's topics for examination to the extent they are not limited to areas of inquiry or documents that are within the possession, custody or control of Westlake.

2.　Westlake objects to Plaintiff's topics for examination to the extent they seek confidential, trade sensitive and/or proprietary information.

## V.   WESTLAKE'S OBJECTION TO REQUEST FOR PRODUCTION

1.      Objection and Response:  Westlake objects to this request to the extent it seeks confidential, trade sensitive and/or proprietary information.  This request is overly broad, unduly burdensome and is vague.  This request merely amounts to an impermissible "fishing expedition" prohibited by the applicable rules of civil procedure and case law concerning discovery.

2.      Objection and Response:  Westlake objects to this request to the extent it seeks confidential, trade sensitive and/or proprietary information.  This request is overly broad, unduly burdensome and is vague.  This request merely amounts to an impermissible "fishing expedition" prohibited by the applicable rules of civil procedure and case law concerning discovery.

3.      Objection and Response:  Westlake objects to this request to the extent it seeks confidential, trade sensitive and/or proprietary information.  This request is overly broad, unduly burdensome and is vague.  This request merely amounts to an impermissible "fishing expedition" prohibited by the applicable rules of civil procedure and case law concerning discovery.

4.      Objection and Response:  Westlake objects to this request to the extent it seeks confidential, trade sensitive and/or proprietary information.  This request is overly broad, unduly burdensome and is vague.  This request merely amounts to an impermissible "fishing expedition" prohibited by the applicable rules of civil procedure and case law concerning discovery.

5.      Objection and Response:  Westlake objects to this request to the extent it seeks confidential, trade sensitive and/or proprietary information.  This request is overly broad, unduly burdensome and is vague.  This request merely amounts to an impermissible "fishing expedition" prohibited by the applicable rules of civil procedure and case law concerning discovery.

6.      Objection and Response:  Westlake objects to this request to the extent it seeks confidential, trade sensitive and/or proprietary information.  This request is overly broad, unduly

burdensome and is vague.  This request merely amounts to an impermissible "fishing expedition" prohibited by the applicable rules of civil procedure and case law concerning discovery.

7.      Objection and Response:  Westlake objects to this request to the extent it seeks confidential, trade sensitive and/or proprietary information.  This request is overly broad, unduly burdensome and is vague.  This request merely amounts to an impermissible "fishing expedition" prohibited by the applicable rules of civil procedure and case law concerning discovery.

8.      Objection and Response:  Westlake objects to this request to the extent it seeks confidential, trade sensitive and/or proprietary information.  This request is overly broad, unduly burdensome and is vague.  This request merely amounts to an impermissible "fishing expedition" prohibited by the applicable rules of civil procedure and case law concerning discovery.

9.      Objection and Response:  Westlake objects to this request to the extent it seeks confidential, trade sensitive and/or proprietary information.  This request is overly broad, unduly burdensome and is vague.  This request merely amounts to an impermissible "fishing expedition" prohibited by the applicable rules of civil procedure and case law concerning discovery.

10.     Objection and Response:  Westlake objects to this request to the extent it seeks confidential, trade sensitive and/or proprietary information.  This request is overly broad, unduly burdensome and is vague.  This request merely amounts to an impermissible "fishing expedition" prohibited by the applicable rules of civil procedure and case law concerning discovery.

Dated:  Garden City, New York
         May 17, 2022


                                                    *Jeffrey Migdalen*
                                                    Jeffrey Migdalen

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the above date a copy of the foregoing document served by email

on the following parties:

All Counsel Consented via ECF.

Dated: Garden City, New York
May 17, 2022

<i>Jeffrey Migdalen</i>
Jeffrey Migdalen