**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------- x

**SUFFOLK COUNTY WATER**
**AUTHORITY,**

               **Plaintiff,**

          **-against-**

**THE DOW CHEMICAL COMPANY AND**
**VIBRANTZ CORPORATION,**
**FORMERLY KNOWN AS FERRO**
**CORPORATION,**

              **Defendants.**

---------------------------------------------------------- x

**GERSHON, United States District Judge:**

      **OPINION & ORDER**

      **17-cv-6980 (NG) (JRC)**

In this water contamination case, plaintiff Suffolk County Water Authority ("Suffolk") brings suit against manufacturers Dow Chemical Company and Vibrantz Corporation (collectively, "Defendants"). *See Suffolk Cnty. Water Auth. v. Dow Chem. Co.*, 2025 WL 1907206 (E.D.N.Y. July 10, 2025). Suffolk contends that it must design, construct, and maintain treatment facilities and equipment in order to remove dioxane contamination from the wells it operates (the "TCA Claim Wells"), and it offers the opinions of its damages expert Ronald K. Berryhill in support of its intended mitigation plan. Defendants now move to exclude the entirety of Mr. Berryhill's opinions and testimony. For the reasons set forth below, Defendants' motion is denied.

### I.      Expert Qualifications

Ronald K. Berryhill is a Principal Engineer employed by Provost & Pritchard Consulting Group. Expert Report of Ronald K. Berryhill ("Berryhill Report") at 1. He received a bachelor's degree in mechanical engineering from California State Polytechnic University, San Luis Obispo, and a master's degree in mechanical engineering from California State University at Long Beach.

*Id.* He is licensed to practice civil and mechanical engineering in California. *Id.* Mr. Berryhill has twenty-five years of engineering experience and specializes in the evaluation of water quality and the selection and design of water treatment processes. *Id.* He has "extensive experience in feasibility and pre-design studies; design and preparation of plans, specifications, and cost estimates; permitting; bench-scale studies; pilot studies; and construction support" and has previously worked on wellhead treatment projects. *Id.* He previously served as Chair of the Water Treatment Committee and Chair of the Water Quality Division within the California-Nevada Section of the American Water Works Association. *Id.*

The expert report at issue was prepared by Provost & Pritchard Consulting Group and signed by Mr. Berryhill.

## II. The Berryhill Reports

Mr. Berryhill issued a December 15, 2022 report evaluating Suffolk's proposed approach to removing dioxane from the TCA Claim Wells. Suffolk's treatment plan consists of installing treatment systems at each well where 1,4-dioxane has been detected. Berryhill Report at 2. Under Suffolk's plan, the water is treated through advanced oxidation processes ("AOP") using a combination of ultraviolet light and hydrogen peroxide, and then using granular activated carbon ("GAC") to remove by-products of the AOP and residual hydrogen peroxide. *Id.* Mr. Berryhill opines that Suffolk's AOP/GAC treatment plan is a "reasonable and appropriate" means of achieving its goal to treat all wells to non-detect. *Id.* at 4. He then estimates the associated costs incurred by implementing the plan at every well. *Id.* at 12-53.

Several of Defendants' experts issued rebuttal reports in response to the Berryhill Report. One such expert, Jaime E. Moreno, offered two approaches to treating the water that he opines are reasonable, lower-cost alternatives to the AOP/GAC plan. *See generally Suffolk Cnty. Water Auth.*

*v. Dow Chem. Co.*, 2026 WL 936145 (E.D.N.Y. Apr. 7, 2026) (denying Suffolk's Motion to Exclude Opinions of Jaime E. Moreno).

Mr. Berryhill issued a Rebuttal Report on May 25, 2023 concluding that "Defendants' Experts' opinions are flawed, unscientific, and unreliable." Expert Rebuttal Report of Ronald K. Berryhill ("Berryhill Rebuttal Report") at 1. He opines that "SCWA's objective to provide its customers with drinking water without detectable levels of 1,4-dioxane is consistent with its mission, is consistent with what a reasonable water supplier would do, and is consistent with what any reasonable SCWA customer would expect of their water provider" and that Mr. Moreno's treatment alternatives, "which only achieve[] the minimum standard of quality," are inconsistent with the approach of a reasonable water provider. *Id.* at 2. He further opines that "[b]ased on the many years [he has] spent working with water utilities to mitigate a range of drinking water contamination issues" and "given the recognized risk of 1,4-dioxane to human health, it is reasonable and appropriate that SCWA's response to 1,4-dioxane contamination of its water supply is to attempt to reduce 1,4-dioxane levels to non-detect to the extent it is financially feasible for it to do so." *Id.*

### III.    Discussion

The basic principles for the admission of expert evidence under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), are set forth in *Suffolk Cnty.*, 2025 WL 1907206, at *2, and will not be repeated here.

First, Defendants argue that Mr. Berryhill impermissibly adopted Suffolk's representation that 277 wells[1] require treatment and that any detection level of dioxane in a well necessitates

---

[1] The exact number of TCA Claim Wells in the case is the subject of a motion currently pending before the court. For simplicity's sake, I refer to the 277 wells Mr. Berryhill discusses in his Report.

remediation as his own opinions without conducting any analysis. I agree with Suffolk, however, that these are not expert opinions offered by Mr. Berryhill in his initial Report but assumptions provided to him by Suffolk.[2] Defendants are correct that Mr. Berryhill stated that "277 wells will require AOP treatment" in his Summary of Opinions, Berryhill Report at 2, and that he testified he was "offering an opinion that [Suffolk] should treat the water," Berryhill Dep. Tr. at 118:5-6. But it is clear that, in his initial Report, Mr. Berryhill opines only that Suffolk's selection of AOP/GAC is a reasonable means of achieving Suffolk's goal of treating all dioxane-contaminated wells to non-detect levels. *See* Berryhill Report at 2-3. As Defendants acknowledge, Mr. Berryhill's testimony confirms that he did not determine which wells to treat. Berryhill Dep. Tr. at 552:22-553:1 ("I base my decision on which wells would be treated by the list that was provided to me by [Suffolk Chief Engineer] Mr. Kilcommons."); *id.* at 135:17-23 (the proposition that "any detection level of dioxane requires some sort of action on the part of [Suffolk]" is based on an assumption provided by Suffolk). In his Rebuttal Report, Mr. Berryhill does opine that, based on his experience, these assumptions are reasonable and that Suffolk's objective of treating all wells to non-detect is consistent with what a reasonable water supplier would do. Berryhill Rebuttal Report at 2. But the assumptions themselves are offered by Suffolk; Mr. Berryhill does not himself

---

[2] It is permissible for Suffolk to base its damages theory on assumptions, "so long as the assumptions are reasonable in light of the record." *U. S. Football League v. Nat'l Football League*, 1986 WL 10620, at \*32 (S.D.N.Y. July 31, 1986). Expert testimony "based on assumptions that are so unrealistic and contradictory as to suggest bad faith" may be excluded, but "other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009). Although at the trial Defendants are expected to challenge the reasonableness of the assumptions Suffolk provided to Mr. Berryhill, they do not challenge them as a *Daubert* issue on this motion.

opine that every TCA Claim Well requires treatment, but merely that it was reasonable for Suffolk to take this approach.[3]

Defendants' second argument, that "Berryhill's one-size-fits-all approach to treatment fails to account for the specifics of [Suffolk's] wells" and is therefore unreliable, is also without merit. Defs.' Br. at 4. As Suffolk points out, Mr. Berryhill opines that AOP/GAC is reasonable and necessary "based on AOP being the only 1,4-dioxane treatment process approved by [New York] and based on the results of appropriately thorough pilot studies and years of research and due diligence conducted by [Suffolk] employees." Berryhill Report at 8. Mr. Berryhill opines that "AOP essentially is the only treatment that would work for 1,4-dioxane," and therefore "[t]here was no need to do a well-by-well assessment." Berryhill Dep. Tr. at 124:12-125:20. Given that opinion, Defendants' contentions that Mr. Berryhill did not adequately consider the individualized circumstances of each well before finding Suffolk's AOP/GAC treatment plan reasonable go to the weight of Mr. Berryhill's testimony and not its admissibility under *Daubert*.

Finally, referencing his deposition testimony, Defendants argue that Mr. Berryhill should not be permitted "to offer any opinion that AOP systems should be installed at all 277 wells on the basis that it is standard industry practice for water providers to treat dioxane all the way down to non-detect levels." Defs.' Br. at 6. When asked at his deposition about the basis for Suffolk's objective of treating all wells to non-detect, Mr. Berryhill testified that there is "an industry standard" to "provide the highest quality water to its customers," which "would include levels without 1,4-dioxane if possible." Berryhill Dep. Tr. at 158:3-162:16. Defendants contend that

---

[3] As Suffolk acknowledges, Mr. Berryhill erroneously referred to the assumptions he relied upon as "opinions" on a few occasions. Suffolk is directed to ensure that he not do so at trial.

this "industry standard opinion is not based on any reliable methodology," but rather "on Berryhill's vague and abstract understanding of the industry." Defs.' Br. at 6.[4]

Defendants' arguments as to this opinion do not present a proper basis for *Daubert* exclusion. "It is proper for an expert to testify as to the customs and standards of an industry, and to opine as to how a party's conduct measured up against such standards." *Oestreicher v. Flagstar Bank*, 2025 WL 3755609, at *3 (E.D.N.Y. Sept. 29, 2025). "To the extent that [Defendants] allege[] any gaps or inconsistencies in the reasoning leading to the expert's opinion in this case, such arguments go to the weight of the evidence, not to its admissibility." *Novartis Pharma AG v. Incyte Corp.*, 2024 WL 3608338, at *15 (S.D.N.Y. July 29, 2024) (cleaned up) (quoting *Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 186 (2d Cir. 2001)). Upon review of Mr. Berryhill's Reports, I find no basis for *Daubert* exclusion of his rebuttal opinion. Mr. Berryhill's extensive experience in, and knowledge of, the water treatment industry is sufficient to support his industry standard opinion. Berryhill Dep. Tr. at 143:3-144:20; *see SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props., LLC*, 467 F.3d 107, 132-34 (2d Cir. 2006); *Reach Music Pub., Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 404-05 (S.D.N.Y. 2013).

---

[4] Suffolk, like the Defendants, does not refer to Mr. Berryhill's Rebuttal Report, but emphasizes that Mr. Berryhill did not offer the challenged opinion in his initial Report. Inexplicably, the parties do not address that, as described earlier, Mr. Berryhill opines in his Rebuttal Report that "SCWA's objective to provide its customers with drinking water without detectable levels of 1,4-dioxane is consistent with its mission, is consistent with what a reasonable water supplier would do, and is consistent with what any reasonable SCWA customer would expect of their water provider." Berryhill Rebuttal Report at 2. It is this opinion, probed by Defendants at Mr. Berryhill's deposition, that Defendants challenge here.

**IV.     Conclusion**

For the foregoing reasons, Defendants' motion to exclude the opinions of Mr. Berryhill is

DENIED.

**SO ORDERED.**

/s/

**NINA GERSHON**
**United States District Judge**

April 17, 2026
Brooklyn, New York